**Seth L. Goldstein, S.B.N. 176882**

2100 Garden Rd., Ste. H-8

Monterey, CA 93940

Telephone:  (831) 372-9511

Fax:          (831) 372-9611

Lead Counsel for Plaintiffs


**Mike Bomberger, S.B.N. 169866**

**Estey and Bomberger**

2869 India Street

San Diego, CA 92103

Telephone:    (619) 295-0035

Counsel for Plaintiff David Benson


## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| STACIA LANGLEY; DAVID BENSON; MICHAEL TURELLI AS PERSONAL REPRESENTATIVE OF M.B.; LAURA KINSER, INDIVIDUALLY AND AS GAL FOR D.Z.; MELANIE STARK, INDIVIDUALLY AND AS GAL FOR M.S.; CHERILYN CALER, INDIVIDUALLY AND AS GAL FOR J.P.; SUZANNE BRENT-PETERSEN, TIMOTHY PETERSEN, AUSTIN PETERSON; ROBERT DARROUGH AND KRISTEN COUGHLIN, BOTH INDIVIDUALLY AND AS GAL FOR E.D.; SUZANNE MULLER, INDIVIDUALLY, AND AS GAL FOR H.K.; CHRISTOPHER DAVIS, INDIVIDUALLY AND AS GAL FOR S.D., DEBBIE MARQUES AND LUIS DIAS DOMINGO MARQUES, | Case No.: 20-cv-00635-TLN-KJN<br><br>**ERRATA**<br><br>**SECOND AMENDED COMPLAINT FOR DAMAGES**<br><br>**JURY TRIAL DEMANDED** |
|---|---|

1

**LUIS A. MARQUES,**

Plaintiffs,

vs.

**GUIDING HANDS SCHOOL, INC., JENNIFER GALAS, STARANNE MEYERS, CINDY KELLER, JENNIFER CHRISTOPHER, KIMBERLY WOHLWEND, BETTY MORGAN, JILL WATSON, LE'MON THOMAS, DAVID CHAMBERS, LINDA STEARN, MICHAEL SMITH, MELANIE ALLEN, ZACH MATLOCK (ERRONEOUSLY SUED HEREIN AS ZACK MALLORY), BRUCE CHAPMAN, HANDLE WITH CARE BEHAVIORAL MANAGEMENT SYSTEMS, INC. (erroneously sued herein as HANDLE WITH CARE, INC.), STATE OF CALIFORNIA DEPARTMENT OF EDUCATION, YOLO COUNTY SELPA, DAVIS JOINT UNIFIED SCHOOL DISTRICT, SACRAMENTO COUNTY OFFICE OF EDUCATION, SACRAMENTO COUNTY OFFICE OF EDUCATION SELPA, FOLSOM CORDOVA UNIFIED SCHOOL DISTRICT, FOLSOM CORDOVA SELPA, ELK GROVE UNIFIED SCHOOL DISTRICT, ELK GROVE UNIFIED SELPA, AMADOR COUNTY OFFICE OF EDUCATION SELPA (erroneously sued herein as AMADOR COUNTY SELPA), AMADOR COUNTY UNIFIED SCHOOL DISTRICT, ROCKLIN UNIFIED SCHOOL DISTRICT, SACRAMENTO**

1  COUNTY SELPA, PLACERVILLE
2  UNION SCHOOL DISTRICT, EL
3  DORADO COUNTY OFFICE OF
4  EDUCATION, EL DORADO COUNTY
5  OFFICE OF EDUCATION SELPA, EL
6  DORADO COUNTY UNIFIED SCHOOLS,
7  POLLOCK PINES ELEMENTARY
8  SCHOOL DISTRICT (erroneously sued
9  herein as POLLOCK PINES UNIFIED
10 SCHOOL DISTRICT), KYLE McKOY in
11 place of DOE 1, DANIELLE OEHRING in
12 place of DOE 2, MERILEE GODBOUT in
13 place of DOE 3, NIMA NARAN in place of
14 DOE 4, KIM TRIGUERO in place of DOE
15 5, MEGHAN MAGEE in place of DOE 6,
16 BETTY JO WESSINGER, in place of DOE
17 7, TONY THURMOND in place of DOE 8,
18 PATRICK McGREW in place of DOE 9,
19 RILEY CHESSMAN in place of DOE 10 ,
20 SHARON HOLSTEGE in place of DOE 11,
21 CAROLYNNE BENO in place of DOE 12,
22 ANDRE GATEWOOD in place of DOE 13,
23 LISA McDONALD in place of DOE 14,
24 DIANA BROWNING WRIGHT in place of
25 DOE 15, TAMARA CLAY in place of DOE
26 16, DAVID TOSTON in place of DOE 17,
27 PAT ATKINS in place of DOE 18, AMY
28 SLAVENSKY in place of DOE 19 MITZI
29 FAULKNER in place of DOE 20, ERIC
30 BONNIKSEN in place of DOE 21, Douglas
31 Phillips in place of DOES 22, MARILYN
32 DELGADO in place of DOE 23, TAMMY
33 FORREST in place of DOE 2, KiM
34 DILLON in place of DOE 25, KRIS

**LAYMON in place of DOE 26, AMANDA HINDS in place of DOE 27, JENNIFER JONES in place of DOE 28, SANDRA ROMERO in place of DOE 29, ROBIN SCHUMANN in place of DOE 30    and DOES 31-100, as yet to be identified,**

Defendants.

## SECOND AMENDED COMPLAINT FOR DAMAGES

## <u>INTRODUCTION</u>

1.  Plaintiffs submit this claim for damages based on violations of federal and state anti-discrimination and civil rights statutes, as well as common law tort claims, including wrongful death involving minor Max Benson, and for assault, battery, false imprisonment, intentional infliction of emotional distress, negligence, negligent supervision and tortious breach of the duty of good faith and fair dealing, strict product liability, negligent product, and fraud as to other minor plaintiffs and/or their parents.

2.  Decedent Benson (hereinafter "MAX") was, and Austin Peterson (hereinafter "AUSTIN"), LUIS Marques (hereinafter "LUIS" and minor plaintiffs D.Z., S.D., J.P., M.S., E.D., H.K., (sometimes referred to collectively as "THE PLAINTIFF STUDENTS", or where only some of them are named in a cause of action, sometimes referred to as "THE NAMED PLAINTIFF STUDENTS") are disabled students who were placed at defendant Guiding Hands School, Inc., (hereinafter "GHS") by the defendants who are named herein as various county educational offices (hereinafter collectively referred to as "THE ARMS OF THE EDUCATIONAL SYSTEM") and their employees.

3.  MAX and THE PLAINTIFF STUDENTS were injured by a system of restraint developed and patented by defendant Bruce Chapman (hereinafter "CHAPMAN"), and sold

by him and his company, Handle With Care Behavioral Management Systems, Inc., (hereinafter "HWC") to schools in California, including GHS.

4.    MAX and THE PLAINTIFF STUDENTS, due to the severity of their disabilities, were often unable to or did not report to their parents the repeated physical and emotional abuse they were forced to endure by various staff at GHS, which staff also are named as defendants herein.

5.    Defendants GHS, THE ARMS OF THE EDUCATIONAL SYSTEM and their various employees preyed on THE PLAINTIFF STUDENTS because of their disabilities; tasked unqualified and inadequately trained staff to supervise THE PLAINTIFF STUDENTS; failed to document and report incidents of abuse; and failed to take reasonable steps to prevent further abuse.

6.    The abuse at GHS had occurred since at least 2008, and no effort was made by GHS, THE ARMS OF THE EDUCATIONAL SYSTEM, or their respective administrators or staff, to adequately protect THE PLAINTIFF STUDENTS from the continued abuse. Defendants perpetrated a series of abusive acts upon THE PLAINTIFF STUDENTS.  Some of these acts are set forth herein.  Unfortunately, due to the nature of their disabilities, and the death of MAX, sometimes THE PLAINTIFF STUDENTS are unable to answer questions regarding what happened to them or to describe events which occurred in their classroom.

7.    The harmful effects of the abuse suffered by THE PLAINTIFF STUDENTS at the hands of the staff directly abusing them have been compounded by defendant GHS' and THE ARMS OF THE EDUCATIONAL SYSTEM's willful failure to adequately report, document, respond to, investigate and prevent the abuse.  These willful failures prevented THE PLAINTIFF STUDENTS' parents from obtaining information regarding the cause of their children's injuries.

8.  THE ARMS OF THE EDUCATIONAL SYSTEM and various of their employees, who were tasked with overseeing activities within the Special Education departments, ignored warning signs that abuse was occurring at GHS.

9.  Even after THE PLAINTIFF STUDENTS' parents approached defendants GHS and THE ARMS OF THE EDUCATIONAL SYSTEM requesting information about their suspicions of abuse, said defendants failed to provide any meaningful information regarding what had transpired in their children's classroom.  THE PLAINTIFF STUDENTS' parents were only made aware of the depth of the abuse when these system-wide failures culminated in the death of MAX at the hands of staff at GHS.

10.  After the death of MAX, GHS' credentials were revoked by the State of California.  MAX's death has been ruled to be a homicide by the coroner.  Two administrators and one staff member at GSH have been charged with manslaughter in connection with MAX's death.

11.  Due to both the nature of THE PLAINTIFF STUDENTS' disabilities, which often precluded them from reporting the abusive acts, and the purposeful concealment of the acts by defendants GHS and THE ARMS OF THE EDUCATIONAL SYSTEM, some of THE STUDENT PLAINTIFFS are at this point unable to describe all of the abusive acts directed at THE STUDENT PLAINTIFFS and the exact length of time the abuse was endured.  THE STUDENT PLAINTIFFS expressly reserve their right to amend this Complaint to include additional facts and/or claims as discovery in this case proceeds.

12. THE PLAINTIFF STUDENTS' damages are such that proceeding through due process before the Office of Administrative Hearings would be both futile and inadequate. Plaintiffs' injuries cannot be redressed under the IDEA's due process procedures because: GHS has been closed; there are no educational issues to be resolved through an IEP process related GHS; the claims against GHS and THE ARMS OF THE EDUCATIONAL SYSTEM center around physical abuse and injuries for which an administrative hearing officer or

1    administrative law judge cannot render an award of monetary damages; and THE

2    PLAINTIFF STUDENTS seek only retrospective damages for that physical and

3    psychological abuse, along with prospective general and special damages which flow as a

4    natural consequence of that past abuse.

5        13.  THE PLAINTIFF STUDENTS' parents also seek relief from this Honorable

6    Court for the damages they have suffered as a result of wrongdoing by GHS, its

7    administrators and staff and by THE ARMS OF THE EDUCATIONAL SYSTEM and its

8    employees.

9        14.  Various plaintiffs are able to make allegations regarding compliance with

10   California's Government Tort Claims Act, as will be set forth specifically herein by the

11   plaintiffs.  When compliance with the Tort Claims Act is mandated, but has not been

12   accomplished, an otherwise existing cause of action against the subject public entity will not

13   be pled.  Nothing in this complaint should be read as assertion of a claim against a public

14   entity or its employees in their official capacity for which a Tort Claim filing is mandated,

15   *i.e.*, all claims other than the 42 USC 1983 causes of action, and for which no Tort Claim has

16   yet been allowed.

17                        **JURISDICTION**

18       15.  This court has subject matter jurisdiction over this action pursuant to 28 USC,

19   sections 1331 and 1367 for the claims arising under the Americans With Disabilities Act of

20   1990; 42 USC, section 1342, for claims arising under 42 USC 1983 regarding claims arising

21   under the United States Constitution; and pursuant to 29 USC, Sections 794, *et seq.*, for

22   claims arising under section 504 of the Rehabilitation Action of 1973.

23       16.  Under the doctrine of pendant and supplemental jurisdiction, 28 USC, Section

24   1367, this Honorable Court has jurisdiction over plaintiffs' claims arising under California

25   state and common law.

26

7

**VENUE**

17.  Pursuant to 28 USC, section 1391(b), venue is proper in the district in which this Complaint is filed, which is the judicial district in which the claims have arisen.  Further, a substantial amount of activity giving rise to the claims herein alleged occurred within this district.

**PARTIES**

**THE PLAINTIFF STUDENTS**:

18.  MAX, whose rights are presented herein through the duly appointed personal representative to his estate Michael Turelli, was a 13-year-old boy who had a host of physical and emotional disabilities, including: speech impediments; low overall muscle tone; low facial muscle tone; a tendency to drool; poor proprioception; poor postural control; difficulty with coordinated muscle activity; bilateral intention tremors; difficulty with skilled hand movements; an eye tick; a congenital defect in his neck, for which he underwent a fusion of the C1-C2 vertebrae with resulting placement of screws and rods or a plate in his neck; daily neck pain; Ehler-Danlos syndrome; autism; extreme sensitivity to loud noises; difficulty sleeping; obesity; a pericallosal brain tumor; and neurological deficits.  MAX was a child with a disability as defined in 20 USC 1401(3), and was a person with a disability at all times referenced herein within the meaning of all applicable state and federal disability laws.

19.  MAX has complied with the Tort Claims filing requirements for claims against the State of California, Yolo County SELPA and DJUSD.

20.  D.Z. is a minor with autism.  D.Z. is a child with a disability as defined in 20 USC 1401(3) and was a person with a disability at all times referenced herein within the meaning of all applicable state and federal disability laws.

21.  D.Z. has complied with the Tort Claims filing requirements as to Sacramento County Office of Education SELPA for any claims occurring within 6 months of April 17, 2019, and as to Folsom Cordova Unified School District and Folsom Cordova Unified School

8

1    District SELPA for any claims occurring within one year of May 17, 2019, and limits his

2    claims against said defendants as stated herein accordingly.

3        22.  S.D. is a minor diagnosed with depressive disorder, oppositional defiant disorder

4    and developmental coordination disorder, who was required to take sertraline and

5    methylphenidate for his conditions.  S.D. is a child with a disability as defined in 20 USC

6    1401(3)  and was a person with a disability at all times referenced herein within the meaning

7    of all applicable state and federal disability laws.

8        23.  S.D. has complied with the Tort Claims filing requirements for El Dorado County

9    Office of Education and El Dorado County SELPA for any occurrences on or after November

10   23, 2018, and the claims herein stated against said public entities by S.D. are subject to that

11   limitation and limits his claims against defendants accordingly.

12       24.  J.P. is a minor child with autism and Asperger's Syndrome.  J.P. is a child with a

13   disability as defined in 20 USC 1401(3) and is a person with a disability at all times

14   referenced herein within the meaning of all applicable state and federal disability laws.

15       25.  H.K. is a minor child with autism.  H.K is a child with a disability as defined in

16   20 USC 1401(3) and is a person with a disability within the meaning of all applicable state

17   and federal disability laws.

18       26.  H.K. has complied with the Tort Claims filing required against Placerville Union

19   School District for injuries incurred on or after November 23, 2018, and the claims herein

20   stated against said public entities by H.K. are subject to that limitation.

21       27.  M.S. is a minor child with autism, Tourette Syndrome and ADHS.  M.S. is a child

22   with a disability as defined in 20 USC 1401(3) and is a person with a disability within the

23   meaning of all applicable state and federal disability laws.

24       28.  M.S. has complied with the Tort Claims filing against Elk Grove Unified School

25   District, Elk Grove Unified School District SELPA, Sacramento Office of Education and the

26   State of California.

29.  At all relevant times, AUSTIN PETERSEN was a minor child with autism. AUSTIN was a child with a disability as defined in 20 USC 1401(3) and is a person with a disability within the meaning of all applicable state and federal disability laws.

30.  AUSTIN  has complied with the Tort Claims filing against Rocklin Unified School District for injuries incurred on or after November 23, 2018, and the claims herein stated against said public entities by AUSTIN are subject to that limitation.

31.  E.D. is a minor child with autism, anxiety disorder and other serious mental health and behavioral health problems.  E.D. is a child with a disability as defined in 20 USC 1401(3) and is a person with a disability within the meaning of all applicable state and federal disability laws.

32.  At all relevant times, LUIS Marques (legal name LUIS Andreas Marques, hereinafter "LUIS") was a minor child with autism, who had a pre-existing fused spine. LUIS was a child with a disability as defined in 20 USD 1401(3) and is a person with a disability within the meaning of all applicable state and federal disability laws.

**THE PLAINTIFF STUDENTS' PARENTS:**

33.  The plaintiff students' parents are oftentimes referred to herein collectively as "THE PLAINTIFF STUDENTS' PARENTS."

34.   Stacia Langley (hereinafter "LANGLEY") and David Benson (hereinafter "BENSON") are the parents of MAX.

35.   LANGLEY and BENSON have complied with the Tort Claims filing requirements against CDE, YOLO and DJUSD.

36.  Laura Kinser (hereinafter "KINSER") is the parent and guardian ad litem of D.Z.

37.  Christian Davis (hereinafter "DAVIS") is the parent and guardian ad litem of S.D.

38.  Cherilyn Caler (hereinafter "CALER") is the parent and guardian ad litem of J.P.

39.  Susan Muller (hereinafter "MULLER") is the parent and guardian ad litem of H.K.

40.  Melanie Stark (hereinafter "STARK") is the parent and guardian ad litem  of M.S.

41.  STARK has complied with the Tort Claims filing requirement against Elk Grove Unified School District, Elk Grove Unified School District SELPA, Sacramento Office of Education and the State of California.

42.  Suzanne Brent-Petersen and Timothy Petersen (hereinafter "THE PETERSENS") are the parents of AUSTIN.

43.  Robert Darrough (hereinafter "DARROUGH") and Kristen Couglin (hereinafter "COUGHLIN") are the parents and guardians ad litem of E.D.

44.  LUIS Marques and Deborah Marques (hereafter "THE MARQUES") are the parents of LUIS.

**THE DEFENDANTS:**

45.  At all times herein mentioned, GHS was a non-public school, organized as a private corporation under the laws of the State of California, which contracted with various school districts and County Offices of Education and SELPAs [Special Education Local Plan Area] (previously referred to as "THE ARMS OF THE EDUCATIONAL SYSTEM"), including Yolo County SELPA (hereinafter "YOLO"), Davis Joint Unified School District (hereinafter "DJUSD"), Sacramento County Office of Education (hereinafter "SCOE"), Sacramento County Office of Education SELPA (hereinafter "SCOESELPA), Folsom Cordova Unified School District (hereinafter "FCUSD"), Folsom Cordova SELPA (hereinafter "FCSELPA"), Elk Grove Unified School District (hereinafter "EGUSD"), Elk Grove Unified SELPA (hereinafter "EGSELPA"), Amador County Unified School District (hereinafter "ACUSD"),    Amador County Office of Education SELPA (hereinafter "ACOESELPA"), Rocklin Unified School District (hereinafter "RUSD"), Sacramento

County SELPA (hereinafter "SCSELPA"), Placerville Union School District (hereinafter "PUSD"), El Dorado County Office of Education (hereinafter "EDCOE"), El Dorado County Office of Education SELPA, (hereinafter "EDCOESELPA"), El Dorado County Unified Schools (hereinafter "EDCUS"), Pollock Pines Elementary School District (hereinafter "PPESD") and the CALIFORNIA DEPARTMENT OF EDUCATION (hereinafter "CDE") to act as their independent contractor in providing educational services to disabled children within the State of California. At all times herein mentioned, in committing the acts herein alleged, GHS was performing services on behalf of those entities that traditionally were performed by those entities.

46.    At all times herein mentioned, DJUSD, YOLO, FCUSD, FCSELPA, EGUSD, EGSELPA, ACUSD, ACSELPA, RUSD, SCSELPA, PUSD, EDCOE, EDCOESELPA, EDCUS and PPESD were/are local government entities within the meaning of Title II of the ADA, recipients of federal financial assistance within the meaning of Section 504 of the Rehabilitation Act and have at least 50 employees.  DJUSD, YOLO, FCUSD, FCSELPA, EGUSD, EGSELPA, ACUSD,   ACSELPA, RUSD, SCSELPA, PUSD, EDCOE, EDCOESELPA, EDCUS and PPESD are also recipients of financial assistance from the State of California.

47.    Presently, and at all times relevant to this Complaint, GHS and THE ARMS OF THE EDUCATIONAL SYSTEM were and are business establishments within the meaning of the Unruh Civil Rights Act.  THE ARMS OF THE EDUCATIONAL SYSTEM are sued in their own right, on the basis of employing GHS as its independent contractor pursuant to a written contract to perform educational services for MAX and THE PLAINTIFF STUDENTS and on the basis of the acts and omissions of their officials, agents and employees.

**GHS EMPLOYEES:**

48.    At all times herein mentioned, defendants Staranne Meyers (hereinafter "MEYERS") was the principal and a member of the board of GHS, Cindy Keller (hereinafter "KELLER") was the executive director of GHS, Jennifer CHRISTENSEN (hereinafter "CHRISTENSEN") was an administrator at GHS, Nima Naran in place of DOE 4 (hereinafter "NARAN") was an administrator at GHS and DOE defendants were officers, directors and administrators of defendant GHS, all of whom have/had authority and control over GHS's programs and facilities, including policies, practices, procedures, programs, activities, services, training and staff, and all of whom have direct responsibility for ensuring the safety and well being of their students and for ensuring compliance with state and federal laws. MEYERS, KELLER, CHRISTENSEN and NARAN allowed and encouraged staff at GHS to intentionally and unlawfully assault students at GHS for no pedagogical purpose. They are sued in their individual and official capacities as administrators at GHS.

49.    At all times herein mentioned, defendants Kimberly Wohlwend (hereinafter "WOHLWEND"), Betty Morgan (hereinafter "MORGAN"), Jill Watson (hereinafter "WATSON"), Le'Mon Thomas (hereinafter "THOMAS"), David Chambers (hereinafter "CHAMBERS") and DOE defendants were employed as teachers and aides at GHS who intentionally and unlawfully assaulted MAX and unlawfully inflicted corporal punishment upon him, for no pedagogical purpose. They had authority and control of the classroom, including policies, practices, procedures, facilities and activities within the classroom. They are sued in their individual capacities and in their capacities as employees of GHS.

50.    At all times herein mentioned, defendants CHAMBERS, Zach Matlock (erroneously initially sued herein as Zack Mallory) (hereinafter "MATLOCK"), Kyle McKoy in place of DOE 1 (hereinafter "McKOY"), Danielle Oehring in place of DOE 2 (hereinafter "OEHRING"), MeriLee Godbout in place of DOE 3 (hereinafter "GODBOUT") and DOE defendants were employed as teachers and aides at GHS, who intentionally and unlawfully

1   assaulted D.Z. and unlawfully inflicted corporal punishment upon him, for no pedagogical

2   purpose. They had authority and control of the classroom, including administering all

3   policies, practices, procedures, facilities and activities within the classroom.  They are sued in

4   their individual capacities and in their capacities as employees of GHS.

5       51.  At all times herein mentioned, defendants WOHLWEND, KELLER and Andre

6   Gatewood in place of DOE 13 (hereinafter "GATEWOOD") were employed as teachers and

7   aides at GHS, who intentionally and unlawfully assaulted S.D. and unlawfully inflicted

8   corporal punishment upon him, for no pedagogical purpose. They had authority and control

9   of the classroom, including all policies, practices, procedures, facilities and activities within

10  the classroom.   They are sued in their individual capacities and in their capacities as

11  employees of GHS.

12      52.  At all times herein mentioned, defendants Michael Smith (hereinafter "SMITH"),

13  MATLOCK, Melanie Allen (hereinafter "ALLEN") and DOE defendants were employed as

14  teachers and aides at GHS who intentionally and unlawfully assaulted J.P. and unlawfully

15  inflicted corporal punishment upon him, for no pedagogical purpose. They had authority and

16  control of the classroom, including all policies, practices, procedures, facilities and activities

17  within the classroom.  They are sued in their individual capacities and in their capacities as

18  employees of GHS.

19      53.  At all times herein mentioned, DOE defendants were employed as teachers and

20  aides at GHS who intentionally and unlawfully assaulted H.K. and unlawfully inflicted

21  corporal punishment upon him, for no pedagogical purpose. They had authority and control

22  of the classroom, including all policies, practices, procedures, facilities and activities within

23  the classroom.   They are sued in their individual capacities and in their capacities as

24  employees of GHS.

25      54.   At all times herein mentioned, Linda Stearn (hereinafter "STEARN"),

26  CHRISTENSEN, Kim Dillon in place of DOE 25 (hereinafter "DILLON"), Kris Laymon in

place of DOE 26 (hereinafter "LAYMON"), Amanda Hinds in place of DOE 27 (hereinafter "HINDS"), Jennifer Jones in place of DOE 28 (hereinafter "JONES"), Sandra Romano in place of DOE 29 (hereinafter "ROMANO"), Robin Schumnann (hereianfter "SCHUMANN") and DOE defendants were employed as administrators, teachers and aides at GHS who intentionally and unlawfully assaulted M.S. and unlawfully inflicted corporal punishment upon him, for no pedagogical purpose. They had authority and control of the classroom, including all policies, practices, procedures, facilities, and activities within the classroom. They are sued in their individual capacity and in their capacity as employees of GHS.

55.  At all times herein mentioned, DOE defendants were employed as teachers and aides at GHS who intentionally and unlawfully assaulted AUSTIN and unlawfully inflicted corporal punishment upon him for no pedagogical purpose. They had authority and control of the classroom, including all policies, practices, procedures, facilities and activities within the classroom. They are sued in their individual capacities and in their capacities as employees of GHS.

56.  At all times herein mentioned, DOE defendants were employed as teachers and aides at GHS who intentionally and unlawfully assaulted E.D. and unlawfully inflicted corporal punishment upon him, for no pedagogical purpose. They had authority and control of the classroom, including all policies, practices, procedures, facilities and activities within the classroom. They are sued in their individual capacities and in their capacities as employees of GHS.

57.  At all times herein mentioned, DOE defendants were employed as teachers and aides at GHS who intentionally and unlawfully assaulted LUIS and unlawfully inflicted corporal punishment upon him, for no pedagogical purpose. They had authority and control of the classroom, including all policies, practices, procedures, facilities and activities within the classroom. They are sued in their individual capacities and in their capacities as employees of GHS.

58.  Unless otherwise indicated in this complaint, the term "GHS" refers to the schools, their administrators, board of directors, agents and employees.

**EMPLOYEES OF THE ARMS OF THE EDUCATIONAL SYSTEM:**

59.  At all times herein mentioned, Patrick McGrew in place of DOE 9 (hereinafter "McGREW") was the Director of Special Education for DJUSD, Riley Chessman in place of DOE 10 (hereinafter "CHESSMAN") and Jennifer Galas (hereinafter "GALAS") were Program Specialists at DJUSD, both of whom unlawfully allowed MAX to be subjected to assault and unlawful corporal punishment while attending GHS. With respect to any acts or omissions in connection therewith, McGREW, CHESSMAN and GALAS were acting within the course and scope of their employment and are sued in their individual and official capacities, as set forth with more specificity hereinafter. The Director of Special Education has authority and control of the special education classrooms, including the policies, practices, procedures, facilities, maintenance, programs, activities, services, training and employees of those classrooms.  The Director is responsible for ensuring compliance with special education laws at GHS.  The Program Specialists are responsible for ensuring that appropriate special education practices are followed, including practices in the use of behavioral interventions, to provide leadership to school administrators in the supervision of special education team members and to support parental involvement in the education of disabled children.

60.  At all times herein mentioned, Sharon Holstege in place of DOE 11 (hereinafter "HOLSTEGE") was the Director of Special Education for YOLO and Carolynne Beno in place of DOE 12 (hereinafter "BENO") was the Assistant Superintendent of YOLO, involved with overseeing the special education programs within Yolo County, including the special education programs of DJUSD, and she unlawfully allowed MAX to be subjected to assault and unlawful corporal punishment while he attended GHS.  With respect to any acts or omissions in connection therewith, HOLSTEGE and BENO were acting within the course and

1   scope of their employment and are sued in their individual and official capacities, as set forth

2   with more specificity hereinafter. The Director of Special Education and the Assistant

3   Superintendent have authority and control of the special education classrooms, including the

4   policies, practices, procedures, facilities, maintenance, programs, activities, services, training

5   and employees of those classrooms. The Director and the Assistant Superintendent are

6   responsible for ensuring compliance with special education laws and anti-discrimination laws

7   at GHS.

8        61.   At all times herein mentioned, Kim Triguero in place of DOE 5 (hereinafter

9   "TRIGUERO") was a Program Specialist for FCUSD and FCSELPA, Meghan Magee in

10  place of Doe 6 (hereinafter "MAGEE") was a Coordinator for FCUSD and FCSELPA, and

11  Betty Jo Wessinger in place of DOE 7 (hereinafter "WESSINGER") was the Assistant

12  Superintendent of Public Education for FCUSD and FCSELPA who unlawfully allowed D.Z.

13  to be subjected to assault and unlawful corporal punishment while attending GHS.  With

14  respect to any acts or omissions in connection herewith, TRIGUERO and MAGEE were

15  acting within the course and scope of their employment and are sued in their individual and

16  official capacities as set forth with specificity hereinafter.  The Assistant Superintendent has

17  authority and control of the special education classrooms, including the policies, practices,

18  procedures, facilities, maintenance, programs, activities, services, training and employees of

19  those classrooms.  The Assistant Superintendent is responsible for ensuring compliance with

20  special education laws and anti-discrimination laws at GHS.  The Program Specialist and the

21  Coordinator are responsible for: ensuring that appropriate special education practices are

22  followed, including practices in the use of behavioral interventions; providing leadership to

23  school administrators in the supervision of special education team members; and supporting

24  parental involvement in the education of disabled children.

25       62.   At all times herein mentioned, Lisa McDonald in place of DOE 14 (hereinafter

26  "McDONALD") was a school psychologist for PPES. Diana Browning Wright in place of

DOE 15 (hereinafter "WRIGHT") was in charge of Discipline/Trainings for EDCOESELPA), Tamara Clay in place of DOE 16 (hereinafter "CLAY") was the Director of the EDCOESELPA, David Toston in place of DOE 17 (hereinafter "TOSTON") was the Associate Superintendent of EDCOESELPA, and Pat Atkins (hereinafter "ATKINS") in place of DOE 18 was the Superintendent of PPESD, all of whom unlawfully allowed S.D. to be subjected to assault and unlawful corporal punishment while attending GHS. With respect to any acts or omissions in connection herewith, McDONALD, WRIGHT, CLAY, TOSTON and ATKINS were acting within the course and scope of their employment, and are sued in their individual and official capacities, as alleged with specificity hereinafter. The Director, the Associate Superintendent and the Superintendent have authority and control of the special education classrooms, including the policies, practices, procedures, facilities, maintenance, programs, activities, services, training and employees of those classrooms. The Assistant Superintendent is responsible for ensuring compliance with special education laws and anti-discrimination laws at GHS. The Program Specialist and the Coordinator are responsible for ensuring that appropriate special education practices are followed, including practices in the use of behavioral interventions; to provide leadership to school administrators in the supervision of special education team members; and to support parental involvement in the education of disabled children at GHS. The school psychologist is a mandated reporter of suspected child abuse at GHS. The person in charge of discipline/training is responsible for ensuring that appropriate special education practices are followed, including practices in the use of behavioral interventions, and for prevention of child abuse and corporal punishment in the application of behavioral interventions at GHS.

63. At all times herein mentioned, Amy Slavensky in place of DOE 19 (hereinafter "SLAVENSKY") was the Superintendent and Mitzi Faulkner in place of DOE 20 (hereinafter "FAULKNER") was the Assistant Superintendent/Special Education SELPA for ACOESELPA and ACUSD, who unlawfully allowed J.P. to be subjected to assault and

1   unlawful corporal punishment while attending GHS.  With respect to any acts or omissions in

2   connection therewith, SLAVENSKY and FAULKNER were acting within the course and

3   scope of their employment and are sued in their individual and official capacities as set forth

4   with specificity hereinafter.  The Superintendent and the Assistant Superintendent Special

5   Education/SELPA have authority and control of the special education classrooms, including

6   the policies, practices, procedures, facilities, maintenance, programs, activities, services,

7   training and employees of those classrooms.    The Superintendent and the Assistant

8   Superintendent are responsible for ensuring compliance with special education laws and anti-

9   discrimination laws at GHS.

10        64.  At all times herein mentioned, Eric Bonniksen in place of DOE 21 (hereinafter

11   "BONNIKSEN") was the Superintendent of PUSD who unlawfully allowed H.K. to be

12   subject to assault and unlawful corporal punishment while attending GHS. WRIGHT, CLAY

13   and TOSTON were individuals within the EDCOESELPA who were in charge of policy and

14   oversight within the special education program of PUSD and GHS and who unlawfully

15   allowed H.K. to be subjected to assault and unlawful corporal punishment while attending

16   GHS.   With respect to any acts or omissions in connection herewith, BONNIKSEN,

17   WRIGHT, CLAY and TOSTON were acting within the course and scope of their

18   employment and are sued in their individual and official capacities.  The Superintendent has

19   the authority and control of the special education classrooms, including the policies,

20   practices, procedures, facilities, maintenance, programs, activities, services, training and

21   employees of those classrooms.  The Superintendent is responsible for ensuring compliance

22   with special education laws and anti-discrimination laws at GHS.

23        65.  At all times herein mentioned, Douglas Phillips in place of DOE 22 (hereinafter

24   "PHILLIPS") was the Director of Special Education for the EGUSD, and Marilyn Delgado in

25   place of DOE 23 (hereinafter "DELGADO") was the District Program Specialist who

26   unlawfully allowed M.S. to be subjected to assault and unlawful corporal punishment while

attending GHS.  With respect to any acts or omissions in connection herewith, PHILLIPS and DELGADO were acting within the course and scope of their employment and are sued in their individual and official capacities as will be alleged with specificity hereinafter. The Director of Special Education has authority and control of the special education classrooms, including the policies, practices, procedures, facilities, maintenance, programs, activities, services, training and employees of those classrooms. The Director is responsible for ensuring compliance with special education laws and anti-discrimination laws at GHS.  The Program Specialist is responsible for ensuring that appropriate special education practices are followed, including practices in the use of behavioral interventions; to provide leadership to school administrators in the supervision of special education team members; and to support parental involvement in the education of disabled children at GHS.

66.  At all times herein mentioned, Tammy Forrest in place of DOE 24 (hereinafter "FORREST") was the Director of Special Education at RUSD who unlawfully allowed AUSTIN to be subjected to assault and unlawful corporal punishment while attending GHS. With respect to any acts or omissions in connection therewith, FORREST was acting within the course and scope of her employment and is sued in her individual and official capacities as specifically alleged hereinafter.  The Director of Special Education has authority and control of the special education classrooms, including the policies, practices, procedures, facilities, maintenance, programs, activities, services, training and employees of those classrooms.  The Director is responsible for ensuring compliance with special education laws and anti-discrimination laws at GHS.

67.  At all times herein mentioned, DOE defendants were in charge of the special education program that oversaw activities at GHS, and they unlawfully allowed E.D. to be subjected to assault and unlawful corporal punishment while attending GHS.  With respect to any acts or omissions in connection herewith, said DOE defendants were acting within the course and scope of their employment and are sued in their individual and official capacities

1   as alleged with specificity hereinafter.  The DOE defendants are responsible for ensuring

2   compliance with state and federal laws and anti-discrimination laws within the classroom at

3   GHS.

4         68.   At all times herein mentioned, DOE defendants were in charge of the special

5   education program that oversaw activities at GHS and they unlawfully allowed LUIS to be

6   subjected to assault and unlawful corporal punishment while attending GHS.  With respect to

7   any acts or omissions in connection herewith, said DOE defendants were acting within the

8   course and scope of their employment and are sued in their individual and official capacities

9   as alleged with specificity hereinafter.  The DOE defendants are responsible for ensuring

10   compliance with state and federal laws and anti-discrimination laws within the classroom at

11   GHS.

12         69.   At all times herein mentioned, Tony Thurmond in place of DOE 8 (hereinafter

13   "THURMOND") was the Superintendent of Schools for the California Department of

14   Education who oversees all of the schools within the state, who licenses all teachers within

15   the state, who is responsible for ensuring statewide compliance with all state and federal laws

16   within the State of California's educational system and who unlawfully allowed MAX and

17   THE PLAINTIFF STUDENTS to be subjected to assault and unlawful corporal punishment

18   while attending GHS.

19   **CHAPMAN AND HWC**:

20         70.   At all times herein mentioned, defendant HWC was a corporation organized

21   under the laws of the State of New York and doing business in California, marketing a

22   system of restraint and training California teachers to restrain special needs children in prone

23   and other types of restraints.

24         71.   At all times herein mentioned, defendant Bruce Chapman (hereinafter

25   "CHAPMAN") was the agent and employee, owner, alter-ego, president and founder of

26   HWC who developed a patented restraint system marketed through HWC to schools in

1  California for use on "behaviorally challenged" children in California schools, including

2  GHS, which lead to the injuries to THE PLAINTIFF STUDENTS and/or to the death of

3  MAX as herein alleged.

4  **VICARIOUS LIABILITY OF THE ARMS OF THE EDUCATIONAL SYSTEM FOR**

5  **THE ACTS AND OMISSIONS OF THEIR EMPLOYEES AND THE ACTS AND**

6  **OMISSIONS OF THEIR INDEPENDENT CONTRACTOR**

7  72.  At all times mentioned herein, CDE and THE ARMS OF THE EDUCATIONAL

8  SYSTEM were the employers of the above-identified Superintendents, Assistant

9  Superintendents, Directors, Program Specialists and school psychologists.

10  73.  The above-identified Superintendents, Assistant Superintendents, Directors,

11  Program Specialists and school psychologists committed the acts and/or omissions described

12  in this complaint while acting within the scope of their employment with the State of

13  California and THE ARMS OF THE EDUCATIONAL SYSTEM while educating,

14  disciplining and supervising MAX and THE PLAINTIFF STUDENTS.

15  74.  The public employees named herein are liable for their acts and/or omissions to

16  the same extent as a private person under California Gov. Code, § 820, subd. (a), and the

17  public entities are vicariously liable for their employees' negligent acts within the course and

18  scope of their employment to the same extent as private employers under California Gov.

19  Code, § 815.2, subd. (a).  Unless otherwise specifically pled herein, legal theories of public

20  entity liability turn on ordinary and general principles of California tort law.

21  75.  At all times herein mentioned, defendant CDE, hired, contracted with and used

22  the services of THE ARMS OF THE EDUCATIONAL SYSTEM, GHS and DOE defendants

23  to fulfill the aforementioned mandatory duties under the United States Code for educating

24  special needs and disabled students, and defendant CDE had mandatory oversight under said

25  U.S. Code sections of THE ARMS OF THE EDUCATIONAL SYSTEM, GHS, MEYERS,

1    KELLER, CHRISTENSEN, NARAN and DOE defendants in conducting each of said

2    activities.

3        76.    At all times herein mentioned, defendants GHS, MEYERS, KELLER,

4    CHRISTENSEN and DOE defendants were acting as the agents of defendants CDE, THE

5    ARMS OF THE EDUCATIONAL SYSTEM and DOE defendants in conducting all of the

6    actions and failures to act as complained of herein.

7        77.    At all times herein mentioned, defendants GHS, MEYER, KELLER,

8    CHRISTENSEN and DOE defendants were certified by defendant CDE to provide special

9    education services to disabled students, including MAX and THE PLAINTIFF STUDENTS.

10        78.  GHS was an independent contractor of  THE ARMS OF THE EDUCATIONAL

11    SYSTEM.  GHS was contracted by THE ARMS OF THE EDUCATIONAL SYSTEM to

12    fulfill their obligation to provide education to disabled children within the State of California,

13    including to MAX and THE PLAINTIFF STUDENTS.

14        79.  In committing the acts and/or omissions herein alleged, GHS and its employees

15    were performing non-delegable duties on behalf of THE ARMS OF THE EDUCATIONAL

16    SYSTEM, and, as such, each named public entity is liable for injury proximately caused by

17    the tortious acts or omissions of GHS to the same extent that the public entity would be

18    subject to such liability if it were a private person (California G.C. section 815.4).

19        **SPECIAL DUTIES AND LIABILITIES OF GHS AND THE ARMS OF THE**

20        **EDUCATIONAL SYSTEM  DEFENDANTS**

21        80.    GHS and its employees had a special relationship with THE PLAINTIFF

22    STUDENTS.  As such, GHS and its employees are/were held to a high standard of care in

23    relation to their conduct toward THE PLAINTIFF STUDENTS.  This duty requires GHS and

24    its employees to take reasonable steps to minimize the risk of reasonably foreseeable harm,

25    including, but not limited to: ensuring that the school complies with safety standards and

26    laws relating to child abuse, protecting students under their charge from reasonably

1   foreseeable risks of injury and ensuring that immediate medical assistance is provided to

2   injured students.

3        81.  Under California law, THE ARMS OF THE EDUCATIONAL SYSTEM have a

4   special relationship with students arising from the mandatory character of school attendance

5   and the comprehensive control over students exercised by school personnel, analogous in

6   many ways to the relationship between parents and their children.

7        82.  At all times herein mentioned, defendants CDE, THE ARMS OF THE

8   EDUCATIONAL SYSTEM and their employees, GHS and its employees, and DOE

9   defendants knew, or should have known, that there had been reports of numerous abuses of

10  defendant CHAPMAN and HWC's method by schools and educational professionals who

11  had employed defendant CHAPMAN and HWC's restraints on "behaviorally challenged"

12  disabled students.

13       83.  At all times herein mentioned, defendants CDE, THE ARMS OF THE

14  EDUCATIONAL SYSTEM and their employees, GHS and its employees and DOE

15  defendants knew or should have known that the use of prone and other types of restraints was

16  very dangerous and had resulted in serious injury to, and in the deaths of, numerous

17  "behaviorally challenged students."

18       84.  At all times herein mentioned, defendants CDE, THE ARMS OF THE

19  EDUCATIONAL SYSTEM and their employees, and DOE defendants, knew or should have

20  known that disabled students under their respective jurisdictions at GHS, including MAX and

21  THE PLAINTIFF STUDENTS, were frequently and routinely "taken down" by multiple staff

22  members and placed into prolonged prone and other types of restraints, the average time of

23  those holds exceeding one hour in duration.

24       85.  At all times herein mentioned, defendants CDE, THE ARMS OF THE

25  EDUCATIONAL SYSTEM and their employees, GHS and its employees and DOE

1  defendants knew or should have known that the prolonged use of prone or other types of

2  physical restraints on a student increases the risk of injury and/or death to that child.

3     86.  At all times herein mentioned, CDE, THE ARMS OF THE EDUCATIONAL

4  SYSTEM and their employees, GHS and its employees and DOE defendants knew, or should

5  have known, when developing the restraint system, that documented injuries from use of

6  prone restraints include: asphyxiation, choking, strangulation, cerebral and cerebellar oxygen

7  deprivation (hypoxia and anoxia), broken bones, lacerations, abrasions, injury to joints and

8  muscles, contusions or bruising, overheating, dehydration, exhaustion, blunt trauma to the

9  head, broken neck, wrist and leg compression, dislocation of the shoulder and other joints,

10  hyperextension or hyperflexion of the arms, exacerbation of existing respiratory problems,

11  decreased respiratory efficiency, decrease in circulation to extremities, deep vein thrombosis,

12  pulmonary embolism, cardiac arrest, respiratory arrest and death.

13     87.  At all times herein mentioned, CDE, THE ARMS OF THE EDUCATIONAL

14  SYSTEM and their employees, GHS and its employees and DOE defendants knew, or should

15  have known, that the risk of injury or death is increased where the person/child restrained has

16  neurological, cardiac or respiratory conditions or is obese.

17     88.  At all times herein mentioned, CDE, THE ARMS OF THE EDUCATIONAL

18  SYSTEM and their employees, GHS and its employees and DOE defendants knew or should

19  have known that children, upon whom the restraint system was intended to be used, have

20  physical limitations and/or other medical conditions that would contraindicate the use of the

21  restraint system upon them under any circumstances.

22     89.  At all times herein mentioned, CDE, THE ARMS OF THE EDUCATIONAL

23  SYSTEM and their employees and GHS and its employees knew, or should have known, that

24  a disproportionate number of children are injured and/or have died from the use of restraints

25  because children struggle against physical restraints, particularly when the situation or

26  method of restraint is extremely unpleasant or aversive.

90.  At all times herein mentioned, CDE, THE ARMS OF THE EDUCATIONAL SYSTEM and their employees, GHS and its employees and DOE defendants knew, or should have known, that struggling against a hold is a natural and foreseeable response of a child and that the user of the restraint system may exert pressure, in a variety of forms, on the thoracic cavity of the child upon whom the restraint system is used and/or on the child's neck, head, shoulders, ankles or limbs, which would likely cause injury.

91.  At all times herein mentioned, CDE, THE ARMS OF THE EDUCATIONAL SYSTEM and their employees, GHS and its employees and DOE defendants knew or should have known that struggling against a restraint is a natural response and cannot be assumed to be oppositional.

92.  At all times herein mentioned, CDE, THE ARMS OF THE EDUCATIONAL SYSTEM and their employees, GHS and its employees and DOE defendants knew, or should have known, that severe injuries and death can occur when adults physically overpower a child or when a child struggles well beyond the point of physical exhaustion.

93.  At all times herein mentioned, CDE, THE ARMS OF THE EDUCATIONAL SYSTEM and their employees, GHS and its employees and DOE defendants knew, or should have known, that in a crisis situation a child cannot be expected to fully understand directions and to effectively communicate their personal needs.

94.  At all times herein mentioned, defendants CDE, THE ARMS OF THE EDUCATIONAL SYSTEM and their employees, GHS and its employees and DOE defendants knew or should have known that children may be physically and emotionally injured when someone forces the child from a standing position to the ground and into a prone or other types of restraint.

95.  At all times herein mentioned, defendants CDE, THE ARMS OF THE EDUCATIONAL SYSTEM and their employees, GHS and its employees and DOE defendants knew or should have known that failure to continuously monitor the vital signs of

1  a child being held in a prone restraint or other type of restraint increases the risk of injury

2  and/or death to that child.

3      96.    At all times herein mentioned, defendants CDE, THE ARMS OF THE

4  EDUCATIONAL SYSTEM and their employees, GHS and its employees and DOE

5  defendants knew or should have known the signs that a child held in a prone restraint or other

6  type of restraint is in physical distress.

7      97.  At all times herein mentioned, CDE, THE ARMS OF THE EDUCATIONAL

8  SYSTEM and their employee knew, or should have known, that there were previously

9  sustained findings of unlawful use of prone restraints on an exceptional needs child at GHS

10  that had resulted in physical injury.

11      98.    At all times herein mentioned, CDE, THE ARMS OF THE EDUCATIONAL

12  SYSTEM and their employees were provided with behavioral emergency reports from GHS,

13  and, on that basis, THE ARMS OF THE EDUCATIONAL SYSTEM and their employees

14  knew or should have known that the restraints being imposed upon disabled children,

15  including MAX and THE PLAINTIFF STUDENTS at  GHS, were frequent in nature and

16  excessive in scope.

17      99.  At all times mentioned herein, CDE, THE ARMS OF THE EDUCATIONAL

18  SYSTEM and their employees and DOE defendants had actual knowledge that prone

19  restraints were being unlawfully used on special needs/disabled students under their

20  jurisdiction at GHS for predictable behavior.

21      100.  At all times mentioned herein, CDE, THE ARMS OF THE EDUCATIONAL

22  SYSTEM and their employees and DOE defendants had actual knowledge that prone

23  restraints were being unlawfully used as substitutes for behavioral intervention plans on

24  special needs/disabled students under their jurisdiction at defendant GHS.

25      101.  At all times mentioned herein, CDE, THE ARMS OF THE EDUCATIONAL

26  SYSTEM and their employees and DOE defendants had actual knowledge that prone

restraints were being unlawfully used against special needs/disabled students under their jurisdiction at defendant GHS in lieu of planned, systematic and safe behavioral interventions.

102.  At all times mentioned herein, CDE, THE ARMS OF THE EDUCATIONAL SYSTEM and their employees and DOE defendants had actual knowledge that prone restraints were being used for longer than necessary on special needs/disabled students under their jurisdiction at defendant GHS.

103.  At all times mentioned herein, CDE, THE ARMS OF THE EDUCATIONAL SYSTEM and their employees and DOE defendants had actual knowledge that prone restraints were used with an amount of force not reasonable or necessary under the circumstances on special needs/disabled students under their jurisdiction at defendant GHS.

104.  Despite having actual knowledge that special needs students were being injured at defendant GHS, defendants CDE, THE ARMS OF THE EDUCATIONAL SYSTEM and their employees and DOE defendants failed to undertake or cause to be undertaken any investigation of, or any action against, GHS or its employees to prevent abuse of disabled children at GHS until after the death of MAX and after MAX and THE PLAINTIFF STUDENTS were repeatedly injured.

105.  At all times herein mentioned, CDE, THE ARMS OF THE EDUCATIONAL SYSTEM and their employees knew or should have known that there were deficiencies in the documentation of the application of restraints upon children at GHS.

106.  At all times herein mentioned, despite documentation provided, as well as the deficiencies of the documentation process, CDE and THE ARMS OF THE EDUCATIONAL SYSTEM made no attempt to review data on a district or SELPA wide level to determine that the disabled students at GHS were being disproportionately injured or restrained.   This would have been necessary to identify trends, excessive interventions and to ensure that staff are properly trained and are following documentation protocol.

107.  Reasonable modifications to rules, policies and practices by CDE, THE ARMS OF THE EDUCATIONAL SYSTEM and its employees were required to implement the oversight mandated by law, and such was absent here.

108.  At all times herein mentioned, CDE, THE ARMS OF THE EDUCATIONAL SYSTEM and its employees, GHS and its employees and DOE defendants knew or should have known that prone restraints should not be used on behaviorally challenged students who have physical and emotional disabilities such as those suffered by MAX and THE PLAINTIFF STUDENTS.

109.  At all times herein mentioned, CDE, THE ARMS OF THE EDUCATIONAL SYSTEM and its employees, and GHS and its employees, and DOE defendants knew or should have known that prone restraints should not be used on behaviorally challenged students who take medications such as those taken by MAX and THE PLAINTIFF STUDENTS because such medications increase the risk of injury and death.

110.  At all times herein mentioned, CDE, THE ARMS OF THE EDUCATIONAL SYSTEM and its employees, GHS and its employees and DOE defendants knew that restraints should not be used on autistic children, including MAX and THE PLAINTIFF STUDENTS, who are often unable to communicate their needs and for whom it is a natural tendency to struggle against restraint.

111.  At all times herein mentioned, CDE, THE ARMS OF THE EDUCATIONAL SYSTEM and its employees, GHS and its employees and DOE defendants knew that, under then-existing California law, restraints could not be imposed on children for behaviors that do not pose a risk of harm to themselves or others, yet such restraints were nevertheless being applied by these defendants despite such knowledge.

112.  At all times herein mentioned, defendants CDE, THE ARMS OF THE EDUCATIONAL SYSTEM and its employees, GHS and its employees and DOE defendants

1    knew that under then-existing California law, restraints cannot be used to address known

2    predictable behaviors which were addressed by a student's behavioral intervention plan.

3        113.   As a result of the failure of CDE, THE ARMS OF THE EDUCATIONAL

4    SYSTEM and its employees, GHS and its employees and DOE defendants to prevent abuse

5    of disabled children, MAX was killed, and THE PLAINTIFF STUDENTS suffered serious

6    physical and emotional injuries, as alleged in various causes of action herein.

7        **STATUTORY DUTIES APPLICABLE TO THE ARMS OF THE EDUCATIONAL**

8        **SYSTEM, ITS EMPLOYEES, GHS AND ITS EMPLOYEES**

9        114.   At all times herein mentioned, GHS, its administrators and staff, as well as THE

10   ARMS OF THE EDUCATIONAL SYSTEM and its employees, had a mandatory duty under

11   California law to ensure that special needs/disabled students in California are placed in a safe

12   environment while the students' educational needs are being met.

13       115.   Under then-existing California law, prone restraints or other types of restraints

14   may not be imposed for predictable or well-known behaviors that do not present a clear and

15   present danger to self or others.

16       116.   Under California law, prone restraints or other types of restraints may not be

17   used, as a substitute for a behavioral intervention plan, on special needs/disabled children.

18       117.   At all times herein mentioned, defendants CDE, THE ARMS OF THE

19   EDUCATIONAL SYSTEM and their employees, their independent contractor GHS, GHS

20   employees and DOE defendants were bound by the provisions of the California Education

21   Code that provided that special needs/disabled children have the right to be free from the use

22   of behavioral restraints of any form imposed as a means of coercion, discipline, convenience

23   or retaliation by staff;  that confirmed that a behavioral restraint may be used "only to control

24   behavior that poses a clear and present danger of serious physical harm to the pupil or others

25   that cannot be immediately prevented by a response that is less restrictive;" and that

26   prohibited use a physical restraint technique that obstructs a pupil's respiratory airway or

1    impairs the pupil's breathing or respiratory capacity, including techniques in which a staff

2    member places pressure on a pupil's back or places his or her body weight against the pupil's

3    torso or back; placing a pupil in a face down position with the pupil's hands held or

4    restrained behind the pupil's back; or using a behavioral restraint for longer than is necessary

5    to contain the behavior, all of which pose a clear and present danger of serious physical harm

6    to the pupil or others.

7        118.    At all times herein mentioned, defendants CDE, THE ARMS OF THE

8    EDUCATIONAL SYSTEM and its employees, GHS and its administrators and DOE

9    defendants had a mandatory duty to conduct an investigation whenever a complaint was

10    received that alleged facts that indicated that a child or group of children may be in

11    immediate physical danger or that the health, safety or welfare of a child or group of children

12    is threatened.

13        119.    In doing the things hereina alleged, CDE, THE ARMS OF THE

14    EDUCATIONAL SYSTEM their employees, their independent contractor GHS, GHS'

15    employees and DOE defendants failed in their mandatory duties under law by, *inter alia*:

16    failing to prevent discrimination against disabled children; failing to adequately document the

17    acts complained of here; failing to adequately and accurately report these acts to the parents

18    of THE PLAINTIFF STUDENTS; failing to provide a supervisorial structure that ensures

19    that students are not injured by improper actions of GHS administrators and staff; failing to

20    provide a supervisorial structure that ensures that injuries to students are quickly identified,

21    investigated and prevented; and failing to provide proper training, oversight and compliance

22    to ensure GHS staff are properly trained and are able to safely supervise disabled children.

23        120.    Under California law, CDE, THE ARMS OF THE EDUCATIONAL SYSTEM,

24    their employees, their independent contractor GHS and GHS' employees had a statutory duty

25    to ensure that staff who came into contact with MAX and THE PLAINTIFF STUDENTS

26    would provide a safe environment free of abuse and neglect.

1    121.  California law has long imposed on school authorities a duty to supervise at all

2    times the conduct of children on school grounds and to enforce those rules and regulations

3    necessary for their protection.  CDE, THE ARMS OF THE EDUCATIONAL SYSTEM, their

4    employees and their independent contractor GHS and GHS' employees, had a duty to use

5    reasonable measures to protect students from foreseeable injury at the hands of persons

6    acting intentionally or negligently.  CDE and THE ARMS OF THE EDUCATIONAL

7    SYSTEM are liable for injuries which result from a failure of its officers, employees and

8    independent contractors to use ordinary care in these respects.

9    122.    THE ARMS OF THE EDUCATIONAL SYSTEM, its employees, its

10    independent contractor GHS, GHS' employees and DOE defendants, by engaging in the

11    aforesaid misconduct, violated their statutory duties owed to MAX and THE PLAINTIFF

12    STUDENTS, including their supervisory duties created under California Education Code

13    sections 44807 and 44808.

14    123.    THE ARMS OF THE EDUCATIONAL SYSTEM, its employees, its

15    independent contractor GHS and DOE defendants have violated their statutory duties to

16    MAX and THE PLAINTIFF STUDENTS, including their supervisory duties under Welfare

17    and Institutions Code section 15630, *et. seq*., and Penal Code Section 11166, *et. seq.*, which

18    required them to report any incident that reasonably appears to be physical abuse to the child

19    protective service agency or to the local law enforcement agency immediately or as soon as

20    practicably possible and to file a written report within two days.  Said defendants also

21    violated their duties under California Penal Code section 11166 which required them to

22    report any knowledge of a child whom the mandated reporter knows or reasonably suspects

23    has been the victim of child abuse or neglect to the agency immediately or as soon as is

24    practically possible by telephone, and the mandated reporter shall prepare and send, fax or

25    electronically transmit a written follow-up report of the incident within 36 hours of receiving

26    the information concerning the incident.  The Behavioral Emergency Reports provided to

1 THE ARMS OF THE EDUCATIONAL SYSTEM and its employees by its independent

2 contractor GHS, as well as inquiries by parents of MAX and THE PLAINTIFF STUDENTS,

3 put THE ARMS OF THE EDUCATIONAL SYSTEM and its employees on notice of the

4 nature and extent of the abuse being inflicted on MAX and THE PLAINTIFF STUDENTS,

5 and gave rise to these mandatory duties to act.

6 124. THE ARMS OF THE EDUCATIONAL SYSTEM, their employees and their

7 independent contractor GHS and its employees have violated their statutory duties to MAX

8 and THE PLAINTIFF STUDENTS, which include numerous violations of the then-

9 controlling California Education Code sections 56521.1 and 56521.2 which, in pertinent part,

10 prohibit the use of any interventions that: 1) cause physical pain; 2) simultaneously immobile

11 all four extremities; 3) apply an amount of force that exceeds that which is reasonable and

12 necessary under the circumstances; or 4) subjects the individual to verbal abuse, ridicule or

13 humiliation, or that can be expected to cause excessive emotional trauma.

14 125. THE ARMS OF THE EDUCATION SYSTEM, it employees and its

15 independent contractor GHS and GHS employees have violated their statutory duty under

16 California Penal Code section 11165.4 which prohibits use of "unlawful corporal punishment

17 or injury" against a child, defined as "any cruel or inhuman corporal punishment or injury

18 resulting in a traumatic condition."

19 126. Defendants McGREW, HOLSTEGE, BENO, WESSINGER, CLAY, TOSTON,

20 ATKINS, SLAVENSKY, FAULKNER, BONNIKSEN, PHILLIPS and FORREST all

21 violated their statutory duties under California Education Code section 260 by failing to enact

22 an adequate policy to ensure that the districts and/or SELPA's by whom they were employed,

23 as hereinabove alleged, provided a learning environment free from discrimination based on

24 the characteristics provided in California Education Code section 220, specifically disability.

25

26

## SUMMARY OF THE CAUSES OF ACTION

127.   As hereinafter alleged, estate of MAX brings causes of action for battery, assault, intentional infliction of emotional distress, false imprisonment, negligence, negligent supervision and negligence *per se* against GHS, MEYERS, KELLER, CHRISTENSEN, NARAN, WOHLWEND, MORGAN, WATSON, CHAMBERS, GALAS in her official capacity, CDE, YOLO, DJUSD, McGREW in his official capacity, CHESSMAN in her official capacity, HOSTEGE in her official capacity, BENO in her official capacity, THURMON in his official  capacity and DOE defendants.

128.  As hereinafter alleged, estate of MAX brings a cause of action for breach of the tortious duty of good faith and fair dealing against GHS, MEYERS, KELLER, CHRISTENSEN, NARAN and DOE defendants.

129.  As hereinafter alleged, estate of MAX brings causes of action for violations of the American with Disabilities Act, Section 504 of the Rehabilitation Act, the California Education Code §§ 200, 201, 220 and 260, *et seq*,, California Civil Code Section 51(b) and 51.7, and California Civil Code Section 52.1 against CDE, YOLO, DJUSD, GHS and DOE defendants.

130.  As hereinafter alleged, estate of MAX brings causes of action for strict liability and negligence against CHAPMAN, HWC and DOE defendants.

131.   As hereinafter alleged, estate of MAX brings various causes of action for violation of 42 US 1983 against McGREW, CHESSMAN, GALAS, McGREW, HOLSTEGE, BENO, THURMOND and DOE defendants in their individual capacities.

132.   As hereinafter alleged, D.Z, a minor, by and through his guardian ad litem KINSER, brings causes of action for violations of the Americans with Disabilities Act, Section 504 of the Rehabilitation Act, battery, assault, intentional infliction of emotional distress, false imprisonment, negligence, negligent supervision and negligence *per se* against GHS, MEYERS, KELLER, CHRISTENSEN, NARAN. CHAMBERS, MATLOCK,

1  McKOY, OEHRING, GODBOUT, TRIGUERO in her official capacity, MAGEE in her

2  official capacity, WESSINGER in her official capacity, FCUSD, FCSELPA  and DOE

3  defendants.

4      133.  As hereinafter alleged, D.Z. brings a cause of action for tortious breach of the

5  duty of good faith and fair dealing against GHS, MEYERS, KELLER, CHRISTENSEN,

6  NARAN and DOE defendants.

7      134. As hereinafter alleged,  D.Z,, by and through his guardian ad litem Laura Kinser

8  (hereinafter "KINSER"), brings causes of action for violations of the Americans with

9  Disabilities Act, Section 504 of the Rehabilitation Act, the California Education Code §§

10  200, 201, 220 and 260, *et seq*., against FCUSD, FCSELPA, GHS and DOE defendants.

11     135.  As hereinafter alleged, D.Z., by and through his guardian ad litem KINSER,

12  brings causes of action for strict liability and negligence against CHAPMAN, HWC and DOE

13  defendants.

14     136.  As hereinafter alleged, D.Z., by and through his guardian ad litem KINSER,

15  brings various causes of action for violations of 42 US 1983 against GHS, MEYERS,

16  KELLER, CHRISTENSEN, NARAN, CHAMBERS, MATLOCK, McKOY, OEHRING,

17  GODBOUT, NARAN, TRIGUERO acting in her individual capacity, MAGEE acting in her

18  individual capacity, WESSINGER acting in her individual capacity, TONY THURMOND,

19  acting in his individual capacity, and DOE defendants.

20     137.  As hereinafter alleged, S.D., a minor, by and through his guardian ad litem

21  DAVIS, brings causes of action for battery, assault, intentional infliction of emotional

22  distress, false imprisonment, negligence, negligent supervision and negligence *per se* against

23  GHS, MEYERS, KELLER, CHRISTENSEN, NARAN, WOHLWEND, GATEWOOD,

24  EDCOE, EDCSELPA, McDONALD in her official capacity, WRIGHT in her official

25  capacity, CLAY in her official capacity, TOSTON in his official capacity, ATKINS in his or

26  her official capacity, THURMOND in his official capacity and DOE defendants.

138.   As hereinafter alleged, S.D. brings a cause of action for breach of the tortious duty of good faith and fair dealing against GHS, MEYERS, KELLER, CHRISTENSEN, NARAN and DOE defendants.

139.   As hereinafter alleged, S.D., a minor, by and through his guardian ad litem DAVIS, brings causes of action for violations of the Americans with Disabilities Act, Section 504 of the Rehabilitation Act, the California Education Code §§ 200, 201, 220, and 260, *et seq.*, California Civil Code Section 51(b) and 51.7 and California Civil Code Section 52.1 against EDCOE, EDCSELPA, GHS and DOE defendants.

140.   As hereinafter alleged, S.D., by and through his guardian ad litem DAVIS, brings causes of action for strict liability and negligence against CHAPMAN, HWC and DOE defendants.

141.   As hereinafter alleged, S.D., by and through his guardian ad litem DAVIS, brings various causes of action for violations of 42 US 1983 against GHS, MEYERS, KELLER, CHRISTENSEN,  NARAN, WOHLWEND, GATEWOOD, McDONALD in her individual capacity, WRIGHT in her individual capacity, CLAY in her individual capacity, TOSTON in his individual capacity, ATKINS in his or her individual capacity, THURMOND in his individual capacity and DOE defendants.

142.   As hereinafter alleged, J.P., a minor, by and through his guardian ad litem CALER, brings causes of action for battery, assault, intentional infliction of emotional distress, false imprisonment, negligence, negligent supervision and negligence *per se* against GHS, MEYERS, KELLER, CHRISTENSEN, NARAN, SMITH, ALLEN, MATLOCK and DOE defendants.

143.   As hereinafter alleged, J.P. brings a cause of action for tortious breach of the duty of good faith and fair dealing against GHS, MEYERS, KELLER, CHRISTENSEN, NARAN and DOE defendants.

144.  As hereinafter alleged, J.P., by and through his guardian ad litem CALER, brings causes of action for strict liability and negligence against CHAPMAN, HWC and DOE defendants.

145.  As hereinafter alleged, J.P., by and through his guardian ad litem CALER, brings various causes of action for violations of 42 US 1983 against GHS, MEYERS, KELLER, CHRISTENSEN, NARAN, SLAVENSKY in her individual capacity, FAULKNER in her individual capacity, THURMOND in his individual capacity and DOE defendants.

146.  As hereinafter alleged, H.K., a minor, by and through his guardian ad litem MULLER, brings causes of action for battery, assault, intentional infliction of emotional distress, false imprisonment, negligence, negligent supervision and negligence *per se* against GHS, MEYERS, KELLER, CHRISTENSEN, NARAN, BONNIKSEN in his official capacity, WRIGHT in her official capacity, CLAY in her official capacity and DOE defendants.

147.  As hereinafter alleged, H.K. brings a cause of action for tortious breach of the duty of good faith and fair dealing against GHS, MEYERS, KELLER, CHRISTENSEN, NARAN and DOE defendants.

148.  As hereinafter alleged, H.K., a minor, by and through his guardian ad litem MULLER, brings causes of action for violations of the Americans with Disabilities Act, Section 504 of the Rehabilitation Act, the California Education Code §§ 200, 201, 220 and 260, *et seq*., against GHS, PUSD and EDCOESELPA.

149.  As hereinafter alleged, H.K., by and through his guardian ad litem MULLER, brings various causes of action for violations of 42 US 1983 against GHS, MEYERS, KELLER, CHRISTENSEN, NARAN, BONNIKSEN in his individual capacity, WRIGHT in her individual capacity, CLAY in her individual capacity, TOSTON in his individual capacity, THURMOND in his individual capacity and DOE defendants.

1    150.  As hereinafter alleged, H.K., by and through his guardian ad litem MULLER,

2    brings causes of action for strict liability and negligence against CHAPMAN, HWC and DOE

3    defendants.

4    151.  As hereinafter alleged, M.S., by and through his guardian ad litem STARK,

5    brings causes of action for battery, assault, intentional infliction of emotional distress, false

6    imprisonment,  negligence, negligent supervision and negligence *per se* against GHS,

7    MEYERS, KELLER, CHRISTENSEN, NARAN, CDE, EGUSD, EGUSDSELPA, SCOE,

8    PHILLIPS  in his official capacity, DELGADO in her official capacity, THURMOND in his

9    official capacity and DOE defendants.

10    152.  As hereinafter alleged, M.S. brings a cause of action for tortious breach of the

11    duty of good faith and fair dealing against GHS, MEYERS, KELLER, CHRISTENSEN,

12    NARAN and DOE defendants.

13    153.  As hereinafter alleged, M.S., a minor, by and through his guardian ad litem

14    STARK, brings causes of action for violations of the Americans with Disabilities Act,

15    Section 504 of the Rehabilitation Act, the California Education Code §§ 200, 201, 220 and

16    260, *et seq*., California Civil Code, Section 51(b) and 51.7, and California Civil Code,

17    Section 52.1, against GHS, EGUSD, EGUSDSELPA, SCOE, CDE and DOE defendants.

18    154.  As hereinafter alleged, M.S., by and through his guardian ad litem STARK,

19    brings causes of action for strict liability and negligence against CHAPMAN, HWC and DOE

20    defendants.

21    155.  As hereinafter alleged, M.S., by and through his guardian ad litem STARK,

22    brings various causes of action for violations of 42 US 1983 against GHS, MEYERS,

23    KELLER, CHRISTENSEN, NARAN, PHILLIPS in her individual capacity, DELGADO in

24    her individual capacity, THURMOND in his individual capacity and DOE defendants.

25    156.  As hereinafter alleged, AUSTIN brings causes of action for battery, assault,

26    intentional infliction of emotional distress, false imprisonment, negligence, negligent

38

1   supervision and negligence *per se* against GHS, MEYERS, KELLER, NARAN, RUSD,

2   FORREST in her official capacity, CLAY in her official capacity, THURMOND in his

3   official capacity and DOE defendants.

4       157.  As hereinafter alleged, AUSTIN brings causes of action for violations of the

5   Americans with Disabilities Act, Section 504 of the Rehabilitation Act, the California

6   Education Code §§ 200, 201, 220 and 260, *et seq*., California Civil Code Section 51(b) and

7   51.7 and California Civil Code Section 52.1 against GHS, RUSD and DOE defendants.

8       158.  As hereinafter alleged, AUSTIN brings a cause of action for tortious breach of

9   the covenant of good faith and fair dealing against GHS, MEYERS, KELLER,

10  CHRISTENSEN, NARAN and DOE defendants.

11      159.  As hereinafter alleged, AUSTIN brings various causes of action for violations of

12  42 US 1983 against GHS, MEYERS, KELLER, CHRISTENSEN, NARAN, FORREST in

13  her individual capacity, THURMOND in his individual capacity and DOE defendants.

14      160.  As hereinafter alleged, AUSTIN brings causes of action for strict liability and

15  negligence against CHAPMAN, HWC and DOE defendants.

16      161.  As hereinafter alleged, E.D., by and through his guardians ad litem

17  DARROUGH and COUGHLIN brings causes of action for battery, assault, intentional

18  infliction of emotional distress, false imprisonment, negligence, negligent supervision and

19  negligence *per se* against GHS, MEYERS, KELLER, NARAN and DOE defendants.

20      162.  As hereinafter alleged, E.D. brings a cause of action for tortious breach of the

21  covenant of good faith and fair dealing against GHS, MEYERS, KELLER, CHRISTENSEN,

22  NARAN and DOE defendants.

23      163.  As hereinafter alleged, E.D., by and through his guardians ad litem

24  DARROUGH and COUGHLIN, brings various causes of action for violations of 42 US 1983

25  against GHS, MEYERS, KELLER, CHRISTENSEN, NARAN, THURMOND, acting in his

26  individual and official capacity, and DOE defendants.

164.   As hereinafter alleged, E.D., by and through his guardians ad litem DARROUGH and COUGHLIN, brings causes of action for strict liability and negligence against CHAPMAN, HWC and DOE defendants.

165.   As hereinafter alleged, LUIS brings causes of action for battery, assault, intentional infliction of emotional distress, false imprisonment, negligence, negligent supervision and negligence *per se* against GHS, MEYERS, KELLER, NARAN and DOE defendants.

166.   As hereinafter alleged, LUIS brings a cause of action for tortious breach of the covenant of good faith and fair dealing against GHS, MEYERS, KELLER, CHRISTENSEN, NARAN and DOE defendants.

167.   As hereinafter alleged, LUIS brings various causes of action for violations of 42 US 1983 against GHS, MEYERS, KELLER, CHRISTENSEN, NARAN, THURMOND, acting in his individual and official capacity, and DOE defendants.

168.   As hereinafter alleged, LUIS brings causes of action for strict liability and negligence against CHAPMAN, HWC and DOE defendants.

169.   As hereinafter alleged, LANGLEY and BENSON bring various causes of action for 42 USC 1983 (wrongful death) against GHS, MEYERS, KELLER, CHRISTENSEN, NARAN, WOHLWEND, MORGAN, WATSON, CHAMBERS, GALAS in her individual capacity, THURMOND in his individual capacity, McGREW in his individual capacity, CHESSMAN in her individual capacity, HOLSTEGE in her individual capacity, BENO in her individual capacity and DOE defendants.

170.   As hereinafter alleged, LANGLEY and BENSON also bring a cause of action for wrongful death (negligence) against GHS, MEYERS, KELLER, CHRISTENSEN, NARAN, CDE, THURMOND in his official capacity, YOLO, HOSTEGE in her official capacity, BENO in her official capacity, DJUSD, McGREW in his official capacity, CHESSMAN in her official capacity and GALAS in her official capacity.  LANGLEY and

1    BENSON  have complied with the Tort Claims filing requirement against CDE, YOLO and

2    DJUSD.

3         171.   As hereinafter alleged, LANGLEY and BENSON bring causes of action for

4    tortious breach of the covenant of good faith and fair dealing and fraud against GHS,

5    MEYERS, KELLER, CHRISTENSEN, NARAN and DOE defendants.

6         172.   As hereinafter alleged, KINSER brings causes of action in her individual

7    capacity for tortious breach of the covenant of good faith and fair dealing and fraud against

8    GHS, MEYERS, KELLER, CHRISTENSEN, CHAMBERS, NARAN and DOE defendants.

9         173.  As hereinafter alleged, DAVIS brings causes of action in his individual capacity

10    for tortious breach of the covenant of good faith and fair dealing and fraud against GHS,

11    MEYERS, KELLER, CHRISTENSEN, NARAN and DOE defendants.

12         174.   As hereinafter alleged, CALER brings causes of action in her individual

13    capacity for tortious breach of the covenant of good faith and fair dealing and fraud against

14    GHS, MEYERS, KELLER, CHRISTENSEN, NARAN and DOE defendants.

15         175.   As hereinafter alleged, MULLER brings causes of action in her individual

16    capacity for tortious breach of the covenant of good faith and fair dealing and fraud  against

17    GHS, MEYERS, KELLER, CHRISTENSEN, NARAN and DOE defendants.

18         176.   As hereinafter alleged, STARK brings causes of action in her individual

19    capacity for tortious breach of the covenant of good faith and fair dealing and fraud against

20    GHS, MEYERS, KELLER, CHRISTENSEN, NARAN and DOE defendants.

21         177.   THE PETERSENS bring causes of action in their individual capacities for

22    tortious breach of the covenant of good faith and fair dealing and fraud against GHS,

23    MEYERS, KELLER, CHRISTENSEN, NARAN and DOE defendants.

24         178.   DARROUGH and COUGHLIN bring causes of action in their individual

25    capacities for tortious breach of the covenant of good faith and fair dealing and fraud against

26    GHS, MEYERS, KELLER, CHRISTENSEN, NARAN and DOE defendants.

**FACTUAL ALLEGATIONS REGARDING MAX**

179.  MAX was placed at GHS in 2018 by YOLO, HOLSTEGE, BENO, DJUSD, GALAS, McGREW, CHESSMAN, THURMOND and DOE defendants.

180.  At all times herein mentioned, defendants CDE, YOLO, HOLSTEGE, BENO, DJUSD, GALAS, McGREW, CHESSMAN, THURMOND, YOLO, GHS, MEYERS, KELLER, CHRISTENSEN, NARAN, WOHLWEND, MORGAN, WATSON, THOMAS, CHAMBERS and DOE defendants knew from their own records that MAX had the aforesaid physical/psychological disabilities.

181.  At all times herein mentioned, defendants CDE, YOLO, HOLSTEGE, BENO, DJUSD, GALAS, McGREW, CHESSMAN, THURMOND, GHS, MEYERS, KELLER, CHRISTENSEN, NARAN, WOHLWEND, MORGAN, WATSON, THOMAS, CHAMBERS and DOE defendants knew that MAX was taking daily pain medication and Clonidine.

182.  At all times herein mentioned, defendants CDE, YOLO, HOLSTEGE, BENO, DJUSD, GALAS, McGREW, CHESSMAN, THURMOND, GHS, MEYERS, KELLER, CHRISTENSEN, NARAN, WOHLWEND, MORGAN, WATSON, THOMAS, CHAMBERS and DOE defendants knew that MAX had a history of behavioral challenges that doctors had linked to his autism.

183.  At all times herein mentioned, MAX was a special needs/disabled student, who was found by defendants CDE, YOLO, HOLSTEGE, BENO, DJUSD, McGREW, CHESSMAN, THURMOND and GALAS to have special needs based on both his autism and his emotional disturbance.

184.  At all times herein mentioned, defendants CDE, YOLO, HOLSTEGE, BENO, DJUSD, GALAS, McGREW, CHESSMAN, THURMOND, GHS, MEYERS, KELLER, CHRISTENSEN, NARAN, WOHLWEND and DOE defendants were aware that MAX, before attending GHS, had  been supported successfully in his individual disability and

42

1  special needs, both educationally and behaviorally, including prevention of any acts of

2  spitting, by being provided with one-on-one paraeducator support.

3       185.   At all times herein mentioned, MAX's parent, plaintiff Stacia LANGLEY,

4  repeatedly requested of defendants CDE, YOLO, HOLSTEGE, BENO, DJUSD, GALAS,

5  McGREW, CHESSMAN, THURMOND, GHS, MEYERS, KELLER, CHRISTENSEN,

6  NARAN and WOHLWEND that one-on-one paraeducator support for MAX be continued to

7  help him with his behavior and to increase his learning potential.\

8       186.   At all times herein mentioned, defendants CDE, YOLO, HOLSTEGE, BENO,

9  DJUSD, GALAS, McGREW, CHESSMAN, THURMOND, GHS, MEYERS, KELLER,

10 CHRISTENSEN, NARAN, WOHLWEND and DOE defendants repeatedly refused to

11 provide MAX with paraeducator support without regard to his individualized need, but only

12 for the sake of said defendants' own convenience and financial concerns.

13      187.   At all times herein mentioned, defendants CDE, YOLO, HOLSTEGE, BENO,

14 DJUSD, GALAS, McGREW, CHESSMAN, THURMOND, GHS, MEYERS, KELLER,

15 CHRISTENSEN, NARAN, WOHLWEND and DOE defendants were put on notice by

16 MAX's mother that MAX became anxious and overwhelmed, unable to perform well,

17 behavioral or educationally, without one-on-one support and that Max didn't know how to

18 ask for help when he needed it.

19      188.   At all times herein mentioned, defendants CDE, YOLO, HOLSTEGE, BENO,

20 DJUSD, GALAS, McGREW, CHESSMAN, THURMOND, GHS, MEYERS, KELLER,

21 CHRISTENSEN, NARAN, WOHLWEND and DOE defendants placed MAX at GHS where

22 they knew or should have known that MAX's needs would not be met.

23      189.   At all times herein mentioned, even after they were informed that MAX was

24 having behavioral difficulty that was directly associated with his physical disabilities and that

25 MAX was being subjected to prone restraints at GHS, defendants CDE, YOLO, HOLSTEGE,

26 BENO, DJUSD, GALAS, McGREW, CHESSMAN, THURMOND, GHS, MEYERS,

KELLER, CHRISTENSEN, NARAN, WOHLWEND and DOE defendants did nothing to alleviate the conditions that they, in effect, had created when they placed him in a school where they specifically knew his needs would not be met.

190.  At all times herein mentioned, defendants CDE, YOLO, HOLSTEGE, BENO, DJUSD, GALAS, McGREW, CHESSMAN, THURMOND, GHS, WOHLWEND, MEYERS, KELLER, CHRISTENSEN, NARAN, WOHLWEND and DOE defendants provided MAX with a Behavioral Support Plan, including positive behavioral interventions, strategies and supports, which were to be used as a proactive action plan to address MAX's behaviors that might impede learning.

191.  At all times herein mentioned, defendants CDE, YOLO, HOLSTEGE, BENO, DJUSD, GALAS, McGREW, CHESSMAN, THURMOND, GHS, MEYERS, KELLER, CHRISTENSEN, NARAN, WOHLWEND, MORGAN, WATSON, THOMAS and DOE defendants knew or should have known, both from the medical records in their possession and from statements provided by MAX's mother about what MAX's medical doctors had relayed to her, that MAX's medical doctors opined that MAX's medical conditions were the root cause of his behavioral challenges.

192.  At all times herein mentioned, the contract between LANGLEY and defendants CDE, YOLO, HOLSTEGE, BENO, DJUSD, GHS and DOE defendants for MAX's enrollment at GHS specifically disclosed that MAX had a number of medical issues, including autism, a fused neck and a brain tumor.

193.  On or about June 13, 2018, an IEP team meeting was held, which was attended by: MAX's mother LANGLEY; defendant GHS, by and through defendants CHRISTENSEN and WOHLWEND; and GALAS, acting on behalf of  DJUSD, McGREW, CHESSMAN, THURMOND, YOLO, HOLSTEGE, BENO, CDE and THURMOND.

1    194.  During the IEP team meeting of June 13, 2018, LANGLEY discussed MAX's

2    medical conditions, including his recently diagnosed brain tumor, for which he was seeing a

3    neurosurgeon at UC Davis Medical Center.

4    195.  During the IEP team meeting of June 13, 2018, LANGLEY discussed that MAX

5    recently had become very erratic and violent without warning and that the only thing that

6    kept him calm was to have someone next to him.

7    196.  During the IEP team meeting of June 13, 2018, defendants CDE, YOLO,

8    HOLSTEGE, BENO, DJUSD, McGREW, CHESSMAN and THURMOND, by and through

9    GALAS, GHS, CHRISTENSEN and DOE defendants, specifically questioned LANGLEY as

10    to whether MAX's brain tumor was causing his erratic behavior, to which LANGLEY

11    indicated that she did not know.

12    197.  At all times herein mentioned, defendants CDE, YOLO, HOLSTEGE, BENO,

13    DJUSD, GALAS, McGREW, CHESSMAN, THURMOND, GHS, MEYERS, KELLER,

14    CHRISTENSEN,    NARAN,    WOHLWEND,    MORGAN,    WATSON,    THOMAS,

15    CHAMBERS and DOE defendants caused to be conducted and/or relied on a functional

16    analysis assessment, which they knew, or should have known, did not take into consideration

17    how the medical conditions suffered by MAX were the root cause of MAX's behavioral

18    challenges.

19    198.  At all times herein mentioned, defendants CDE, YOLO, HOLSTEGE, BENO,

20    DJUSD, GALAS, McGREW, CHESSMAN, THURMOND, GHS, MEYERS, KELLER,

21    CHRISTENSEN,    NARAN,    WOHLWEND,    MORGAN,    WATSON,    THOMAS,

22    CHAMBERS and DOE defendants knew that spitting was a predictable behavior in which

23    MAX frequently engaged while in the classroom, which would otherwise have been

24    prevented if he had been given a paraeducator.

25    199.  At all times herein mentioned, defendants CDE, YOLO, HOLSTEGE, BENO,

26    DJUSD, GALAS, GHS, McGREW, CHESSMAN, THURMOND, MEYERS, KELLER,

1   CHRISTENSEN, NARAN, WOHLWEND, MORGAN, WATSON, THOMAS,

2   CHAMBERS and DOE defendants knew or should have known that MAX did best, and did

3   not spit, when he was given a lot of praise and positive interventions.

4       200.   During the IEP team meeting of June 13, 2018, LANGLEY specifically

5   requested of defendants CDE, YOLO, HOLSTEGE, BENO, DJUSD, GHS, GALAS,

6   McGREW, CHESSMAN, THURMOND, MEYERS, KELLER, CHRISTENSEN, NARAN,

7   WOHLWEND and DOE defendants that MAX be given a one-on-one paraeducator, as he

8   had been given in the past.

9       201.   During the IEP team meeting of June 13, 2018, defendants CDE, YOLO,

10  HOLSTEGE, BENO, DJUSD, GALAS, McGREW, CHESSMAN, THURMOND, GHS,

11  MEYERS, KELLER, CHRISTENSEN, NARAN, WOHLWEND and DOE defendants

12  represented to LANGLEY that a one-on-one paraeducator was not necessary at GHS because

13  GHS had an "intensive level of service" onsite and because of the philosophy and system of

14  behavioral support implemented onsite that provided support in "other ways."

15      202.   During the IEP team meeting of June 13, 2018, defendants CDE, YOLO,

16  HOLSTEGE, BENO, DJUSD, GALAS, McGREW, CHESSMAN, THURMOND, GHS,

17  MEYERS, KELLER, CHRISTENSEN, NARAN, WOHLWEND and DOE defendants

18  represented to LANGLEY that MAX could be seated next to another child who needed

19  additional assistance.

20      203.   During the IEP team meeting of June 13, 2018, defendants CDE, YOLO,

21  HOLSTEGE, BENO, DJUSD, GALAS, McGREW, CHESSMAN, THURMOND, GHS,

22  MEYERS, KELLER, CHRISTENSEN, NARAN, WOHLWEND and DOE defendants

23  represented to LANGLEY that two paraeducators would be "in the class" and that it was

24  likely that MAX would be seated next to the regular teacher or one of the paraeducators.

25      204.   During the IEP team meeting of June 13, 2018, defendants CDE, YOLO,

26  HOLSTEGE, BENO, DJUSD, GALAS, McGREW, CHESSMAN, THURMOND, GHS,

1  MEYERS, KELLER, CHRISTENSEN, NARAN, WOHLWEND and DOE defendants made

2  representations to LANGLEY that led LANGLEY to believe that WOHLWEND and the two

3  paraeducators would work with MAX on his behavioral issues by talking to him, by

4  reviewing coping skills and by using visual supports.

5       205.  During the IEP team meeting of June 13, 2018, LANGLEY explained to

6  defendants CDE, YOLO, HOLSTEGE, BENO, DJUSD, GALAS, GHS, McGREW,

7  CHESSMAN,  THURMOND,  MEYERS,  KELLER,  CHRISTENSEN,  NARAN,

8  WOHLWEND and DOE defendants that Max's medical conditions rendered him incapable

9  of asking for help and that he had difficulty expressing his feelings.

10       206.  During the IEP team meeting of June 13, 2018, LANGLEY repeated his

11  requests to defendants CDE, YOLO, HOLSTEGE, BENO, DJUSD, GALAS, McGREW,

12  CHESSMAN, THURMOND, GHS, MEYERS, KELLER, CHRISTENSEN, NARAN,

13  WOHLWEND and DOE DEFENDANTS for a one-on-one paraeducator to alleviate MAX's

14  behavioral problems, including spitting, but his requests were denied.

15       207.  At all times herein mentioned, defendants CDE, YOLO, HOLSTEGE, BENO,

16  DJUSD, GALAS, McGREW, CHESSMAN, THURMOND, GHS, MEYERS, KELLER,

17  CHRISTENSEN, NARAN, WOHLWEND and DOE defendants caused to be conducted

18  and/or relied upon a Functional Analysis Assessment, knowing that it did not take into

19  consideration how the known medical conditions suffered by minor decedent MAX were the

20  root cause of his behaviors, including spitting.

21       208.  Within the first ten calendar days of minor decedent MAX's enrollment at

22  defendant GHS, defendants GHS, MEYERS,  KELLER, CHRISTENSEN, NARAN,

23  WOHLWEND and other GHS staff, whose names are unknown to plaintiffs at the present

24  time, placed MAX in restraints three times, with the implied consent and ratification of

25  defendants CDE, YOLO, HOLSTEGE, BENO, DJUSD, McGREW, CHESSMAN,

26  THURMOND, GALAS and DOE defendants.

1    209.    Defendants GHS, MEYERS, KELLER, CHRISTENSEN, NARAN

2    WOHLWEND and DOE defendants sent Behavioral Emergency Reports to defendants CDE,

3    YOLO, HOLSTEGE, BENO, DJUSD, McGREW, CHESSMAN, THURMOND and

4    GALAS, for each of said three holds.  Despite knowing that MAX was a disabled, physically

5    compromised child, who frequently was being physically restrained, defendants CDE,

6    YOLO, HOLSTEGE, BENO, DJUSD, McGREW, CHESSMAN, THURMOND and GALAS

7    placed the Behavioral Emergency Reports in MAX's file without any further inquiry or

8    action.

9    210.    Between on or about August, 2018, to October 5, 2018, defendants CDE,

10    YOLO, HOLSTEGE, BENO, DJUSD, GALAS, CHESSMAN, THURMOND, McGREW,

11    GHS, MEYERS, KELLER, CHRISTENSEN, NARAN, WOHLWEND and DOE defendants

12    documented that MAX spit 34 times, indicating that MAX's behavior with spitting was both

13    known and predictable.

14    211.    On or about October 11, 2018, MAX was placed in a prone restraint by

15    defendant WOHLWEND, with the implied consent and ratification of defendants CDE,

16    YOLO, HOLSTEGE, BENO, DJUSD, GALAS, McGREW, CHESSMAN, THURMOND,

17    GHS, MEYERS, KELLER, CHRISTENSEN, NARAN and DOE defendants.

18    212.  On or about October 12, 2018, defendants CDE, YOLO, HOLSTEGE, BENO,

19    DJUSD, GALAS, McGREW, CHESSMAN, THURMOND, GHS, MEYERS, KELLER,

20    CHRISTENSEN, NARAN, WOHLWEND and DOE defendants conducted an

21    Interim/Annual IEP meeting, wherein supporting reports submitted at that meeting

22    demonstrated that when MAX worked one-on-one with staff, he did very well, but when he

23    was not being watched or provided with one-on-one support, MAX became non-compliant

24    and engaged in negative "attention seeking" behaviors, even to the point of sometimes

25    becoming physically aggressive.

1      213.  On or about October 12, 2018, the said Interim/Annual IEP included a note

2    which indicated that MAX was in pain.

3      214.  On or about October 12, 2018, defendants CDE, YOLO, HOLSTEGE, BENO,

4    DJUSD, GALAS, McGREW, CHESSMAN, THURMOND, GHS, MEYERS, KELLER,

5    CHRISTENSEN, NARAN, WOHLWEND and DOE defendants prepared a Behavioral

6    Intervention Plan that acknowledged that MAX needed to remain close to staff in order to

7    control his spitting.

8      215.  Contrary to what MAX's mother initially had been told in June at the IEP about

9    MAX being given "intensive" staff support, and without the knowledge or consent of

10   LANGLEY and BENSON, on or before October 12, 2018, defendants GHS, MEYERS,

11   KELLER, CHRISTENSEN, NARAN, WOHLWEND, MORGAN, WATSON, THOMAS,

12   CHAMBERS and DOE defendants, with the implied consent and ratification of defendants

13   CDE, YOLO, HOLSTEGE, BENO, DJUSD, McGREW, CHESSMAN, THURMOND and

14   GALAS, had isolated MAX, leaving him alone for long periods of time, facing the wall

15   because of his behaviors.

16     216.  By isolating MAX, defendants CDE, YOLO, HOLSTEGE, BENO, DJUSD,

17   GALAS, McGREW, CHESSMAN, THURMOND, GHS, MEYERS, KELLER,

18   CHRISTENSEN, NARAN, WOHLWEND and DOE defendants contributed to MAX's

19   acting-out by failing to give MAX the high level of support that his special needs/disability

20   required, as that need for a high level of support was previously documented by defendants

21   CDE, YOLO, HOLSTEGE, BENO, DJUSD, GALAS, McGREW, CHESSMAN,

22   THURMOND, GHS, MEYERS, KELLER, CHRISTENSEN, NARAN, WOHLWEND and

23   DOE defendants.

24     217.  On or about October 12, 2018, defendants CDE, YOLO, HOLSTEGE, BENO,

25   DJUSD, GALAS, McGREW, CHESSMAN, THURMOND, GHS, MEYERS, KELLER,

26   CHRISTENSEN, NARAN, WOHLWEND and DOE defendants prepared a Behavioral

1  Intervention Plan (BIP) that indicated that MAX should ask for help from the staff when

2  attempting to implement appropriate behaviors, even though said defendants knew that

3  MAX's autism prevented MAX from expressing himself.

4      218.  On or about October 12, 2018, defendants CDE, YOLO, HOLSTEGE, BENO,

5  DJUSD, GALAS, GHS, MEYERS, KELLER, CHRISTENSEN, NARAN, WOHLWEND

6  and DOE defendants prepared a Behavioral Intervention Plan (BIP) that set forth a strategy

7  for responding to MAX flinging spit, but nowhere in the BIP did said defendants indicate that

8  any type of physical restraint, other than "hand holding," would be used on MAX to control

9  his spitting.

10      219.  On or about October 12, 2018, defendants, CDE, YOLO, HOLSTEGE, BENO,

11  DJUSD, GALAS, McGREW, CHESSMAN, THURMOND, GHS, MEYERS, KELLER,

12  CHRISTENSEN, NARAN, WOHLWEND and DOE defendants introduced a Behavior

13  Emergency Plan (BEP) for MAX that states that "Emergency Interventions may only be used

14  to prevent unpredictable, spontaneous behavior which presents a clear and present danger of

15  serious physical harm…."

16      220.  On or about October 12, 2018, GHS and defendants CDE, YOLO, HOLSTEGE,

17  BENO, DJUSD, GALAS, McGREW, CHESSMAN, THURMOND, GHS, MEYERS,

18  KELLER, CHRISTENSEN, NARAN, WOHLWEND and DOE defendants had LANGLEY

19  sign a "consent" to use behavioral interventions on MAX, without obtaining informed

20  consent to use a prone restraint on MAX by failing to inform LANGLEY and BENSON of

21  the use of that type of restraint, nor how long it may be used, and there is nothing that gave

22  LANGLEY knowledge of the known dangers of the restraint or that with MAX's risk factors,

23  use of a prone restraint would pose a very serious risk of death to MAX.

24      221.  The aforementioned BEP that was prepared on or about October 12, 2018, in

25  referencing restraints taught to defendants CDE, YOLO, HOLSTEGE, BENO, DJUSD,

26  GALAS, McGREW, CHESSMAN, THURMOND, GHS, MEYERS, KELLER,

1    CHRISTENSEN, NARAN, WOHLWEND, MORGAN, WATSON, THOMAS,

2    CHAMBERS and DOE defendants called restraints "therapeutic" physical intervention

3    techniques, without providing any description of the techniques.

4        222.  Between the time of MAX's enrollment at GHS in June, 2018, and his death in

5    November, 2018, MAX's behavior of spitting was known to defendants CDE, YOLO,

6    HOLSTEGE, BENO, DJUSD, GALAS, McGREW, CHESSMAN, THURMOND, GHS,

7    MEYERS, KELLER, CHRISTENSEN, NARAN, WOHLWEND, MORGAN, WATSON,

8    THOMAS, CHAMBERS and DOE defendants.

9        223.  Between MAX's enrollment at GHS in June, 2018 and his death in November,

10    2018, MAX's behavior of spitting did not pose a clear and present danger of serious physical

11    harm to MAX or to others.

12        224.  Between MAX's enrollment at GHS in June, 2018, and his death in November,

13    2018, MAX's behavior of spitting could have been controlled by a less restrictive response,

14    including closer staff supervision and one-to-one staff support.

15        225.  On or before October 23, 2018, defendants CDE, YOLO, HOLSTEGE, BENO,

16    DJUSD, GALAS, McGREW, CHESSMAN, THURMOND, GHS, MEYERS, KELLER,

17    CHRISTENSEN, NARAN, WOHLWEND, MORGAN, WATSON, THOMAS,

18    CHAMBERS and DOE defendants knew that MAX had screws or rods and a plate in his

19    neck, had low muscle tone, could not express his feelings and was "easily fatigued with use

20    of gross motor skills," which includes the use of his (MAX's) arms.

21        226.  On or about October 23, 2018, with the implied consent and ratification of

22    defendants CDE, YOLO, HOLSTEGE, BENO, DJUSD, McGREW, CHESSMAN,

23    THURMOND and GALAS, MAX was placed in a standing restraint by defendants GHS,

24    MEYERS, KELLER, CHRISTENSEN, NARAN, WOHLWEND, MORGAN, WATSON,

25    THOMAS, CHAMBERS and DOE defendants, for pushing into defendant WOHLWEND

26    after MAX had stopped cleaning his yoga mat.

1         227.  On or about October 31, 2018, defendants CDE, YOLO, HOLSTEGE, BENO,

2    DJUSD, McGREW, GALAS, CHESSMAN, THURMOND, GHS, MEYERS, KELLER,

3    CHRISTENSEN, NARAN, WOHLWEND and DOE defendants gave MAX a "D" in

4    physical education for refusing to participate in yoga.

5         228.  On or about October 31, 2018, defendants GHS, MEYERS, KELLER,

6    CHRISTENSEN, NARAN, WOHLWEND and DOE defendants, with the implied consent

7    and ratification of defendants CDE, YOLO, HOLSTEGE, BENO, DJUSD, McGREW,

8    CHESSMAN, THURMOND and GALAS, placed MAX in a prone restraint, as taught to

9    each of said defendants by defendants HWC and CHAPMAN, for spitting.  Said restraint

10    lasted at least 20 minutes, and as a result of said prone restraint, MAX was seen by the school

11    "nurse" for injuries that are unknown to LANGLEY and BENSON at the present time.

12         229.  On or about November 2, 2018, defendants GHS, MEYERS, KELLER,

13    CHRISTENSEN, NARAN, WOHLWEND and DOE defendants, with the implied consent

14    and ratification of defendants CDE, YOLO, HOLSTEGE, BENO, DJUSD, McGREW,

15    CHESSMAN, THURMOND and GALAS, placed MAX in a prone restraint for spitting.

16    Said restraint lasted at least 20 minutes.

17         230.  On or about November 8, 2018, defendants GHS, MEYERS, KELLER,

18    CHRISTENSEN, NARAN, WOHLWEND and DOE defendants, with the implied consent

19    and ratification of defendants CDE, YOLO, HOLSTEGE, BENO, DJUSD, McGREW,

20    CHESSMAN, THURMOND and GALAS, placed MAX in a prone restraint, as taught to said

21    defendants by defendants CHAPMAN and HWC, for spitting.  Plaintiffs LANGLEY and

22    BENSON are informed and believe that said restraint lasted for over an hour.

23         231.  On November 15, 2018, defendants GHS, MEYERS, KELLER,

24    CHRISTENSEN, NARAN, WOHLWEND and DOE defendants, with the implied consent

25    and ratification of defendants CDE, YOLO, HOLSTEGE, BENO, DJUSD, McGREW,

26    CHESSMAN, THURMOND and GALAS, imposed a prone restraint on MAX for spitting.

232.    Defendants CDE, YOLO, HOLSTEGE, BENO, DJUSD, McGREW, CHESSMAN, THURMOND, GALAS, GHS, MEYERS, KELLER, CHRISTENSEN, NARAN, WOHLWEND and DOE defendants failed to conduct a debriefing following any of the restraints imposed on MAX, failed to determine whether the use of any of the restraints were proper and/or implemented in a manner consistent with staff training and legal requirements and failed to require the IEP teams to convene following any of the times MAX was subjected to physical restraint in order to review the circumstances prompting the emergency interventions and to discuss indications for conducting a Functional Analysis Assessment or revising the Behavioral Intervention Plan, as required by California law.

233.  At all times herein mentioned, defendants CDE, YOLO, HOLSTEGE, BENO, DJUSD, GALAS, McGREW, CHESSMAN, THURMOND, GHS, MEYERS, CHRISTENSEN, NARAN, WOHLWEND and DOE defendants allowed the use of prone restraints without providing effective training to teachers and staff at defendant GHS to cope with annoying behaviors without resorting to restraints.

234.    CDE, YOLO, HOLSTEGE, BENO, DJUSD, McGREW, CHESSMAN, THURMOND, GALAS, GHS, MEYERS, KELLER, CHRISTENSEN, NARAN, WOHLWEND, MORGAN, WATSON, THOMAS, CHAMBERS and DOE defendants impliedly consented to, ratified the actions of the other said defendants and/or placed MAX in other prone restraints for spitting and/or for other behaviors typically engaged in by behaviorally challenged/disabled students, the average duration of which was one hour.

235.  At all times herein mentioned, CDE, YOLO, HOLSTEGE, BENO, DJUSD, McGREW, CHESSMAN, THURMOND, GALAS, GHS, MEYERS, CHRISTENSEN, KELLER, NARAN, WOHLWEND, MORGAN, WATSON, THOMAS, CHAMBERS and DOE defendants impliedly consented to, ratified the actions of the other defendants and/or routinely imposed prone restraints for periods in excess of one hour on behaviorally challenged and disabled students at GHS, including MAX.

1    236.  At all times herein mentioned, defendants CDE, YOLO, HOLSTEGE, BENO,

2    DJUSD, McGREW, GALAS, GHS, MEYERS, CHRISTENSEN, KELLER, NARAN,

3    WOHLWEND, MORGAN, WATSON, THOMAS, CHAMBERS and DOE defendants knew

4    or should have known that prone restraints were being used on behaviorally

5    challenged/disabled students at defendant GHS, including MAX, "a lot" and "for pretty long

6    periods of time."

7    237.  At all times herein mentioned, defendants, CDE, YOLO, HOLSTEGE, BENO,

8    DJUSD, McGREW, CHESSMAN, THURMOND, GALAS, GHS, MEYERS,

9    CHRISTENSEN, KELLER, NARAN, WOHLWEND, MORGAN, WATSON, THOMAS,

10   CHAMBERS and DOE defendants failed and refused to prevent prolonged prone restraints

11   from being used on disabled students at GHS, including MAX.

12   238.  On or about November 28, 2018, at approximately 12:15 pm, MAX allegedly

13   spit at another student, which was one of his typical behaviors when he was not receiving

14   adult support.

15   239.  At said place and time, and in response to MAX's well-known, frequent and

16   documented behavior, defendants GHS, MEYERS, KELLER, CHRISTENSEN, NARAN and

17   DOE defendants, by and through defendants WOHLWEND and MORGAN, and with the

18   implied consent and ratification of defendants CDE, YOLO, DJUSD, McGREW,

19   CHESSMAN, THURMOND and GALAS, performed a "takedown" maneuver on MAX, by

20   holding MAX's hands behind his back, then dropping MAX to his knees and rolling MAX

21   over into a prone position.

22   240.  At said time and place, and as a result of said "takedown maneuver," MAX

23   suffered a multitude of injuries, including abrasions to his chin, as well as bruising to his left

24   cheek, right ankle, bilateral knees and left leg.

25   241.  It was foreseeable by said defendants that executing a takedown maneuver on a

26   disabled, physically vulnerable child, such as MAX, would result in a multitude of injuries.

242.   At said place and time, defendants GHS, MEYERS, KELLER, CHRISTENSEN, NARAN and DOE defendants, by and through defendants WOHLWEND and MORGAN, with the implied consent and ratification of defendants CDE, YOLO, HOLSTEGE, BENO, DJUSD, McGREW, CHESSMAN, THURMOND and GALAS, held MAX in a face down restraint on the floor, with WOHLWEND holding MAX's upper body, while  MORGAN held MAX's legs.

243.   Due to the number and nature of behavioral emergency reports provided to the public entities by GHS, its administrators and staff, it was foreseeable by CDE, YOLO, HOLSTEGE, BENO, DJUSD, McGREW, CHESSMAN, THURMOND and GALAS that teachers and staff of "behaviorally challenged," disabled, physically vulnerable children, such as MAX, would be placed in a prone restraint by defendants GHS, MEYERS, KELLER, CHRISTENSEN, NARAN, WOHLWEND, MORGAN, WATSON, THOMAS and DOE defendants.

244.   The actions of defendants, WOHLWEND, MORGAN, WATSON, THOMAS, and CHAMBERS, who participated in the prone restraint that occurred on or about November 28, 2018, was done with the implied consent and ratification of defendants, CDE, YOLO, HOLSTEGE, BENO, DJUSD, GALAS, McGREW, CHESSMAN, THURMOND, GHS, MEYERS, KELLER, CHRISTENSEN, NARAN, and DOE defendants.

245.   At said place, and after 10 minutes into the hold, MAX calmed down, but defendants WOHLWEND and MORGAN continued the prone restraint because MAX allegedly was pinching and yelling profanities.

246.   At said place and time, and prior to defendant WATSON's lunch hour, defendant WATSON saw MAX in the prone restraint and neither said nor did anything to assess the situation.

247.  At said place and time, and at some point during the restraint, defendant MORGAN left the room to go to the bathroom and defendant THOMAS came into the room to hold MAX's legs.

248.  At said time and place, Defendant THOMAS neither said nor did anything to assess the situation before joining in the prone restraint.

249.  At said place and time, while THOMAS was holding MAX's legs, MAX was speaking in a low, mumbled voice, rather than in his normally high-pitched voice.

250.  Plaintiffs LANGLEY,  BENSON and estate of MAX are informed and believe that at the time defendant THOMAS noticed MAX mumbling, MAX was already having difficulty breathing.

251.  At said time and place, neither WOHLWEND nor THOMAS did anything to assess MAX's medical condition.

252.  At said place and time, before THOMAS left the room, MAX showed "signs of safety" and "calmed down."

253.  At said place and time, MORGAN returned to the room and resumed her hold on MAX's legs, relieving THOMAS.

254.  At said time and place, and despite the fact that MAX had calmed down, THOMAS took no steps to ensure that MAX was released from the hold by defendants WOHLWEND and MORGAN.

255.  At said time and place, and despite the fact that MAX had calmed down, defendants WOHLWEND and MORGAN continued the restraint for at least another half an hour.

256.  At said place and time, WATSON returned from lunch and saw that MAX was still in restraint.

257.  At said place and time, WATSON told MORGAN that she, MORGAN, was not properly restraining MAX's legs and to hold MAX by the ankles.

56

258.  At said place and time, and despite knowing the prolonged nature of the prone restraint, WATSON did nothing to assess the situation or MAX's medical condition.

259.  At said place and time, after over an hour and a half of being restrained, WATSON joined in the restraint with defendants WOHLWEND and MORGAN, by holding MAX's hands while MORGAN held MAX's ankles and WOHLWEND immobilized MAX's torso.

260.  On November 28, 2018, at approximately 1:50 pm, MAX began exhibiting additional signs of physical distress, including becoming volatile and kicking footprints into the wall.

261.  Prior to November 28, 2018, defendants CDE, YOLO, HOLSTEGE, BENO, DJUSD, GALAS, McGREW, CHESSMAN, THURMOND, GHS, MEYERS, KELLER, CHRISTENSEN, NARAN, WOHLWEND, MORGAN, WATSON, THOMAS, CHAMBERS and DOE defendants knew that MAX's physical disabilities made him quick to fatigue and lacking in endurance.

262.  At said place and time, as MAX was exhibiting additional signs of physical distress, defendants WOHLWEND, MORGAN and WATSON did nothing to assess the situation or MAX's medical condition.

263.  At said place and time, MAX exhibited even further signs of physical distress, including urinating on himself, after MAX's request to use the restroom was ignored.

264.  At said place and time, while in an almost two-hour-long restraint, defendants GHS, MEYERS, KELLER, CHRISTENSEN, NARAN, WOHLWEND, MORGAN, WATSON, THOMAS and DOE defendants, as taught to them by defendants CHAPMAN and HWC, did not offer MAX any fluids, range of motion exercises, periodic release of his limbs for circulation or even toilet breaks, in violation of California Education Code Section 56521.2 (a)(3).

57

265.  At said place and time, as MAX was exhibiting said further signs of physical distress and by needing to urinate, defendants WOHLWEND, MORGAN and WATSON did nothing to assess the situation or MAX's medical condition.

266.  At said time and place, MAX exhibited still further signs of physical distress, including biting his lip.

267.  At said place and time, as MAX was exhibiting said still further signs of physical distress by biting his lip, defendants WOHLWEND, MORGAN and WATSON did nothing to assess the situation or MAX's medical condition.

268.  At said time and place, MAX exhibited even still further signs of physical distress by indicating that he was going to vomit, and then, in fact, he vomited.

269.  At said place and time, as MAX was exhibiting said even still further signs of physical distress by becoming nauseated and vomiting, defendants WOHLWEND, MORGAN and WATSON did nothing to assess the situation or MAX's medical condition.

270.  At said place and time, at approximately 1:50 pm, after exhibiting the afore-mentioned signs of physical distress, which were ignored by defendants WOHLWEND, MORGAN and WATSON, MAX was rendered unconscious.

271.  At all times herein mentioned, defendants CDE, YOLO, HOLSTEGE, BENO, DJUSD, GALAS, McGREW, CHESSMAN, THURMOND, GHS, MEYERS, KELLER, CHRISTENSEN, NARAN, WOHLWEND, MORGAN, WATSON, THOMAS, CHAMBERS, HWC, CHAPMAN and DOE defendants knew, or should have known, that prompt medical attention should be given to a person in restraint who is showing signs of distress.

272.  At said place and time, MAX aspirated and went into cardiac arrest.

273.  At said place and time, WATSON left the room to get someone to help her get MAX into the school's van, because "it was the end of the school day."\

274. At said place and time, and prior to leaving the room, WATSON did nothing to assess the situation or MAX's medical condition.

275. At said time and place, defendant WOHLWEND did not release the hold for several minutes after MAX was rendered unconscious.

276. At said time and place, upon releasing the hold on the unconscious child, defendant WOHLWEND was unconcerned that MAX was not moving.

277. At said time and place, and only after MAX was rendered unconscious, defendant WOHLWEND caused staff at defendant GHS to call defendant CHAMBERS, the school "nurse," because defendant WOHLWEND needed defendant, CHAMBERS to document the blood on MAX's lip.

278. Plaintiffs LANGLEY and BENSON are informed and believe that CHAMBERS did not hold any credential to be a school nurse and did not meet the qualifications to be a school nurse because he was not an RN.

279. At that place and time, defendant CHAMBERS became "sidetracked" and did not respond to the call to document blood on MAX's lip.

280. At said place and time, and after WOHLWEND caused staff at GHS to call CHAMBERS, WOHLWEND returned to MAX and checked for a pulse because MAX wasn't responding and "[i]t was time to go home."

281. At that place and time, WOHLWEND finally realized that a medical emergency existed.

282. At said place and time, after knowing that MAX was rendered unconscious, neither defendants GHS, MEYERS, KELLER, CHRISTENSEN, NARAN, WOHLWEND, MORGAN, WATSON nor DOE defendants called 911.

283. At said place, and on or around 1:55 pm, WOHLWEND caused CHAMBERS to be called again to examine MAX, this time because MAX was unconscious.

1      284.  At said place and time, WOHLWEND was required by law, as a credentialed

2  teacher within the state of California, to have training in CPR.

3      285.  At no time during this incident did WOHLWEND attempt to perform CPR on

4  MAX after he lost consciousness.

5      286.  At said place and time, and after MAX was rendered unconscious, CHAMBERS

6  did not respond to the classroom for approximately ten minutes.

7      287.  At  all times herein mentioned, defendants GHS, MEYERS, KELLER,

8  CHRISTENSEN, NARAN, WOHLWEND, MORGAN, WATSON, THOMAS,

9  CHAMBERS and DOE defendants knew or should have known that a failure to respond

10  promptly to a call for assistance from the school nurse regarding the welfare of a disabled

11  child, such as MAX, may result in further injury or death to the child.

12      288.  At said place and time, when CHAMBERS was in the classroom, CHAMBERS

13  found that MAX had no carotid or radial pulses.

14      289.  At that place and time, CHAMBERS conducted CPR on MAX for 7-10 minutes.

15      290.  At said place and time, and prior to conducting CPR on MAX, defendant

16  CHAMBERS failed to clear MAX's airway of vomitus that MAX had aspirated.

17      291.  At all times herein mentioned, defendants CDE, YOLO, HOLSTEGE, BENO,

18  DJUSD, McGREW, GALAS, CHESSMAN, THURMOND, GHS, MEYERS, KELLER,

19  CHRISTENSEN, NARAN, WOHLWEND, MORGAN, THOMAS, CHAMBERS,

20  CHAPMAN, HWC and DOE defendants knew, or should have known, that 911 should be

21  used immediately to respond this medical emergency.

22      292.  At all times herein mentioned, CDE, YOLO, HOLSTEGE, BENO, DJUSD,

23  McGREW, GALAS, CHESSMAN, THURMOND, GHS, MEYERS, KELLER,

24  CHRISTENSEN, NARAN, WOHLWEND, MORGAN, THOMAS, CHAMBERS, HWC,

25  CHAPMAN and DOE defendants had no policy nor plan in place to ensure that 911 was

26  called immediately upon a child being rendered unconscious at defendant GHS.

293.    CDE, YOLO, HOLSTEGE, BENO, DJUSD, McGREW, GALAS, CHESSMAN, THURMOND, GHS, MEYERS, KELLER, CHRISTENSEN, NARAN, WOHLWEND, MORGAN, THOMAS, CHAMBERS, CHAPMAN, HWC and DOE defendants had no policy or plan in place to ensure that a credentialed teacher perform CPR immediately when a student in their presence had been rendered unconscious.

294.  On November 28, 2018, at 2:03 pm, almost 25 minutes after MAX was rendered unconscious, CHAMBERS asked defendant GHS, by and through defendants MEYERS, KELLER, CHRISTENSEN, NARAN and DOE defendants, to call the paramedics.

295.  At all times herein mentioned, defendants CDE, YOLO, HOLSTEGE, BENO, DJUSD, GALAS, McGREW, CHESSMAN, THURMOND, GHS, MEYERS, KELLER, CHRISTENSEN, NARAN, WOHLWEND, WOHLWEND, MORGAN, WATSON, THOMAS, CHAMBERS and DOE defendants knew or should have known that use of a prone restraint on a physically compromised, disabled child, such as MAX, could result in serious injury or death.

296.  At all times herein mentioned, defendants CDE, YOLO, HOLSTEGE, BENO, DJUSD, McGREW, CHESSMAN, THURMOND, GALAS, GHS, MEYERS, KELLER, CHRISTENSEN, NARAN, WOHLWEND, MORGAN, WATSON, THOMAS, CHAMBERS and DOE defendants had no policy nor plan in place to prevent the use of a prone restraint on a physically compromised, disabled child at defendant GHS, such as MAX.

297.  At all times herein mentioned, defendants CDE, YOLO, HOLSTEGE, BENO, DJUSD, GALAS, McGREW, CHESSMAN, THURMOND, GHS, MEYERS, KELLER, CHRISTENSEN, NARAN, WOHLWEND, MORGAN, WATSON, THOMAS, CHAMBERS and DOE defendants allowed, consented to, ratified, failed to prevent, used and/or taught the use of a prone restraint on physically compromised children at GHS, such as MAX.

1    298.  At all times herein mentioned, defendants CDE, YOLO, HOLSTEGE, BENO,

2    DJUSD, GALAS, McGREW, CHESSMAN, THURMOND, GHS, MEYERS, KELLER,

3    CHRISTENSEN,  NARAN,  WOHLWEND,  MORGAN,  WATSON,  THOMAS,

4    CHAMBERS and DOE defendants knew or should have known that the use of emergency

5    interventions with an amount of force not reasonable nor necessary under the circumstances

6    could result in serious injury or death.

7    299.  At all times herein mentioned, defendants CDE, YOLO, HOLSTEGE, BENO,

8    DJUSD, McGREW, CHESSMAN, THURMOND, GALAS, GHS, MEYERS, KELLER,

9    CHRISTENSEN,  NARAN,  WOHLWEND,  MORGAN,  WATSON,  THOMAS,

10    CHAMBERS and DOE defendants had no policy nor plan in place to prevent the use of

11    emergency interventions with an amount of force not reasonable nor necessary under the

12    circumstances which could result in serious injury or death at GHS.

13    300.  At all times herein mentioned, defendants CDE, YOLO, HOLSTEGE, BENO,

14    DJUSD, GALAS, McGREW, CHESSMAN, THURMOND, GHS, MEYERS, KELLER,

15    CHRISTENSEN,  NARAN,  WOHLWEND,  WOHLWEND,  MORGAN,  WATSON,

16    THOMAS, CHAMBERS, and DOE defendants, allowed, consented to, ratified, failed to

17    prevent, used, and/or taught the use of emergency interventions with an amount of force not

18    reasonable or necessary under the circumstances, which could, and in fact did, result in

19    serious injury or death.

20    301.  At all times herein mentioned, defendants, CDE, YOLO, HOLSTEGE, BENO,

21    DJUSD. GALAS, McGREW, CHESSMAN, THURMOND, GHS, MEYERS, KELLER,

22    CHRISTENSEN,  NARAN,  WOHLWEND,  MORGAN,  WATSON,  THOMAS,

23    CHAMBERS, and DOE defendants, knew, or should have known, that a prone restraint was

24    contra-indicated for use on a disabled child with MAX's physical conditions.

25    302.  At all times herein mentioned, defendants, CDE, YOLO, HOLSTEGE, BENO,

26    DJUSD. GALAS, McGREW, CHESSMAN, THURMOND, GHS, MEYERS, KELLER,

1   CHRISTENSEN, NARAN, WOHLWEND, MORGAN, WATSON, THOMAS,

2   CHAMBERS, and DOE defendants, had no policy or plan in effect to prevent use of a prone

3   restraint on a disabled child with MAX's physical conditions at GHS.

4     303.  At all times herein mentioned, defendants, CDE, YOLO, HOLSTEGE, BENO,

5   DJUSD. GALAS, McGREW, CHESSMAN, THURMOND, GHS, MEYERS, KELLER,

6   CHRISTENSEN, NARAN, WOHLWEND, MORGAN, WATSON, THOMAS,

7   CHAMBERS, and DOE defendants allowed, consented to, ratified, failed to prevent, used,

8   and/or taught that the use of a prone restraint was contra-indicated for use on a disabled child

9   with MAX's physical conditions.

10    304.  At all times herein mentioned, defendants, CDE, YOLO, HOLSTEGE, BENO,

11  DJUSD. GALAS, McGREW, CHESSMAN, THURMOND, GHS, MEYERS, KELLER,

12  CHRISTENSEN, NARAN, WOHLWEND, MORGAN, WATSON, THOMAS,

13  CHAMBERS, and DOE defendants, allowed, consented to, ratified, failed to prevent, used,

14  and/or taught that the use of a prone restraint was contra-indicated for use on a disabled child,

15  such as MAX, who was taking pain and/or psychiatric medications.

16    305.  At all times here mentioned, defendants, CDE, YOLO, HOLSTEGE, BENO,

17  DJUSD, GALAS, McGREW, CHESSMAN, THURMOND,  GHS, MEYERS, KELLER,

18  CHRISTENSEN, NARAN, WOHLWEND, MORGAN, WATSON, THOMAS,

19  CHAMBERS, and DOE defendants knew, or should have known, that a prone restraint may

20  not be imposed for longer than necessary.

21    306.  At all times here mentioned, defendants, CDE, YOLO, HOLSTEGE, BENO,

22  DJUSD, GALAS, McGREW, CHESSMAN, THURMOND,  GHS, MEYERS, KELLER,

23  CHRISTENSEN, NARAN, WOHLWEND, MORGAN, WATSON, THOMAS,

24  CHAMBERS, and DOE defendants, had no policy or plan in place to prevent a prone

25  restraint from being imposed on students at GHS, including MAX, for longer than necessary.

1    307.  At all times here mentioned, defendants, CDE, YOLO, HOLSTEGE, BENO,

2    DJUSD, GALAS, McGREW, CHESSMAN, THURMOND, GHS, MEYERS, KELLER,

3    CHRISTENSEN, NARAN, WOHLWEND, MORGAN, WATSON, THOMAS,

4    CHAMBERS, and DOE defendants, allowed, consented to, ratified, failed to prevent, used,

5    and/or taught the use of a prone restraint that was imposed on MAX for longer than

6    necessary.

7    308.  At all times herein mentioned, defendants, CDE, YOLO, HOLSTEGE, BENO,

8    DJUSD, GALAS, McGREW, CHESSMAN, THURMOND, GHS, MEYERS, KELLER,

9    CHRISTENSEN, NARAN, WOHLWEND, MORGAN, WATSON, THOMAS,

10    CHAMBERS, and DOE defendants, knew, or should have known, that a prone restraint

11    should not be imposed for more than 15 minutes on a child.

12    309.  At all times herein mentioned, defendants, CDE, YOLO, HOLSTEGE, BENO,

13    DJUSD, GALAS, McGREW, CHESSMAN, THURMOND, GHS, MEYERS, KELLER,

14    CHRISTENSEN, NARAN, WOHLWEND, MORGAN, WATSON, THOMAS,

15    CHAMBERS, and DOE defendants, had no policy or plan in place to ensure that a prone

16    restraint was not be imposed on students at GHS, including MAX, for more than 15 minutes.

17    310.  At all times herein mentioned, defendants CDE, YOLO, HOLSTEGE, BENO,

18    DJUSD, GALAS, McGREW, CHESSMAN, THURMOND, GHS, MEYERS, KELLER,

19    CHRISTENSEN, NARAN, WOHLWEND, MORGAN, WATSON, THOMAS,

20    CHAMBERS, and DOE defendants allowed, consented to, ratified, failed to prevent, used,

21    and/or failed to teach that the use of a prone restraint should not be imposed for more than 15

22    minutes on a child.

23    311.  At all times herein mentioned, defendants, CDE, YOLO, HOLSTEGE, BENO,

24    DJUSD, GALAS, McGREW, CHESSMAN, THURMOND,  GHS, MEYERS, KELLER,

25    CHRISTENSEN, NARAN, WOHLWEND, MORGAN, WATSON, THOMAS,

26    CHAMBERS, and DOE defendants, knew, or should have known that administration and/or

1  law enforcement personnel must be called whenever a prolonged restraint is imposed on a

2  child.

3      312. At all times herein mentioned, defendants, CDE, YOLO, HOLSTEGE, BENO,

4  DJUSD, GALAS, McGREW, CHESSMAN, THURMOND, GHS, MEYERS, KELLER,

5  CHRISTENSEN, NARAN, WOHLWEND, MORGAN, WATSON, THOMAS,

6  CHAMBERS, and DOE defendants, had no policy or plan in place to ensure that

7  administration and/or law enforcement personnel is called whenever a prolonged restraint is

8  imposed on a child a GHS.

9      313. At all times herein mentioned, defendants, CDE, YOLO, HOLSTEGE, BENO,

10  DJUSD, GALAS, McGREW, GHS, MEYERS, KELLER, CHRISTENSEN, NARAN,

11  WOHLWEND, MORGAN, WATSON, THOMAS, CHAMBERS, and DOE defendants,

12  failed to and/or failed to do anything to instruct staff at defendant GHS that administration

13  and/or law enforcement personnel must be called whenever a prolonged prone restraint is

14  imposed on a child, including the prolonged prone restraint imposed on MAX or about

15  November 28, 2018.

16      314. At all times herein mentioned, defendants, CDE, YOLO, HOLSTEGE, BENO,

17  DJUSD, GALAS, McGREW, CHESSMAN, THURMOND, GHS, MEYERS, KELLER,

18  CHRISTENSEN, NARAN, WOHLWEND, MORGAN, WATSON, THOMAS,

19  CHAMBERS, and DOE defendants, knew, or should have known the signs of physical

20  distress in a child who is held in a prone restraint.

21      315. On or about November 28, 2018, defendants, CDE, YOLO, HOLSTEGE,

22  BENO, DJUSD, GALAS, McGREW, CHESSMAN, THURMOND, GHS, MEYERS,

23  KELLER, CHRISTENSEN, NARAN, WOHLWEND, MORGAN, WATSON, THOMAS,

24  CHAMBERS, and DOE defendants, failed to act on, failed to warn, or failed to give prior

25  warning to each and every other defendant of the signs of physical distress in a child at

26  defendant GHS, including MAX, who was held in a prone restraint.

1    316.  At all times herein mentioned, defendants, CDE, YOLO, HOLSTEGE, BENO,

2    DJUSD, GALAS, McGREW, CHESSMAN, THURMOND, GHS, MEYERS, KELLER,

3    CHRISTENSEN,   NARAN,   WOHLWEND,   MORGAN,   WATSON,   THOMAS,

4    CHAMBERS, and DOE defendants, knew, or should have known, that use of a prone hold

5    requires constant monitoring of the physical condition of the child in the hold.

6    317.  On or about November 28, 2018, defendants, CDE, YOLO, HOLSTEGE,

7    BENO, DJUSD, GALAS, McGREW, CHESSMAN, THURMOND, GHS, MEYERS,

8    KELLER, CHRISTENSEN, NARAN, WOHLWEND, MORGAN, WATSON, THOMAS,

9    CHAMBERS, and DOE defendants, failed to have policies that required the monitoring of

10   the physical condition of disabled students, including MAX, who were subjected to a prone

11   restraint.

12   318.  On or about November 28, 2018, defendants, CDE, YOLO, HOLSTEGE,

13   BENO, DJUSD, GALAS, McGREW, CHESSMAN, THURMOND, GHS, MEYERS,

14   KELLER, CHRISTENSEN, NARAN, WOHLWEND, MORGAN, WATSON, THOMAS,

15   CHAMBERS, and DOE defendants, consented or ratified the failure to monitor and/or failed

16   to monitor the physical condition of MAX, when he was being held in a prone restraint.

17   319.  At all times herein mentioned, defendants, CDE, YOLO, HOLSTEGE, BENO,

18   DJUSD, GALAS, McGREW, CHESSMAN, THURMOND, GHS, MEYERS, KELLER,

19   CHRISTENSEN,   NARAN,   WOHLWEND,   MORGAN,   WATSON,   THOMAS,

20   CHAMBERS, and DOE defendants, knew, or should have known that a hold should be

21   released immediately when a child in a prone restraint shows signs of physical distress.

22   320.  On or about November 28, 2018, defendants, CDE, YOLO, HOLSTEGE,

23   BENO, DJUSD, GALAS, McGREW, CHESSMAN, THURMOND, GHS, MEYERS,

24   KELLER, CHRISTENSEN, NARAN, WOHLWEND, MORGAN, WATSON, THOMAS,

25   CHAMBERS, and DOE defendants, had no plan or policy to require that a prone restraint be

1  released immediately when a child being held in a prone restraint shows signs of physical

2  distress.

3       321.  On or about November 28, 2018, defendants, CDE, YOLO, HOLSTEGE,

4  BENO, DJUSD, GALAS, McGREW, CHESSMAN, THURMOND, GHS, MEYERS,

5  KELLER, CHRISTENSEN, NARAN, WOHLWEND, MORGAN, WATSON, THOMAS,

6  CHAMBERS, and DOE defendants, consented to, ratified, and did continue to hold MAX in

7  a prone restraint after he showed signs, and continued signs, of physical distress.

8       322.  On or about November 28, 2018, when the paramedics arrived at GHS, they

9  found that MAX was asystole (indicating a "flatline" cardiac arrest), that MAX had no pulse,

10  and that MAX was not breathing.

11       323.   On or about November 28, 2018, paramedics transported MAX to a local

12  hospital, but MAX was transferred later that evening to UC Davis for a higher level of care.

13       324.  On or about November 30, 2018, MAX was pronounced dead from multiple

14  organ system failure and profound irreversible neurologic injury ["brain death"] secondary to

15  aspiration and prolonged cardiac arrest that MAX suffered while being held in a prolonged

16  prone restrained at GHS.

17       325.  With respect to the use of the restraints imposed on MAX, as herein alleged,

18  CDE has found GHS, MEYERS, KELLER, CHRISTENSEN, NARAN, and DOE defendants

19  to be out of compliance with state law for failing to ensure emergency interventions were

20  used only for unpredictable, spontaneous behaviors, with clear and present dangers, and

21  failed to use less restrictive interventions that could have resolved the child's behavior.

22                    **FACTUAL ALLEGATIONS REGARDING D.Z.**

23       326.  D.Z. was enrolled in GHS by FCUSD, FCSELPA, WESSINGER, TRIGUERO,

24  MAGEE, and DOE defendants in 2018.

25       327.   Or about April 25, 2018, defendants GHS, MEYERS, KELLER,

26  CHRISTENSEN, NARAN, and DOE defendants, with the consent of WESSINGER,

1  TRIGUERO, MAGEE, THURMOND, and DOE defendants, assaulted D.Z. by tying D.Z.'s

2  hands behind his back, causing severe and lasting injuries to D.Z.  These injuries were not

3  documented, as required by law.

4      328.  On or about September 10, 2018, GHS, MEYERS, KELLER, CHRISTENSEN,

5  NARAN, McKOY, GODBOUT, and DOE defendants, with the consent of FCUSD,

6  FCSELPA, WESSINGER, TRIGUERO, MAGEE, THURMOND, and DOE defendants,

7  imposed an unknown type of restraint on D.Z.

8      329.  On or about September 17, 2018, GHS, MEYERS, KELLER, CHRISTENSEN,

9  NARAN, McKOY, GODBOUT, and DOE defendants, with the consent of SACRAMENTO

10  OFFICE OF EDUCATION, FCUSD, FCSELPA, WESSINGER, TRIGUERO, MAGEE,

11  THURMOND, and DOE defendants, imposed a standing restraint and a prone restraint for

12  over an hour on D.Z.

13      330.  On or about September 18, 2018, GHS, MEYERS, KELLER, CHRISTENSEN,

14  NARAN, McKOY, MATLOCK, OEHRING, GODBOUT, CHAMBERS, and DOE

15  defendants, with the consent of FCUSD, FCSELPA, WESSINGER, TRIGUERO, MAGEE,

16  THURMOND, and DOE defendants, imposed a standing restraint and a prone restraint for

17  two and a quarter hours on D.Z.

18      331.  On or about September 19, 2018, GHS, MEYERS, KELLER, CHRISTENSEN,

19  NARAN, McKOY, GODBOUT and DOE defendants, with the consent of SACRAMENTO

20  OFFICE OF EDUCATION, FCUSD, FCSELPA, WESSINGER, TRIGUERO, MAGEE,

21  THURMOND, and DOE defendants, imposed a standing restraint and a prone restraint for 30

22  minutes on D.Z.

23      332.  On or September 21, 2018, GHS, MEYERS, KELLER, CHRISTENSEN,

24  NARAN, and DOE defendants, with the consent of SACRAMENTO OFFICE OF

25  EDUCATION, FCUSD, FCSELPA, WESSINGER, TRIGUERO, MAGEE, THURMOND,

1    and DOE defendants, imposed a prone restraint on D.Z. for an unknown length of time,

2    which was not documented in a Behavioral Emergency Report as required by law.

3        333.  On September 28, 2018 D.Z. spilled a mug at his desk.  At that place and time,

4    GHS, MEYERS, KELLER, CHRISTENSEN, NARAN, CHAMBERS and DOE defendants,

5    with the consent of FCUSD, FCSELPA, WESSINGER, TRIGUERO, MAGEE,

6    THURMOND, and DOE defendants, pushed D.Z. face down into a desk, with CHAMBER's

7    hand on the back of D.Z.'s neck.  CHAMBERS then pulled both of D.Z.'s arms behind him

8    aggressively and told D.Z. to "shut the fuck up" and then told D.Z. to "clean this shit up."  A

9    Behavioral Emergency Report was not prepared for this incident as required by law.  D.Z.

10    suffered physical injuries during this incident, which were not documented, as required by

11    law.

12        334.  In or around this time, on a date unknown to D.Z. and KINSER at the place and

13    time, GHS, MEYERS, KELLER, CHRISTENSEN, NARAN, and DOE defendants, with the

14    consent of SACRAMENTO OFFICE OF EDUCATION, FCUSD, FCSELPA, WESSINGER,

15    TRIGUERO, MAGEE, THURMOND, and DOE defendants, imposed a prone restraint on

16    D.Z. for an unknown length of time, which was not documented in a Behavioral Emergency

17    Report as required by law.  At that time, KINSER observed DOE defendants restraining D.Z.

18    face down, with a knee in D.Z.'s back, and his arms pulled back.  KINSER observed that

19    there was extreme pressure placed on D.Z.'s back, and his breathing was labored.  KINSER

20    intervened to get staff off of D.Z.

21        335.  In addition to the physical injuries as herein alleged, D.Z. experienced

22    increasing spells of violence, which coincided with his being held in restraints.

23        336.  At no time immediately prior to the imposition of any of the restraints on D.Z.,

24    as herein alleged, did the behavior of D.Z. pose a danger to himself or others.

1    337.  At all times herein mentioned, the behaviors of D.Z. immediately prior to the

2    imposition of the afore-mentioned restraints, were known and predictable, and had already

3    been addressed in his Behavioral Intervention Plan.

4    338.  The restraints imposed upon D.Z., as herein alleged, constituted corporal

5    punishment, prohibited by California law.

6    **FACTUAL ALLEGATIONS REGARDING S.D.**

7    339.  S.D. attended GHS from 2016 to 2018.  He was placed at GHS by EDCOE,

8    EDCSELPA, PPUSD, and DOE defendants.

9    340.  On or about October 31, 2016, S.D. was restrained by GHS, MEYERS,

10   KELLER, CHRISTENSEN, NARAN, and DOE defendants twice in one day.  Behavioral

11   Emergency Reports were not provided for these restraints.

12   341.  On or about August 13, 2018, GHS, MEYERS, KELLER, CHRISTENSEN,

13   NARAN, and GATEWOOD, with the consent of McDONALD, WRIGHT, CLAY,

14   TOSTON, ATKINS and THURMOND, placed S.D. in a child restraint and/or standing

15   restraint fur using profanity and being non-compliant.

16   342.  On or about September 7, 2018,  GHS, MEYERS, KELLER, CHRISTENSEN,

17   NARAN, WOHLWEND, and DOE defendants, with the consent of McDONALD, WRIGHT,

18   CLAY, TOSTON, ATKINS, THURMOND, and DOE defendants, prepared an IEP in which

19   it was indicated that 12 restraints were imposed on S.D., but Behavioral Emergency Reports

20   were not prepared for each of those restraints as required by law.

21   343.  On or about October 5, 2018, GHS, MEYERS, KELLER, CHRISTENSEN,

22   NARAN WOHLWEND, and DOE defendants,  with the consent of McDONALD, WRIGHT,

23   CLAY, TOSTON, ATKINS, THURMOND, and DOE defendants, imposed a restraint upon

24   S.D., for which no Behavioral Emergency Report was prepared as required by law.  S.D.

25   sustained facial injuries as a result of this restraint.

1        344.   On or about November 23, 2018, S.D. was assaulted by GHS, MEYERS,

2  KELLER, CHRISTENSEN, NARAN WOHLWEND, and DOE defendants, with the consent

3  of McDONALD, WRIGHT, CLAY, TOSTON, ATKINS, THURMOND, and DOE

4  defendants.  During the course of the assault, GHS, MEYERS, KELLER, CHRISTENSEN,

5  NARAN WOHLWEND, and DOE defendants placed S.D.'s hands behind his back, and

6  immobilized his arms with wide zip ties.

7        345.   On or about November 23, 2018, S.D. was assaulted by GHS, MEYERS,

8  KELLER, CHRISTENSEN, NARAN, and DOE defendants, with the consent of

9  McDONALD, WRIGHT, CLAY, TOSTON, ATKINS, THURMOND, and DOE defendants,.

10  During this incident, which was not documented in a Behavioral Emergency Report as

11  required by law, the top of Sebastian's forehead was split open with an approximately 3" cut.

12  No injury report was filed for this incident as required by law.  GHS, MEYERS, KELLER,

13  CHRISTENSEN, NARAN, WOHLWEND, CHAMBERS, and DOE defendants, with the

14  consent of McDONALD, WRIGHT, CLAY, TOSTON, ATKINS, THURMOND, and DOE

15  defendants, failed to render medical aid to S.D. as required by law.  S.D. was transported

16  home while bleeding profusely from this gaping wound.  Sebastian was taken to urgent care

17  by DAVIS.  S.D. received approximately 12 large stitches to close the wound, and suffers

18  permanent scarring and disfigurement as a result of this incident.

19        346.   At no time immediately prior to the imposition of the restraints on S.D., as

20  herein alleged, did the behavior of S.D. pose a danger to himself or others.

21        347.   At all relevant times, S.D. 's behaviors were known and predictable and had

22  already been addressed in his Behavioral Intervention Plan.

23        348.   The restraints imposed upon S.D., as herein alleged. constituted corporal

24  punishment, prohibited by California law.

25

26

1
## FACTUAL ALLEGATIONS REGARDING J.P.

2      349.    J.P. was placed at GHS by ACOESELPA, ACUSD, SLAVENSKY,

3    FAULKNER, and DOE defendants, where he attended school in 2017 and 2018.

4      350.  On January 11, 2017, GHS, MEYERS, KELLER, CHRISTENSEN, NARAN,

5    MATLOCK, and DOE defendants,   with the consent of SLAVENSKY, FAULKNER,

6    THURMOND, and DOE defendants, imposed a restraint upon J.P.

7      351.  On February 1, 2017,  GHS, MEYERS, KELLER, CHRISTENSEN, NARAN,

8    MATLOCK, ALLEN, and DOE defendants, with the consent of SLAVENSKY,

9    FAULKNER, THURMOND, and DOE defendants, imposed a restraint upon J.P.

10     352.  On February 8, 2017, GHS, MEYERS, KELLER, CHRISTENSEN, NARAN,

11   SMITH, and DOE defendants, with the consent of SLAVENSKY, FAULKNER,

12   THURMOND, and DOE defendants, imposed a restraint upon J.P.

13     353.  On January 10, 2018, GHS, MEYERS, KELLER, CHRISTENSEN, NARAN

14   SMITH, and DOE defendants,   with the consent of SLAVENSKY, FAULKNER,

15   THURMOND, and DOE defendants, imposed a restraint upon J.P.

16     354.  On or about November 28, 2018, J.P. was in the classroom the entire time, and

17   witnessed the incident involving MAX, as herein-above alleged, which led to MAX's death.

18     355.  On or about November 30, 2018, GHS, MEYERS, KELLER, CHRISTENSEN,

19   NARAN SMITH, ALLEN, and DOE defendants, with the consent of SLAVENSKY,

20   FAULKNER, THURMOND, and DOE defendants, imposed three different restraints upon

21   J.P.

22     356.  Throughout 2017 and 2018, on a weekly or bi-weekly average, GHS, MEYERS,

23   KELLER, CHRISTENSEN, NARAN, and DOE defendants would email J.P.'s mother,

24   telling her that J.P. had been placed in restraint.  No Behavioral Emergency Reports were

25   prepared for those incidents, with the consent of SLAVENSKY, FAULKNER, THURMOND

26   and DOE defendants as required by law.

357.  During one of the restraints, the date of which is unknown at the present time, GHS, MEYERS, KELLER, CHRISTENSEN, NARAN and DOE defendants, with the consent of SLAVENSKY, FAULKNER, THURMOND, and DOE defendants, rubbed J.P.'s face into the carpet as they held him face down, causing rug burns on J.P.'s face.  No injury report was prepared for this injury, and no medical aid was rendered to J.P., as required by law.  J.P.'s mother took J.P. to Urgent Care to treat the injuries upon his returning home.

358.  At no time immediately prior to the imposition of the restraints on J.P., as herein alleged, did the behavior of J.P. pose a danger to himself or others.

359.  At all relevant times, J.P.'s behaviors were known and predictable and had previously been addressed in his Behavioral Intervention Plan.

360.  The restraints imposed upon J.P., as herein alleged, constituted corporal punishment, prohibited by California law.

**FACTUAL ALLEGATIONS REGARDING H.K.**

361.  H.K. was referred to GHS by EDCOESELPA, PUSD, BONNIKSEN, WRIGHT, CLAY, TOSTON, THURMOND, and DOE defendants.  H.K. attended there between 2017 up to and including November 27, 2108.

362.  Throughout 2017 and 2018, GHS, MEYERS, KELLER, CHRISTENSEN, NARAN, and DOE defendants restrained H.K. numerous times with the consent of BONNIKSEN, WRIGHT, CLAY, TOSTON, THURMOND, and DOE defendants. No Behavioral Emergency Reports were prepared for those incidents, with the consent of BONNIKSEN, WRIGHT, CLAY, TOSTON, THURMOND and DOE defendants as required by law.  The exact dates of these restraints are unknown at the present time.  H.K. will seek leave of court to amend according to proof when the dates of the restraints are disclosed during discovery proceedings.

363.  At no time immediately prior to the imposition of the restraints on H.K., as herein alleged, did the behavior of H.K. pose a danger to himself or others.

1    364.  At all relevant times, H.K.'s behaviors were known and predictable and had

2    previously been addressed in his Behavioral Intervention Plan.

3    365.  The restraints imposed upon H.K., as herein alleged, constituted corporal

4    punishment, prohibited by California law.

5    **FACTUAL ALLEGATIONS REGARDING M.S.**

6    366.  M.S. began attending GHS on September 8, 2018.  He was referred to GHS by

7    EGUSD, PHILLIPS, and DELGADO.

8    367.  At the time M.S. began attending GHS, GHS, MEYERS, KELLER,

9    CHRISTENSEN, NARAN, STEARN, DILLON, LAYMON, HINDS, JONES, ROMANO,

10    SCHUMANN, EGUSD, PHILLIPS, DELGADO, THURMOND and DOE defendants were

11    told by STARK, and said defendants acknowledged that M.S. is sensitive to physical touch

12    and proximity; that staff was to refrain from using physical gestures or prompting when

13    communicating with M.S.; that if M.S. got upset to give him space; and to allow M.S. access

14    to his headphones to assist him in getting or staying calm.

15    368.  On September 10, 2018, GHS, MEYERS, KELLER, CHRISTENSEN,

16    NARAN, STEARN, and DOE defendants, with the consent of EGUSD, PHILLIPS,

17    DELGADO, THURMOND and DOE defendants restrained M.S.

18    369.  On September 11, 2018,  GHS, MEYERS, KELLER, CHRISTENSEN,

19    NARAN, STEARN, and DOE defendants, with the consent of EGUSD, PHILLIPS,

20    DELGADO, THURMOND and DOE defendants restrained M.S.

21    370.  On September 12, 2018,  GHS, MEYERS, KELLER, CHRISTENSEN,

22    NARAN, STEARN, and DOE defendants, with the consent of EGUSD, PHILLIPS,

23    DELGADO, THURMOND and DOE defendants assaulted M.S. by slamming his head

24    against the wall, causing injury to M.S.' temple.  No injury report was filed and no medical

25    aid was rendered to M.S. as required by law.

371. On or about September 12, 2018, GHS, MEYERS, KELLER, CHRISTENSEN, NARAN, and DOE defendants, in response to a complaint made by STARK, told STARK that the incident in which M.S. was injured due to staff who were new, and that the staff would receive training.

372. On or about September 21, 2019, GHS, MEYERS, KELLER, CHRISTENSEN, NARAN, STEARN, and DOE defendants, with the consent of EGUSD, PHILLIPS, DELGADO, THURMOND, and DOE defendants restrained M.S. twice.

373. Between September 10 and September 26, 2108, GHS, MEYERS, KELLER, CHRISTENSEN, NARAN, STEARN, and DOE defendants, with the consent of EGUSD, PHILLIPS, DELGADO, THURMOND and DOE defendants, intervened physically with M.S. fourteen times.

374. On or about September 26, 2108, GHS, MEYERS, KELLER, CHRISTENSEN, NARAN, STEARN, and DOE defendants, with the consent of EGUSD, PHILLIPS, DELGADO, THURMOND, and DOE defendants, violently and aggressively restrained M.S., causing abrasions to M.S.'s face.

375. On or about September 26, 2018, STARK again conveyed to GHS, MEYERS, KELLER, CHRISTENSEN, NARAN, STEARN, EGUSD, PHILLIPS, DELGADO, THURMOND, and DOE defendants that M.S. did not like to be touched.

376. On October 2, 2018,  GHS, MEYERS, KELLER, CHRISTENSEN, NARAN, STEARN, and DOE defendants, with the consent of EGUSD, PHILLIPS, DELGADO, THURMOND, and DOE defendants, restrained M.S. twice.

377. On October 9, 2018, GHS, MEYERS, KELLER, CHRISTENSEN, NARAN, STEARN, and DOE defendants, with the consent of EGUSD, PHILLIPS, DELGADO, THURMOND, and DOE defendants, placed M.S. in a prone restraint.

378. On October 10, 2018, GHS, MEYERS, KELLER, CHRISTENSEN, NARAN, STEARN, HINDS, SCHUMANN, and DOE defendants, with the consent of EGUSD,

PHILLIPS, DELGADO, THURMOND, and DOE defendants, placed M.S. in at least three different restraints, including at least one prone restraint.

379.  On October 11, 2018, GHS, MEYERS, KELLER, CHRISTENSEN, NARAN, STEARN, and DOE defendants, with the consent of EGUSD, PHILLIPS, DELGADO, THURMOND, and DOE defendants, placed M.S. in a prone restraint.

380.  On October 15, 2018, GHS, MEYERS, KELLER, CHRISTENSEN, NARAN, STEARN, and DOE defendants, with the consent of EGUSD, PHILLIPS, DELGADO, THURMOND, and DOE defendants, placed M.S. in at least two different restraints, including at least one prone restraint.

381.  On October 18, 2018, GHS, MEYERS, KELLER, CHRISTENSEN, NARAN, STEARN, ROMANO, and DOE defendants, with the consent of EGUSD, PHILLIPS, DELGADO, THURMOND, and DOE defendants, took M.S.' headphones away from him for no valid reason.  When M.S. became upset, GHS, MEYERS, KELLER, CHRISTENSEN, NARAN, STEARN, and DOE defendants, with the consent of EGUSD, PHILLIPS, DELGADO, THURMOND, and DOE defendants placed him in at least three separate restraints.

382.  On October 22, 2018, GHS, MEYERS, KELLER, CHRISTENSEN, NARAN, STEARN, and DOE defendants, with the consent of EGUSD, PHILLIPS, DELGADO, THURMOND, and DOE defendants rolled M.S. inside a yoga mat and squeezed him in the mat for 10 minutes.

383.  On October 23, 2018, GHS, MEYERS, KELLER, CHRISTENSEN, NARAN, STEARN, LAYMON, and DOE defendants, with the consent of EGUSD, PHILLIPS, DELGADO, THURMOND, and DOE defendants, restrained M.S. twice, including one prone restraint.

384.  On October 24, 2018, GHS, MEYERS, KELLER, CHRISTENSEN, NARAN, STEARN, HINDS, DILLON, and DOE defendants, with the consent of EGUSD, PHILLIPS,

1    DELGADO, THURMOND, and DOE defendants, restrained M.S. twice, including one prone

2    restraint for 35 minutes. In addition, GHS, MEYERS, KELLER, CHRISTENSEN, NARAN,

3    STEARN, and DOE defendants, with the consent of EGUSD, PHILLIPS, DELGADO,

4    THURMOND, and DOE defendants, wrapped M.S. up in a yoga mat and squeezed both ends

5    of the mat.

6        385.  On October 29, 2018, GHS, MEYERS, KELLER, CHRISTENSEN, NARAN,

7    STEARN, and DOE defendants, with the consent of EGUSD, PHILLIPS, DELGADO,

8    THURMOND and DOE defendants, restrained M.S., wrapped M.S. up in a yoga mat, and

9    squeezed the mat.

10        386.  On November 6, 2018, GHS, MEYERS, KELLER, CHRISTENSEN, NARAN,

11    STEARN, JONES, DILLON, LAYMON, and DOE defendants, with the consent of EGUSD,

12    PHILLIPS, DELGADO, THURMOND and DOE defendants, restrained M.S. on four

13    separate occasions.

14        387.  Between October 1 and November 6, 2018, GHS, MEYERS, KELLER,

15    CHRISTENSEN, NARAN, STEARN, and DOE defendants, with the consent of EGUSD,

16    PHILLIPS, DELGADO, THURMOND and DOE defendants imposed hands on interventions

17    on M.S., including prone and other forms of restraints, a total of 47 times.

18        388.  On November 29, 2018, as MAX had just died,  GHS, MEYERS, KELLER,

19    CHRISTENSEN, NARAN, STEARN, and DOE defendants, with the consent of EGUSD,

20    PHILLIPS, DELGADO, THURMOND and DOE defendants placed M.S. in two restraints,

21    including a prone restraint, the later of which involved the twisting of M.S.' arms behind his

22    back so that he could not move.

23        389.  With respect to the use of the restraints imposed on M.S., as herein alleged,

24    CDE has found GHS, MEYERS, KELLER, CHRISTENSEN, NARAN, STEARN, and DOE

25    defendants to out of compliance with state law for failing to ensure emergency interventions

26    were used only for unpredictable, spontaneous behaviors, with clear and present dangers, and

1  failed to use less restrictive interventions that could have resolved the child's behavior, and

2  for failure to convene a new IEP meeting after the  incident of October 24, 2018, to see if

3  there was a need to modify M.S.' behavioral intervention plan.  CDE found these practices to

4  be "punitive, humiliating, can cause serious injury, does not provide an opportunity for de-

5  escalation, can cause physical and mental stress, may cause difficulty breathing, can trigger

6  underlying medical issues, and may create long-term trauma".

7      390.   At no time immediately prior to the imposition of the restraints on M.S., as

8  herein alleged, did the behavior of M.S. pose a danger to himself or others.

9      391.   At all relevant times, M.S.'s behaviors were known and predictable and had

10  previously been addressed in his Behavioral Intervention Plan.

11     392.   The restraints imposed upon M.S., as herein alleged, constituted corporal

12  punishment, prohibited by California law.

13              **FACTUAL ALLEGATIONS REGARDING E.D.**

14     393.  E.D. was a student at GHS in 2017 and 2018.

15     394.   On or about January 10, 2017, GHS, MEYERS, KELLER, CHRISTENSEN,

16  NARAN, and DOE defendants, with the consent of THURMOND and DOE defendants,

17  imposed a prolonged prone restraint on E.D.

18     395.   As a result of the afore-mentioned restraint, E.D. suffered, and continues to

19  suffer lacerations to his chin and face, nerve damage to both of his arms, PTSD and night

20  terrors.

21     396.   At no time immediately prior to the imposition of the restraints on E.D., as

22  herein alleged, did the behavior of E.D. pose a danger to himself or others.

23     397.   At all relevant times, E.D.'s behaviors were known and predictable and had

24  previously been addressed in his Behavioral Intervention Plan.

25     398.   The restraints imposed upon E.D., as herein alleged, constituted corporal

26  punishment, prohibited by California law.

## FACTUAL ALLEGATIONS REGARDING AUSTIN

399.  AUSTIN was a student at GHS in 2017 and 2018.  Austin was referred to GHS by defendants RUSD, FORREST, and DOE defendants.

400.  On dates that are unknown to AUSTIN at the present time, GHS, MEYERS, KELLER, CHRISTENSEN, NARAN, and DOE defendants, with the consent of THURMOND and DOE defendants, imposed further abuse on AUSTIN, causing him to suffer physical and emotional injuries.

401.  AUSTIN, like many autistic children, had over stimulated sensitivities to light, sound, smell and touch.

402.  AUSTIN has several discs in his spine fused together making sitting down very uncomfortable and requiring him to stand and walk around to reduce the stress of sitting.

403.  He would often get up and, rather than understanding what was troubling him, staff at GHS would insist that he remain sitting.

404.  When AUSTIN would complain and resist sitting, he would be subjected to a restraint.

405.  These acts in response to his stress in his back were not unforeseeable and were made known to staff at GHS when he enrolled at GHS.

406.  On one occasion, AUSTIN had a toy car in his pocket.

407.  GHS staff demanded that he give the toy car to the teacher and AUSTIN refused.

408.  GHS staff tackled him to the floor and sat on him in a prone restraint.

409.  When AUSTIN told them that he couldn't breath, they refused to let up on the restraint.

410.  AUSTIN suffered night-terrors following these incidents.

411.  AUSTIN suffered from depression and self-loathing.

412.  AUSTIN would suffer panic attacks if one of his teachers approached him too fast.

413.  On many occasions, AUSTIN would cower in a corner of the classroom if a teacher to staff member reached for him too quickly

414.  AUSTIN has attempted to get documentation from GHS, MEYERS, KELLER, CHRISTENSEN, NARAN and DOE defendants as to the exact dates of the abuse, but has been unable to obtain any response.  AUSTIN will seek leave to allege these dates when this information becomes available through the discovery process.

415.  At no time immediately prior to the imposition of the restraints on AUSTIN, as herein alleged, did the behavior of AUSTIN pose a danger to himself or others.

416.  At all relevant times, AUSTIN.'s behaviors were known and predictable and had previously been addressed in his Behavioral Intervention Plan.

417.  The restraints imposed upon AUSTIN, as herein alleged, constituted corporal punishment, prohibited by California law.

## **FACTUAL ALLEGATIONS REGARDING LUIS**

418.  LUIS was a student at GHS in 2008.  He was referred to GHS by DOE defendants.

419.  Shortly after enrolling at GHS in January, 2008, LUIS began being restrained by GHS, MEYERS, KELLER. CHRISTENSEN, NARAN, and DOE defendants for perceived behavioral problems such as not sitting down or not following directives unrelated to the safety of himself or others.

420.  On or about March 19, 2008, GHS, MEYERS, KELLER, CHRISTENSEN, NARAN, and DOE defendants restrained LUIS.

421.  Defendants GHS, MEYERS, KELLER, CHRISTENSEN, NARAN, and DOE defendants failed to file Behavioral Emergency Reports or document injuries as required by law, so dates of assaults are unknown to LUIS at the present time.

1    422.  During the restraints, LUIS was pushed to the ground and placed in a prone

2    position for an extended period of time, while his arms were pulled behind his back.  GHS

3    staff sat on his back while he was in this position, increasing his pain and making it difficult

4    for him to breathe.

5    423.  LUIS was abused on additional occasions while attending GHS.   LUIS has

6    attempted to get documentation from GHS, MEYERS, KELLER, CHRISTENSEN, NARAN

7    and DOE defendants as to the exact dates of the abuse, but has been unable to obtain any

8    response.   LUIS will seek leave to allege these dates according to proof when this

9    information becomes available through the discovery process.

10    424.  LUIS suffered bruises to his chest, burns to his elbows, and severe soft tissue

11    damage to his back and buttocks as a result of these restraints.  LUIS suffered panic attacks,

12    night-terrors, startles,  depression and self-loathing as a result of these restraints.

13    425.  At no time immediately prior to the imposition of the restraints on LUIS, as

14    herein alleged, did the behavior of LUIS pose a danger to himself or others.

15    426.  At all relevant times, LUIS.'s behaviors were known and predictable and had

16    previously been addressed in his Behavioral Intervention Plan.

17    427.   The restraints imposed upon LUIS, as herein alleged, constituted corporal

18    punishment, prohibited by California law.

19    **FIRST CAUSE OF ACTION**

20    **FOR VIOLATIONS OF TITLE II, AMERICANS**

21    **WITH DISABILITIES ACT OF 1990,**

22    **42 U.S.C., SECTION 12101, ET. SEQ.**

23    **(ASSERTED BY ESTATE OF MAX against CDE, YOLO, and  DJUSD;  D.Z. against**

24    **FCUSD and FCSELPA; S.D. against EDCOE and EDCSELPA,  H.K. against PUSD**

25    **and EDCOSESELPA, M.S. against CDE, EGUSD, EGUSDSELPA, and SCOE;**

**AUSTIN AGAINST RUSD; and ASSERTED BY ESTATE OF MAX and each of THE**

**PLAINTIFF STUDENTS AGAINST GHS; and DOE DEFENDANTS)**

428.  Estate of MAX, D.Z. S.D., H.K., M.S. and AUSTIN  (referred to in this cause of action as "THE NAMED PLAINTIFF STUDENTS" and THE PLAINTIFF STUDENTS incorporate herein by reference paragraphs 1-32, 45-46, 48-62, 64-66, 69, 72-126, 129, 134, 139-148, 154, 160, 164, 167, 179-427, 429-446, 451-455, 458, 461, 463, 464,466, 467, 470-472, 474, 478, 481 491, 492, 497, 501,503, 505-508, 513-516, 518, 523, 524, 531-533, 536-540, 551-553, 555-559, 561, 564-566, 574-576, 578, 579, 581, 582, 595, 597, 599, 603, 608, 616, 617, 618, 623, 635 of this Complaint, as if fully stated hereat.

429.   The term "THE NAMED PLAINTIFF STUDENTS" refers only to those students who filed Tort Claims against the public entity who referred them to GHS or otherwise had involvement in the student's education at GHS as heretofore alleged.  THE NAMED PLAINTIFF STUDENTS' plead  this cause of action subject to the limitations of their respective tort claims filings, as heretofore alleged.  No other public entities are named in this cause of action.

430.   The term "THE PLAINTIFF STUDENTS" refers to *all* THE PLAINTIFF STUDENTS, with the limitation that in this cause of action only, *all* THE PLAINTIFF STUDENTS plead claims solely against GHS and DOE defendants.

431.  Title II, the Americans With Disabilities Act of 1990, 42 U.S.C., Section 12101, et seq., as amended, provides for, among other things, that no public entity, including any state or local government or governmental agency, shall discriminate in any manner against an individual with a disability, such as THE NAMED PLAINTIFF STUDENTS for this cause of action as against the named public entities and DOE defendants, namely MAX, D.Z., S.D., H.K., M.S., and AUSTIN, and such as *all* THE PLAINTIFF STUDENTS as against GHS and DOE defendants

432. As described above, CDE and THE ARMS OF THE EDUCATIONAL SYSTEM named in this cause of action and DOE defendants, by and through their agents, employees and independent contractors as well as GHS and DOE defendants did, in fact, discriminate against THE NAMED PLAINTIFF STUDENTS and *all* THE PLAINTIFF STUDENTS, respectively, in this cause of action because of THE NAMED PLAINTIFF STUDENTS/*all* THE/PLAINTIFF STUDENTS' known disabilities.

433. The named defendants' conduct described herein violated the ADA in that MAX and THE NAMED STUDENTS/*all* THE  PLAINTIFF STUDENTS, who are students with disabilities, are either not provided programs, services, and activities that are provided to non-disabled students, or are provided programs, services, and activities that are not equal to, and are inferior to, the services provided to students who are not physically and emotionally disabled.  THE NAMED PLAINTIFF STUDENTS/*all* THE PLAINTIFF STUDENTS in fact were abused because of their disabilities, which amounts to disability discrimination. Defendants named in this cause of action have demonstrated a deliberate indifference that harm to THE NAMED PLAINTIFF STUDENTS/*all* THE PLAINTIFF STUDENTS' federally protected rights under the ADA was substantially likely, and failed to act upon that likelihood.

434. The defendants named in this cause of action illegally misused and/or abused power(s) actually and impliedly bestowed upon them by virtue of their office by the State of California or by one or more of the State's political subdivisions or departments, and such misuse and/or abuse of power proximately caused the to suffer harm and damage.

435. All defendants named in this cause of action were acting under color of state law and/or their actions, whether or not perpetrated under color of state law, were condoned and/or actually or tacitly ratified by CDE.

436. Such discrimination perpetrated by THE ARMS OF THE EDUCATIONAL SYSTEM and DOE defendants  proximately caused MAX injury and death, and GHS and

1  DOE defendants proximately caused MAX and THE NAMED PLAINTIFF STUDENTS/*all*

2  THE PLAINTIFF STUDENTS to suffer harm and damage.

3  437.  Such discrimination was perpetrated by each named defendant deliberately,

4  recklessly and/or with conscious disregard for MAX and THE NAME STUDENTS/*all* THE

5  PLAINTIFF STUDENTS' rights and feelings.

6  438.  The defendants named in this cause of action intended, and knew or should have

7  known, that the application of prone restraints upon MAX and THE NAMED PLAINTIFF

8  STUDENTS/*all* THE PLAINTIFF STUDENTS would cause those students to suffer

9  psychological and physical harm, and even death, and would deprive THE NAMED

10  PLAINTIFF STUDENTS/*all* THE PLAINTIFF STUDENTS of due process of law, would

11  constitute prohibited disability discrimination, illegal assault and battery and other violations

12  of law and equity.

13  439.  The defendants named in this cause of action perpetrated such harm upon THE

14  NAMED PLAINTIFF STUDENTS/*all* THE PLAINTIFF STUDENTS by inflicting severe

15  corporal punishment in the form of prone and other types of restraints upon severely

16  physically disabled children and autistic children who could not communicate their needs.

17  Said punishments were not used to prevent harm to self or others, rather their use was

18  arbitrary, capricious and unrelated to achieving any legitimate educational purpose.

19  440.  The public entity defendants named in this cause of action wrongfully,

20  negligently, willfully, wantonly and/or recklessly deferred to their independent contractor

21  GHS with regard to inflicting corporal punishments upon MAX and THE NAMED

22  PLAINTIFF STUDENTS including prone and other restraints, thereby placing and

23  maintaining THE NAMED STUDENTS in a school known to conduct numerous, dangerous

24  and unreported restraints which caused injuries to THE NAMED PLAINTIFFS, affirmatively

25  placing THE NAMED PLAINTIFFS in danger with deliberate indifference to their peril.

1    441.   The application of force by GHS upon THE NAMED PLAINTIFF

2    STUDENTS/*all* THE PLAINTIFF STUDENTS was so severe, disproportionate to need,

3    inspired by malice or sadism, or unwise excess of zeal - amounting to inhumane abuse of

4    official power shocking to the conscience.   The restraints authorized and/or applied by the

5    defendants named in this cause of action were known to be of greater length and frequency,

6    and were not reasonably related in scope, to circumstances which may have provided any

7    justification in the first place.

8    442.  Such discrimination perpetrated by each of the defendants named in this cause

9    of action    proximately caused each THE NAMED PLAINTIFFS/*all* THE STUDENT

10   PLAINTIFFS to suffer harm and damage, to include, in MAX's case, injury and death.

11   443.   The unlawful conduct of the defendants named in this cause of action was a

12   substantial factor in THE NAMED PLAINTIFF STUDENTS'/*all* THE PLAINTIFF

13   STUDENTS' suffering economic harm, future economic harm, and other consequential

14   damages, all in an amount according to proof at trial.  The estate of MAX seeks no future

15   compensatory damages.

16   444.  The unlawful conduct of the defendants named in this cause of action was a

17   substantial factor in causing THE NAMED PLAINTIFF STUDENTS/*all* THE PLAINTIFF

18   STUDENTS to suffer severe emotional distress, and other consequential damages, all in an

19   amount according to proof at trial.  The estate of MAX seeks no general damages.

20   445.   The aforementioned conduct by defendant GHS and DOE defendants was

21   willful, wanton, and malicious, and defendants acted with conscious disregard of MAX and

22   THE NAMED PLAINTIFF STUDENTS/all THE PLAINTIFF STUDENTS'  rights and

23   feelings.  GHS and DOE defendants acted with the knowledge of or with reckless disregard

24   for the fact that their conduct was certain to cause injury and/or humiliation to MAX and

25   THE NAMED PLAINTIFF STUDENTS/all THE PLAINTIFF STUDENTS, entitling the

26   estate of MAX and THE  PLAINTIFF STUDENTS to punitive damages against GHS. The

1   estate of MAX and THE NAMED PLAINTIFF STUDENTS and *all* THE PLAINTIFF

2   STUDENTS do not seek punitive damages against any public entity.

3       446.  Based on the actions of the named defendants, as herein alleged, estate of MAX,

4   THE NAMED PLAINTIFF STUDENTS and THE PLAINTIFF STUDENTS are entitled to

5   an award of attorneys fees against the respective defendants.

6                    **SECOND CAUSE OF ACTION**

7       **FOR VIOLATIONS OF SECTION 504 OF THE REHABILITATION ACT OF**

8              **1973, AS AMENDED, 29 U.S.C., SECTION 795 [504]**

9     **(ASSERTED BY ESTATE OF MAX against CDE, YOLO ,and DJUSD;  D.Z. against**

10     **FCUSD and FCSELPA; S.D. against EDCOE and EDCSELPA,  H.K. against PUSD**

11       **and EDCOSESELPA, M.S. against CDE, EGUSD, EGUSDSELPA, and SCOE;**

12      **AUSTIN AGAINST RUSD; and ASSERTED BY ESTATE OF MAX and each of THE**

13                 **PLAINTIFF STUDENTS AGAINST GHS;**

14                    **and  DOE DEFENDANTS)**

15       447.  Estate of MAX, D.Z. S.D., H.K., M.S. and AUSTIN  (referred to in this cause of

16   action as "THE NAMED PLAINTIFF STUDENTS" and *all* THE PLAINTIFF STUDENTS

17   incorporate herein by reference paragraphs 1-32, 45-46, 48-62, 64-66, 69, 72-126, 129, 134,

18   139-148, 154, 160, 164, 167, 179-427, 429-446, 451-455, 458, 461, 463, 464,466, 467, 470-

19   472, 474, 478, 481 491, 492, 497, 501,503, 505-508, 513-516, 518, 523, 524, 531-533, 536-

20   540, 551-553, 555-559, 561, 564-566, 574-576, 578, 579, 581, 582, 595, 597, 599, 603, 608,

21   616, 617, 618, 623, 635 of this Complaint, as if fully stated hereat.

22       448.    The term "THE NAMED PLAINTIFF STUDENTS" refers only to those

23   students who filed Tort Claims against the public entity who referred them to GHS or

24   otherwise had involvement in the student's education at GHS as heretofore alleged.  THE

25   NAMED STUDENTS' plead  this cause of action subject to the limitations of their respective

                                86

1    tort claims filings, as heretofore alleged.  No other public entities are named in this cause of

2    action.

3        449.   The term "THE PLAINTIFF STUDENTS" refers to *all* THE PLAINTIFF

4    STUDENTS, with the limitation that in this cause of action only, *all* THE PLAINTIFF

5    STUDENTS plead claims solely against GHS and DOE defendants.

6        450.  Section 504 of the Rehabilitation Act of 1973, as amended, 29 U.S.C., Section

7    794 (Section 504), provides that "[n]o otherwise qualified individual with a disability in the

8    United States ... shall, solely by reason of her or his disability, be excluded from the

9    participation in, be denied the benefits of, or be subjected to discrimination under any

10   program or activity receiving Federal financial assistance …" , which includes all of the

11   above-named defendants, their agents, employees, independent contractors and DOE

12   defendants."

13       451.   The named defendants' acts and omissions described herein have resulted in

14   unequal access to the facilities, programs, services, and activities provided by the named

15   defendants alleged herein in violation of 29 U.S.C. section 794, et st seq., the Rehabilitation

16   Act of 1973, and the regulations promulgated thereunder, 34 C.F.R. Pt. 104, et se.

17       452.   As is described above, these defendants named in this cause of action, by and

18   through their employees, agents, independent contractors and DOE defendants did, in fact,

19   discriminate against each and every one of THE NAMED PLAINTIFF STUDENTS/*all* THE

20   PLAINTIFF STUDENTS solely because of THE NAMED PLAINTIFF STUDENTS'/*all*

21   THE NAMED PLAINTIFF STUDENTS' known disabilities.

22       453.   Defendants named in this cause of action have demonstrated a deliberate

23   indifference that harm to THE NAMED PLAINTIFFS'/*all* THE PLAINTIFF STUDENTS'

24   federally protected rights under the Rehabilitation Act was substantially likely, and failed to

25   act upon that likelihood.

454.    Solely by reason of their disabilities, THE NAMED PLAINTIFF STUDENTS/*all* THE PLAINTIFF STUDENTS  have been excluded from participation in, denied the benefit of, and subject to discrimination in their attempts to receive full and equal access to the facilities, programs, services, and activities offered by the defendants names in this cause of action.

455.  Such discrimination perpetrated by each of the defendants named in this cause of action  proximately caused MAX injuries and death,  and  THE NAMED PLAINTIFFS/*all* THE PLAINTIFF STUDENTS to suffer harm and damage.

456.  The unlawful conduct of the defendants named in this cause of action was a substantial factor in THE NAMED PLAINTIFF STUDENTS'/*all* THE PLAINTIFF STUDENTS' suffering economic harm, future economic harm, and other consequential damages, all in an amount according to proof at trial.  The estate of MAX seeks no future compensatory damages.

457.  The unlawful conduct of the defendants named in this cause of action was a substantial factor in causing THE NAMED PLAINTIFF STUDENTS/*all* THE PLAINTIFF STUDENTS to suffer severe emotional distress, and other consequential damages, all in an amount according to proof at trial.  The estate of MAX seeks no general damages.

458.   The aforementioned conduct by defendant GHS was willful, wanton, and malicious, and defendants acted with conscious disregard of THE NAMED PLAINTIFF STUDENTS/all THE PLAINTIFF STUDENTS' rights and feelings.  Defendants also acted with the knowledge of or with reckless disregard for the fact that their conduct was certain to cause injury and/or humiliation to MAX and THE NAMED PLAINTIFF STUDENTS/all THE PLAINTIFF STUDENTS, entitling the estate of MAX and THE NAMED PLAINTIFF STUDENTS/*all* THE PLAINTIFF STUDENTS to punitive damages against GHS. The estate of MAX and THE NAMED PLAINTIFF STUDENTS/*all* PLAINTIFF STUDENTS do not seek punitive damages against any public entity.

1    459.  Based on the actions of the named defendants, as herein alleged, estate of MAX,

2    THE NAMED PLAINTIFF STUDENTS, and *all* THE PLAINTIFF STUDENTS are entitled

3    to attorneys fees against the respective defendants named in this cause of action.

4                            **THIRD CAUSE OF ACTION**

5                          **Violation of 42 U.S.C. Section 1983 -**

6                  **Fourth Amendment to the United States Constitution**

7    **(ASSERTED BY ESTATE OF MAX AND THE PLAINTIFF STUDENTS AGAINST**

8    **THE EMPLOYEES OF THE ARMS OF THE EDUCATIONAL SYSTEM,  in their**

9                  **individual capacities; GHS AND THEIR EMPLOYEES;**

10                          **and DOE DEFENDANTS)**

11    460.  Estate of Max, and THE PLAINTIFF STUDENTS incorporate, by reference

12    herein, the allegations in paragraphs 1-32, 45-, 48-69, 72-126, 131, 136, 141, 145, 149, 155,

13    159, 163, 168, 179-427, 429-446, 451-455, 458, 461, 463, 464,466, 467, 470-472, 474, 478,

14    481 491, 492, 497, 501,503, 505-508, 513-516, 518, 523, 524, 531-533, 536-540, 551-553,

15    555-559, 561, 564-566, 574-576, 578, 579, 581, 582, 595, 597, 599, 603, 608, 616, 617, 618,

16    623, 635 as though fully set forth herein.

17    461.    The EMPLOYEES OF THE ARMS OF THE EDUCATIONAL SYSTEM,

18    GHS and its employees, and DOE defendants' actions involving restraints described herein

19    constituted a seizure that was objectively unreasonable under the circumstances and

20    objectively unreasonable in light of the educational objectives that said defendants were

21    trying to achieve, in violation of the Fourth Amendment to the United States Constitution.

22    462.  THE ARMS OF THE EDUCATION SYSTEM, are state actors for purposes of

23    section 1983, and as such, defendants EMPLOYEES OF THE ARMS OF THE

24    EDUCATION SYSTEM, and GHS and its employees in performing services traditionally

25    performed by the state, acted under the color of state law.

463.  Defendants EMPLOYEES OF THE ARMS OF THE EDUCATION SYSTEM are liable in their individual capacity because the actions described herein acting for their own utility in a self-serving fashion rather than addressing the needs of disabled children constituted culpable action or inaction in the training, supervision, and control of subordinates, acquiescence in the constitutional deprivation after a complaint was made, and showed a reckless, callous and deliberate indifference to the rights of MAX and THE PLAINTIFF STUDENTS.

464.  Such discrimination perpetrated by each of the defendants named in this cause of action  proximately caused MAX injuries and death, and THE PLAINTIFF STUDENTS to suffer harm and damage.

465.  The unlawful conduct of the defendants named in this cause of action was a substantial factor in THE PLAINTIFF STUDENTS' suffering economic harm, future economic harm, and other consequential damages, all in an amount according to proof at trial.  The estate of MAX seeks no future compensatory damages.

466.  The unlawful conduct of the defendants named in this cause of action was a substantial factor in causing THE PLAINTIFF STUDENTS to suffer severe emotional distress, and other consequential damages, all in an amount according to proof at trial.  The estate of MAX seeks no general damages.

467.  The aforementioned conduct by the defendants named in this cause of action was willful, wanton, and malicious, and defendants acted with conscious disregard of MAX and THE plaintiff STUDENTS' rights and feelings.  Defendants also acted with the knowledge of or with reckless disregard for the fact that their conduct was certain to cause injury and/or humiliation to MAX and THE PLAINTIFF STUDENTS, entitling the estate of MAX and THE  PLAINTIFF STUDENTS to punitive damages against each defendant named in this cause of action.

468.  Based on the actions of the named defendants, as herein alleged, estate of MAX and THE PLAINTIFF STUDENTS are entitled to attorneys fees against the defendants named in this cause of action.

**FOURTH CAUSE OF ACTION**

**Violation of 42 U.S.C. Section 1983- Due Process Clause of the Fourteenth**

**Amendment to the United States Constitution**

**(ASSERTED BY THE ESTATE OF MAX AND THE STUDENT PLAINTIFFS,**

**AGAINST THE EMPLOYEES OF THE ARMS OF THE EDUCATION SYSTEM in**

**their individual capacities; GHS AND THEIR EMPLOYEES,**

**and DOE DEFENDANTS)**

469.  Estate of MAX and THE PLAINTIFF STUDENTS incorporate, by reference herein, the allegations in paragraphs 1-32, 45-, 48-69, 72-126, 131, 136, 141, 145, 149, 155, 159, 163, 168, 179-427, 429-446, 451-455, 458, 461, 463, 464,466, 467, 470-472, 474, 478, 481 491, 492, 497, 501,503, 505-508, 513-516, 518, 523, 524, 531-533, 536-540, 551-553, 555-559, 561, 564-566, 574-576, 578, 579, 581, 582, 595, 597, 599, 603, 608, 616, 617, 618, 623, 635 as though fully set forth herein.

470.  Defendants EMPLOYEES OF THE ARMS OF THE EDUCATION SYSTEM in their individual capacities, GHS and its employees, and DOE defendants, actions described herein constituted egregious conduct in the form of excessive or brutal use of physical force in violation of  MAX's and THE PLAINTIFF STUDENTS' Substantive Due Process rights under the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

471.  Defendants EMPLOYEES OF THE ARMS OF THE EDUCATION SYSTEM in their individual capacities, GHS and its employees and DOE defendants, actions described herein acting for their own utility in a self-serving fashion rather than addressing the needs of disabled children constituted force that was excessive, unjustified, and malicious, in violation

1  of MAX and THE PLAINTIFF STUDENTS' Substantive Due Process rights under the Due

2  Process Clause of the Fourteenth Amendment to the United States Constitution.

3  472.  THE ARMS OF THE EDUCATION SYSTEM, as state actors for purposes of

4  section 1983, and, as such, defendant EMPLOYEES OF THE ARMS OF THE EDUCATION

5  SYSTEM, acted under the color of state law.  GHS, in doing the things herein alleged, was

6  performing a function traditionally reserved to the state and, as such, its employees were

7  acting under color of law.

8  473.  Defendants EMPLOYEES OF THE ARMS OF THE EDUCATION SYSTEM

9  are liable in their individual capacity because the actions described herein acting for their

10  own utility in a self-serving fashion rather than addressing the needs of disabled children

11  constituted culpable action or inaction in the training, supervision, and control of

12  subordinates, acquiescence in the constitutional deprivation after a complaint was made, and

13  showed a reckless, callous, and deliberate indifference to the rights of MAX and THE

14  PLAINTIFF STUDENTS.

15  474.  THE EMPLOYEES OF THE ARMS OF THE EDUCATION SYSTEM are

16  liable as teachers, because the actions described herein constituted culpable action or inaction

17  in the training, supervision, and control of subordinates, and were deliberately indifferent to

18  the rights of MAX and THE PLAINTIFF STUDENTS in their acquiescence in the

19  constitutional deprivation after complaints were made, and showed a reckless or callous

20  indifference to the rights of MAX and THE PLAINTIFF STUDENTS.

21  475.  Such deprivations of due process perpetrated by each of the defendants named

22  in this cause of action proximately caused MAX injuries and death, and THE PLAINTIFF

23  STUDENTS to suffer harm and damage.

24  476.  The unlawful conduct of the defendants named in this cause of action was a

25  substantial factor in THE PLAINTIFF STUDENTS' suffering economic harm, future

1  economic harm, and other consequential damages, all in an amount according to proof at

2  trial.  The estate of MAX seeks no future compensatory damages.

3      477.  The unlawful conduct of the defendants named in this cause of action was a

4  substantial factor in causing THE PLAINTIFF STUDENTS to suffer severe emotional

5  distress, and other consequential damages, all in an amount according to proof at trial.  The

6  estate of MAX seeks no general damages.

7      478.  The aforementioned conduct by the defendants named in this cause of action

8  was willful, wanton, and malicious, and defendants acted with conscious disregard of MAX

9  and THE plaintiff STUDENTS' rights and feelings.  Defendants also acted with the

10  knowledge of or with reckless disregard for the fact that their conduct was certain to cause

11  injury and/or humiliation to MAX and THE PLAINTIFF STUDENTS, entitling the estate of

12  MAX and THE  PLAINTIFF STUDENTS to punitive damages against each defendant

13  named in this cause of action.

14      479.  Based on the actions of the named defendants, as herein alleged, estate of MAX

15  and THE PLAINTIFF STUDENTS are entitled to attorneys fees against the defendants

16  named in this cause of action.

17                          **FIFTH CAUSE OF ACTION**

18          **for Violation of 42 U.S.C. Section 1983 - Violation of the Equal Protection**

19          **Clause of the Fourteenth Amendment to the United States Constitution –**

20          **(ASSERTED BY ESTATE OF MAX AND STUDENT PLAINTIFFS AGAINST**

21          **EMPLOYEES OF THE ARMS OF THE EDUCATION SYSTEM,  in their individual**

22              **capacities; GHS AND ITS EMPLOYEES, and DOE DEFENDANTS.**

23      480.  Plaintiffs ESTATE OF MAX and STUDENT PLAINTIFFS incorporate, by

24  reference herein, the allegations in paragraphs 1-32, 45-, 48-69, 72-126, 131, 136, 141, 145,

25  149, 155, 159, 163, 168, 179-427, 429-446, 451-455, 458, 461, 463, 464,466, 467, 470-472,

26  474, 478, 481 491, 492, 497, 501,503, 505-508, 513-516, 518, 523, 524, 531-533, 536-540,

1  551-553, 555-559, 561, 564-566, 574-576, 578, 579, 581, 582, 595, 597, 599, 603, 608, 616,

2  617, 618, 623, 635, as though fully set forth herein.

3        481.    Defendant EMPLOYEES OF THE ARMS OF THE EDUCATIONAL

4  SYSTEM, GHS and its employees actions, and the actions of DOE defendants described

5  herein acting for their own utility in a self-serving fashion rather than addressing the needs of

6  disabled children have violated the Equal Protection Clause of the Fourteenth Amendment to

7  the United States Constitution, in that MAX and THE PLAINTIFF STUDENTS, who are

8  students with disabilities, are either not provided programs, services, and activities that are

9  provided to non-disabled students, or are provided programs, services, activities disciplinary

10  procedures that are not equal to, and are inferior to, the services provided to students who are

11  not physically disabled.

12        482.  Defendants EMPLOYEES OF THE ARMS OF THE EDUCATION SYSTEM

13  are liable in their individual capacity because the actions described herein acting for their

14  own utility in a self-serving fashion rather than addressing the needs of disabled children

15  constituted culpable action or inaction in the training, supervision, and control of

16  subordinates, acquiescence in the constitutional deprivation after a complaint was made, and

17  showed a reckless or callous indifference to the rights of MAX and THE PLAINTIFF

18  STUDENTS.

19        483.  ARMS OF THE EDUCATION SYSTEM, as state actors for purposes of section

20  1983, and, as such,  defendant EMPLOYEES OF THE ARMS OF THE EDUCATION

21  SYSTEM.  In doing the things herein alleged,  GHS was performing a function traditionally

22  reserved to the state,  and, as such, its employees acted under the color of state law.

23        484.  Defendant EMPLOYEES OF THE ARMS OF THE EDUCATION SYSTEM,

24  GHS and its employees are liable as supervisors, teachers, administrators because the actions

25  described herein constituted culpable action or inaction in the training, supervision, and

26  control of subordinates, and were deliberately indifferent to the rights of  MAX and THE

94

1  STUDENT PLAINTIFFS, in their acquiescence in the constitutional deprivation after

2  complaints were made, and showed a reckless, callous, deliberate indifference to the rights of

3  MAX and THE PLAINTIFF STUDENTS.

4         485.  Such deprivations of due process perpetrated by each of the defendants named

5  in this cause of action proximately caused MAX injuries and death, and THE PLAINTIFF

6  STUDENTS to suffer harm and damage.

7         486.  The unlawful conduct of the defendants named in this cause of action was a

8  substantial factor in THE PLAINTIFF STUDENTS' suffering economic harm, future

9  economic harm, and other consequential damages, all in an amount according to proof at

10  trial.  The estate of MAX seeks no future compensatory damages.

11        487.  The unlawful conduct of the defendants named in this cause of action was a

12  substantial factor in causing THE PLAINTIFF STUDENTS to suffer severe emotional

13  distress, and other consequential damages, all in an amount according to proof at trial.  The

14  estate of MAX seeks no general damages.

15        488.  The aforementioned conduct by the defendants named in this cause of action

16  was willful, wanton, and malicious, and defendants acted with conscious disregard of MAX

17  and THE plaintiff STUDENTS' rights and feelings.  Defendants also acted with the

18  knowledge of or with reckless disregard for the fact that their conduct was certain to cause

19  injury and/or humiliation to MAX and THE PLAINTIFF STUDENTS, entitling the estate of

20  MAX and THE  PLAINTIFF STUDENTS to punitive damages against each defendant

21  named in this cause of action.

22        489.  Based on the actions of the named defendants, as herein alleged, estate of MAX

23  and THE PLAINTIFF STUDENTS are entitled to attorneys fees against the defendants

24  named in this cause of action.

25

26

**SIXTH CAUSE OF ACTION**

**FOR INTERFERENCE WITH FAMILIAL RELATIONSHIP,**

**VIOLATION FIRST AND FOURTEENTH AMENDMENTS**

**IN VIOLATION OF 42 USC 1983**

**(ASSERTED PLAINTIFFS, LANGLEY, AND BENSON, AGAINST EMPLOYEES OF**

**THE ARMS OF THE EDUCATIONAL SYSTEM in their individual capacity; GHS**

**AND ITS  EMPLOYEES;**

**AND DOE DEFENDANTS)**

490.   Plaintiffs, LANGLEY and BENSON incorporate by reference the preceding paragraphs 1-19, 34-35, 45,46, 48-49, 58-60, 72-126, 169, 179-325, 429-446, 451-455, 458, 461, 463, 464,466, 467, 470-472, 474, 478, 481 491, 492, 497, 501,503, 505-508, 513-516, 518, 523, 524, 531-533, 536-540, 551-553, 555-559, 561, 564-566, 574-576, 578, 579, 581, 582, 595, 597, 599, 603, 608, 616, 617, 618, 623, 635  regarding the parties and their duties as well as all other causes of action.

491.    Defendants, EMPLOYEES OF THE ARMS OF THE EDUCATIONAL SYSTEM, GHS AND THEIR EMPLOYEES and DOE defendants, acting under color of state law, and without due process of law, deprived plaintiffs, LANGLEY and BENSON of their First Amendment right to a familial relationship by restraining MAX by use of unreasonable, unjustified and deadly force and violence, causing injuries which resulted in MAX's death, all without provocation, and did attempt to conceal their extraordinary use of force and hide the true cause of MAX's death to deprive plaintiffs, LANGLEY and BENSON, of their right to seek redress in violation of their rights, privileges, and immunities secured by the Fourteenth Amendment to the United States Constitution by misrepresenting the facts of MAX's death, describing him to the Sheriff's investigators as being larger, heavier, and misbehaving in such a way as to exaggerate his conduct, in stating that their

1   conduct was not known to be the cause of MAX's death, and in encouraging GHS staff to

2   "stick together" on the investigation by authorities into the death of MAX.

3       492.  Defendants EMPLOYEES OF THE ARMS OF THE EDUCATION SYSTEM

4   are liable in their individual capacity because the actions described herein acting for their

5   own utility in a self-serving fashion rather than addressing the needs of MAX, as a disabled

6   child, constituted culpable action or inaction in the training, supervision, and control of

7   subordinates, acquiescence in the constitutional deprivation after a complaint was made, and

8   showed a reckless or callous indifference to the rights of the interest of MAX's parents in

9   maintaining their familial relationship.

10      493.  ARMS OF THE EDUCATION SYSTEM, as state actors for purposes of section

11  1983, and, as such,  defendant EMPLOYEES OF THE ARMS OF THE EDUCATION

12  SYSTEM.  In doing the things herein alleged,  GHS was performing a function traditionally

13  reserved to the state,  and, as such, its employees acted under the color of state law.

14      494.  Defendant EMPLOYEES OF THE ARMS OF THE EDUCATION SYSTEM,

15  GHS and its employees are liable as supervisors, teachers, administrators because the actions

16  described herein constituted culpable action or inaction in the training, supervision, and

17  control of subordinates, and were deliberately indifferent to the rights of  MAX's parents in

18  maintaining their familial relationship with MAX, and showed a reckless or callous

19  indifference to the rights of MAX's parents.

20      495.  The unlawful conduct of defendants EMPLOYEES OF THE EDUCATIONAL

21  SYSTEM, GHS, AND THEIR EMPLOYEES and DOE defendants, was a substantial factor

22  in causing plaintiffs, LANGLEY and BENSON, to suffer the loss of care, comfort and

23  society of MAX, and severe emotional distress upon seeing their son brain dead and die of

24  multiple organ failure in the aftermath of his injuries, all in an amount within the jurisdiction

25  of the court according to proof at trial.

496.  At all relevant times, defendants EMPLOYEES OF THE ARMS OF THE EDUCATIONAL SYSTEM, GHS, AND THEIR EMPLOYEES and DOE defendants, acted with conscious disregard of the plaintiffs LANGLEY's, BENSON's, and minor decedent MAX's, rights and feelings.  Defendants, EMPLOYEES OF THE ARMS OF THE EDUCATIONAL SYSTEM, GHS and its employees, and DOE defendants also acted with the knowledge of or with reckless disregard for the fact that their conduct was certain to cause injuries and/or death to MAX and severe emotional distress to plaintiffs LANGLEY and BENSON.

497.  Plaintiffs, LANGLEY and BENSON, are further informed and believe that defendant EMPLOYEES OF THE ARMS OF THE EDUCATIONAL SYSTEM, GHS, and its employees, and DOE defendants intended to cause fear, physical injury and/or pain and suffering to MAX and emotional suffering to his parents.  The aforementioned conduct by the defendants named in this cause of action was willful, wanton, and malicious, and defendants acted with conscious disregard of LANGLEY and BENSON's rights and feelings.  Defendants also acted with the knowledge of or with reckless disregard for the fact that their conduct was certain to cause injury and/or humiliation to MAX and his parents, entitling LANGLEY and BENSON to punitive damages against each defendant named in this cause of action.  LANGLEY and BENSON do not seek punitive damages against any public entity.

498.  In addition to and/or in lieu of Plaintiffs' elections, plaintiffs, LANGLEY and BENSON, are entitled to receive and hereby seek statutory damages.

499.  Based on the actions of the named defendants, as herein alleged, plaintiffs LANGLEY and BENSON,  are entitled to attorneys fees against the defendants named in this cause of action.

# SEVENTH CAUSE OF ACTION

**for Violation of California Education Code §§ 200, 201, 220, and 260 et seq.**

**(ASSERTED BY ESTATE OF MAX against THURMOND in his official capacity,**

**named EMPLOYEES OF YOLO, DJUSD, FCUSD, FCSELPA, EDCOE, EDCSELPA,**

**PUSD, EDCOSESELPA, EGUSD, EGUSDSELPA, SCOE and RUSD, in their official**

**capacities; and ASSERTED BY ESTATE OF MAX and each of THE PLAINTIFF**

**STUDENTS AGAINST GHS and its employees; and DOE DEFENDANTS)**

500.   Plaintiffs estate of MAX, the NAMED PLAINTIFF STUDENTS, and THE PLAINTIFF STUDENT, incorporate herein by reference paragraphs 1-32, 45-46, 59-69,72-126, 129, 134, 139-148, 153, 157, 179-427, 429-446, 451-455, 458, 461, 463, 464,466, 467, 470-472, 474, 478, 481 491, 492, 497, 501,503, 505-508, 513-516, 518, 523, 524, 531-533, 536-540, 551-553, 555-559, 561, 564-566, 574-576, 578, 579, 581, 582, 595, 597, 599, 603, 608, 616, 617, 618, 623, 635 of this Complaint as if set forth in full hereat.

501.   MAX, the NAMED PLAINTIFF STUDENTS and THE PLAINTIFF STUDENTS are individuals with disabilities within the meaning of Section 220 of the California Education Code.

502.   THE ARMS OF THE EDUCATION SYSTEM herein receive financial assistance from the State of California sufficient to invoke the coverage of sections 220 and 260, et seq., of the California Education Code.

503.   By the actions or inactions of THE named EMPLOYEES OF THE ARMS OF THE EDUCATION SYSTEM in failing to enact an adequate formal or informal policy to ensure that their respective employers, as arms of the educational system, are providing a learning environment free from discrimination on the basis of disability as provided in California Education Code section 220, defendants the named EMPLOYEES OF THE ARMS OF THE EDUCATION SYSTEM denied MAX and THE NAMED PLAINTIFF

1    STUDENTS' rights under Sections 200, 201, 220, and 260, et seq., of the California

2    Education Code and the regulations promulgated thereunder.

3        504.   At all times herein mentioned, THE ARMS OF THE EDUCATIONAL

4    SYSTEM and DOE defendants, received or benefitted from, and defendants, GHS and its

5    employees and DOE defendants, indirectly received or benefitted from, state financial

6    assistance for providing education to special needs/disabled students in California.

7        505.  At all times herein mentioned, defendants,  the names EMPLOYEES OF THE

8    ARMS OF THE EDUCATIONAL SYSTEM, GHS AND ITS EMPLOYEES and DOE

9    defendants, were prohibited, by California Education Code Section 220 from discriminating

10   against students on the basis of their disability in any activity conducted by those educational

11   institutions.

12       506.  At all times herein mentioned, defendants, the named  EMPLOYEES OF THE

13   ARMS OF THE EDUCATIONAL SYSTEM, GHS AND ITS EMPLOYEES and DOE

14   defendants, discriminated against MAX and THE NAMED PLAINTIFFS/*all* THE

15   PLAINTIFF STUDENTS by failing to provide THE NAMED PLAINTIFF STUDENTS/*all*

16   THE PLAINTIFF STUDENTS, and MAX, academic instruction and support; failing to

17   follow individualized education plans; using prone restraints as substitutes for behavioral

18   intervention plans; and/or using prone restraints in lieu of planned, systematic behavioral

19   interventions, teaching and/or encouraging corporal punishment to be used on special

20   needs/disabled students in violation of California law.

21       507.  At all times herein mentioned, defendants the named EMPLOYEES OF THE

22   ARMS OF THE EDUCATIONAL SYSTEM, GHS AND ITS EMPLOYEES, and DOE

23   defendants, willfully, knowingly, intentionally, maliciously, and routinely used and/or

24   encouraged the use of, prone and other types of restraints on disabled children, including

25   MAX, THE NAMED PLAINTIFF STUDENTS/*all* THE PLAINTIFF STUDENTS as a form

26   of corporal punishment in violation of California law.

508.  At all times herein mentioned, defendants, the named EMPLOYEES OF THE ARMS OF THE EDUCATIONAL SYSTEM, GHS AND ITS EMPLOYEES, and DOE defendants willfully, knowingly, intentionally, maliciously, and routinely used and/or encouraged the use of prone and other types of restraints, known by said defendants to be dangerous, on disabled children, including minor decedent MAX, THE NAMED PLAINTIFF STUDENTS/*all* THE PLAINTIFF STUDENTS with reckless disregard of the safety of said students, and with reckless disregard for the emotional injuries inflicted on MAX, THE NAMED PLAINTIFF STUDENTS/*all* THE PLAINTIFF STUDENTS.

509.  At all times herein mentioned, defendants, the named EMPLOYEES OF THE ARMS OF THE EDUCATIONAL SYSTEM, GHS AND ITS EMPLOYEES, GHS AND ITS EMPLOYEES, and DOE defendants, in doing each of the afore-mentioned acts, willfully, knowingly, intentionally, maliciously, and routinely used and/or encouraged the use of prone and other types of restraints, to injure disabled children, including minor decedent MAX, THE NAMED PLAINTIFF STUDENTS/*all* THE PLAINTIFF STUDENTS, and to create a reign of terror within the educational environment, in place and instead of providing educational services for special needs/disabled children, for which they were hired.

510.  The conduct of defendants the named EMPLOYEES OF THE ARMS OF THE EDUCATIONAL SYSTEM, GHS AND ITS EMPLOYEES, and DOE defendants, in doing the things herein alleged, was a substantial factor in causing MAX to suffer death and   THE NAMED PLAINTIFF STUDENTS/*all* THE PLAINTIFF STUDENTS to suffer general and special damages according to proof at the time of trial.

511.  By virtue of the willful, knowing, intentional, malicious and routine acts of  the named EMPLOYEES OF THE ARMS OF THE EDUCATIONAL SYSTEM, GHS AND ITS EMPLOYEES, and DOE defendants, which were done with a reckless disregard for the safety  MAX, THE NAMED PLAINTIFF STUDENTS/*all* THE PLAINTIFF STUDENTS. Accordingly, estate of MAX, THE NAMED PLAINTIFF STUDENTS and *all* THE

1   PLAINTIFF STUDENTS are entitled to punitive damages against non-public entities

2   according to an award at the time of trial.

3                              **EIGHTH CAUSE OF ACTION**

4          **FOR INTERFERENCE WITH THE EXERCISE OF CIVIL RIGHTS UNDER**

5                **CALIFORNIA CIVIL CODE SECTIONS 51(b) and  51.7**

6          **(ASSERTED BY ESTATE OF MAX against CDE, YOLO , and DJUSD and their**

7          **named employees;  D.Z. against FCUSD and FCSELPA and their named employees in**

8          **their official capacities; S.D. against EDCOE, EDCSELPA and their named employees**

9             **in their official capacities;  H.K. against PUSD, EDCOSESELPA and their named**

10           **employees in their official capacities; M.S. against CDE, EGUSD, EGUSDSELPA,**

11          **SCOE and their named employees in their official capacities; AUSTIN against RUSD**

12          **and its named employees in their official capacities; and ASSERTED BY ESTATE OF**

13          **MAX and each of THE PLAINTIFF STUDENTS AGAINST GHS and its employees;**

14                              **and DOE DEFENDANTS)**

15         512.  Estate of MAX, THE NAMED PLAINTIFF STUDENTS/*all* THE PLAINTIFF

16   STUDENTS incorporate by reference each and every general allegation regarding the parties

17   and the allegations of the First through Seventh Causes of Action, inclusive. 1-32, 45-46, 59-

18   69, 72-126, 129, 134, 139-148, 153, 157, 179-427, 429-446, 451-455, 458, 461, 463,

19   464,466, 467, 470-472, 474, 478, 481 491, 492, 497, 501,503, 505-508, 513-516, 518, 523,

20   524, 531-533, 536-540, 551-553, 555-559, 561, 564-566, 574-576, 578, 579, 581, 582, 595,

21   597, 599, 603, 608, 616, 617, 618, 623, 635.

22         513.    Defendants CDE, THE ARMS OF THE EDUCATIONAL SYSTEM,

23   EMPLOYEES OF THE ARMS OF THE EDUCATIONAL SYSTEM, GHS AND ITS

24   EMPLOYEES, and DOE defendants, committed, and/or caused to be committed, multiple

25   violent acts against  MAX, THE NAMED PLAINTIFF STUDENTS/*all* THE PLAINTIFF

26   STUDENTS because of their disability.

514.  Defendant, CDE aided, incited or conspired with defendants THE ARMS OF THE EDUCATIONS SYSTEM, in performing acts of violence against  MAX, THE NAMED PLAINTIFF STUDENTS/*all* THE PLAINTIFF STUDENTS because of their disability.

515.  A substantial motivating reason for the conduct of defendants, THE ARMS OF THE EDUCATIONAL SYSTEM AND THEIR, EMPLOYEES, GHS AND ITS EMPLOYEES, GHS AND ITS EMPLOYEES, and DOE defendants in committing said acts was their perception of   MAX, THE NAMED PLAINTIFF STUDENTS/*all* THE PLAINTIFF STUDENTS disability.

516.   As a result of said acts of defendants, CDE, THE ARMS OF THE EDUCATIONAL SYSTEM AND THEIR EMPLOYEES, GHS AND ITS EMPLOYEES, and DOE defendants, MAX suffered physical injury and death, and THE NAMED PLAINTIFF STUDENTS/*all* THE PLAINTIFF STUDENTS suffered physical and emotional injuries.

517.   The conduct of defendants, CDE, THE ARMS OF THE EDUCATIONAL SYSTEM AND THEIR EMPLOYEES, GHS AND ITS EMPLOYEES, and DOE defendants, was a substantial factor in causing MAX's injuries and death, and THE NAMED PLAINTIFF STUDENTS/*all* THE PLAINTIFF STUDENTS injuries physical and emotional injuries as herein pled.

518.  By the acts alleged herein above, each defendant, CDE, THE ARMS OF THE EDUCATIONAL SYSTEM AND THEIR, EMPLOYEES, GHS AND ITS EMPLOYEES, and DOE defendants, subjected  MAX, THE NAMED PLAINTIFF STUDENTS/*all* THE PLAINTIFF STUDENTS to violence, and/or threats of violence, against their person on account of their disability, and/or acted to aid, abet, and conspire with the other said defendants to deny MAX, THE NAMED PLAINTIFF STUDENTS/*all* THE PLAINTIFF STUDENTS their right to be free from any violence or intimidation by threat of violence, committed against  MAX, THE NAMED PLAINTIFF STUDENTS/*all* THE PLAINTIFF

1    STUDENTS person, on the account of their disability free from any violence or intimidation

2    by threat of violence committed against their disabled children.

3        519.    In doing the things herein alleged, defendants, CDE, THE ARMS OF THE

4    EDUCATIONAL SYSTEM AND THEIR EMPLOYEES,, GHS AND ITS EMPLOYEES,

5    and DOE defendants, violated the civil rights of  MAX, THE NAMED PLAINTIFF

6    STUDENTS/*all* THE PLAINTIFF STUDENTS as set forth in California Civil Code section

7    51.7.

8        520.    Defendants CDE, YOLO, DJUSD, THE  ARMS OF THE EDUCATIONAL

9    SYSTEM AND THEIR EMPLOYEES, GHS AND ITS EMPLOYEES, and DOE defendants

10   unlawful conduct as alleged herein, was a substantial factor in causing MAX to suffer

11   medical and funeral expenses from his injuries and resulting death in an amount exceeding

12   the jurisdictional minimum of the court, according to proof.

13       521.    Defendants CDE, THE ARMS OF THE EDUCATIONAL SYSTEM AND

14   THEIR, EMPLOYEES, GHS AND ITS EMPLOYEES, and DOE defendants, unlawful

15   conduct as alleged herein, were a substantial factor in THE NAMED PLAINTIFF

16   STUDENTS/*all* THE PLAINTIFF STUDENTS suffering physical injury, severe emotional

17   distress, humiliation, embarrassment, mental and emotional distress, and anxiety, all in an

18   amount exceeding the jurisdictional minimum of the court, according to proof.

19       522.    The unlawful conduct of defendants CDE, THE ARMS OF THE

20   EDUCATIONAL SYSTEM AND THEIR EMPLOYEES, GHS AND ITS EMPLOYEES,

21   and DOE defendants, as alleged herein, was a substantial factor in THE NAMED

22   PLAINTIFF STUDENTS/*all* THE PLAINTIFF STUDENTS suffering economic harm future

23   economic harm and other consequential damages, all in an amount according to proof at trial.

24       523.    The aforementioned conduct by defendants CDE, THE ARMS OF THE

25   EDUCATIONAL SYSTEM AND THEIR EMPLOYEES, GHS AND ITS EMPLOYEES,

26   and DOE defendants was willful, wanton, and malicious, and defendants acted with

1  conscious disregard of the Plaintiff's rights and feelings.  Defendants also acted with the

2  knowledge of or with reckless disregard for the fact that their conduct was certain to cause

3  injury and/or humiliation to MAX, THE NAMED PLAINTIFF STUDENTS/*all* THE

4  PLAINTIFF STUDENTS.

5       524.  Plaintiffs are further informed and believe that defendants THE ARMS OF THE

6  EDUCATIONAL SYSTEM, THE EMPLOYEES OF THE ARMS OF THE

7  EDUCATIONAL SYSTEM, GHS AND ITS EMPLOYEES, and DOE defendants, intended

8  to cause fear, physical injury and/or pain and suffering to MAX, THE NAMED PLAINTIFF

9  STUDENTS/*all* THE PLAINTIFF STUDENTS.  By virtue of the foregoing, estate of MAX,

10  THE NAMED PLAINTIFF STUDENTS/*all* THE PLAINTIFF STUDENTS, are entitled to

11  recover punitive and exemplary damages from the non-public entity defendants according to

12  proof at trial.

13       525.  In addition to and/or in lieu of plaintiff's election, estate of MAX, THE

14  NAMED PLAINTIFF STUDENTS/*all* THE PLAINTIFF STUDENTS are entitled to receive

15  statutory damages pursuant to Cal Civ Code 52(b), including actual and exemplary damages.

16       526.  Pursuant to California Civil Code section 52(b)(3), estate of MAX, THE

17  NAMED PLAINTIFF STUDENTS/*all* THE PLAINTIFF STUDENTS, have incurred, and

18  will continue to incur, attorneys fees in the prosecution of this action and therefore are

19  entitled to reasonable attorneys fees and costs as set by the Court.

20                 **NINTH CAUSE OF ACTION**

21       **FOR INTERFERENCE WITH EXERCISE OF CIVIL RIGHTS IN**

22       **VIOLATION OF CALIFORNIA CIVIL CODE SECTION 52.1**

23       **(ASSERTED BY ESTATE OF MAX against CDE, YOLO ,and DJUSD and their**

24       **named employees;  D.Z. against FCUSD and FCSELPA and their named employees in**

25       **their official capacities; S.D. against EDCOE, EDCSELPA and their named employee in**

26       **their official capacities,  H.K. against PUSD, EDCOSESELPA and their named**

**employees in their official capacities, M.S. against CDE, EGUSD, EGUSDSELPA,**

**SCOE and their named employees in their official capacities; AUSTIN against RUSD**

**and its named employees in their official capacities; and ASSERTED BY ESTATE OF**

**MAX and each of THE PLAINTIFF STUDENTS AGAINST GHS and its employees;**

**and DOE defendants)**

527.  Estate of  MAX, THE NAMED PLAINTIFF STUDENTS/*all* THE PLAINTIFF

STUDENTS incorporate by reference paragraphs 1-32, 45-46, 59-69, 72-126, 129, 134, 139-

148, 153, 157, 179-427, 429-446, 451-455, 458, 461, 463, 464,466, 467, 470-472, 474, 478,

481 491, 492, 497, 501,503, 505-508, 513-516, 518, 523, 524, 531-533, 536-540, 551-553,

555-559, 561, 564-566, 574-576, 578, 579, 581, 582, 595, 597, 599, 603, 608, 616, 617, 618,

623, 635 of this complaint as if set forth in full herein.

528.  California Civil Code 52.1 provides that it is unlawful to interfere with the

exercise or enjoyment of any rights under the Constitution and the laws of this state and the

United States by attempted use of threats, intimidation or coercion.

529.  20 USC 1400 et seq guarantees the rights of disabled children in California to

fair access to public education in the least restrictive environment.

530.  California Civil Code section 43 guarantees the right of every person to be free

from bodily restraint or harm and personal insult.

531.  In doing the things herein alleged, defendants CDE, THE ARMS OF THE

EDUCATIONAL SYSTEM AND ITS EMPLOYEES, GHS AND ITS EMPLOYEES, and

DOE defendants, intentionally interfered with and attempted to interfere with the civil rights

of  MAX, THE NAMED PLAINTIFF STUDENTS/*all* THE PLAINTIFF STUDENTS by

threats, intimidation, or coercion.

532.  Defendants CDE, THE ARMS OF THE EDUCATIONAL SYSTEM AND ITS

EMPLOYEES, GHS AND ITS EMPLOYEE, and DOE defendants, made threats of violence

against  MAX, THE NAMED PLAINTIFF STUDENTS/*all* THE PLAINTIFF STUDENTS,

1  as herein above alleged, causing  MAX, THE NAMED PLAINTIFF STUDENTS/*all* THE

2  PLAINTIFF STUDENTS, to reasonably believe that if they exercised their right to education

3  in the least restrictive environment which took into account his special needs and disability,

4  and causing,   MAX, THE NAMED PLAINTIFF STUDENTS/*all* THE PLAINTIFF

5  STUDENTS to believe defendants CDE, THE ARMS OF THE EDUCATIONAL SYSTEM

6  AND THEIR EMPLOYEES, GHS AND ITS EMPLOYEES, and DOE defendants, would

7  commit violence against MAX, THE NAMED PLAINTIFF STUDENTS/*all* THE

8  PLAINTIFF STUDENTS, by placing them in prolonged prone and other restraints and that

9  defendants, CDE, THE ARMS OF THE EDUCATIONAL SYSTEM AND ITS

10  EMPLOYEES, GHS AND ITS EMPLOYEES, and DOE defendants, had the apparent ability

11  to carry out the threats.

12      533.  That defendants CDE, THE ARMS OF THE EDUCATIONAL SYSTEM AND

13  THEIR EMPLOYEES, GHS AND ITS EMPLOYEES, and DOE defendants, acted violently

14  against  MAX, THE NAMED PLAINTIFF STUDENTS/*all* THE PLAINTIFF STUDENTS,

15  to prevent   MAX, THE NAMED PLAINTIFF STUDENTS/*all* THE PLAINTIFF

16  STUDENTS from exercising their rights and to retaliate against MAX, THE NAMED

17  PLAINTIFF STUDENTS/*all* THE PLAINTIFF STUDENTS for having exercised their

18  rights, inclusive of their special needs and disability.

19      534.  That as a result of the conduct of defendant CDE, THE ARMS OF THE

20  EDUCATIONAL SYSTEM AND THEIR EMPLOYEES, GHS, AND ITS EMPLOYEES,

21  and DOE defendants, as herein alleged, THE NAMED PLAINTIFF STUDENTS/*all* THE

22  PLAINTIFF STUDENTS suffered physical and emotional harm, and MAX suffered injuries

23  and death.

24      535.  The conduct of defendants CDE, THE ARMS OF THE EDUCATIONAL

25  SYSTEM AND THEIR EMPLOYEES, GHS AND ITS EMPLOYEES,   and DOE

1    defendants, as herein alleged, was a substantial factor in causing said harm to  MAX, THE

2    NAMED PLAINTIFF STUDENTS/*all* THE PLAINTIFF STUDENTS.

3        536.  At all times herein mentioned, the conduct of defendants, CDE, THE ARMS OF

4    THE EDUCATIONAL SYSTEM THEIR EMPLOYEES, GHS AND ITS EMPLOYEES, and

5    DOE defendants as herein alleged, further interfered with the exercise of  MAX's, THE

6    NAMED PLAINTIFF STUDENTS'/*all* THE PLAINTIFF STUDENTS' civil rights to fair

7    access to public education by actual use of, and threatened use of, behavioral restraints which

8    were imposed on MAX and THE NAMED PLAINTIFF STUDENTS/*all* THE PLAINTIFF

9    STUDENTS, as a means of coercion, discipline, convenience, or retaliation by staff; that

10   were used to control behavior that did not pose a clear and present danger of serious physical

11   harm to the pupil or others that could not be immediately prevented by a response that is less

12   restrictive; using a physical restraint technique that obstructed  MAX's, THE NAMED

13   PLAINTIFF STUDENTS'/*all* THE PLAINTIFF STUDENTS' respiratory airway or impaired

14   their ability to breathe;  placing MAX, THE NAMED PLAINTIFF STUDENTS/*all* THE

15   PLAINTIFF STUDENTS in a facedown position with the pupil's hands held or restrained

16   behind the pupil's back; and by using a behavioral restraint for longer than was necessary to

17   contain the behavior that allegedly posed a clear and present danger of serious physical harm

18   to the pupil or others.

19       537.  As alleged herein above, defendants intentionally interfered with or attempted to

20   interfere with   MAX', THE NAMED PLAINTIFF STUDENTS'/*all* THE PLAINTIFF

21   STUDENTS' clearly established rights guaranteed under the laws of the United States and

22   the State of California, including, but not limited to  MAX's, THE NAMED PLAINTIFF

23   STUDENTS'/*all* THE PLAINTIFF STUDENTS' right of protection from battery, assault,

24   false imprisonment, intimidation, and coercion.

25       538.  Defendants CDE, THE ARMS OF THE EDUCATIONAL SYSTEM AND

26   THEIR EMPLOYEES, GHS AND ITS EMPLOYEES and DOE defendants, conspired,

1    aided, abetted, or incited each other to threaten, intimidate, coerce and punish  MAX, THE

2    NAMED PLAINTIFF STUDENTS/*all* THE PLAINTIFF STUDENTS who were exceptional

3    needs/disabled students, by placing them in prolonged prone restraints from predictable and

4    known behaviors, and without regard for the physical and emotional needs of such children.

5         539.    The unlawful conduct of defendants CDE, THE ARMS OF THE

6    EDUCATIONAL SYSTEM AND THEIR EMPLOYEES, GHS AND ITS EMPLOYEES,

7    and DOE defendants, caused MAX, THE NAMED PLAINTIFF STUDENTS/*all* THE

8    PLAINTIFF STUDENTS to suffered physical injury, severe emotional distress, humiliation,

9    embarrassment, mental and emotional distress and anxiety, and economic harm, and severe

10   emotional distress, all in an amount within the jurisdiction of the court according to proof at

11   trial.

12        540.    The unlawful conduct of the defendants CDE, THE ARMS OF THE

13   EDUCATIONAL SYSTEM AND THEIR EMPLOYEES, GHS AND ITS EMPLOYEES,

14   and DOE defendants, acted with conscious disregard of MAX', THE NAMED PLAINTIFF

15   STUDENTS'/*all* THE PLAINTIFF STUDENTS' rights and feelings.  Defendants CDE, THE

16   ARMS OF THE EDUCATIONAL SYSTEM AND THEIR EMPLOYEES, GHS, AND ITS

17   EMPLOYEES, and DOE defendants, also acted with the knowledge of or with reckless

18   disregard for the fact that their conduct was certain to cause injury and/or humiliation to

19   MAX, THE NAMED PLAINTIFF STUDENTS/*all* THE PLAINTIFF STUDENTS.  MAX,

20   THE NAMED PLAINTIFF STUDENTS/*all* THE PLAINTIFF STUDENTS are further

21   informed and believe that defendants, THE EMPLOYEES OF THE ARMS OF THE

22   EDUCATIONAL SYSTEM, GHS AND ITS EMPLOYEES and DOE defendants, intended

23   to cause fear, physical injury and/or pain and suffering to  MAX and THE NAMED

24   STUDENTS/*all* THE PLAINTIFF STUDENTS.  By virtue of the foregoing, estate of MAX

25   and THE PLAINTIFF STUDENTS are entitled to recover punitive and exemplary damages

26   from the non-public entity defendants according to proof at trial.

541.  In addition to and/or in lieu of plaintiffs' elections, estate of  MAX, THE NAMED PLAINTIFF STUDENTS/*all* THE PLAINTIFF STUDENTS are entitled to receive and hereby seek statutory damages pursuant to California Civil Code section 52(b), including actual and exemplary damages.

542.  Pursuant to California Civil Code section 52(b), estate of MAX, THE NAMED PLAINTIFF STUDENTS/*all* THE PLAINTIFF STUDENTS, have incurred, and will continue to incur attorneys fees in the prosecution of this action ad therefore request such reasonable attorneys fees and costs as set by the Court.

**TENTH CAUSE OF ACTION**

**WRONGFUL DEATH OF MINOR MAX BENSON**

**(ASSERTED BY PLAINTIFFS, LANGLEY AND  BENSON**

**AGAINST DEFENDANTS CDE, YOLO, HOLSTEGE in her official capacity, BENO in her official capacity, DJUSD, McGREW in his official capacity,**

**CHESSMAN in her official capacity, GALAS in her official capacity, GHS, MEYERS, KELLER, CHRISTENSEN,  WOHLWEND, NARAN, MORGAN, WATSON, THOMAS, CHAMBERS, THURMOND, in his official capacity, and DOE DEFENDANTS)**

543.  Plaintiffs, LANGLEY and BENSON incorporate by reference paragraphs 1-19, 34, 35, 45-46, 48-49, 58-60, 69, 72-126, 170, 179-325, 429-446, 451-455, 458, 461, 463, 464,466, 467, 470-472, 474, 478, 481 491, 492, 497, 501,503, 505-508, 513-516, 518, 523, 524, 531-533, 536-540, 551-553, 555-559, 561, 564-566, 574-576, 578, 579, 581, 582, 595, 597, 599, 603, 608, 616, 617, 618, 623, 635 of this complaint as if set forth in full herein.

544.   At all times herein mentioned, defendants, YOLO, HOLSTEGE, BENO, DJUSD, McGREW, CHESSMAN, GALAS, GHS, MEYERS, KELLER, CHRISTENSEN, NARAN, and DOE defendants, breached mandatory duties of care, as herein above alleged.

545.  At all times herein mentioned, defendants YOLO and DJUSD had a mandatory duty under California Education Code section 56366 to enter into a written agreement (master contract) to specify the general administrative agreements in providing education and related services to special education students in accordance with the pupil's IEP.   This mandatory agreement is required to include procedures fore record keeping and documentation and the maintenance of school records by the contracting Local Education Agency.

546. Plaintiffs are informed and believe that neither YOLO nor DJUSD had a Master Contract with GHS, MEYERS, KELLER, CHRISTENSEN, NARAN and DOE defendants at the time MAX was enrolled and/or continued being enrolled in GHS.

547.  Defendants YOLO, HOLSTEGE, BENO, DJUSD, McGREW, CHESSMAN, GALAS, GHS, MEYERS, KELLER, CHRISTENSEN, NARAN, and DOE defendants failed to inform LANGLEY and BENSON on enrollment or continued enrollment that there was no Master Contract with either YOLO or DJUSD and GHS.

548.  Plaintiffs LANGLEY and BENSON did not learn that there was no Master Contract between defendants YOLO and DJUSD and GHS until after the death of Max.

549.  Had plaintiffs LANGLEY and BENSON been informed that GHS, MEYERS, KELLER, CHRISTENSEN, NARAN and DOE defendants were not contracted with YOLO or DJUSD, LANGLEY and BENSON would not have enrolled MAX in GHS.

550.  In or around early June 2018 defendants YOLO and DJUSD, by and through HOLSTEGE, BENO, McGREW, CHESSMAN, GALAS and DOE defendants, urged, recommended, and advised LANGLEY to enroll and/or continue MAX's enrollment  in GHS as a special needs students.

551.  At or around the time defendant YOLO and DJUSD, by and through its employees HOLSTEGE, BENO, McGREW, CHESSMAN, GALAS and DOE defendants recommended to Max's parents that they enroll or continue enrollment of MAX at GHS,

1  defendant YOLO informed DJUSD, by and through defendants McGREW, CHESSMAN,

2  GALAS, and DOE defendants, that defendant GHS had been removed from the list of

3  approved nonpublic schools to which special-needs/disabled students should be referred.

4  552.  At or around the time YOLO told defendant DJUSD that defendant GHS was no

5  longer on said approved list, YOLO failed to disclose to DJUSD the reasons why GHS had

6  been removed as a recommended nonpublic school provider of educational services for

7  special-needs/disabled children.

8  553.  At or around the time YOLO told DJUSD that defendant GHS was no longer on

9  the approved list, DJUSD, McGREW, CHESSMAN, GALAS, and DOE defendants failed to

10  ascertain the reasons why GHS had been removed as a recommended provider of educational

11  services for special-needs disabled children.

12  554.  At no time prior to MAX's death did defendants YOLO, HOLSTEGE, BENO,

13  DJUSD, McGREW, CHESSMAN, GALAS, GHS, MEYERS, KELLER, CHRISTENSEN,

14  NARAN, WOHLWEND or DOE defendants disclose to LANGLEY and BENSON  that

15  defendant GHS had been removed as a recommended nonpublic school provider of

16  educational services for special needs children.

17  555.  Had LANGLEY and BENSON been informed that defendant GHS had been

18  removed from the list of recommended non-public school providers of educational services

19  for special needs children, they would not have enrolled MAX at defendant GHS.

20  556.  Prior to urging, recommending, and advising LANGLEY to enroll/continue

21  enrollment of  MAX at GHS, defendants YOLO, HOLSTEGE, BENO, DJUSD,  McGREW,

22  CHESSMAN, GALAS, and DOE defendants did not conduct an investigation into practices

23  at GHS involving the use of restraints on students.

24  557.  Had plaintiffs LANGLEY and BENSON known that defendants YOLO,

25  HOLSTEGE, BENO, DJUSD,  McGREW, CHESSMAN, GALAS, and DOE defendants did

1    not conduct an investigation into the practices at GHS that involved the use of restraints on

2    students, they would not have enrolled MAX at defendant GHS.

3          558.   At all times herein mentioned, defendants YOLO, HOLSTEGE, BENO,

4    DJUSD,  McGREW, CHESSMAN, GALAS, and DOE defendants knew or should have

5    known that there were previously sustained findings of unlawful use of prone restraints on an

6    exceptional needs child at GHS that had resulted in physical injury.

7          559.  YOLO, HOLSTEGE, BENO, DJUSD,  McGREW, CHESSMAN, GALAS, and

8    DOE defendants failed to disclose to LANGLEY and BENSON at any time prior to MAX's

9    death, that there were previously sustained findings of unlawful use of prior restraints on a

10    special-needs/disabled child at GHS that resulted in physical injury.

11          560.   HAD plaintiffs LANGLEY and BENSON been informed that there were

12    previously sustained findings of unlawful use of prior restraints on a special-needs/disabled

13    child at GHS that had resulted in physical injury, they would not have enrolled or continued

14    MAX's enrollment at GHS.

15          561.   At all times herein mentioned, defendants, YOLO, HOLSTEGE, BENO,

16    DJUSD, McGREW, CHESSMAN, GALAS, GHS, MEYERS, KELLER, CHRISTENSEN,

17    WOHLWEND, MORGAN, WATSON, THOMAS, CHAMBERS and DOE defendants,

18    breached their duty of due care to MAX, as hereinabove alleged, and by, but not limited to:

19          a.   Failure to develop and maintain effective procedures governing

20               emergency interventions.

21          b.   Failure to obtain proper training for use of behavioral emergency

22               interventions.

23          c.   Failure to provide oversight on the use of prone restraints.

24          d.   Failure to develop protocols for use of restraints.

25          e.   Failure to prohibit prone restraints on physically disabled children.

26          f.   Failure to prohibit prolonged restraints (anything over 15 minutes).

1    g.    Failure to require that the child be released from a restraint at the

2          earliest possible moment.

3    h.    Failure to prohibit the use of any restraint when contraindicated by the

4          child's medical or psychological condition, including obesity,

5          neurological and muscular-skeletal compromise, and use of psychiatric

6          medications, any and all of which are known to increase risk of death.

7    i.    Failure to prohibit restraints that constrict the child's ability to breathe.

8

9    j.    Failure to prohibit restraints when the child's airway is obstructed or

10         the child is not breathing.

11   k.    Failure to prohibit the use of multiple staff members in a restraint,

12         which exponentially increases the risk of death.

13   l.    Failure to provide for the comfort of the child, including, but not

14         limited to: offering a restrained child fluids, bathroom use, exercise,

15         range of motion and periodic release of limbs.

16   m.    Failure to require monitoring by staff of the vital signs of the child

17         regularly throughout the restraint.

18   n.    Failure to require staff to identify signs or complaints of distress that

19         must be immediately addressed, including but not limited to: urination,

20         vomiting, and agitation.

21   o.    Failure to require continuous, close supervision of a restraint by the

22         Handle with Care trainer or another staff member who is not involved

23         in the restraint.

24   p.    Failure to require immediate and accurate reporting on each restraint.

25   q.    Failure to conduct a prompt and thorough review of any restraint

26         imposed as a means to ensure compliance with laws and policies; to

1   ensure continuing safety of students; and to prevent other incidents of

2   restraint.

3       r.    Failure to provide for:

4           i.    primary preventative measures rather than restraint;

5           ii.    interventions that are less intrusive than restraints;

6           iii.    effective ways to de-escalate situations to avoid restraints; and

7           iv.    crisis intervention techniques that utilize alternatives to

8              restraint.

9       s.    Failure to provide staff with resources and tools to properly respond to

10   the needs of those whom they serve and to be able to identify and

11   address the triggers that may cause emotionally disturbed children to

12   react in ineffectual ways to the environment.

13       t.    Failure to increase resources to ensure the provision of adequate

14   alternative treatment options, including the use of a one to one

15   paraeducator to address MAX's specific needs

16       u.    Failure to teach students adaptive behaviors, especially involving

17   autistic children, such as MAX, who do not have effective ways of

18   communicating and interacting with others.

19       v.    Allowing use of physical restraints on children which:

20           i.    create an aversive environment counterproductive to

21              facilitating learning;

22           ii.    cause significant physical harm, serious, foreseeable long term

23              psychological impairment.

24       w.    Failure to provide oversight on the use of restraints to determine:

25           i.    whether the intervention was necessary;

ii. whether each restraint was implemented in a manner consistent with staff training, as well as school and District (SELPA) policy.

x. Allowing the use of deadly force on children without meaningful oversight and systemic reform.

y. Allowed use of deadly force on children without requiring staff to know basic safety techniques, such as CPR

z. Allowed use of deadly force on children without requiring staff to call 911 in the event of a medical emergency

562. Breach of said mandatory duties by defendants, YOLO, HOLSTEGE, BENO, DJUSD, McGREW, CHESSMAN, GALAS, GHS, MEYERS, KELLER, CHRISTENSEN, NARAN, and DOE defendants, school staff at defendant GHS, including defendants, WOHLWEND, MORGAN, WATSON, THOMAS, and CHAMBERS, in imposing a prolonged prone restraint on MAX, and failure to render competent medical aid to MAX, was a substantial factor in causing the death of MAX.

563. At all times herein mentioned, defendants, YOLO, HOLSTEGE, BENO, DJUSD, McGREW, CHESSMAN, GALAS, GHS, MEYERS, KELLER, CHRISTENSEN, NARAN, WOHLWEND, MORGAN, WATSON, THOMAS, CHAMBERS and DOE defendants, in doing the acts afore-alleged, breached the general duties of due care of educational professionals toward MAX, who was a disabled student under their guidance and care.

564. At all times herein mentioned, defendants, YOLO, HOLSTEGE, BENO, DJUSD, McGREW, CHESSMAN, GALAS, GHS, MEYERS, KELLER, CHRISTENSEN, WOHLWEND, MORGAN, WATSON, THOMAS, CHAMBERS, and DOE defendants, willfully, knowingly, intentionally, maliciously, and routinely used and/or allowed to be

1  used, prone restraints on disabled children as a form of corporal punishment in violation of

2  California law.

3  565.  At all times herein mentioned, defendants, YOLO, HOLSTEGE, BENO,

4  DJUSD, McGREW, CHESSMAN, GALAS, GHS, MEYERS, KELLER, CHRISTENSEN,

5  WOHLWEND, MORGAN, WATSON, THOMAS, CHAMBERS, and DOE defendants,

6  willfully, knowingly, intentionally, maliciously, and routinely used prone restraints, known

7  by said defendants to be dangerous, on disabled children with reckless in disregard of the

8  safety of said students.

9  566.  At all times herein mentioned, defendants, YOLO, HOLSTEGE, BENO,

10  DJUSD, McGREW, CHESSMAN, GALAS, GHS, MEYERS, KELLER, CHRISTENSEN,

11  WOHLWEND, MORGAN, WATSON, THOMAS, CHAMBERS, and DOE defendants, in

12  doing each of the afore-mentioned acts, willfully, knowingly, intentionally, maliciously, and

13  routinely used prone restraints, to injure children and to create a reign of terror within the

14  educational environment, in place and instead of providing educational services for special

15  needs children, for which they were hired.

16  567.  The action and inaction of defendants, YOLO, HOLSTEGE, BENO, DJUSD,

17  McGREW, CHESSMAN, GALAS, GHS, MEYERS, KELLER, CHRISTENSEN,

18  WOHLWEND, MORGAN, WATSON, THOMAS, CHAMBERS, and DOE defendants,

19  were substantial factors in causing the death of minor decedent MAX.

20  568.  As a result of the afore-mentioned acts, plaintiffs, LANGLEY and BENSON,

21  have lost the care, comfort and society of their son, MAX, in an amount according to proof at

22  the time of trial.

23  569.  As a result of the afore-mentioned acts, plaintiffs, LANGLEY,  BENSON and

24  estate of MAX, have incurred medical expenses, including ambulance, hospital, and doctors

25  services for their son for the period of time between the incident referenced herein and his

1   death, approximately 24 hours later, and for funeral expenses, in an amount to be ascertained

2   at the time of trial.

3       570.   In violating the mandatory statutory duties, as set forth above, defendants,

4   YOLO, HOLSTEGE, BENO, DJUSD, McGREW, CHESSMAN, GALAS, GHS, MEYERS,

5   KELLER,   CHRISTENSEN,   WOHLWEND,   MORGAN,   WATSON,   THOMAS,

6   CHAMBERS, and DOE defendants, said defendants were negligent per se.

7       571.   The violations of the mandatory statutory duties, as set forth above, were a

8   substantial factor in causing the death of MAX and the loss of care, comfort and society to

9   plaintiffs LANGLEY and BENSON and in the medical expenses and funeral expenses

10  incurred for MAX.

11      572.   By virtue of the willful and wanton, knowing, intentional, and malicious acts of

12  defendants, HOLSTEGE, BENO, McGREW, CHESSMAN, GALAS, GHS, MEYERS,

13  KELLER,   CHRISTENSEN,   WOHLWEND,   MORGAN,   WATSON,   THOMAS,

14  CHAMBERS, and DOE defendants, and acts by said defendants that were done in reckless

15  disregard for the safety and life of MAX, plaintiffs, LANGLEY, BENSON, and TURELLI,

16  are entitled to punitive damages against said non-public entity defendants according to an

17  award at the time of trial.

18                          **ELEVENTH CAUSE OF ACTION**

19                  **FOR BATTERY ELEVENTH CAUSE OF ACTION**

20                                  **BATTERY**

21  **(ASSERTED BY ESTATE OF MAX against CDE, YOLO, and DJUSD and their**

22  **named employees in their official capacities;  D.Z. against FCUSD and FCSELPA and**

23  **their named employees in their official capacities; S.D. against EDCOE, EDCSELPA**

24  **and their named employees in their official capacities,  H.K. against PUSD,**

25  **EDCOSESELPA and their named employees in their official capacities, M.S. against**

26  **CDE, EGUSD, EGUSDSELPA, SCOE and their named employees in their official**

**capacities; AUSTIN against RUSD and its named employees in their official capacities;**

**and ASSERTED BY ESTATE OF MAX and each of THE PLAINTIFF STUDENTS**

**AGAINST GHS and its employees;**

**AND DOE DEFENDANTS)**

573. Plaintiffs, estate of MAX and THE NAMED PLAINTIFF STUDENTS, AND *all* THE PLAINTIFF STUDENTS incorporate by reference paragraphs 1-32, 45-46, 48-69, 72-127, 132, 137, 142, 146, 151, 156 161, 165, 179-427, 436, 438, 439, 440-442, 461 467, 470, 471, 491, 506, 507, 514, 521, 536, 562-567 as if set forth in full.

574. The behaviors of MAX, THE NAMED PLAINTIFF STUDENTS/*all* THE PLAINTIFF STUDENTS that precipitated each of the events to which each of THE FACTUAL ALLEGATIONS refer, did not pose a clear and present danger of serious physical harm to themselves or to others.

575. The behaviors of MAX, THE NAMED PLAINTIFF STUDENTS/*all* THE PLAINTIFF STUDENTS that precipitated each of the events to which each THE FACTUAL ALLEGATIONS refer, could have been controlled by a less restrictive response than the imposition of prone and other types of restraint.

576. From the date of their respective enrollment at GHS, to the date of MAX's death and the date of disenrollment for THE NAMED PLAINTIFF STUDENTS/*all* THE PLAINTIFF STUDENTS, in or around December, 2018, MAX and THE NAMED PLAINTIFF STUDENTS/*all* THE PLAINTIFF STUDENTS were placed in numerous prone and other types of restraint, the dates of which are unknown to estate of MAX and THE NAMED PLAINTIFF STUDENTS/*all* THE PLAINTIFF STUDENTS at the present time.

577. The prone and other restraints inflicted on MAX and THE NAMED PLAINTIFF STUDENTS/*all* THE PLAINTIFF STUDENTS, were a substantial factor in causing MAX to suffer physical injuries and death, and in causing THE NAMED

1    PLAINTIFF STUDENTS/*all* THE PLAINTIFF STUDENTS lasting physical and

2    psychological harm.

3        578.   The actions of defendants, CDE, THE ARMS OF THE EDUCATIONAL

4    SYSTEM AND THEIR EMPLOYEES,   GHS AND ITS EMPLOYEES, and DOE

5    defendants, in doing the things alleged, was a continuous course of conduct which occurred

6    beginning on or about the date of MAX and THE NAMED PLAINTIFF STUDENTS'/*all*

7    THE PLAINTIFF STUDENTS' respective enrollment at defendant GHS and MAX's death

8    and  THE NAMED PLAINTIFF STUDENTS'/*all* THE PLAINTIFF STUDENTS' respective

9    dis-enrollment from the school.

10        579.  In performing the acts described herein, said defendants acted with the intent to

11   cause harmful and offensive contact with MAX and THE NAMED PLAINTIFF

12   STUDENTS/*all* THE PLAINTIFF STUDENTS.

13        580.  In doing the things herein alleged, said defendants intended to cause and did

14   cause a harmful contact with MAX and THE NAMED PLAINTIFF STUDENTS/*all* THE

15   PLAINTIFF STUDENTS.

16        581.   At all relevant times, THE NAMED PLAINTIFF STUDENTS/*all* THE

17   PLAINTIFF STUDENTS found the contact by said defendants to be harmful and offensive to

18   their person and dignity.   At no time did MAX or THE NAMED PLAINTIFF

19   STUDENTS/*all* THE PLAINTIFF STUDENTS consent to any of the acts by said defendants

20   as alleged herein.

21        582.  A reasonable child in MAX or  THE NAMED PLAINTIFF STUDENTS/all

22   THE PLAINTIFF STUDENTS  position would have been offended and/or harmed by the

23   contact of said defendants.

24        583.  The conduct of said defendants, as herein above alleged, was a substantial factor

25   in causing MAX to be physically injured and to die, and in causing THE NAMED

26   PLAINTIFF STUDENTS/*all* THE PLAINTIFF STUDENTS to be physically harmed,

emotionally harmed, all of which caused MAX and THE NAMED PLAINTIFF STUDENTS/*all* THE PLAINTIFF STUDENTS to experience offensive contact with his respective person.

584.   The conduct of said defendants, as herein alleged, was a substantial factor in causing injury and death to MAX and in causing THE NAMED PLAINTIFF STUDENTS/*all* THE PLAINTIFF STUDENTS to suffer physical injury, severe emotional distress, mental anguish, humiliation, embarrassment, mental and emotional distress, and anxiety, all in an amount exceeding the jurisdictional minimum of the court, according to proof.  The estate of MAX makes no claim for pain and suffering.

585.   As a direct and proximate result of the conduct of said defendants, as hereinabove alleged, the estate of MAX,  THE NAMED PLAINTIFF STUDENTS/*all* THE PLAINTIFF STUDENTS have suffered economic harm, future economic harm and other consequential damages, all in an amount according to proof at trial.

586.   The conduct of said defendants, as hereinabove alleged, was a substantial factor in causing THE NAMED PLAINTIFF STUDENTS/*all* THE PLAINTIFF STUDENTS to suffer general damages in an amount to be determined by proof at trial.  The estate of MAX makes no claim for general damages.

587.   The conduct of said defendants, as hereinabove alleged was a substantial factor in causing MAX and  THE NAMED PLAINTIFF STUDENTS/*all* THE PLAINTIFF STUDENTS to obtain medical services and treatment in an amount to be determined by proof at trial.

588.   As a further direct and proximate result of the conduct of said defendants, as hereinabove alleged, THE NAMED PLAINTIFF STUDENTS/*all* THE PLAINTIFF STUDENTS will, in the future, be compelled to incur additional obligations for medical treatment in an amount to be determined by proof at trial.  The estate of MAX makes no claim for future medical treatment.

589.  The aforementioned conduct by said defendants, was willful, wanton, and malicious, and was done with the knowledge that autistic children, physically vulnerable children, and children who take psychiatric medications are more likely to be physically and emotionally harmed by the use of physical restraints.

590.  At all relevant times, said defendants, acted with conscious disregard of MAX and  THE NAMED PLAINTIFF STUDENTS/*all* THE PLAINTIFF STUDENTS rights, safety, physical well-being, and feelings. Said defendants also acted with the knowledge of or with reckless disregard for the fact that their conduct was certain to cause injury and/or humiliation to MAX and THE NAMED PLAINTIFF STUDENTS/*all* THE PLAINTIFF STUDENTS.

591.    Estate of MAX and THE NAMED PLAINTIFF STUDENTS/*all* THE PLAINTIFF STUDENTS are further informed and believe that said defendants intended to cause fear, physical injury, and/or pain and suffering to MAX and THE NAMED PLAINTIFF STUDENTS/*all* THE PLAINTIFF STUDENTS.  By virtue of the foregoing, MAX and THE NAMED PLAINTIFF STUDENTS/*all* THE PLAINTIFF STUDENTS are entitled to recover punitive and exemplary damages from non-public entity defendants and DOE defendants, according to proof at trial. No claim for punitive damages is being made against defendants CDE or THE ARMS OF THE EDUCATIONAL SYSTEM.

**TWELFTH CAUSE OF ACTION**

**FOR ASSAULT**

**(ASSERTED BY ESTATE OF MAX against CDE, YOLO, and DJUSD and their named employees in their official capacities;  D.Z. against FCUSD and FCSELPA and their named employees, in their official capacities; S.D. against EDCOE, EDCSELPA and their named employees, in their official capacities;  H.K. against PUSD, EDCOSESELPA and their named employees in their official capacities, M.S. against CDE, EGUSD, EGUSDSELPA, SCOE and their named employees, in their official**

**capacities; AUSTIN against RUSD and its named employees in their official capacities;**

**and ASSERTED BY ESTATE OF MAX and each of THE PLAINTIFF STUDENTS**

**AGAINST GHS and its employees;**

**AND DOE DEFENDANTS)**

592.  Estate of MAX, D.Z. S.D., H.K., M.S. and AUSTIN  (referred to in this cause of action as "THE NAMED PLAINTIFF STUDENTS" and THE PLAINTIFF STUDENTS incorporate herein by reference paragraphs  1-32, 45-57, 59-69, 72-127, 132, 137, 142, 146, 151, 156 161, 165, 179-427, 436, 438, 439, 440-442, 461 467, 470, 471, 491, 506, 507, 514, 521, 531, 536, 562-567 thereto all other allegations of this Complaint, as if fully stated.

593.   The term "THE NAMED PLAINTIFF STUDENTS" refers only to those students who filed Tort Claims against the public entity and its employees who referred them to GHS or otherwise had involvement in the student's education at GHS as heretofore alleged.  The employees of the public entities named in this particular cause of action by THE NAMED PLAINTIFF STUDENTS are sued in this cause of action in their official capacity. THE NAMED PLAINTIFF STUDENTS' plead this cause of action against the respective public entities and their employees subject to the limitations of their respective tort claims filings, as heretofore alleged.  No other public entities or their employees are named in this cause of action.

594.   The term "THE PLAINTIFF STUDENTS" refers to *all* THE PLAINTIFF STUDENTS, with the limitation that in this cause of action only, *all* THE PLAINTIFF STUDENTS plead claims solely against GHS and DOE defendants.

595.  In performing the acts described herein, said defendants acted with the intent to cause apprehension of an immediate harmful and offensive contact with MAX and THE NAMED STUDENTS/*all* THE STUDENT PLAINTIFFS' respective person.

596. In doing the things herein alleged, said defendants intended to cause, and did cause, MAX and THE NAMED PLAINTIFF STUDENTS/*all* PLAINTIFF STUDENTS to suffer harmful or offensive contact.

597. As a result of said conduct of said defendants, MAX and THE PLAINTIFF STUDENTS/*all* PLAINTIFF STUDENTS, reasonably believed that he was about to be touched in a harmful or offensive manner, and in a manner that offended a reasonable sense of personal dignity.

598. In doing the things herein alleged, said defendants threatened to touch MAX and THE NAMED PLAINTIFFS/*all* THE PLAINTIFF STUDENTS in a harmful or in an offensive manner.

599. At all times herein mentioned, it reasonably appeared to MAX and THE NAMED PLAINTIFF STUDENTS/*all* THE PLAINTIFF STUDENTS that said defendants were about to carry out the threat.

600. At all times herein mentioned, MAX and THE NAMED PLAINTIFF STUDENTS/*all* THE PLAINTIFF STUDENTS did not consent to the conduct of said defendants.

601. MAX and THE NAMED PLAINTIFF STUDENTS/*all* THE PLAINTIFF STUDENTS suffered harm, as herein alleged.

602. The afore-mentioned conduct of said defendants was a substantial factor in causing MAX and THE NAMED PLAINTIFF STUDENTS/*all* THE PLAINTIFF STUDENTS' harm.

603. The conduct of said defendants, caused MAX and THE NAMED PLAINTIFF STUDENTS/*all* THE PLAINTIFF STUDENTS to be apprehensive that said defendants would subject MAX and THE NAMED PLAINTIFF STUDENTS/*all* THE PLAINTIFF STUDENTS to further intentional invasions of their right to be free from harmful and offensive contact, and demonstrated that at all times material herein, said defendants had a

1    present ability to subject MAX and THE NAMED PLAINTIFF/*all* THE PLAINTIFF

2    STUDENTS to an intentional offensive and harmful touching.

3        604.  Said defendants' unlawful conduct, as herein alleged, was a substantial factor in

4    causing MAX physical injuries and death and THE NAMED STUDENTS/*all* THE

5    PLAINTIFF STUDENTS to suffer physical and emotional injury, and future physical and

6    emotional injury, all in an amount within the jurisdiction of the court according to proof at

7    trial.

8        605.  At all relevant times, said defendants acted with conscious disregard of MAX

9    and THE NAMED STUDENTS/*all* THE PLAINTIFF STUDENTS' rights, safety, physical

10   well-being and feelings.  Said defendants also acted with the knowledge of, or with reckless

11   disregard for, the fact that their conduct was certain to cause injury and/or humiliation to

12   MAX and THE NAMED STUDENTS/*all* THE PLAINTIFF STUDENTS.  Said defendants

13   intended to cause fear, physical injury and/or pain and suffering to MAX and THE NAMED

14   PLAINTIFFS/*all* THE PLAINTIFF STUDENTS.  By virtue of the foregoing, the estate of

15   MAX and THE NAMED PLAINTIFF STUDENTS/*all* THE PLAINTIFF STUDENTS are

16   entitled to recover punitive and exemplary damages from individual and non-public entity

17   defendants according to proof at trial. Estate of MAX and THE NAMED PLAINTIFFS/*all*

18   THE PLAINTIFF STUDENTS make no claim for punitive damages against CDE or THE

19   ARMS OF THE EDUCATIONAL SYSTEM.

20                        **THIRTEENTH CAUSE OF ACTION**

21              **INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

22       **(ASSERTED BY ESTATE OF MAX against CDE, YOLO, and DJUSD and their**

23   **named employees, in their official capacities;  D.Z. against FCUSD and FCSELPA and**

24   **their named employees, in their official capacities; S.D. against EDCOE, EDCSELPA**

25        **and their named employees, in their official capacities;  H.K. against PUSD,**

26   **EDCOSESELPA and their named employees, in their official capacities; M.S. against**

CDE, EGUSD, EGUSDSELPA, SCOE and their named employees, in their official

capacities; AUSTIN against RUSD and its named employees, in their official capacities;

and ASSERTED BY ESTATE OF MAX and each of THE PLAINTIFF STUDENTS

AGAINST GHS and its employees; and DOE defendants.)

606.   The estate of MAX and THE NAMED PLAINTIFF STUDENTS/*all* THE

PLAINTIFF STUDENTS incorporate by reference paragraphs  1-32, 45-46, 48-69, 72-127,

132, 137, 142, 146, 151, 156 161, 165,  179-427, 429-446, 451-455, 458, 461, 463, 464,466,

467, 470-472, 474, 478, 481 491, 492, 497, 501,503, 505-508, 513-516, 518, 523, 524, 531-

533, 536-540, 551-553, 555-559, 561, 564-566, 574-576, 578, 579, 581, 582, 595, 597, 599,

603, 608, 616, 617, 618, 623, 635  of this complaint, as if set forth in full hereat.

607.   In doing the things herein alleged, the conduct of said defendants was

outrageous in that it was so extreme as to exceed all bounds of that usually tolerated in a

civilized community.

608.   Said defendants inflicted actual injury and/or acted with reckless disregard of

the probability that MAX and THE NAMED PLAINTIFF STUDENTS/*all* THE PLAINTIFF

STUDENTS would suffer emotional distress, knowing that the child who was restrained,

including MAX and THE NAMED PLAINTIFF STUDENTS/*all* THE PLAINTIFF

STUDENTS, was present when the conduct occurred.

609.   The conduct of said defendants, as herein alleged, was a substantial factor in

causing MAX and THE NAMED PLAINTIFF STUDENTS/*all* THE PLAINTIFF

STUDENTS, to suffer severe emotional distress, severe mental anguish, humiliation, pain,

and physical distress.

610.   Said defendants knew or should have known that MAX and THE NAMED

PLAINTIFF STUDENTS/*all* THE PLAINTIFF STUDENTS did not need to be, for their

safety or the safety of others, and did not want to be, physically forced into prolonged prone

restraints, standing, seated, settled and/or small child restraints.

611.  Said defendants' knowing disregard for the safety of MAX and THE NAMED PLAINTIFF STUDENTS/*all* THE PLAINTIFF STUDENTS and said defendants' deliberate failure to monitor and control their behavior towards exceptional needs students, such as MAX and THE NAMED PLAINTIFF STUDENTS/*all* THE PLAINTIFF STUDENTS caused MAX and THE NAMED PLAINTIFF STUDENTS/*all* THE PLAINTIFF STUDENTS to be repeatedly battered and assaulted by teachers and aides at GHS.

612.  Said defendants' conduct was extreme and outrageous.

613.  Said defendants acted willfully and wantonly, and with reckless disregard for plaintiffs' rights and feelings, and with deliberate indifference to the certainty that MAX and THE NAMED PLAINTIFF STUDENTS/*all* THE PLAINTIFF STUDENTS would suffer emotional distress.

614.  The outrageous conduct of said defendants described herein was willful and malicious and was performed with conscious disregard for the rights, safety, physical well-being and feelings of the MAX and THE NAMED PLAINTIFF STUDENTS/*all* THE PLAINTIFF STUDENTS.  As a result, estate of MAX and THE NAMED PLAINTIFF STUDENTS/*all* THE PLAINTIFF STUDENTS are entitled to punitive or exemplary damages from individual and non-public entity defendants in a sum according to proof. Estate of MAX and THE NAMED PLAINTIFF STUDENTS/*all* THE PLAINTIFF STUDENTS make no claim for punitive damages against CDE or THE ARMS OF THE EDUCATIONAL SYSTEM.

**FOURTEENTH CAUSE OF ACTION**

**FALSE IMPRISONMENT**

**(ASSERTED BY ESTATE OF MAX against CDE, YOLO, and DJUSD and their named employees, in their official capacities;  D.Z. against FCUSD and FCSELPA and their named employees, in their official capacities; S.D. against EDCOE, EDCSELPA and their named employees, in their official capacities;  H.K. against PUSD,**

**EDCOSESELPA and their named employees, in their official capacities;  M.S. against**

**CDE, EGUSD, EGUSDSELPA, SCOE and their named employees, in their official**

**capacities; AUSTIN against RUSD and its named employees, in their official capacities;**

**and ASSERTED BY ESTATE OF MAX and each of THE PLAINTIFF STUDENTS**

**AGAINST GHS and its employees;**

**and DOE DEFENDANTS)**

615.  Plaintiffs estate of MAX, THE NAMED STUDENTS, and THE PLAINTIFF STUDENTS, repeat and incorporate by reference 1-32, 45-46, 48-69, 72-127, 132, 137, 142, 146, 151, 156 161, 165, 179-427, 429-446, 451-455, 458, 461, 463, 464,466, 467, 470-472, 474, 478, 481 491, 492, 497, 501,503, 505-508, 513-516, 518, 523, 524, 531-533, 536-540, 551-553, 555-559, 561, 564-566, 574-576, 578, 579, 581, 582, 595, 597, 599, 603, 608, 616, 617, 618, 623, 635 of this Complaint as if set forth in ful hereat.

616.  Said defendants intentionally and unlawfully exercised force, threat, implied threat of force, or duress,  to restraint and confine MAX, THE NAMED STUDENTS, and *all* THE PLAINTIFF STUDENTS, and deprive them of their freedom of movement, when said defendants committed the acts described herein.

617.  The unlawful restraint of MAX, THE NAMED STUDENTS/*all* THE PLAINTIFF STUDENTS as hereinabove alleged, lasted for an appreciable amount of time.

618.  MAX, THE NAMED STUDENTS, and *all* THE PLAINTIFF STUDENTS did not knowingly or voluntarily consent to said restraints.

619.  As a proximate cause of the restraints, MAX suffered physical injuries and death, THE NAMED STUDENTS, and *all* THE PLAINTIFF STUDENTS suffered actual physical and emotional harm, as herein alleged.

620.  That the conduct of said defendants, as herein alleged, was a substantial factor in causing harm to MAX, THE NAMED STUDENTS, and *all* THE PLAINTIFF STUDENTS.

621.  The outrageous conduct of the said defendants was willful and wanton, and was performed with conscious disregard for the rights, safety, physical well-being and feelings of MAX, THE NAMED STUDENTS, and *all* THE PLAINTIFF STUDENTS.  As a result, the estate of MAX, THE NAMED STUDENTS, and *all* THE PLAINTIFF STUDENTS are entitled to punitive or exemplary damages from individual and non-public entity defendants in a sum according to proof at time of trial.  The estate of MAX, THE NAMED STUDENTS, and *all* THE PLAINTIFF STUDENTS make no claim for punitive damages against CDE or THE ARMS OF THE EDUCATIONAL SYSTEM.

**FIFTEENTH CAUSE OF ACTION**

**NEGLIGENCE**

**(ASSERTED BY ESTATE OF MAX against CDE, YOLO, and DJUSD and their named employees, in their official capacities;  D.Z. against FCUSD and FCSELPA and their named employees, in their official capacities; S.D. against EDCOE, EDCSELPA and their named employees, in their official capacities;  H.K. against PUSD, EDCOSESELPA and their named employees, in their official capacities;  M.S. against CDE, EGUSD, EGUSDSELPA, SCOE and their named employees, in their official capacities; AUSTIN against RUSD and its named employees, in their official capacities;  and ASSERTED BY ESTATE OF MAX and each of THE PLAINTIFF STUDENTS AGAINST GHS and its employees; and DOE DEFENDANTS)**

622.    Estate of MAX, THE NAMED PLAINTIFF STUDENTS, and THE PLAINTIFF STUDENTS incorporate by reference paragraphs  1-32, 45-46, 48-69, 72-127, 132, 137, 142, 146, 151, 156 161, 165,179-427, 429-446, 451-455, 458, 461, 463, 464,466, 467, 470-472, 474, 478, 481 491, 492, 497, 501,503, 505-508, 513-516, 518, 523, 524, 531-533, 536-540, 551-553, 555-559, 561, 564-566, 574-576, 578, 579, 581, 582, 595, 597, 599, 603, 608, 616, 617, 618, 623, 636, 672-708, 712-714 of this Complaint as if set forth in full hereat.

623.   Said defendants breached their duty towards MAX and THE NAMED STUDENTS, and THE PLAINTIFF STUDENTS by:

a.   Failure to develop and maintain effective procedures governing emergency interventions.

b.   Failure to obtain proper training for use of behavioral emergency interventions.

c.   Failure to provide oversight on the use of restraints.

d.   Failure to develop protocols for use of restraints

e.   Failure to prohibit restraints on physically disabled children.

f.   Failure to prohibit prolonged restraints (anything over 15 minutes).

g.   Failure to require that MAX, THE NAMED STUDENTS and *all* THE PLAINTIFF STUDENTS be released from a restraint at the earliest possible moment.

h.   Failure to prohibit the use of any restraint when contraindicated by MAX, THE NAMED STUDENTS and *all* THE PLAINTIFF STUDENTS' medical or psychological conditions, which were known to increase the risk of physical injury.

i.   Failure to prohibit restraints that constrict the child's ability to breathe.

j.   Failure to prohibit the use of multiple staff members in a restraint, which exponentially increases the risk of injury.

k.   Failure to provide for the comfort of MAX, THE NAMED STUDENTS and *all* THE PLAINTIFF STUDENTS  while in prone restraint, including, but not limited to: offering MAX, THE NAMED STUDENTS and *all* THE PLAINTIFF STUDENTS fluids, bathroom use, exercise, range of motion and periodic release of limbs.

l.    Failure to require monitoring by staff of the vital signs of the child regularly throughout the restraint.

m.   Failure to require continuous, close supervision of a restraint by the HWC trainer or another staff member who is not involved in the restraint.

n.    Failure to require immediate and accurate reporting on each restraint.

o.    Failure to conduct a prompt and thorough review of any restraint imposed as a means to ensure compliance with laws and policies; to ensure continuing safety of students; and to prevent other incidents of restraint.

p.    Failure to provide for:

    i.    primary preventative measures rather than restraint;

    ii.    Interventions that are less intrusive than restraints;

    iii.    effective ways to de-escalate situations to avoid restraints; and

    iv.    crisis intervention techniques that utilize alternatives to restraint.

q.    Failure to provide staff with resources and tools to properly respond to the needs of those whom they serve and to be able to identify and address the triggers that may cause emotionally disturbed children to react in ineffectual ways to the environment.

r.    Failure to teach students adaptive behaviors, especially involving autistic children who do not have effective ways of communicating and interacting with others.

s.    Allowing use of physical restraints on children which:

    i.    create an aversive environment counterproductive to facilitating learning;

ii.    cause significant physical harm, serious, foreseeable long term psychological impairment.

t.    Failure to provide oversight on the use of restraints to determine.

u.    whether the intervention was necessary.

v.    whether each restraint was implemented in a manner consistent with staff training, as well as school and District (SELPA) policy.

w.    Allowing the use of deadly force on children without meaningful oversight and systemic reform.

x.    Allowed use of deadly force on children without requiring staff to know basic safety techniques.

y.    Failed to document injuries caused by restraint.

z.    Failed to get medical attention for a child who was injured while in restraint.

624.    As a foreseeable result of the breach of said mandatory duties by said defendants, said school staff at GHS imposed numerous and prolonged prone restraint on MAX, THE NAMED STUDENTS, and *all* THE PLAINTIFF STUDENTS, as hereinabove alleged, resulting in injuries and death to MAX, and injuries to THE NAMED STUDENTS, and *all* THE PLAINTIFF STUDENTS.

625.    Breach of said mandatory duties by said defendants was a substantial factor in causing injuries and death to MAX and injuries to THE NAMED STUDENTS, and *all* THE PLAINTIFF STUDENTS.

626.    At all times herein mentioned said defendants breached the general duties of due care of educational professionals toward MAX and *all* THE PLAINTIFF STUDENTS who were disabled students under their guidance and care.

627.    At all times herein mentioned, said defendants willfully, knowingly, intentionally, maliciously, and routinely used or encouraged the use of prone and other

1    restraints on special needs/disabled children, including MAX, THE NAMED STUDENTS,

2    and *all* THE PLAINTIFF STUDENTS as a form of corporal punishment in violation of

3    California law.

4         628.    At all times herein mentioned, said defendants willfully, knowingly,

5    intentionally, maliciously, and routinely used or encouraged the use of prone and other

6    restraints, known by said defendants to be dangerous, on disabled children, including on

7    MAX, THE NAMED STUDENTS, and *all* THE PLAINTIFF STUDENTS with reckless

8    disregard for the safety of said children.

9         629.    At all times herein mentioned, said defendants, in doing each of the afore-

10   mentioned acts, willfully, knowingly, intentionally, maliciously, and routinely used, or

11   encouraged the use of, prone and other restraints, to injure special needs/disabled children

12   and to create a reign of terror within the educational environment, in place and instead of

13   providing educational services for special needs/disabled children, for which they were hired.

14        630.    As a direct and foreseeable result of the negligence of said defendants MAX

15   suffered physical injuries and death and, THE NAMED STUDENTS, and *all* THE

16   PLAINTIFF STUDENTS suffered physical and emotional injuries.

17        631.    The negligence of said defendants was a substantial factor in causing injury and

18   death to MAX and in causing , THE NAMED STUDENTS, and *all* THE PLAINTIFF

19   STUDENTS to suffer physical and emotional injuries.

20        632.    By virtue of the willful and wanton, knowing, intentional, malicious acts of said

21   defendants, and acts by said defendants that were done and acts done in reckless disregard for

22   the safety and lives of MAX, THE NAMED STUDENTS, and *all* THE PLAINTIFF

23   STUDENTS, the estate of MAX, THE NAMED STUDENTS, and *all* THE PLAINTIFF

24   STUDENTS are entitled to punitive damages against individual non-public entity defendants

25   according to an award at the time of trial. The estate of MAX, THE NAMED STUDENTS,

1 | and *all* THE PLAINTIFF STUDENTS make no claim for punitive damages against CDE or

2 | THE ARMS OF THE EDUCATIONAL SYSTEM.

3 | **SIXTEENTH CAUSE OF ACTION**

4 | **NEGLIGENT SUPERVISION**

5 | **(ASSERTED BY ESTATE OF MAX against CDE, YOLO, and DJUSD and their**

6 | **named employees, in their official capacities; D.Z. against FCUSD and FCSELPA and**

7 | **their named employees, in their official capacities; S.D. against EDCOE, EDCSELPA**

8 | **and their named employees, in their official capacities; H.K. against PUSD,**

9 | **EDCOSESELPA and their named employees, in their official capacities; M.S. against**

10 | **CDE, EGUSD, EGUSDSELPA, SCOE and their named employees, in their official**

11 | **capacities; AUSTIN against RUSD and its named employees, in their official capacities;**

12 | **and ASSERTED BY ESTATE OF MAX and each of THE PLAINTIFF STUDENTS**

13 | **AGAINST GHS and its employees; and DOE DEFENDANTS)**

14 | 633.    The estate of MAX, THE NAMED STUDENTS, and THE PLAINTIFF

15 | STUDENTS incorporate by reference paragraphs 1-32, 45-46, 48-69, 72-127, 132, 137, 142,

16 | 146, 151, 156 161, 165,179-427, 429-446, 451-455, 458, 461, 463, 464,466, 467, 470-472,

17 | 474, 478, 481 491, 492, 497, 501,503, 505-508, 513-516, 518, 523, 524, 531-533, 536-540,

18 | 551-553, 555-559, 561, 564-566, 574-576, 578, 579, 581, 582, 595, 597, 599, 603, 608, 616,

19 | 617, 618, 623-632 of this Complaint as though fully set forth hereat.

20 | 634.    Said defendants had a legal duty to exercise reasonable care in supervising

21 | special needs students in its respective charge pursuant to California Education Code section

22 | 44807 and may be held liable for injuries proximately caused by the failure to exercise such

23 | care.

24 | 635.    Said defendants failed to exercise reasonable care in supervising MAX and THE

25 | NAMED PLAINTIFF STUDENTS/*all* THE PLAINTIFF STUDENTS when they suffered

26 | the abuse as described herein.

636.  Said defendants breached their duties to MAX and THE NAMED PLAINTIFF STUDENTS/*all* THE PLAINTIFF STUDENTS when they failed to supervise MAX, THE NAMED PLAINTIFF STUDENTS/*all* THE PLAINTIFF STUDENTS, GHS, its administrators and staff during the abuse, and failed to ensure that GHS administrators and staff were adequately trained and provided proper supervision.

637.  As a direct and proximate result of the actions of said defendants as alleged herein, MAX suffered injury and death and THE NAMED PLAINTIFF STUDENTS/*all* THE PLAINTIFF STUDENTS suffered injury, and are entitled to damages according to proof.

**SEVENTEENTH CAUSE OF ACTION**

**NEGLIGENCE PER SE**

**(ASSERTED BY ESTATE OF MAX against CDE, YOLO, and DJUSD and their named employees, in their official capacities;  D.Z. against FCUSD and FCSELPA and their named employees, in their official capacities; S.D. against EDCOE, EDCSELPA and their named employees, in their official capacities;  H.K. against PUSD, EDCOSESELPA and their named employees, in their official capacities;  M.S. against CDE, EGUSD, EGUSDSELPA, SCOE and their named employees, in their official capacities; AUSTIN against RUSD and its named employees, in their official capacities; and ASSERTED BY ESTATE OF MAX and each of THE PLAINTIFF STUDENTS AGAINST GHS and its employees;**

**and DOE DEFENDANTS)**

638.  Plaintiffs, estate of MAX, THE NAMED PLAINTIFF STUDENTS and *all* THE PLAINTIFF STUDENTS incorporate by reference paragraphs   1-32, 45-46, 48-69, 72-127, 132, 137, 142, 146, 151, 156 161, 165,179-446, 451-455, 458, 461, 463, 464,466, 467, 470-472, 474, 478, 481 491, 492, 497, 501,503, 505-508, 513-516, 518, 523, 524, 531-533, 536-540, 551-553, 555-559, 561, 564-566, 574-576, 578, 579, 581, 582, 595, 597, 599, 603, 608, 616, 617, 618, 623-632 of this Complaint as if set forth in full hereat.

1     639.  In doing the things herein alleged, said defendants violated the mandatory duties

2     toward MAX and THE NAMED PLAINTIFF STUDENTS/*all* THE PLAINTIFF

3     STUDENTS as prescribed by state and federal law as referenced in each of the statutes as set

4     forth hereinabove.

5     640.  Said violations of law were a substantial factor in bringing about the harm

6     alleged to the estate of MAX, THE NAMED STUDENTS, and *all* THE PLAINTIFF

7     STUDENTS as set forth hereinabove.

8     **EIGHTEENTH CAUSE OF ACTION**

9     **TORTIOUS BREACH OF THE COVENANT**

10     **OF GOOD FAITH AND FAIR DEALING**

11     **(ASSERTED BY THE PLAINTIFF STUDENTS AND THE PLAINTIFF STUDENTS'**

12     **PARENTS AGAINST DEFENDANTS**

13     **GHS, MEYERS, KELLER, CHRISTENSEN, NARAN, and DOE DEFENDANTS)**

14     641.  THE PLAINTIFF STUDENTS and THE PLAINTIFF STUDENTS' PARENTS

15     incorporate by reference paragraphs 1-43, 45, 48-58, 128, 133, 138, 143, 147, 152, 158. 163.

16     166, 171-427 as if set forth in full hereat.

17     642.  Upon the respective enrollment of MAX and THE PLAINTIFF STUDENTS at

18     GHS, THE PLAINTIFF STUDENTS' PARENTS entered into a written contract with GHS,

19     MEYERS, KELLER, CHRISTENSEN, NARAN, and DOE defendants for the education of

20     their child.

21     643.  At all times herein mentioned, MAX and THE NAMED STUDENTS and THE

22     PLAINTIFF STUDENTS were intended third party beneficiaries to the afore-mentioned

23     contracts entered into between their parents and defendants GHS, MEYERS, KELLER,

24     CHRISTENSEN, NARAN, and DOE defendants.

25     644.  As a part of said contract, GHS, MEYERS, KELLER, CHRISTENSEN,

26     NARAN, and DOE defendants provided each of said  parents, with a copy of GHS'

1  parent/teacher handbook in which GHS indicated that they had a system of positive behavior

2  intervention and support.   The handbook also indicated that defendant GHS   would

3  "customize" the system to support student outcomes and  "interact with students in a way that

4  promotes social proficiency."  The GHS handbook states that "social competence is a skill

5  that requires direct teaching." .  The handbook assured parents that adult behavior when

6  correcting a child would be "calm", "brief", and "respectful."

7        645.  As part of the contract between said parties and defendants GHS, MEYERS,

8  KELLER, CHRISTENSEN, and DOE defendants, defendants GHS, MEYERS, KELLER,

9  CHRISTENSEN, NARAN, and DOE defendants promised to plaintiffs, and each of them,

10  not to discriminate in any activity against any student based on physical or mental disability

11  and further promised to prohibit intimidation or harassment by any employee of defendant

12  GHS, MEYERS, KELLER, CHRISTENSEN, NARAN, and DOE defendants against any

13  student based on physical or mental disability.

14        646.   As part of said   contract, defendants GHS, MEYERS, KELLER,

15  CHRISTENSEN, NARAN, and DOE defendants promised to plaintiffs, and each of them, to

16  use Positive Behavior Interventions and Supports to correct inappropriate behavior and to

17  interact with students in a way which promotes social proficiency and academic success,

18  using as examples "positive language and redirecting behavior using a lesson."

19        647.   As part of said contract defendants GHS, MEYERS, KELLER,

20  CHRISTENSEN, NARAN and DOE defendants  promised to plaintiffs, and each of them,

21  that adult behavior when correcting a child would be "calm, consistent, brief, immediate and

22  respectful," and that their behavior intervention approach involved a three step prompt

23  "verbal, modeling, hand-over-hand."

24        648.   As part of said contract defendants GHS, MEYERS, KELLER,

25  CHRISTENSEN, NARAN and DOE defendants promised to plaintiffs, and each of them,

26  that restraints would be imposed only if the child was a danger to himself or others so as to

1  de-escalate and re-integrate into classroom activities; the restraints and their possible

2  consequences for injury and death were not truthfully or accurately described to plaintiffs,

3  and each of them, by defendants GHS, MEYERS, KELLER, CHRISTENSEN, NARAN and

4  DOE defendants; and the most dangerous type of restraint, a prone restraint, was described

5  by defendants GHS, MEYERS, KELLER, CHRISTENSEN, NARAN, and DOE defendants

6  to each of THE PLAINTIFF STUDENTS' parents in innocuous language as a "neutral"

7  restraint.

8      649.  Plaintiffs, and each of them, did all of the significant things that the contract

9  required them to do.

10      650.  At all times herein mentioned, all of the conditions required for defendant GHS,

11  MEYERS, KELLER, CHRISTENSEN, NARAN, and DOE defendants had occurred.

12      651.  Defendants GHS, MEYERS, KELLER, CHRISTENSEN, NARAN, and DOE

13  defendants unfairly interfered with the rights of plaintiffs, and each of them, to receive the

14  benefits of the contract by engaging in the conduct as herein alleged.

15      652.  Defendant GHS', MEYERS', KELLER's, CHRISTENSEN's, NARAN's and

16  DOE defendants' interference with the afore-mentioned benefits of the contract was done in

17  bad faith in that defendants routinely imposed corporal punishment, in addition to dangerous

18  prone and other restraints, on special needs/disabled children under their care.

19      653.  By virtue of the bad faith interference with the contract benefits by defendants

20  GHS, MEYERS, KELLER, CHRISTENSEN, NARAN, and DOE defendants with said

21  plaintiffs' contractual rights, plaintiffs LANGLEY and BENSON have lost the care, comfort,

22  and society of their son MAX, in addition to suffering severe emotional distress.

23      654.  By virtue of the bad faith interference by defendants GHS, MEYERS, KELLER,

24  CHRISTENSEN, and DOE defendants with said plaintiffs' contractual rights, medical and

25  funeral expenses were incurred for MAX.

655.  By virtue of the bad faith interference by defendants GHS, MEYERS, KELLER, CHRISTENSEN, and DOE defendants with said plaintiffs' contractual rights, THE PLAINTIFF STUDENTS' PARENTS have suffered severe emotional and physical distress at having their respective children injured by being placed in prone and other restraints because of their autism and other disabilities.

656.  By virtue of said  bad faith interference with contractual benefits,  THE PLAINTIFF STUDENTS suffered physical and emotional injuries, and future general and special damages as herein alleged.

657.  The bad faith interference by defendants GHS, MEYERS, KELLER, CHRISTENSEN, and DOE defendants was a substantial factor in causing each of the afore-mentioned injuries to plaintiffs, and each of them.

658.  In doing the things herein alleged, defendants GHS, MEYERS, KELLER, CHRISTENSEN, and DOE defendants acted recklessly and with conscious disregard for the rights of plaintiffs, and each of them, willfully and maliciously exceeding the bounds of all behavior in a civilized behavior, brutalizing special needs/disabled children who had been entrusted to their care by their parents so as to receive an education that would allow their children to grow into well adjusted, well-functioning adults.  As a consequence, plaintiffs, and each of them, are entitled to punitive damages.

**NINETEENTH CAUSE OF ACTION**

**FRAUD**

**(Asserted by THE PLAINTIFF STUDENTS' PARENTS AGAINST DEFENDANTS**

**YOLO, DJUSD, McGREW, CHESSMAN,**

**GALAS, HOSTEGE, BENO, EGUSD, EGUSELPA,**

**SCOE, PHILLIPS, DELGADO, GHS,**

**MEYER, KELLER, CHRISTENSEN, WOHLWEND,**

**AND DOE DEFENDANTS**

659.  THE PLAINTIFF STUDENTS' PARENTS incorporate by reference each and every general allegation and each and every allegation of 1-43, 45, 48-58. 166, 171-427, 429-446, 451-455, 458, 461, 463, 464,466, 467, 470-472, 474, 478, 481 491, 492, 497, 501,503, 505-508, 513-516, 518, 523, 524, 531-533, 536-540, 551-553, 555-559, 561, 564-566, 574-576, 578, 579, 581, 582, 595, 597, 599, 603, 608, 616, 617, 618, 623, 635  as if set forth in full hereat.

660.  On or about the date of enrolling their respective children in defendant GHS, defendants, GHS, MEYERS, KELLER, CHRISTENSEN, and DOE defendants, represented to THE PLAINTIFF STUDENTS' PARENTS that said defendants would not to discriminate in any activity against any student at GHS based on physical or mental disability under Title IX, Education Code section 106.8(a)(d) and 106.9.8(a); that they prohibited intimidation or harassment by any employee of defendant GHS against any student based on physical or mental disability; that said defendants and their employees would use Positive Behavior Interventions and Supports to correct inappropriate behavior and to interact with students in a way which promotes social proficiency and academic success, including using  "positive language and redirecting behavior using a lesson"; that behavior by GHS' staff when correcting a child would be "calm, consistent, brief, immediate and respectful,"; that GHS behavior intervention approach involved a three step prompt "verbal, modeling, hand-over-hand";  and that restraints would be imposed only if the child was a danger to himself or others so as to de-escalate and re-integrate into classroom activities.

661.  Specifically with respect to MAX:  On or about the date of enrolling MAX in defendant GHS, defendants YOLO, DJUSD, GALAS, GHS, MEYERS, KELLER, CHRISTENSEN, WOHLWEND, and DOE defendants represented to plaintiff LANGLEY that two aides would be in MAX's classroom, and that MAX would be seated near one of the aides to keep him calm.  This representation was false, as hereinabove alleged.

662.  Specifically with respect to M.S.:  On or about the date of enrolling M.S. in defendant GHS, defendants EGUSD, EGUSELPA, SCOE, PHILLIPS, DELGADO, GHS, MEYER, KELLER, CHRISTENSEN, WOHLWEND, AND DOE DEFENDANTS represented to plaintiff STARK that GHS staff would allow M.S. to use his headphone to keep him calm and that they would not upset him by closing proximity on him.  This representation was false, as hereinabove alleged.

663.  On or about the dates of the respective enrollment of MAX and THE PLAINTIFF STUDENTS, at GHS, THE ARMS OF THE EDUCATIONAL SYSTEM and their employees represented to THE PLAINTIFF STUDENTS' PARENTS that they were required to sign a form allowing defendants GHS, MEYERS, KELLER, CHRISTENSEN, and DOE defendants, to impose restraints on said plaintiffs' respective children, with the implied threat that if they did not sign the form their respective children would not be enrolled at GHS, which was the only school available to educate said children, and therefore, the parents would be in violation of California's mandatory education law.

664.  That the afore-mentioned representations of defendants, were false, and THE PLAINTIFF STUDENTS' PARENTS. learned that they were false on or after November 29, 2018, upon the death of MAX, when they discovered that they did not have to allow or consent to the use of restraints against their disabled children.

665.  Said defendants knew that said representations were false when they made them, and/or said defendants made the representations recklessly and without regard for the truth of said representations.

666.  Said defendants intended that THE PLAINTIFF STUDENTS' PARENTS rely on said representations.

667.  THE PLAINTIFF STUDENTS' PARENTS reasonably relied on said representations, and enrolled their respective children at defendant GHS to receive an education.

668.  THE PLAINTIFF STUDENTS' PARENTS were harmed by said intentional representations, in that each of said plaintiffs suffered severe emotional distress upon seeing their respective child injured at the hands of GHS and its staff after being placed in prone and other types of restraints for known behaviors related to the child's special needs and disability, and which behaviors did not present a clear and present danger to himself or others; and further plaintiffs, LANGLEY AND BENSON suffered severe emotional distress when MAX was injured and killed after he had a behavioral outburst as a result of being isolated from the rest of the class with no staff member near him to keep him calm.

669.  THE PLAINTIFF STUDENTS' PARENTS reliance on said representations was a substantial factor in causing the severe emotional distress of said plaintiffs.

670.   At all relevant times, said defendants acted with conscious disregard of the rights and feelings of THE PLAINTIFF STUDENTS' PARENTS, and acted with the knowledge of, or with reckless disregard for, the fact that their conduct was certain to cause severe emotional distress to said plaintiffs.  By virtue of the foregoing, said  plaintiffs are entitled to recover punitive and exemplary damages from non-public entity defendants according to proof at the time of trial. THE PLAINTIFF STUDENTS' PARENTS  make no claim for punitive damages against any public entity.

**TWENTIETH CAUSE OF ACTION**

**STRICT PRODUCT LIABILITY**

**(ASSERTED BY ESTATE OF MAX AND,**

**AND THE PLAINTIFF STUDENTS**

**AGAINST CHAPMAN, HWC,**

**AND DOE DEFENDANTS)**

671.  Plaintiffs, and each of them, incorporated by reference paragraphs 1-32, 45-46, 48-58, 70-71, 130, 135, 140, 144, 150, 154, 160, 164, 167, 179-427  as set forth above.

1    672.  Defendant CHAPMAN developed and invented a restraint system, and holds

2    multiple patents with respect to this product.

3    673.  Defendant HWC is the assignee of at least some of the restraint system patents

4    held by CHAPMAN, and is a closely held corporation run out of a single family residence,

5    with CHAPMAN acting as its President and as only one of three of the corporation's

6    employees. One of the other employees is the co-owner of the home out of which the

7    business is run.

8    674.  At all times herein mentioned, CHAPMAN and HWC were in the business of

9    designing, developing, marketing, selling, and distributing the restraint system for use on

10    behaviorally challenged, disabled children students within the United States, specifically

11    within the State of California, and to GHS.

12    675.  At all times herein mentioned, defendants CHAPMAN and HWC represented to

13    CDE, THE ARMS OF THE EDUCATIONAL SYSTEM and its employees, GHS and its

14    employees, and DOE defendants, that the restraint system went through 10 years of field

15    study, development and overview under the supervision of some of the most accomplished

16    and experienced medical minds at Pennsylvania Hospital before the program was offered to

17    the public and that defendant HWC's restraint system has been extensively evaluated by

18    leading forensic (forensic pathologists) experts, chief medical examiners, doctors, and nurses.

19    676.  In developing and marketing the product, CHAPMAN, HWC, and DOE

20    defendants knew, or should have known, that the use of a prone restraint carries with it a very

21    well-known risk of injury and death, especially to children; and that other types of physical

22    restraints cause serious injuries to children.

23    677.  In developing and marketing the product, CHAPMAN, HWC, and DOE

24    defendants knew, or should have known, when developing the restraint system, that

25    documented injuries from use of prone restraints include: asphyxiation, choking,

26    strangulation, cerebral and cerebellar oxygen deprivation (hypoxia and anoxia), broken

1   bones, lacerations, abrasions, injury to joints and muscles, contusions or bruising,

2   overheating, dehydration, exhaustion, blunt trauma to the head, broken neck, wrist and leg

3   compression, dislocation of the shoulder and other joints, hyperextension or hyperflexion of

4   the arms, exacerbation of existing respiratory problems, decreased respiratory efficiency,

5   decrease in circulation to extremities, deep vein thrombosis, pulmonary embolism, cardiac

6   arrest, respiratory arrest, and death.

7       678.   In developing and marketing the product, CHAPMAN, HWC, and DOE

8   defendants knew, or should have known, that the risk of injury or death is increased where

9   the person restrained has neurological, cardiac, respiratory conditions, or is obese.

10      679.   In developing and marketing the product, CHAPMAN, HWC and DOE

11   defendants knew or should have known that children, upon whom the restraint system was

12   intended to be used, have physical limitations and/or other medical conditions that would

13   contraindicate the use of the restraint system upon them.

14      680.   CHAPMAN and HWC's patented restraint system is intended for use in

15   physically restraining a child, including use of a prone (face down) restraint.  The system

16   includes a method to "take down" the student to the ground, force the student into a face

17   down position, and to immobilize the student while face down on the ground.

18      681.   In marketing the product, CHAPMAN, HWC and DOE defendants promoted

19   the restraint system as a safe and effective way to gain control over a child who is in a

20   behavioral crisis.

21      682.   In developing and marketing the product, CHAPMAN, HWC, and DOE

22   defendants knew, or should have known, that a disproportionate number of children are

23   injured and/or have died from restraints because children struggle against physical restraints,

24   particularly when the situation or method of restraint is extremely unpleasant or aversive.

25      683.   In developing and marketing the product, CHAPMAN, HWC, and DOE

26   defendants knew, or should have known, that struggling against a hold is a natural and

1   foreseeable response, and that the user of the restraint system may exert pressure, in a variety

2   of forms, on the thoracic cavity of the child upon whom the restraint system is used, and on

3   the child's neck, head, shoulders, ankles, or limbs, which may cause injury.

4        684.   In developing and marketing the product, CHAPMAN, HWC, and DOE

5   defendants knew or should have known that children upon whom the restraint system was

6   intended to be used may have medical or emotional conditions that make it difficult for the

7   child to communicate his/her physical needs or concerns.

8        685.  At all times herein mentioned, defendants CHAPMAN, personally, and through

9   HWC represented to CDE, THE ARMS OF THE EDUCATIONAL SYSTEM and its

10  employees, GHS and its employees, and DOE defendants that use of defendant HWC's

11  restraint system on "behaviorally challenged" students eliminated injuries during takedown,

12  as well as chest compression and the possibility of positional asphyxiation during a prone

13  hold; and further represented that their restraint system allowed educational professionals to

14  work in teams and to maintain a safe hold on children, including modifications for orthopedic

15  and physical conditions; and that HWC would customize their deployment system to include

16  a variety of tactical adjustments for an "unprecedented range" of ergonomic considerations.

17       686.  At all times herein mentioned, CHAPMAN, HWC, and DOE defendants knew

18  or should have known that struggling against a restraint is a natural response and cannot be

19  assumed to be oppositional.

20       687.  At all times herein mentioned, CHAPMAN, HWC, and DOE defendants knew,

21  or should have known, that severe injuries and death can occur when adults physically

22  overpower a child or when a child struggles well beyond the point of physical exhaustion.

23       688.  At all times herein mentioned, CHAPMAN, HWC,  and DOE defendants that in

24  a crisis situation, a child cannot be expected to fully understand directions and to effectively

25  communicate their personal needs.

689.  At all times herein mentioned, defendants CDE, THE ARMS OF THE EDUCATIONAL SYSTEM and their employees, GHS and its employees, and DOE defendants knew or should have known that children may be physically and emotionally injured when someone forces the child from a standing position to the ground and into a prone or other types of restraint.

690.  At all relevant times, CHAPMAN and HWC  knew the product would be purchased and used without inspection for defects in that the schools and staff relied on CHAPMAN's representations about its safety.

691.  The product was defective when it was sold and placed into the stream of commerce by CHAPMAN and HWC.

692.  The product at the time of injury was being used in the manner intended by the defendants and further, was used in the manner that was reasonably foreseeable by defendants as involving a substantial danger to disabled children that was not readily apparent to the users of the product, and adequate warnings of the danger were not given to the users of the product.

693.  At all times herein mentioned, in market the restraint system, CHAPMAN and HWC made representations that the restraint system was endorsed by the medical profession, when, in fact, the medical profession has not placed their imprimatur on the use of the restraint system, and in particular, has not indicated any approval of the use of prone restraint on an obese child with a fused neck, such as MAX was on the date the restraint system caused his death, and the risks of asphyxiation and aspiration in prone restraints are well known to the medical community.

694.  At all times herein mentioned, CHAPMAN and HWC knew that the restraint system was defective and knew that the defect was due, in part, on the fact that prone holds should not be used on medically compromised children, on children who were obese, who

1  were taking psychiatric medications, or on autistic children who cannot communicate their

2  needs to an adult, and for whom struggling against a restraint is a natural reaction.

3      695.   At all times herein mentioned, CHAPMAN and HWC did not include

4  information to users of the restraint system that would allow the users to determine that the

5  system should not be used on medically compromised or obese children, children who were

6  on psychiatric medication, or autistic children but continued to promote the use of prone

7  restraints as a necessary method of restraining children, especially by promoting fear of

8  behaviorally challenged children among teachers, administrators, and the public at large.

9      696.  At all times herein mentioned, CHAPMAN and HWC represented to consumers

10  of the restraint system that it complied with California law.

11      697.   At all times herein mentioned, CHAPMAN and HWC knew that the restraint

12  system was defective, and that the defect was due, in part, to the fact that it was prohibited to

13  use the restraint system under California law for behaviors of the person being restrained that

14  do not pose a risk of harm to that person or to others; and for known and predictable

15  behaviors that are addressed in a behavioral intervention plan.  Further, defendants knew or

16  should have known that the restraint system that violated California Education Code sections

17  56521.1 and 56521.2 which, in pertinent part, prohibits the use of any interventions that 1)

18  cause physical pain; 2) simultaneously immobile all four extremities, 3) apply an amount of

19  force that exceeds that which is reasonable and necessary under the circumstances, or 4)

20  subjects the individual to verbal abuse, ridicule, or humiliation, or that can be expected to

21  cause excessive emotional trauma.

22      698.   At all times herein mentioned, CHAPMAN and HWC also knew that the

23  restraint system was defective, and that the defect was due, in part, to the fact that it failed to

24  limit a child's exposure to the prone hold for a prolonged period of time, and failed to inform

25  users of the restraint system of the increased likelihood of injury and death to students if a

26  restraint lasted more than 15 minutes.

699.  At all times herein mentioned, CHAPMAN and HWC knew the restraint system was defective and that the defect was due, in part, to the fact that the restraint system would be used by inexperienced school staff; that the restraint system failed to take into account the dynamics of a behavioral crisis, both for the user of the product and for the child upon whom it was intended to be used; and that only one person from the school was trained in the use of the product by Chapman and HWC, and, like the game of "telephone", that person would then demonstrate how to use the product to others within the school, with no oversight as to whether use of the product to the next line of teachers was properly performed.

700.  At all times herein mentioned, CHAPMAN and HWC knew or should have known that of the hazardous and dangerous propensities of the restraint system, in that numerous studies, including those of the U.S. government have established that prone restraints of the type used in CHAPMAN and HWC's restraint system have resulted in large numbers of deaths and innumerable injuries involving children across the United States.

701.  CHAPMAN and HWC knew the product would be purchased and used without inspection for defects. The product was defective when it left the control of each defendant. The product at the time of injury was being used in the manner intended by the defendants or used in the manner that was reasonably foreseeable by defendants as involving a substantial danger not readily apparent, and adequate warnings of the danger were not given to the users of the product.

702.  At all times herein mentioned, the restraint system was not reasonably fit, suitable, or safe for its intended purpose, and the foreseeable risks of injury and death exceed any benefits associated with its design and formulation.

703.  At all times herein mentioned, the restraint system was unreasonably dangerous in that it failed to perform safely when used by ordinary consumers of the restraint system, including staff at GHS, including when it was used as intended and in a reasonably foreseeable manner.

704.  At all times here mentioned, the restraint system was expected to reach users of the restraint system without substantial change in the defective and unreasonably dangerous condition in which it was sold, and any misuse of the restraint system was foreseeable in light of the rapidly shifting dynamic under which the restraint system is used, as demonstrated by the numerous documented incidents of injury and death to students by use of prone restraints such as those which are part of CHAPMAN and HWC's restraint system.

705.  At all times herein mentioned, the restraint system was unreasonably dangerous and defective in design or formulation for its intended use in that, when it was placed into the stream of commerce by CHAPMAN and HWC, it posed a serious risk of death and injury that could have been avoided by use of safer alternatives to handling children in behavioral crisis, such as those positive behavioral supports currently promoted by the State of California.

706.  At all times herein mentioned, CHAPMAN and HWC's restraint system, was insufficiently studied and tested for use on medically compromised or obese children, or children who were taking psychiatric medications, or for use on autistic children in behavioral crisis who cannot convey their needs to an adult, and for whom struggling against a restraint is a natural reaction.

707.  MAX and other minor plaintiffs are within the class of persons that CHAPMAN and HWC should reasonably foresee as being subject to harm caused by the defective restraint system because MAX and the other minor plaintiffs were disabled children within the State of California upon whom the product was intended to be used.

708.  On or about the dates herein alleged, MAX suffered injuries and ultimately death, and other minor plaintiffs named in this cause of action were injured by said restraint system.

709.  Each of the restraint system defects, as described herein, was a substantial factor in causing MAX to suffer injuries and death, and in causing each of the other minor plaintiffs

1  named herein suffered permanent and continuous physical injuries, pain and suffering, along

2  with emotional trauma that will continue into the future.  Further, the minor plaintiffs have

3  incurred medical expenses, and will incur other future special damages according to proof.

4  The estate of MAX makes no claim for damages for pain and suffering.

5  **TWENTY-FIRST CAUSE OF ACTION**

6  **NEGLIGENCE**

7  **(ASSERTED BY ESTATE OF MAX, and THE PLAINTIFF STUDENTS AGAINST**

8  **CHAPMAN, HWC, AND DOE DEFENDANTS)**

9  710.  Plaintiffs, and each of them, incorporated by reference paragraphs  1-32, 45-46,

10  48-58, 70-71, 130, 135, 140, 144, 150, 154, 160, 164, 167, 179-427, 671-709 of this

11  Complaint  as set forth in full hereat..

12  711.  At all times herein mentioned, defendants CHAPMAN and HWC were under a

13  duty not to design, develop, market, and sell a restraint system that presented an unreasonable

14  risk of death or harm to children.

15  712.  At the time of development and sale of the restraint system, CHAPMAN and

16  HWC knew or reasonably should have known that the restraint system presented an

17  unreasonable risk of injury or death and should not be used on medically compromised

18  children, on obese children, on children who take psychiatric medications, on autistic

19  children who cannot communicate their needs to adults and who have a natural inclination to

20  struggle against restraint, or for prolonged periods of time.

21  713.  Defendants CHAPMAN and HWC breached their duty of reasonable care and

22  were negligent in designing and marketing a restraint system that presented said unreasonable

23  risks of injury and death.    Defendants CHAPMAN and HWC further breached their duty of

24  reasonable care and were negligent in designing and marketing a restraint system that

25  violated California Education Code sections 56521.1 and 56521.2 which, in pertinent part,

26  prohibits the use of any interventions that 1) cause physical pain; 2) simultaneously immobile

1    all four extremities, 3) apply an amount of force that exceeds that which is reasonable and

2    necessary under the circumstances, or 4)  subjects the individual to verbal abuse, ridicule, or

3    humiliation, or that can be expected to cause excessive emotional trauma.

4          714.  At all times herein mentioned, defendants CHAPMAN and HWC breached their

5    duty of care to design and market a safe restraint system for use on "behaviorally challenged"

6    students by, but not limited to: failing to instruct GHS school staff on the known dangers of

7    the use of a prone restraint on children; failing to instruct GHS school staff on the types of

8    medical conditions in which use of a prone restraint is contraindicated; failure to instruct

9    GHS school staff that prone restraints should not be used on children who are obese, who

10   have neurological and muscular-skeletal compromise, or who use pain and/or psychiatric

11   medications; teaching GHS school staff to use a prone restraint that constricted the child's

12   ability to breathe; failing to instruct GHS school staff on signs that would indicate when a

13   child being held in restraint was in physical distress; failure to instruct GHS school staff to

14   identify signs or complaints of distress that must be immediately addressed, including but not

15   limited to: urination, vomiting, and agitation; failing to instruct GHS school staff that

16   agitation by a child in a restraint is a natural response to being restrained, and is not

17   necessarily a threat to authority; failing to protect children from foreseeable abuses of its

18   restraint system; failing to instruct GHS school staff that prone restraints should not be used

19   except as a last resort; failing to instruct school staff that restraints should not be used except

20   to control dangerous, unpredictable behavior; failure to instruct GHS staff not to use prone

21   restraints in excess of 15 minutes; failure to instruct GHS school staff that a child must be

22   released from a restraint at the earliest possible moment; failed to instruct GHS school staff

23   not to use multiple staff members during a prone restraint; failing to instruct GHS school

24   staff that they must provide for the comfort of a child being held in a prone restraint,

25   including offering a restrained child fluids, bathroom use, exercise, range of motion and

26   periodic release of limbs; failure to instruct GHS school staff that vital signs of the restrained

child must be monitored regularly throughout the restraint; failure to instruct GHS school staff that continuous, close supervision of a restraint must be performed by the HWC trainer or another staff member who is not involved in the restraint; failure to instruct GHS school staff that an immediate and accurate report must be provided to all educational professionals after each restraint; failure to instruct GHS school staff that prompt and thorough review of any restraint imposed just be performed as a means to ensure compliance with laws and policies, to ensure continuing safety of students, and to prevent other incidents of restraint; failure to instruct GHS school staff of primary preventative measures available rather than restraints; failure to instruct GHS school staff of interventions that are less intrusive than restraints; failure to instruct GHS school staff of effective ways to de-escalate situations to avoid restraints; failure to instruct GHS school staff of crisis intervention techniques that utilize alternatives to restraint; teaching use of prone restraints to GHS school staff that create an aversive environment counterproductive to facilitating learning; teaching the use of prone restraints to GHS school staff that cause significant physical harm, serious, foreseeable long term psychological impairment; failure to provide oversight to GHS school staff on the use of restraints to determine whether the intervention was necessary; failure to provide oversight to GHS school staff on whether restraints were being implemented in a manner consistent with staff training; failing to teach GHS school staff basic life-saving safety techniques, such as CPR, which may become necessary as a result of the imposition of a restraint; failing to teach GHS school staff to call 911 in the event of a medical emergency involving someone involved in a prone restraint.

715.  The negligence of defendants, CHAPMAN and HWC, was a substantial factor in causing school staff at defendant, GHS, to use a prone restraint in a deadly and dangerous manner on physically and medically compromised "behaviorally challenged", disabled students, resulting in the death of MAX, and injuries to THE PLAINTIFF STUDENTS.

716.   As a direct and proximate result of the negligence of the defendants, MAX suffered death and the other minor plaintiffs suffered permanent and continuous physical injuries, and pain and suffering, along with emotional trauma that will continue into the future.   Further, the minor plaintiffs have incurred medical expenses, and will incur other future special damages according to proof.

**WHEREFORE, Plaintiffs pray for judgment against Defendants, as follows:**

**FIRST CAUSE OF ACTION VIOLATIONS OF TITLE II, AMERICANS WITH DISABILITIES ACT OF 1990, 42 U.S.C., SECTION 12101, ET. SEQ.**

**As to the Estate of MAX:**

1. Medical and funeral expenses according to proof at trial;

2. Punitive damages against non-public entity defendants;

3. Statutory damages;

4. Attorneys fees

5. Costs of suit;

6. Any other and further relief as the Court deems proper and just.

**As to the remaining plaintiffs in this Cause of action**:

1. General damages for in an amount to be determined according to  proof at trial;

2. Medical and future medical and related expenses in an amount to be determined by proof at trial;

3. Past and future lost earnings in an amount to be determined by proof at trial;

4. Impairment of earning capacity for in an amount to be determined by proof at trial;

5. General damages for severe emotional and psychological distress

6. Pain and suffering;

7. Statutory damages;

8. Attorneys' fees;

9. Punitive and exemplary damages against all non-public entity Defendants

10.  Costs of this action;

11.  Such other and further relief as the Court deems just and proper.

**SECOND CAUSE OF ACTION VIOLATIONS OF SECTION 504 OF THE**

**REHABILITATION ACT OF 1973, AS AMENDED, 29 U.S.C., SECTION 795 [504]**

**As to the Estate of MAX:**

1.  Medical and funeral expenses according to proof at trial;

2.  Punitive damages against non-public entity defendants;

3.  Statutory damages;

4.  Attorneys fees

5.  Costs of suit;

6.  Any other and further relief as the Court deems proper and just.

**As to the remaining plaintiffs in this Cause of action:**

1.  General damages for in an amount to be determined according to  proof at trial;

2.  Medical and future medical and related expenses in an amount to be determined by proof at trial;

3.  Past and future lost earnings in an amount to be determined by proof at trial;

4.  Impairment of earning capacity for in an amount to be determined by proof at trial;

5.  General damages for severe emotional and psychological distress

6.  Pain and suffering;

7.  Statutory damages;

8.  Attorneys' fees;

9.  Punitive and exemplary damages against all non-public entity Defendants

10.  Costs of this action;

11.  Such other and further relief as the Court deems just and proper.

**THIRD CAUSE OF ACTION VIOLATIONS OF 42 U.S.C. SECTION 1983 - FOURTH**

**AMENDMENT TO THE UNITED STATES CONSTITUTION**

**As to the Estate of MAX:**

      1.  Medical and funeral expenses according to proof at trial;

      2.  Punitive damages against non-public entity defendants;

      3.  Statutory damages;

      4.  Attorneys fees

      5.  Costs of suit;

      6.  Any other and further relief as the Court deems proper and just.

**As to the remaining plaintiffs in this Cause of action**:

      1.  General damages for in an amount to be determined according to  proof at trial;

      2.  Medical and future medical and related expenses in an amount to be determined by proof at trial;

      3.  Past and future lost earnings in an amount to be determined by proof at trial;

      4.  Impairment of earning capacity for in an amount to be determined by proof at trial;

      5.  General damages for severe emotional and psychological distress

      6.  Pain and suffering;

      7.  Statutory damages;

      8.  Attorneys' fees;

      9.  Punitive and exemplary damages against all non-public entity Defendants

      10.  Costs of this action;

      11.  Such other and further relief as the Court deems just and proper.

**FOURTH CAUSE OF ACTION VIOLATIONS OF 42 U.S.C. SECTION 1983 - DUE PROCESS CLAUSE OF THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION FIFTH CAUSE OF ACTION**

**As to the Estate of MAX:**

      1.  Medical and funeral expenses according to proof at trial;

      2.  Punitive damages against non-public entity defendants;

3. Statutory damages;

4. Attorneys fees;

5. Costs of suit;

6. Any other and further relief as the Court deems proper and just.

**As to the remaining plaintiffs in this Cause of action:**

1. General damages for in an amount to be determined according to  proof at trial;

2. Medical and future medical and related expenses in an amount to be determined by proof at trial;

3. Past and future lost earnings in an amount to be determined by proof at trial;

4. Impairment of earning capacity for in an amount to be determined by proof at trial;

5. General damages for severe emotional and psychological distress

6. Pain and suffering;

7. Statutory damages;

8. Attorneys' fees;

9. Punitive and exemplary damages against all non-public entity Defendants;

10. Costs of this action;

11. Such other and further relief as the Court deems just and proper.

**FIFTH CAUSE OF ACTION VIOLATIONS OF 42 U.S.C. SECTION 1983 - EQUAL PROTECTION CLAUSE OF THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION**

**As to the Estate of MAX:**

1. Medical and funeral expenses according to proof at trial;

2. Punitive damages against non-public entity defendants;

3. Statutory damages;

4. Attorneys fees

5. Costs of suit;

6. Any other and further relief as the Court deems proper and just.

**As to the remaining plaintiffs in this Cause of action:**

1. General damages for in an amount to be determined according to proof at trial;

2. Medical and future medical and related expenses in an amount to be determined by proof at trial;

3. Past and future lost earnings in an amount to be determined by proof at trial;

4. Impairment of earning capacity for in an amount to be determined by proof at trial;

5. General damages for severe emotional and psychological distress

6. Pain and suffering;

7. Statutory damages;

8. Attorneys' fees;

9. Punitive and exemplary damages against all non-public entity Defendants;

10. Costs of this action;

11. Such other and further relief as the Court deems just and proper.

**SIXTH CAUSE OF ACTION INTERFERENCE WITH FAMILIAL RELATIONSHIP, IN VIOLATION OF 42 USC 1983 - FIRST AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION**

1. Loss of care, comfort and society of Plaintiffs LANGLEY and BENSON, pain & suffering;

2. Statutory damages;

3. Attorney's fees;

4. Punitive and exemplary damages against all non-public entity Defendants;

5. Costs of this action; and

6. Such other and further relief as the Court deems just and proper.

**SEVENTH CAUSE OF ACTION VIOLATIONS OF CALIFORNIA EDUCATION**

**CODE §§ 200, 201, 220 and 260, et seq.**

**As to the Estate of MAX:**

    1.  Medical and funeral expenses according to proof at trial;

    2.  Punitive damages against non-public entity defendants;

    3.  Statutory damages;

    4.  Attorneys fees

    5.  Costs of suit;

    6.  Any other and further relief as the Court deems proper and just.

**As to the remaining plaintiffs in this Cause of action:**

    1.  General damages for in an amount to be determined according to  proof at trial;

    2.  Medical and future medical and related expenses in an amount to be determined by proof at trial;

    3.  Past and future lost earnings in an amount to be determined by proof at trial;

    4.  Impairment of earning capacity for in an amount to be determined by proof at trial;

    5.  General damages for severe emotional and psychological distress

    6.  Pain and suffering;

    7.  Statutory damages;

    8.  Attorneys' fees;

    9.  Punitive and exemplary damages against all non-public entity Defendants

    10.  Costs of this action;

    11.  Such other and further relief as the Court deems just and proper.

**EIGHTH CAUSE OF ACTION INTERFERENCE WITH THE EXERCISE OF CIVIL**

**RIGHTS UNDER CALIFORNIA CIVIL CODE SECTIONS 51(b) and  51.7**

**As to the Estate of MAX:**

    1.  Medical and funeral expenses according to proof at trial;

2.  Punitive damages against non-public entity defendants;

3.  Statutory damages;

4.  Attorneys fees

5.  Costs of suit;

6.  Any other and further relief as the Court deems proper and just.

**As to the remaining plaintiffs in this Cause of action:**

1.  General damages for in an amount to be determined according to  proof at trial;

2.  Medical and future medical and related expenses in an amount to be determined by proof at trial;

3.  Past and future lost earnings in an amount to be determined by proof at trial;

4.  Impairment of earning capacity for in an amount to be determined by proof at trial;

5.  General damages for severe emotional and psychological distress

6.  Pain and suffering;

7.  Statutory damages;

8.  Attorneys' fees;

9.  Punitive and exemplary damages against all non-public entity Defendants

10.  Costs of this action;

11.  Such other and further relief as the Court deems just and proper.

**NINTH CAUSE OF ACTION INTERFERENCE WITH PLAINTIFFS' EXERCISE OF**

**CIVIL RIGHTS IN VIOLATION OF CALIFORNIA CIVIL CODE SECTION 52.1**

**As to the Estate of MAX:**

1.  Medical and funeral expenses according to proof at trial;

2.  Punitive damages against non-public entity defendants;

3.  Statutory damages;

4.  Attorneys fees

5.  Costs of suit;

6.  Any other and further relief as the Court deems proper and just.

**As to the remaining plaintiffs in this Cause of action:**

1.  General damages for in an amount to be determined according to  proof at trial;

2.  Medical and future medical and related expenses in an amount to be determined by proof at trial;

3.  Past and future lost earnings in an amount to be determined by proof at trial;

4.  Impairment of earning capacity for in an amount to be determined by proof at trial;

5.  General damages for severe emotional and psychological distress

6.  Pain and suffering;

7.  Statutory damages;

8.  Attorneys' fees;

9.  Punitive and exemplary damages against all non-public entity Defendant;

10.  Costs of this action;

11.  Such other and further relief as the Court deems just and proper.

**TENTH CAUSE OF ACTION**

**WRONGFUL DEATH OF MINOR MAX BENSON**

1.  Loss of care, comfort and society of THE PLAINTIFFS LANGLEY, BENSON AND TURELLI, according to proof;

2.  Punitive damages against all non-public entity Defendants;

3.  Costs of this action;

4.  Such other and further damages as the Court deems just and proper.

**ELEVENTH CAUSE OF ACTION  BATTERY**

**As to the Estate of MAX:**

1.  Medical and funeral expenses according to proof at trial;

2.  Punitive damages against non-public entity defendants;

3.  Statutory damages;

    4. Attorneys fees

    5. Costs of suit;

    6. Any other and further relief as the Court deems proper and just.

**As to the remaining plaintiffs in this Cause of action:**

    1.  General damages for Pain and suffering in an amount to be determined according to  proof at trial;

    2.  Medical and future medical and related expenses in an amount to be determined by proof at trial;

    3.  Past and future lost earnings in an amount to be determined by proof at trial;

    4.  Impairment of earning capacity for in an amount to be determined by proof at trial;

    5.  General damages for severe emotional and psychological distress

    6.  Pain and suffering;

    7.  Statutory damages;

    8.  Attorneys' fees;

    9.  Punitive and exemplary damages against all non-public entity Defendants

    10.  Costs of this action;

    11.  Such other and further relief as the Court deems just and proper.

**TWELFTH CAUSE OF ACTION ASSAULT**

**As to the Estate of MAX:**

    1.  Medical and funeral expenses according to proof at trial;

    2.  Punitive damages against non-public entity defendants;

    3.  Statutory damages;

    4.  Attorneys fees;

    5.  Costs of suit;

    6.  Any other and further relief as the Court deems proper and just.

**As to the remaining plaintiffs in this Cause of action:**

1.  General damages for Pain and suffering in an amount to be determined according to  proof at trial;

2.  Medical and future medical and related expenses in an amount to be determined by proof at trial;

3.  Past and future lost earnings in an amount to be determined by proof at trial;

4.  Impairment of earning capacity for in an amount to be determined by proof at trial;

5.  General damages for severe emotional and psychological distress

6.  Pain and suffering;

7.  Statutory damages;

8.  Attorneys' fees;

9.  Punitive and exemplary damages against all non-public entity Defendants

10.  Costs of this action;

11.  Such other and further relief as the Court deems just and proper.

### THIRTEENTH CAUSE OF ACTION INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

**As to the Estate of MAX:**

1.  Medical and funeral expenses according to proof at trial;

2.  Punitive damages against non-public entity defendants;

3.  Statutory damages;

4.  Attorneys fees

5.  Costs of suit;

6.  Any other and further relief as the Court deems proper and just.

**As to the remaining plaintiffs in this Cause of action:**

1.  General damages for Pain and suffering in an amount to be determined according to  proof at trial;

2. Medical and future medical and related expenses in an amount to be determined by proof at trial;

3. Past and future lost earnings in an amount to be determined by proof at trial;

4. Impairment of earning capacity for in an amount to be determined by proof at trial;

5. General damages for severe emotional and psychological distress

6.  Pain and suffering;

7. Statutory damages;

8. Attorneys' fees;

9. Punitive and exemplary damages against all non-public entity Defendants

10.  Costs of this action;

11.  Such other and further relief as the Court deems just and proper.

### FOURTEENTH CAUSE OF ACTION FALSE IMPRISONMENT

**As to the Estate of MAX:**

1. Medical and funeral expenses according to proof at trial;

2. Punitive damages against non-public entity defendants;

3. Statutory damages;

4. Attorneys fees;

5. Costs of suit;

6. Any other and further relief as the Court deems proper and just.

**As to the remaining plaintiffs in this Cause of action:**

1.  General damages for Pain and suffering in an amount to be determined according to  proof at trial;

2. Medical and future medical and related expenses in an amount to be determined by proof at trial;

3. Past and future lost earnings in an amount to be determined by proof at trial;

4. Impairment of earning capacity for in an amount to be determined by proof at trial;

5. General damages for severe emotional and psychological distress

6. Pain and suffering;

7. Statutory damages;

8. Attorneys' fees;

9. Punitive and exemplary damages against all non-public entity Defendants

10. Costs of this action;

11. Such other and further relief as the Court deems just and proper.

## FIFTEENTH CAUSE OF ACTION NEGLIGENCE

**As to the estate of MAX:**

1. Medical and funeral expenses according to proof at trial;

2. Punitive damages against non-public entity defendants;

3. Statutory damages;

4. Attorneys fees;

5. Costs of suit;

6. Any other and further relief as the Court deems proper and just.

**As to the remaining plaintiffs in the COA:**

1. General damages Pain and suffering in an amount to be determined by proof at trial;

2. General and special damages for severe emotional and psychological distress;

3. Medical and future medical and related expenses in an amount to be determined by proof at trial;

4. Past and future lost earnings in an amount to be determined by proof at trial;

5. Impairment of earning capacity in an amount to be determined by proof at trial;

6. Punitive damages against all non-public entity Defendants;

7. Costs of this action;

8. Any other and further relief as the Court deems just and proper.

**SIXTEENTH CAUSE OF ACTION  NEGLIGENT SUPERVISION**

**As to the Estate of MAX:**

    1. Medical and funeral expenses according to proof at trial;

    2. Punitive damages against non-public entity defendants;

    3. Costs of suit;

    4. Any other and further relief as the Court deems proper and just.

**As to the remaining plaintiffs in this COA:**

    1.  General damages for THE PLAINTIFF STUDENTS for pain and suffering and emotional and psychological distress in an amount to be determined by proof at trial;

    2.  Medical and future medical and related expenses for THE PLAINTIFF STUDENTS, in an amount to be determined by proof at trial;

    3. Past and future lost earnings for THE PLAINTIFF STUDENTS in an amount to be determined by proof at trial;

    4. Impairment of earning capacity for THE PLAINTIFF STUDENTS in an amount to be determined by proof at trial;

    5.  General and special damages for pain and suffering and emotional and psychological distress severe emotional distress suffered by THE PLAINTIFF STUDENTS;

    6. Medical and costs;

    7. Statutory damages;

    8. Costs of this action;

    9. Such other and further relief as the Court deems proper and just.

**SEVENTEENTH CAUSE OF ACTION NEGLIGENCE PER SE**

**As to the Estate of MAX:**

    1. Medical and funeral expenses according to proof at trial;

    2. Punitive damages against non-public entity defendants;

    3. Costs of suit;

4. Any other and further relief as the Court deems proper and just.

**As to the remaining plaintiffs in this COA:**

1. General damages for THE PLAINTIFF STUDENTS for pain and suffering and emotional and psychological distress in an amount to be determined by proof at trial;

2. Medical and future medical and related expenses for THE PLAINTIFF STUDENTS, in an amount to be determined by proof at trial;

3. Past and future lost earnings for THE PLAINTIFF STUDENTS in an amount to be determined by proof at trial;

4. Impairment of earning capacity for THE PLAINTIFF STUDENTS in an amount to be determined by proof at trial;

5. General and special damages for pain and suffering and emotional and psychological distress severe emotional distress suffered by THE PLAINTIFF STUDENTS

6. Medical and costs;

7. Statutory damages;

8. Attorneys' fees;

9. Costs of this action;

10. Such other and further relief as the Court deems proper and just.

**EIGHTEENTH CAUSE OF ACTION TORTIOUS BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING**

1. General and special damages for severe emotional distress as to PLAINTIFF STUDENTS' PARENTS;

2. General damages for Plaintiff Students' Parents in an amount to be determined by proof at trial;

3. Medical and future medical and related expenses as to Plaintiff Students' Parents in an amount to be determined by proof at trial;

1      4.  Past and future lost earnings as to Plaintiff Students' Parents in an amount to be

2  determined by proof at trial;

3      5.  Impairment of earning capacity as to Plaintiff Students' Parents in an amount to be

4  determined by proof at trial;

5      6. Medical and funeral expenses incurred for Plaintiff MAX;

6      7. Punitive damages;

7      8. Costs of this action;

8      9. Such other and further relief as the Court deems proper and just.

9                    **NINETEENTH CAUSE OF ACTION  FRAUD**

10      1.  General and special damages for pain and suffering and severe emotional distress

11  as to THE PLAINTIFF STUDENTS' PARENTS;

12      2.  Punitive and exemplary damages against all non-government defendants, including

13  DEFENDANTS  McGREW,  CHESSMAN,  GALAS,  HOSTEGE,  BENO,  EGUSD,

14  EGUSELPA, SCOE, PHILLIPS, DELGADO, GHS, MEYER, KELLER, CHRISTENSEN,

15  WOHLWEND AND DOE DEFENDANTS;

16      3. Costs of this action;

17      4. Such other and further relief as the Court deems just and proper.

18          **TWENTIETH CAUSE OF ACTION STRICT PRODUCT LIABILITY**

19      1.  General and special damages for pain and suffering and severe emotional distress

20  as to PLAINTIFF STUDENTS;

21      2.  General damages for Plaintiff Students and Parents in an amount to be determined

22  by proof at trial;

23      3.  Medical and future medical and related expenses as to Plaintiff Students and

24  Parents in an amount to be determined by proof at trial;

25      4.  Past and future lost earnings as to Plaintiff Students and Parents in an amount to

26  be determined by proof at trial;

5.  Impairment of earning capacity as to Plaintiff Students and Parents in an amount to be determined by proof at trial;

6.  As to Plaintiffs LANGLEY and BENSON, loss of care, comfort and society of Max;

7.  Medical and funeral expenses incurred for Plaintiff Max.;

8.  Punitive damages;

9.  Costs of this action;

10.  Such other and further relief as the Court deems just and proper.

### TWENTY-FIRST CAUSE OF ACTION  NEGLIGENCE

**As to the Estate of MAX:**

1.  Medical and funeral expenses according to proof at trial;

2.  Punitive damages against non-public entity defendants;

3.  Costs of suit;

4.  Any other and further relief as the Court deems proper and just.

**As to the remaining plaintiffs in this COA:**

1.  General damages for THE PLAINTIFF STUDENTS for pain and suffering and emotional and psychological distress in an amount to be determined by proof at trial;

2.  Medical and future medical and related expenses for THE PLAINTIFF STUDENTS, in an amount to be determined by proof at trial;

3.  Past and future lost earnings for THE PLAINTIFF STUDENTS in an amount to be determined by proof at trial;

4.  Impairment of earning capacity for THE PLAINTIFF STUDENTS in an amount to be                determined by proof at trial;

5.  General and special damages for pain and suffering and emotional and psychological distress severe emotional distress suffered by THE PLAINTIFF STUDENTS

6.  Medical and costs;

1          7.  Statutory damages;

2          8.  Costs of this action;

3          9.  Such other and further relief as the Court deems proper and just.

4     Dated: May 1, 2020                    */s/ Seth L. Goldstein*

5                              Seth L. Goldstein, Lead Counsel for Plaintiffs

6