UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STACIA LANGLEY, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>GUIDING HANDS SCHOOL, INC., et al.,<br><br>Defendants. | No. 2:20-cv-00635-TLN-KJN<br><br>**ORDER GRANTING DEFENDANT BRUCE CHAPMAN'S MOTION TO DISMISS** |

This matter is before the Court on Defendant Bruce Chapman's ("Defendant") Motion to Dismiss.[1] (ECF No. 39.) Plaintiffs Stacia Langley, David Benson, Michael Turelli (personal representative of M.B.), Laura Kinser (individually and as guardian *ad litem* for D.Z.), Melanie Stark (individually and as guardian *ad litem* for M.S.), Cherilyn Caler (individually and as guardian *ad litem* for J.P.), Timothy Peterson (individually and as guardian *ad litem* for A.P.), Suzanne Brent-Petersen (individually and as guardian *ad litem* for A.P.), Robert Darrough (individually and as guardian *ad litem* for E.D.), Kristen Coughlin (individually and as guardian *ad litem* for E.D.), Susan Muller (individually and as guardian *ad litem* for H.K.), Christian Davis (individually and as guardian *ad litem* for S.D.), Deborah Marques (individually and as guardian

---

[1] This action involves multiple Defendants, many of which brought separate motions to dismiss. Orders on those pending motions are forthcoming. The instant motion is brought only by Defendant Bruce Chapman.

1

*ad litem* for L.M.), and Louis Marques (individually and as guardian *ad litem* for L.M.) (collectively, "Plaintiffs") filed an opposition. (ECF No. 70.) Defendant filed a reply. (ECF No. 111.) For the reasons set forth below, the Court GRANTS Defendant's motion.

I. **FACTUAL AND PROCEDURAL BACKGROUND**

This case involves the use of restraints on students with disability-related behavioral issues. Plaintiffs include nine children with disabilities, including developmental, social, and emotional disabilities. (ECF No. 12 at ¶¶ 18–32.) Plaintiffs' local education agencies ("LEAs") placed the students at Guiding Hands School, Inc. ("GHS"). (*Id.* at ¶ 2.) GHS was a nonpublic school certified by the California Department of Education ("CDE") to provide education and specialized services to public school children with disabilities. (*Id.* at ¶¶ 75–78.) GHS contracted with LEAs to provide special education services on behalf of those entities. (*Id.* at ¶ 45.)

At issue is a restraint system developed by Defendant and marketed by his company, Handle with Care Behavior Management System, Inc. ("HWC"). (*Id.* at ¶¶ 70–71.) On November 28, 2018, GHS staff placed M.B., a 13-year-old student with autism and other disabilities, in a prone, face-down restraint for approximately one hour and forty-five minutes. (*Id.* at ¶¶ 239–276.) During the restraint, M.B. showed increasing and obvious signs of distress, including kicking the wall with his feet, urinating on himself, biting his lip until it bled, and vomiting. (*Id.* at ¶¶ 246, 248–251, 258, 260-263, 265–272, 274.) M.B. finally went into cardiac arrest and passed out. (*Id.* at ¶¶ 263, 266–272.) He was transported to a medical center and died on November 30, 2018. (*Id.* at ¶¶ 323–325.) The CDE subsequently revoked GHS's nonpublic school credential. (*Id.* at ¶ 10.)

Plaintiffs allege M.B. was not the only student subjected to this type of abuse — GHS engaged in a policy and practice of using restraints as a substitute for positive interventions in response to predictable behavior that did not pose a clear and present danger of serious physical harm to the student or others. (*Id.* at ¶¶ 48–57, 98–101, 336–337, 346–347, 358–359, 363–364, 389–391, 369–397, 401–409, 415–416, 419, 425–426.) Plaintiffs allege GHS used restraints against its students frequently, for periods of time that were longer than necessary, and with excessive force. (*Id.* at ¶¶ 98–103, 224, 235–237, 306, 422.)

On November 7, 2019, Plaintiffs brought this action against Defendant, HWC, GHS, several California school districts, county offices of education and Special Education Local Plan Areas ("SELPA"), the CDE, and various individual employees of these entities in state court. (ECF No. 1 at 5.) Defendant removed the case to this Court on March 23, 2020. (*Id.* at 1.) Plaintiffs filed the operative Second Amended Complaint ("SAC") on May 3, 2020, alleging various state and federal claims. (*See* ECF No. 12.)

The SAC alleges Defendant developed the restraint system at issue and is the president of HWC, a New York corporation that marketed Defendant's restraint system and provided training to GHS staff on the restraint techniques. (*Id.* at ¶¶ 70–71.) On May 26, 2020, Defendant brought the instant Motion to Dismiss pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(2), arguing that although he is an officer of HWC, he does not have sufficient *individual* contacts with California to subject him to personal jurisdiction in this state. (*See generally* ECF No. 39.)

## II.     STANDARD OF LAW

Rule 12(b)(2) allows a party to file a motion to dismiss for lack of personal jurisdiction. When there is no federal statute authorizing personal jurisdiction, the court applies the law of the state in which it sits. *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011). California's long-arm statute is coextensive with federal due process requirements. Cal. Code Civ. Proc. § 410.10. Accordingly, the "jurisdictional analyses under state law and federal due process are the same." *Mavrix Photo, Inc.*, 647 F.3d at 1223 (citing *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800–01 (9th Cir. 2004)). "For a court to exercise personal jurisdiction over a nonresident defendant, that defendant must have at least 'minimum contacts' with the relevant forum such that the exercise of jurisdiction 'does not offend traditional notions of fair play and substantial justice.'" *Schwarzenegger*, 374 F.3d at 801 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). Under the minimum contacts test, there are two categories of personal jurisdiction: general jurisdiction and specific jurisdiction. *Daimler AG v. Bauman*, 571 U.S. 117, 126–27 (2014).

///

///

3

1 "If the defendant's activities in the state are 'substantial' or 'continuous and systematic,' general jurisdiction may be asserted even if the cause of action is unrelated to those activities." *Doe v. Am. Nat. Red Cross*, 112 F.3d 1048, 1050 (9th Cir. 1997). Specific jurisdiction, on the other hand, is satisfied when the defendant's activities are directed toward the forum state and the defendant's liability arises out of or relates to those activities. *Schwarzenegger*, 374 F.3d at 802. The Ninth Circuit employs a three-part test to determine whether a defendant's contacts suffice to establish specific jurisdiction: "(1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable." *Id.* The burden is on plaintiff to satisfy the first two prongs. *Id.*

In opposing a defendant's motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing the court's jurisdiction over the defendant. *Wash. Shoe Co. v. A–Z Sporting Goods Inc.*, 704 F.3d 668, 671–72 (9th Cir. 2012). However, when the defendant's motion is based on written materials rather than an evidentiary hearing, the plaintiff need only make a "prima facie showing of jurisdictional facts to withstand the motion to dismiss." *Id.* (quoting *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154 (9th Cir. 2006)). The court resolves all disputed facts in favor of the plaintiff. *Id.* at 672.

### III.  ANALYSIS

Defendant moves to dismiss all Plaintiffs' claims against him based on lack of personal jurisdiction pursuant to Rule 12(b)(2). (ECF No. 39 at 2.) In opposition, Plaintiffs make two distinct arguments: (1) Defendant had sufficient individual contacts with California; and (2) Defendant is the alter ego of HWC. (*See generally* ECF No. 70.)

///
///
///

4

A.     Minimum Contacts

The parties do not dispute the Court can exercise personal jurisdiction over HWC.[2] The dispute lies in whether this Court can exercise personal jurisdiction over Defendant as an individual, independent of his status as an officer of HWC.

"[T]he fact that a corporation is subject to personal jurisdiction does not necessarily mean that the corporation's nonresident officers, directors, agents, and employees are as well." *Barkett v. Sentosa Properties LLC*, No. 1:14-CV-01698-LJO, 2015 WL 502319, at *13 (E.D. Cal. Feb. 5, 2015); *see also Glob. Commodities Trading Grp., Inc. v. Beneficio de Arroz Choloma, S.A.*, 972 F.3d 1101, 1109 (9th Cir. 2020). "For a court to exercise personal jurisdiction over an individual corporate officer, the requirements of the applicable long-arm statute and due process must still be met." *Barkett*, 2015 WL 502319, at *12. "To satisfy due process, an individual defendant must have sufficient 'minimum contacts,' in his or her individual capacity, with the litigation forum." *Id.* (citation and emphasis omitted); *see also Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 781 n.13 (1984). "Absent sufficient individual contacts, there must be a compelling reason for the court to exercise its equitable powers to 'pierce the corporate veil' and attribute the corporation's contacts to its officers in order for a court to assert jurisdiction over nonresident corporate officers." *Barkett*, 2015 WL 502319, at *12.

Defendant argues this Court cannot exercise general jurisdiction over him because he is not and has never been a California resident, he does not own any property in California, he has not traveled to California in over 10 years, and he was not served in California. (ECF No. 39 at 4–5; *see also* ECF No. 39-1 at 1–2.) Defendant also argues this Court cannot exercise specific jurisdiction over him because he was not involved in nor did he perform any of the alleged restraints identified in the SAC, he has never been to GHS, he was not involved in the training performed at GHS, and he has never met or had any contact with any of the named Plaintiffs. (ECF No. 39 at 5; *see also* ECF No. 39-1 at 1–2.)

///

---

[2]     HWC filed a separate motion to dismiss based solely on Rule 12(b)(6). (*See* ECF No. 40.)

In opposition, Plaintiffs provide various pieces of evidence — to which Defendant objects — in an attempt to demonstrate Defendant's individual contacts with California. (*See* ECF Nos. 69, 70.) Plaintiffs circuitously detail Defendant's "long history of involvement with California" as follows: (1) Defendant runs a website entitled "thetruthaboutpronerestraint.com," in which he claims to have testified as an expert throughout the United States and cites to various articles about school violence in California; (2) Defendant is the registrant of another website, "handlewithcare.com," which he uses to promote himself as an expert witness across the United States; (3) in 2011, Defendant responded to an article written in a San Francisco newspaper — *The Bay Citizen* — about the use of Defendant's restraint techniques in California schools and offered to travel to California to meet with the San Francisco Unified School District about his restraint system; (4) in 2012, Defendant wrote a letter to Congress about California Congressman George Miller's alleged retaliatory conduct and abuse of power relating to anti-restraint legislation; (5) Defendant posted an undated letter on his website in which he referenced his efforts to derail anti-restraint legislation in multiple states and indicated that he cited "the laws of all fifty States, including California" in his submissions to Congress; (6) Defendant authored an article about restraints which can be found on a California database; (7) on HWC's website, Defendant offers clients direct access to him; and (8) on a former version of HWC's website, Defendant asserted he personally credentialed "Master Instructors" who taught his program. (*Id.*)

As a whole, Plaintiffs' opposition lacks clarity. For example, Plaintiffs do not indicate whether they are asserting a theory of general or specific jurisdiction. Instead, Plaintiffs provide sparse, scattershot evidence that is not sufficient to constitute "minimum contacts" required for specific jurisdiction — and certainly not sufficient to constitute "continuous and systematic" contacts required for general jurisdiction. To the extent Defendant marketed his restraint system and expert testimony services on various websites, he apparently did so on a nationwide scale. Nothing about Defendant's representations were California-specific. Similarly, citing to articles about California events or authoring an article that can be found on a California database do not show Defendant targeted California. Although Plaintiffs emphasize Defendant posted a letter on his website about his efforts to derail anti-restraint legislation in multiple states and had some

type of conflict with a former California Congressman, it appears Defendant contacted Congress about those issues, not California.³ The only evidence Plaintiffs provide that even resembles individual contacts with California are Defendant's online responses to *The Bay Citizen* article in 2011. However, Plaintiffs fail to persuade the Court that by responding to the article via posts on his own website, Defendant "purposefully avail[ed] [himself] of the privilege of conducting activities within [California], thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958).

Even if Defendant's limited contacts with California sufficed, Plaintiffs' claims do not arise out of or relate to those contacts. Defendant responded to *The Bay Citizen* article in 2011 and the article focused on the use of restraints at schools in the San Francisco area. (*See* ECF No. 69 at 30.) In the instant action, Plaintiffs' claims stem from the use of restraints at GHS in the Sacramento area between 2016 and 2018. (*See* ECF No. 12.) As mentioned, Defendant filed a declaration asserting he was not involved in and did not perform any of the alleged restraints identified in the SAC, he has never been to GHS, he was not involved in the training performed at GHS, he has never met or had any contact with any of the named Plaintiffs, and he has not traveled to California in over 10 years. (ECF No. 39-1.) Plaintiffs fail to rebut Defendant's assertions or create any genuine factual dispute on the issue.

For these reasons, the Court finds Plaintiffs have not established the requisite minimum contacts between Defendant and California, nor have Plaintiffs established that their claims arise out of any such contacts. Therefore, even if the Court considers Plaintiffs' evidence over Defendant's objections, Plaintiffs have failed to satisfy either the first or second prong of the specific jurisdiction test.

///
///
///
///

---

³ Defendant addressed the letter to "All House and Senate Education Committee Members." (ECF No. 69 at 42.)

B. <u>Alter Ego</u>

Plaintiffs next argue this Court can exercise personal jurisdiction over Defendant because he used HWC as his alter ego. (ECF No. 70 at 19.)

"The alter ego exception allows for 'imputed' general jurisdiction, in which the corporate entity's contacts with the forum state can be 'fairly attributed' to its owners." *Uhlig v. Fairn & Swanson Holdings, Inc.*, No. 20-CV-00887-DMS-MSB, 2020 WL 6872881, at *3 (S.D. Cal. Nov. 23, 2020) (citing *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1071 (9th Cir. 2015)). In order to establish alter ego liability, a plaintiff "must make out a prima facie case (1) that there is such unity of interest and ownership that the separate personalities of the two entities no longer exist and (2) that failure to disregard their separate identities would result in fraud or injustice." *Ranza*, 793 F.3d at 1073 (internal quotation marks, alterations, and citations omitted). In making this determination, a court may consider "the commingling of funds and assets of the two entities, identical equitable ownership in the two entities, use of the same offices and employees, disregard of corporate formalities, identical directors and officers, and use of one as a mere shell or conduit for the affairs of the other." *Troyk v. Farmers Group, Inc.*, 171 Cal. App. 4th 1305, 1342 (2009). "Disregarding the corporate entity is recognized as an extreme remedy, and [c]ourts will pierce the corporate veil only in exceptional circumstances." *Calvert v. Huckins*, 875 F. Supp. 674, 678 (E.D. Cal. 1995) (citation and internal quotation marks omitted). "Reflecting this reluctance, courts hold plaintiffs who invoke the alter ego theory of personal jurisdiction to a slightly higher burden: There is a presumption of corporate separateness that must be overcome by clear evidence that the parent in fact controls the activities of the subsidiary." *Id.* (citation and internal quotation marks omitted).

Plaintiffs again rely on scattershot evidence. Plaintiffs argue Defendant started HWC as a "dba" in 1984, and HWC filed for the restraint trademark in 2006. (ECF No. 70 at 20.) Plaintiffs further argue that the New York Department of State shows that the CEOs of HWC are Defendant and Hilary Adler ("Adler") and that the principal executive office is a single-family residence in rural update New York. (*Id.* at 21.) Plaintiffs argue that the value of the residence and adjacent land is approximately $614,000. (*Id.*) Plaintiffs argue Defendant and Adler filed

lawsuits to recover monetary damages on behalf of Defendant as an individual and referred to Defendant and HWC as "one and the same entity." (*Id.* at 22.) Lastly, Plaintiffs argue that Defendant's posts on his personal website show that Defendant "conducted his affairs as if he and [HWC] were the same entity." (*Id.* at 23.)

In reply, Defendant argues Plaintiffs have not met their burden as to either prong of the alter ego test. (ECF No. 111.) The Court agrees. As to the unity of interest prong, Plaintiffs fail to provide evidence that Defendant controls HWC "to such a degree as to render the latter the mere instrumentality of the former." *Ranza*, 793 F.3d at 1073 (explaining that the unity of interest "envisions pervasive control . . . such as when a parent corporation dictates every facet of the subsidiary's business — from broad policy decisions to routine matters of day-to-day operation."). Plaintiffs' evidence does not suggest Defendant exercised "pervasive control" over HWC, and Plaintiffs' conclusory assertions to that effect are insufficient. *See id.*

Plaintiffs also fail to satisfy the second prong of the alter ego test. "[U]nder California law the kind of inequitable result that makes alter ego liability appropriate is an abuse of the corporate form, such as under-capitalization or misrepresentation of the corporate form to creditors." *Firstmark Capital Corp. v. Hempel Financial Corp.*, 859 F.2d 92, 94 (9th Cir. 1988) (internal quotations omitted). Plaintiffs baldly allege HWC "doesn't hold much by way of assets" based on the supposed value of its office and 200 shares of no par value stock. (ECF No. 70 at 21.) Plaintiffs' evidence is insufficient to show HWC is undercapitalized, committed fraud, or exists for any other improper purpose, such as to avoid liability. *See Sonora Diamond Corp. v. Superior Court*, 83 Cal. App. 4th 523, 538 (2000) (stating courts invoke alter ego liability "when the corporate form is used to perpetrate a fraud, circumvent a statute, or accomplish some other wrongful or inequitable purpose"). Therefore, Plaintiffs have not demonstrated that failure to exercise personal jurisdiction over Defendant would result in a fraud or injustice. *See Ranza*, 793 F.3d at 1073.

Because there is no basis for this Court to exercise personal jurisdiction over Defendant, Plaintiffs' claims against Defendant are DISMISSED. Dismissal is without prejudice to the extent Plaintiffs' claims against Defendant may be brought in a court with proper jurisdiction.

### IV. CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss is GRANTED. (ECF No. 39.) Plaintiffs' claims against Defendant are DISMISSED without prejudice.

IT IS SO ORDERED.

DATED: March 15, 2021

Troy L. Nunley
United States District Judge