1

2

3

4

5

6

7

8                     UNITED STATES DISTRICT COURT

9                     EASTERN DISTRICT OF CALIFORNIA

10

11    STACIA LANGLEY, et al.,                    No. 2:20-cv-00635-TLN-KJN

12              Plaintiffs,

13         v.                                    **ORDER**

14    GUIDING HANDS SCHOOL, INC., et al.,

15              Defendants.

16

17

18         This matter is before the Court on Motions to Dismiss brought by the following

19    Defendants: Pollock Pines Elementary School District ("PPESD"), Pat Atkins ("Atkins"), and

20    Licia McDonald ("McDonald") (collectively, "Pollock Pines Defendants") (ECF No. 30);

21    Amador County Office of Education SELPA ("Amador SELPA") (ECF No. 33); Placerville

22    Union School District ("PUSD") and Eric Bonniksen ("Bonniksen") (collectively, "Placerville

23    Defendants") (ECF No. 34); Davis Joint Unified School District ("DJSUD"), Jennifer Galas

24    ("Galas"), Patrick McGrew ("McGrew"), and Riley Chessman ("Chessman") (collectively,

25    "Davis Defendants") (ECF No. 35); Elk Grove Unified School District ("EGUSD"), Elk Grove

26    Unified SELPA ("Elk Grove SELPA"), Marilyn Delgado ("Delgado"), and Doug Phillips

27    ("Phillips") (collectively, "Elk Grove Defendants") (ECF No. 36); Kimberly Wohlwend

28    ("Wohlwend") (ECF No. 37); Folsom Cordova Unified School District ("FCUSD"), Folsom

                                                1

1  Cordova SELPA ("FCSELPA"), Kim Triguero ("Triguero"), Meghan Magee ("Magee"), and

2  Betty Jo Wessinger ("Wessinger") (collectively, "Folsom Defendants") (ECF No. 38); Handle

3  with Care Behavior Management System, Inc. ("HWC") (ECF No. 40); Guiding Hands School,

4  Inc. ("GHS"), Staranne S. Meyers ("Meyers"), Cindy Keller ("Keller"), Jennifer Christensen

5  ("Christensen"), Betty Morgan ("Morgan"), Jill Watson ("Watson"), Linda Stearn ("Stearn"),

6  Michael Smith ("Smith"), Le'mon Thomas ("Thomas"), and David Chambers ("Chambers")

7  (collectively, "GHS Defendants") (ECF Nos. 42, 45); California Department of Education

8  ("CDE") and State Superintendent of Public Instruction Tony Thurmond ("Thurmond")

9  (collectively, "CDE Defendants") (ECF No. 43); and Yolo County Office of Education,

10  Carolynne Beno, and Sharon Holstege (collectively, "Yolo Defendants") (ECF No. 44)

11  (collectively, "Defendants").  Also before the Court is HWC's separately-filed Motion to Strike.

12  (ECF No. 41.)

13       Plaintiffs Stacia Langley ("Langley"), David Benson ("Benson"), Michael Turelli

14  (personal representative of M.B.), Laura Kinser ("Kinser") (individually and as guardian *ad litem*

15  for D.Z.), Melanie Stark ("Stark") (individually and as guardian *ad litem* for M.S.), Cherilyn

16  Caler ("Caler") (individually and as guardian *ad litem* for J.P.), Timothy Peterson ("Peterson")

17  (individually and as guardian *ad litem* for A.P.), Suzanne Brent-Petersen ("Brent-Petersen")

18  (individually and as guardian *ad litem* for A.P.), Robert Darrough ("Darrough") (individually and

19  as guardian *ad litem* for E.D.), Kristen Coughlin ("Coughlin") (individually and as guardian *ad

20  litem* for E.D.), Susan Muller ("Muller") (individually and as guardian *ad litem* for H.K.),

21  Christian Davis ("Davis") (individually and as guardian *ad litem* for S.D.), Deborah Marques

22  (individually and as guardian *ad litem* for L.M.), and Louis Marques (individually and as

23  guardian *ad litem* for L.M.) (collectively, "Plaintiffs") filed oppositions or non-oppositions to

24  each motion.  (ECF Nos. 67, 68, 70, 71, 72, 75, 77, 79, 80, 81, 82, 83, 96.)

25       Defendants filed replies.  (ECF Nos. 103, 104, 105, 106, 107, 108, 109, 110, 112, 113,

26  116, 117.)

27       For the reasons set forth below, the Court GRANTS in part and DENIES in part

28  Defendants' motions.

2

1

## I.     FACTUAL AND PROCEDURAL BACKGROUND

2      This case involves the use of restraints on students with disability-related behavioral

3    issues, which resulted in the death of a child.  Plaintiffs include nine children with disabilities,

4    including developmental, social, and emotional disabilities.  (ECF No. 12 at ¶¶ 18–32.)  Also

5    named as Plaintiffs are the students' parents.  (*Id.* at ¶¶ 33–34.)  Plaintiffs' local education

6    agencies ("LEAs") placed the students at GHS.  (*Id.* at ¶ 2.)  GHS was a nonpublic school

7    certified by the CDE to provide education and specialized services to public school children with

8    disabilities.  (*Id.* at ¶¶ 75–78.)  GHS contracted with LEAs to provide special education services

9    on behalf of those entities.  (*Id.* at ¶ 45.)

10      At issue is a restraint system developed by Bruce Chapman and marketed by HWC.[1]  (*Id.*

11    at ¶¶ 70–71.)  On November 28, 2018, a member of GHS staff placed M.B., a 13-year-old student

12    with autism and other disabilities, in a prone, face-down restraint for approximately one hour and

13    forty-five minutes.  (*Id.* at ¶¶ 239–276.)  During the restraint, M.B. showed increasing and

14    obvious signs of distress, including kicking the wall with his feet, urinating on himself, biting his

15    lip until it bled, and vomiting.  (*Id.* at ¶¶ 246, 248–251, 258, 260–263, 265–272, 274.)  M.B.

16    finally went into cardiac arrest and passed out.  (*Id.* at ¶¶ 263, 266–272.)  He was transported to a

17    medical center and died on November 30, 2018.  (*Id.* at ¶¶ 323–325.)  The CDE subsequently

18    revoked GHS's nonpublic school credential.  (*Id.* at ¶ 10.)  Two administrators and one staff

19    member have been charged with manslaughter in connection with M.B.'s death.  (*Id.*)

20      Plaintiffs allege M.B. was not the only student subjected to this type of abuse — GHS

21    engaged in a policy and practice of using restraints as a substitute for positive interventions in

22    response to predictable behavior that did not pose a clear and present danger of serious physical

23    harm to the student or others.  (*Id.* at ¶¶ 48–57, 98–101, 336–337, 346–347, 358–359, 363–364,

24    389–391, 369–397, 401–409, 415–416, 419, 425–426.)  Plaintiffs allege GHS used restraints

25    against its students frequently, for periods of time that were longer than necessary, and with

26    excessive force.  (*Id.* at ¶¶ 98–103, 224, 235–237, 306, 422.)

27

28

---

[1]      On March 16, 2021, the Court dismissed Bruce Chapman from this action based on a lack of personal jurisdiction.  (ECF No. 121.)

1    On November 7, 2019, Plaintiffs brought this action against Defendants in El Dorado

2    County Superior Court.  (ECF No. 1 at 5.)  Defendant removed the case to this Court on March

3    23, 2020.  (*Id.* at 1.)  On May 3, 2020, Plaintiffs filed the operative Second Amended Complaint

4    ("SAC") pursuant to a stipulation by the parties, alleging various state and federal claims against

5    Defendants.  (*See* ECF No. 12.)  Defendants subsequently brought 12 separate motions to dismiss

6    and HWC also brought a motion to strike.  (ECF Nos. 30, 33, 34, 35, 36, 37, 38, 40, 41, 42, 43,

7    44, 45.)  The Court will address all Defendants' pending motions herein.

8    **II.    STANDARD OF LAW**

9    Federal Rule of Civil Procedure ("Rule") 8(a) requires that a pleading contain "a short and

10   plain statement of the claim showing that the pleader is entitled to relief."  *See Ashcroft v. Iqbal*,

11   556 U.S. 662, 678–79 (2009).  Under notice pleading in federal court, the complaint must "give

12   the defendant fair notice of what the claim . . . is and the grounds upon which it rests."  *Bell*

13   *Atlantic v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotations omitted).  "This simplified

14   notice pleading standard relies on liberal discovery rules and summary judgment motions to

15   define disputed facts and issues and to dispose of unmeritorious claims."  *Swierkiewicz v. Sorema*

16   *N.A.*, 534 U.S. 506, 512 (2002).

17   On a motion to dismiss, the factual allegations of the complaint must be accepted as

18   true.  *Cruz v. Beto*, 405 U.S. 319, 322 (1972).  A court must give the plaintiff the benefit of every

19   reasonable inference to be drawn from the "well-pleaded" allegations of the complaint.  *Retail*

20   *Clerks Int'l Ass'n v. Schermerhorn*, 373 U.S. 746, 753 n.6 (1963).  A plaintiff need not allege

21   "'specific facts' beyond those necessary to state his claim and the grounds showing entitlement to

22   relief."  *Twombly*, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads

23   factual content that allows the court to draw the reasonable inference that the defendant is liable

24   for the misconduct alleged."  *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. 544, 556 (2007)).

25   Nevertheless, a court "need not assume the truth of legal conclusions cast in the form of

26   factual allegations."  *United States ex rel. Chunie v. Ringrose*, 788 F.2d 638, 643 n.2 (9th Cir.

27   1986).  While Rule 8(a) does not require detailed factual allegations, "it demands more than an

28   unadorned, the defendant-unlawfully-harmed-me accusation."  *Iqbal*, 556 U.S. at 678.  A

4

1   pleading is insufficient if it offers mere "labels and conclusions" or "a formulaic recitation of the

2   elements of a cause of action." *Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at

3   678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory

4   statements, do not suffice.").  Moreover, it is inappropriate to assume the plaintiff "can prove

5   facts that it has not alleged or that the defendants have violated the . . . laws in ways that have not

6   been alleged[.]" *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*,

7   459 U.S. 519, 526 (1983).

8           Ultimately, a court may not dismiss a complaint in which the plaintiff has alleged "enough

9   facts to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 697 (quoting

10  *Twombly*, 550 U.S. at 570).  Only where a plaintiff fails to "nudge[ ] [his or her] claims . . . across

11  the line from conceivable to plausible[,]" is the complaint properly dismissed.  *Id.* at 680.  While

12  the plausibility requirement is not akin to a probability requirement, it demands more than "a

13  sheer possibility that a defendant has acted unlawfully." *Id.* at 678.  This plausibility inquiry is "a

14  context-specific task that requires the reviewing court to draw on its judicial experience and

15  common sense." *Id.* at 679.

16          If a complaint fails to state a plausible claim, "'[a] district court should grant leave to

17  amend even if no request to amend the pleading was made, unless it determines that the pleading

18  could not possibly be cured by the allegation of other facts.'" *Lopez v. Smith*, 203 F.3d 1122,

19  1130 (9th Cir. 2000) (en banc) (quoting *Doe v. United States*, 58 F.3d 484, 497 (9th Cir.

20  1995)); *see also Gardner v. Marino*, 563 F.3d 981, 990 (9th Cir. 2009) (finding no abuse of

21  discretion in denying leave to amend when amendment would be futile).  Although a district court

22  should freely give leave to amend when justice so requires under Rule 15(a)(2), "the court's

23  discretion to deny such leave is 'particularly broad' where the plaintiff has previously amended

24  its complaint." *Ecological Rights Found. v. Pac. Gas & Elec. Co.*, 713 F.3d 502, 520 (9th Cir.

25  2013) (quoting *Miller v. Yokohama Tire Corp.*, 358 F.3d 616, 622 (9th Cir. 2004)).

26  ///

27  ///

28  ///

5

1    **III.    ANALYSIS**

2            A.      Davis Defendants, Elk Grove Defendants, Folsom Defendants, Placerville

3                    Defendants, Pollock Pines Defendants, and Amador SELPA's Motions to

4                    Dismiss

5            Davis Defendants, Elk Grove Defendants, Folsom Defendants, Placerville Defendants,

6    and Pollock Pines Defendants are represented by the same counsel and make the same threshold

7    argument that the SAC should be dismissed pursuant to Rule 8 as "an impermissible shotgun

8    pleading." (*See* ECF No. 30-1 at 9; ECF No. 34-1 at 11; ECF No. 36-1 at 13; ECF No. 35-1 at

9    12; ECF No. 38-1 at 11.)

10           Rule 8 requires "each averment of a pleading to be 'simple, concise, and direct.'" *See*

11   *McHenry v. Renne*, 84 F.3d 1172, 1177–78 (9th Cir. 1996) (affirming dismissal of complaint that

12   was "argumentative, prolix, replete with redundancy, and largely irrelevant"). To comply with

13   Rule 8, a complaint should clearly and fully set forth "who is being sued, for what relief, and on

14   what theory, with enough detail to guide discovery." *Id.* at 1178. Even if the factual elements of

15   a cause of action are present but are scattered throughout the complaint and not organized into a

16   "short and plain statement of the claim," dismissal for failure to satisfy Rule 8 is proper. *Id.*

17   Further, "[t]he propriety of dismissal for failure to comply with Rule 8 does not depend on

18   whether the complaint is wholly without merit." *Id.* at 1179. Indeed, Rule 8(d)'s requirement

19   that each averment of a pleading be "'simple, concise, and direct,' applies to good claims as well

20   as bad, and is a basis for dismissal independent of Rule 12(b)(6)." *Id.*

21           The SAC is anything but simple, concise, and direct. The SAC is 169 pages long, with

22   over 700 paragraphs. (*See generally* ECF No. 12.) The SAC includes 40 pages of factual

23   allegations that are later incorporated by reference within causes of action that essentially list the

24   bare elements of each claim. (*Id.*) Throughout the SAC, Plaintiffs fail to clearly set forth the

25   factual allegations giving rise to each particular Plaintiff's claims. *See Bautista v. Los Angeles*

26   *Cnty.*, 216 F.3d 837, 840–841 (9th Cir. 2000) (affirming dismissal of a complaint with prejudice

27   where the complaint failed to include short and plain statement of claim of each of the 51

28   plaintiffs and failed to state each plaintiff's claim in separate count).

1        Plaintiffs' own responses to Defendants' motions illustrate the confusion.  Despite naming

2    Amador SELPA and Placerville Defendants as parties, Plaintiffs filed non-oppositions admitting

3    there are no claims alleged against those Defendants.[2]  (ECF Nos. 67, 96.)  In opposition to Davis

4    Defendants' motion to dismiss, Plaintiffs agree to strike the name of Michael Turelli from the

5    portion of the prayer seeking relief for wrongful death.  (ECF No. 71 at 10.)  Plaintiffs also agree

6    to dismiss their claims against Galas, McGrew, and Chessman, with the exception of Plaintiffs' §

7    1983 claims against those Defendants.  (*Id.*)  In opposition to Elk Grove Defendants' motion to

8    dismiss, Plaintiffs agree to dismiss their claims against Delgado and Phillips, with the exception

9    of their § 1983 claims against those Defendants in their personal capacities.  (ECF No. 82 at 9.)

10   Plaintiffs also clarify they did not bring § 1983 claims against EGUSD or Elk Grove SELPA.

11   (*Id.*)  In opposition to Folsom Defendants' motion to dismiss, Plaintiffs clarify that Kinser does

12   not allege any claims against Folsom Defendants and agrees to dismiss the Unruh Act Claim

13   against Folsom SELPA.  (ECF No. 80 at 6.)  In opposition to Pollock Pines Defendants' motion

14   to dismiss, Plaintiffs clarify the only individual with claims against Pollock Pines Defendants is

15   S.D.  (ECF No. 83 at 6.)   Plaintiffs also admit there are no claims currently alleged against

16   PPESD.  (*Id.*)  Lastly, Plaintiffs agree to dismiss S.D.'s common law tort claims against Atkins

17   and McDonald in their official capacities.  (*Id.*)  Plaintiffs continue this pattern of clarification as

18   to the other Defendants' motions, which indicates that the SAC does not clearly allege "who is

19   being sued, for what relief, and on what theory."  *McHenry*, 84 F.3d at 1178.

20        Accordingly, the Court GRANTS Davis Defendants, Elk Grove Defendants, Folsom

21   Defendants, and Pollock Pines Defendants' motions to dismiss pursuant to Rule 8 and

22   DISMISSES Plaintiffs' claims against those Defendants with leave to amend.

23        As mentioned, Plaintiffs filed non-oppositions to Placerville Defendants' and Amador

24   SELPA's motions to dismiss.  In their non-oppositions, Plaintiffs do not ask for leave to amend

25   any existing claims against Placerville Defendants or Amador SELPA.  Instead, Plaintiffs state

26

27

28

---

[2]     Amador County Unified School District ("ACUSD") is also named as a Defendant separate from Amador SELPA.  However, ACUSD is not a party to Amador SELPA's motion, and the Court therefore does not address whether Plaintiffs have viable claims against ACUSD.

1    they will be filing a motion to amend to add new claims against those Defendants.  (ECF No. 67

2    at 2; ECF No. 96 at 2.)  As of the date of this Order, however, Plaintiffs have not filed a motion to

3    amend.  Absent any argument as to why the Court should allow them to add new claims against

4    Amador SELPA or Placerville Defendants, the Court GRANTS those Defendants' motions

5    without leave to amend and DISMISSES Amador SELPA, PUSD, and Bonniksen without

6    prejudice.  If Plaintiffs wish to bring new claims against these Defendants, they may file a motion

7    to do so pursuant to Rule 15.

8           Because the Court dismisses Plaintiffs' claims against the aforementioned Defendants

9    pursuant to Rule 8, the Court need not and does not reach those Defendants' remaining

10   arguments.  Although arguably the entire SAC is subject to dismissal pursuant to Rule 8, the

11   remaining Defendants did not raise this threshold argument in their motions to dismiss.

12   Therefore, the Court will address the merits of the remaining motions in turn.

13                    B.      CDE Defendants' Motion to Dismiss

14          CDE Defendants move to dismiss all claims against them pursuant to Rule 12(b)(6).

15   (ECF No. 43-1 at 13.)  In opposition, Plaintiffs agree to dismiss all claims against Thurmond.

16   (ECF No. 72 at 6.)  Plaintiffs also agree to dismiss all claims against CDE except as follows: (1)

17   violation of Title II of the Americans with Disabilities Act ("ADA"); (2) violation of § 504 of the

18   Rehabilitation Act of 1973, 29 U.S.C. § 794 ("§ 504"); (3) violation of Cal. Educ. Code § 220; (4)

19   negligence; (5) negligent supervision; (6) negligence per se; and (7) wrongful death.  (ECF No.

20   72 at 6.)  Plaintiffs also clarify that the only students with claims against CDE are M.S. and M.B.

21   (*Id.* at 9.)  The Court will address CDE's arguments as to the remaining claims.

22   ///

23   ///

24   ///

25   ///

26   ///

27   ///

28   ///

1              *i.*      *Federal Claims (ADA and § 504)*

2                   *a.*      *Exhaustion*

3          CDE argues M.S. failed to exhaust administrative remedies as required by the Individuals

4   with Disabilities Education Act ("IDEA") for the § 504 and ADA claims.[3]  (ECF No. 43-1 at 17.)

5          The IDEA is a federal statute enacted "to ensure that all children with disabilities have

6   available to them a free appropriate public education [FAPE]."  20 U.S.C. § 1400(d)(1)(A).  A

7   FAPE encompasses "both 'instruction' tailored to meet a child's 'unique needs' and sufficient

8   'supportive services' to permit the child to benefit from that instruction."  *Fry v. Napoleon Cmty.*

9   *Sch.*, 137 S. Ct. 743, 748–49 (2017).

10         To comply with the IDEA, school districts must create an Individualized Education

11  Program ("IEP") for each child with a disability.  20 U.S.C. § 1414(d).  Additionally:

12         The IDEA requires educational agencies to implement procedures which provide
13         "[a]n opportunity to present complaints with respect to any matter relating to the
           identification, evaluation, or educational placement of the child, or the provision of
           a [FAPE] to such child[.]"  20 U.S.C. § 1415(b)(6).  The parent or educational
14         agency begins the process by filing a due process complaint.  20 U.S.C. §
15         1415(b)(6), (b)(7).  The matter proceeds to a "due process hearing" before an
           impartial hearing officer.  § 1415(f)(1)(A).
16

17  *S.B. by & through Kristina B.*, 327 F. Supp. 3d at 1243–44.  Notably, the IDEA requires the

18  exhaustion of all administrative remedies on all claims prior to filing a civil action.  20 U.S.C. §

19  1415(l); *see J.H. ex rel Sarah H. v. Nevada City Sch. Dist.*, No. 2:14-CV-00796-TLN, 2015 WL

20  1021424, at *3 n.4 (E.D. Cal. Mar. 9, 2015) (citation omitted).

21         In *Fry*, the Supreme Court explained the IDEA "requires that a plaintiff exhaust the

22  IDEA's procedures before filing an action under the ADA, the Rehabilitation Act, or similar laws

23  when (but only when) her suit 'seek[s] relief that is also available' under the IDEA."  137 S. Ct.

24  at 752.  Such an action "must seek relief for the denial of a FAPE, because that is the only 'relief'

25  the IDEA makes 'available.'"  *Id.*  When determining whether an action brought under a statute

26  other than the IDEA seeks relief for the denial of a FAPE, courts must look "to the 'substance' of,

27

28  [3]      CDE does not assert failure to exhaust as to M.B.  (ECF No. 43-1 at 17.)

1    rather than the labels used in, the plaintiff's complaint . . . or, in legal-speak, the gravamen — of

2    the plaintiff's complaint."  *Id.* at 755.

3           Plaintiffs argue exhaustion is not required because they "seek monetary damages for

4    physical and emotional abuse," which are "not available under the IDEA."  (ECF No. 72 at 15–

5    16.)  The Court in *Fry* explicitly declined to rule on whether a plaintiff seeking monetary

6    damages must exhaust administrative remedies.  137 S. Ct. at 754 n.8.  ("[W]e do not address here

7    . . . a case in which a plaintiff, although charging the denial of a FAPE, seeks a form of remedy

8    that an IDEA officer cannot give — for example, . . . money damages for resulting emotional

9    injury.").  In the Ninth Circuit, exhaustion *is* required when monetary damages relate to harms

10   resulting from the denial of a FAPE.  *See D. D. by & through Ingram v. Los Angeles Unified Sch.*

11   *Dist.*, 984 F.3d 773, 791 n.15 (9th Cir. 2020).  However, "to the extent that a plaintiff has laid out

12   a plausible claim for damages unrelated to the deprivation of a FAPE, the IDEA does not require

13   her to exhaust administrative remedies before seeking them in court."  *Payne v. Peninsula Sch.*

14   *Dist.*, 653 F.3d 863, 877 (9th Cir. 2011) (en banc), *overruled on other grounds by Albino v. Baca*,

15   747 F.3d 1162, 1171 (9th Cir. 2014).

16          The monetary damages Plaintiffs seek include general damages, medical expenses, past

17   and future lost earnings, general damages for emotional distress, and damages for pain and

18   suffering.  (ECF No. 12 at 153–154.)  These damages apparently relate to Plaintiffs' alleged

19   physical and emotional injuries caused by the use of restraints.  Although CDE argues these

20   monetary damages somehow flow from the denial of a FAPE, the Court declines to make such an

21   assumption at this stage.  *See Payne*, 653 F.3d at 877 ("[W]e do not think, especially in the

22   context of motions to dismiss or summary judgment motions, that it is proper for courts to assume

23   that money damages will be directed toward forms of relief that would be available under the

24   IDEA.").  Future discovery may clarify whether the "gravamen" of Plaintiffs' claims relate to the

25   denial of a FAPE, and CDE may raise its exhaustion argument again if further evidence arises.

26   As it is, Plaintiffs have "laid out a plausible claim for damages unrelated to the deprivation of a

27   FAPE."  *See id.* at 877, 880.  Therefore, the Court DENIES CDE's motion to dismiss Plaintiffs'

28   claims based on failure to exhaust under the IDEA.

1                                  *b.        Failure to State a Claim*

2              Alternatively, CDE moves to dismiss the federal claims because "[t]he SAC does not

3     plausibly allege that the CDE discriminated against Plaintiffs based on disability."  (ECF No. 43-

4     1 at 35.)

5              To plead a *prima facie* ADA claim, a plaintiff must allege as follows: "(1) she is an

6     individual with a disability; (2) she is otherwise qualified to participate in or receive the benefit of

7     a public entity's services, programs, or activities; (3) she is either excluded from participation in

8     or denied the benefits of the public entity's services, programs, or activities or was otherwise

9     discriminated against by the public entity; and (4) such exclusion, denial of benefits, or

10    discrimination was solely by reason of her disability."  *Sheehan v. City & Cnty. of S.F.*, 743 F.3d

11    1211, 1232 (9th Cir. 2014).  Additionally, with respect to a § 504 claim, a plaintiff must plead

12    that the program at issue receives federal assistance.  *Duvall v. Cnty. of Kitsap*, 260 F.3d 1124,

13    1135 (9th Cir. 2001).  Plaintiffs allege, and CDE does not dispute, that CDE receives federal

14    assistance.  (ECF No. 12 at ¶ 46.)

15             Plaintiffs' claims against CDE center on CDE's alleged "failure to make reasonable

16    modifications to its policies and practices regarding certification, monitoring, supervision, and

17    investigation of nonpublic schools" despite "repeated notifications . . . regarding the

18    disproportionate use of restraints on children with disabilities and their tragic outcomes."  (ECF

19    No. 72 at 24.)  Plaintiffs allege students M.B. and M.S. suffered from several disabilities, such as

20    autism, and were placed at GHS by their LEAs.  (ECF No. 12 at ¶¶ 2, 18, 27.)  Plaintiffs also

21    allege CDE knew or should have known about the danger of the restraints used on disabled

22    students at GHS.  (*Id.* at ¶¶ 83–96, 99–103.)  For example, Plaintiffs allege CDE received

23    behavioral emergency reports, which at the very least leads to a reasonable inference that CDE

24    was on notice that restraints were being imposed on disabled children frequently and excessively.

25    (ECF No. 12 at ¶ 98.)  Plaintiffs allege despite this knowledge, CDE failed to fulfill its statutory

26    duties to certify, monitor, supervise, and investigate nonpublic schools such as GHS, which

27    resulted in discrimination to Plaintiffs.  (*Id.* ¶¶ 77, 114–121.)  Therefore, Plaintiffs plausibly

28    allege (1) M.B. and M.S. were disabled individuals, (2) they were qualified to receive special

                                                      11

1   education services, (3) they were denied the benefit of special education services, and (4) the

2   denial was a result of their disabilities.  *See Sheehan*, 743 F.3d at 1232; *Duvall*, 260 F.3d at 1135.

3          As such, the Court DENIES CDE's motion to dismiss Plaintiffs' ADA and § 504 claims

4   for failure to state a claim.

5                          ii.     *State Law Claims*

6                          a.     *California Tort Claims Act ("CTCA")*

7          CDE next argues Plaintiffs failed to comply with the CTCA.  (ECF No. 43-1 at 21.)  The

8   CTCA applies to actions for damages against local public entities or public employees acting

9   within the scope of that employee's public employment.  Cal. Gov't Code § 950.2.  "The [CTCA]

10  requires, as a condition precedent to suit against a public entity, the timely presentation of a

11  written claim and the rejection of the claim in whole or in part."  *Mangold v. California Pub.*

12  *Utilities Comm'n*, 67 F.3d 1470, 1477 (9th Cir. 1995).  "[A] plaintiff must allege facts

13  demonstrating or excusing compliance with the claim presentation requirement."  *State of*

14  *California v. Superior Court*, 32 Cal. 4th 1234, 1243 (2004).  "The timely presentation of a claim

15  under the Tort Claims Act is not merely a procedural requirement but is an actual 'element of the

16  plaintiff's cause of action.'"  *Creighton v. City of Livingston*, 628 F. Supp. 2d 1199, 1225 (E.D.

17  Cal. 2009) (quoting *Shirk v. Vista Unified Sch. Dist.*, 42 Cal. 4th 201, 209 (2007)).  "[T]he

18  requirement that a plaintiff must affirmatively allege compliance with the CTCA applies in

19  federal court."  *Butler v. Los Angeles Cty.*, 617 F. Supp. 2d 994, 1001 (C.D. Cal. 2008).

20         The SAC summarily alleges "M.S. has complied with the Tort Claims filing against Elk

21  Grove Unified School District, Elk Grove Unified School District SELPA, Sacramento Office of

22  Education and the State of California."  (*See* ECF No. 12 at ¶¶ 28.)  As to M.B., the SAC alleges

23  his estate "has complied with the Tort Claims filing requirements for claims against the State of

24  California, Yolo County SELPA and DJUSD."  (*Id.* at ¶ 19.)  These allegations are mere legal

25  conclusions.  Plaintiffs have not provided the tort claims as attachments to the SAC, nor have

26  they alleged what specific facts and causes of action were referenced in the tort claims.  Without

27  such information, Plaintiffs have not sufficiently pleaded facts demonstrating they complied with

28  the CTCA in bringing state tort claims against CDE.

12

1    Therefore, the Court GRANTS CDE's motion to dismiss Plaintiffs' state tort claims with

2    leave to amend.

3                          *b.*        *Cal. Educ. Code § 220 ("§ 220")*

4    CDE argues Plaintiffs' § 220 claim "is brought against [Thurmond] only."  (ECF No. 43-1

5    at 35.)  In opposition, Plaintiffs assert they intended to bring the claim against CDE.  (ECF No. 72

6    at 28.)  The CDE is correct that the SAC does not list CDE as a Defendant under the § 220 claim

7    and there are no factual allegations specific to CDE within the § 220 claim.  (*See* ECF No. 12 at

8    99–102.)  To the extent this exclusion was an oversight, Plaintiffs are granted leave to amend

9    their § 220 claim to include CDE.  Plaintiffs should also include factual allegations to support

10   such a claim against CDE.

11                               *c.*    *Tort Claims*

12   CDE argues Plaintiffs fail to plead valid tort claims because "a state agency is not liable

13   for any injury except as may otherwise be provided by a statute" and "the SAC does not plausibly

14   allege an applicable mandatory duty on the part of the CDE."  (ECF No. 43-1 at 22 (citing Cal.

15   Gov't. Code §§ 815(a), 815.6).)  In opposition, Plaintiffs argue CDE "failed to discharge multiple

16   interlocking duties," as set forth in various sections of the California Education Code.  (ECF No.

17   72 at 29.)  However, Plaintiffs concede they did not allege the specific statutes and seek leave to

18   do so.  (*Id.* at n.4)  Based on the liberal standard in favor of granting leave to amend, the Court

19   GRANTS CDE's motion to dismiss Plaintiffs' tort claims with leave to amend.

20                     C.        Yolo Defendants' Motion to Dismiss

21   Yolo Defendants move to dismiss all claims against them pursuant to Rule 12(b)(6).

22   (ECF No. 44-1 at 8.)  In opposition, Plaintiffs clarify that the only parties bringing claims against

23   Yolo Defendants are M.B., Langley, and Benson.  (ECF No. 81 at 5.)  With the exception of their

24   § 1983 claims, Plaintiffs also agree to dismiss their claims against Beno and Holstege.  (*Id.*)

25   Yolo Defendants argue Plaintiffs' remaining claims against them should be dismissed

26   because there are no facts alleged in the SAC that Yolo Defendants were involved in M.B.'s

27   death.  (ECF No. 44-1 at 12.)  Plaintiffs' opposition lacks clarity, and Plaintiffs consistently fail to

28   point the Court to factual allegations about Yolo Defendants that support their arguments.  For

13

1    example, Plaintiffs argue — without citing to specific portions of the SAC — that Yolo

2    Defendants are liable because "[w]hen the SELPA decided not to renew the contract [with GHS]

3    for the 2018-2019 school year, it did nothing to remove [M.B.] from GHS or inform his parents.

4    Nor did it monitor the existing NPS placement of students in its area to ensure that students in the

5    Plan area were receiving services in approved, monitored, safe programs."  (ECF No. 81 at 16.)

6    Plaintiffs also indicate they can amend the SAC to include additional facts to support their claims

7    against Yolo Defendants.  (*Id.*)

8           As it is, the Court cannot discern a viable basis for Plaintiffs' claims against Yolo

9    Defendants.  It is not the Court's job to sift through voluminous allegations to attempt to

10    determine whether there may be a possible hidden cause of action.  *Walker v. Bowler*, No. 5:17-

11    cv-01687-AG-JC, 2018 WL 2392152, at *6 (C.D. Cal. May 24, 2018) (collecting cases) ("It is not

12    the Court's responsibility to hunt through plaintiff's prolix and rambling allegations in an attempt

13    to determine whether plaintiff might have some adequate basis for bringing an action in federal

14    court."); *Cf. United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) ("Judges are not like pigs,

15    hunting for truffles buried in briefs.").

16           Accordingly, the Court DISMISSES Plaintiffs' claims against Yolo Defendants with leave

17    to amend.

18                        D.      Wohlwend's Motion to Dismiss

19           Wohlwend is one of the GHS staff members who allegedly put M.B. in the prone restraint

20    prior to his death.  (ECF No. 12 at ¶ 244.)  Wohlwend moves to dismiss all claims against her

21    pursuant to Rule 12(b)(6).  (ECF No. 37 at 8–9.)  In opposition, Plaintiffs agree to dismiss their

22    Cal. Educ. Code § 220 and Cal. Civ. Code § 51 claims against Wohlwend.  (ECF No. 79 at 4.)

23    Plaintiffs also clarify that only M.B., Langley, Benson, and S.D. are bringing claims against

24    Wohlwend.  (*Id.*)  The Court will address Wohlwend's arguments in turn.

25    ///

26    ///

27    ///

28    ///

1

*i.*      *§ 1983 Claim*

2      Wohlwend argues Plaintiffs cannot bring a § 1983 claim against her because she was

3 acting as an employee of a private school.  (ECF No. 37 at 15.)

4      "Title 42 U.S.C. § 1983 provides a cause of action for the 'deprivation of any rights,

5 privileges, or immunities secured by the Constitution and laws' of the United States.  To state a

6 claim under § 1983, a plaintiff must allege two essential elements: (1) that a right secured by the

7 Constitution or laws of the United States was violated, and (2) that the alleged violation was

8 committed by a person acting under the color of State law."  *Long v. Cnty. of Los Angeles*, 442

9 F.3d 1178, 1185 (9th Cir. 2006).  The Supreme Court has indicated that "a private entity can

10 qualify as a state actor in a few limited circumstances — including, for example, (i) when the

11 private entity performs a traditional, exclusive public function; (ii) when the government compels

12 the private entity to take a particular action; or (iii) when the government acts jointly with the

13 private entity."  *Manhattan Cmty. Access Corp. v. Halleck*, 139 S. Ct. 1921, 1928 (2019) (internal

14 citations omitted).

15      Plaintiffs repeatedly allege "GHS employees acted under the color of state law because

16 GHS performed a function traditionally reserved to the state."  (*See e.g.*, ECF No. 12 at ¶¶ 462,

17 472, 483, 493.)  Plaintiffs' allegations are conclusory, and Plaintiffs fail to present a coherent

18 argument in opposition to persuade the Court they allege sufficient facts to demonstrate state

19 action on the part of Wohlwend.

20      Therefore, the Court GRANTS Wohlwend's motion to dismiss Plaintiffs' § 1983 claims

21 with leave to amend.

22

*ii.*      *Punitive Damages*

23      Wohlwend next moves to dismiss Plaintiffs' request for punitive damages in M.B.'s

24 wrongful death claim.  (ECF No. 37 at 19–20.)  Wohlwend argues punitive damages may not be

25 recovered in a wrongful death case for a homicide unless the defendant has been convicted of a

26 felony as set forth in Cal. Civ. Code § 3294(d) ("§ 3294(d)").  (*Id.*)  Wohlwend asserts she has

27 been charged but has not yet been convicted of a felony related to M.B.'s death.  (*Id.*)  In

28 opposition, Plaintiffs admit "punitive damages are not generally available on a wrongful death

15

1 | cause of action," subject to the exception in § 3294(d).  (ECF No. 79 at 18–19.)  However,

2 | Plaintiffs argue the Court need not decide the issue now because Wohlwend *may* be convicted of

3 | felony manslaughter in connection with M.B.'s death in the future.  (*Id.*)

4 |      The parties seem to agree that Plaintiffs can only recover punitive damages for the

5 | wrongful death claim pursuant to § 3294(d), which allows a plaintiff to recover punitive damages

6 | in a wrongful death claim "based upon a death which resulted from a homicide for which the

7 | defendant has been convicted of a felony."  Cal. Civ. Code § 3294(d).  Plaintiffs also apparently

8 | concede that Wohlwend has not yet been convicted of a felony.  As such, Plaintiffs cannot

9 | recover punitive damages according to the plain language of § 3294(d).  Plaintiffs do not provide

10 | any other basis for punitive damages.

11 |      Therefore, the Court GRANTS Wohlwend's motion to dismiss Plaintiffs' request for

12 | punitive damages as to M.B.'s wrongful death claim with leave to amend.

13 | *iii.*    *Negligence per se*

14 |      Wohlwend argues Plaintiffs' negligence per se claim is based on various causes of action

15 | throughout the SAC and should be dismissed if those underlying claims are dismissed.  (ECF No.

16 | 37 at 20.)  In opposition, Plaintiffs argue "Wohlwend violated the California Education Code

17 | statutes prohibiting corporal punishment and placing restrictions on the use of behavioral

18 | interventions."  (ECF No. 79 at 19 (citing Cal. Educ. Code §§ 49001, 56520, 56521, 56521.1,

19 | 56521.2).)  Even assuming these statutes could provide a viable basis for Plaintiffs' negligence

20 | per se claims, Plaintiffs do not bring claims under these statutes.  Indeed, the SAC does not even

21 | mention Cal. Educ. Code § 49002 or § 56520.  The Court agrees with Wohlwend that the basis

22 | for Plaintiffs' negligence per se claim is unclear and dismissal is warranted.

23 |      Accordingly, the Court DISMISSES the negligence per se claim with leave to amend.

24 | *iv.*    *Fraud*

25 |      Lastly, Wohlwend moves to dismiss Plaintiffs' fraud claim pursuant to Rule 9(b).  (ECF

26 | No. 37 at 20.)  "Under California law, the indispensable elements of a fraud claim include a false

27 | representation, knowledge of its falsity, intent to defraud, justifiable reliance, and damages."

28 | *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1105 (9th Cir. 2003) (citation and internal

1   quotation marks omitted).  A claim grounded in fraud "must state with particularity the

2   circumstances constituting fraud." Fed. R. Civ. P. 9(b).  A court may dismiss a claim for failing

3   to satisfy Rule 9(b)'s heightened pleading requirements.  *See Vess*, 317 F.3d at 1107.  Under this

4   heightened pleading standard, a party must "identify the who, what, when, where, and how of the

5   misconduct charged, as well as what is false or misleading about the purportedly fraudulent

6   statement, and why it is false." *Moore v. Mars Petcare US, Inc.*, 966 F.3d 1007, 1019 (9th Cir.

7   2020) (quoting *Davidson v. Kimberly–Clark*, 889 F.3d 956, 964 (9th Cir. 2018)).  The complaint

8   must contain enough detail to put a defendant on notice of the alleged misconduct so they may

9   "defend against the charge and not just deny that they have done anything wrong." *Vess*, 317

10  F.3d at 1106 (citation and internal quotation marks omitted).

11       Plaintiffs allege that on or about the date of enrolling M.B. at GHS, Wohlwend falsely

12  represented to Langley that two aides would be in M.B.'s classroom and he would be seated near

13  one of the aides to keep him calm.  (ECF No. 12 at ¶ 661.)  The SAC does not allege precisely

14  where or when this alleged misrepresentation took place, nor does it specify why the statement

15  was false.  *See Moore*, 966 F.3d at 1019.  Further, the SAC does not allege any specific false

16  representations that were made to M.B., S.D., or Benson.  While the SAC contains vague

17  allegations about representations made to "the Plaintiff students' parents" at some point in time

18  (ECF No. 12 at ¶ 660), Plaintiffs fail to allege how these representations were false, or where and

19  when the representations were made to each individual Plaintiff.  *See Moore*, 966 F.3d at 1019.

20  For all these reasons, the Court finds Plaintiffs' fraud allegations against Wohlwend do not satisfy

21  Rule 9(b).

22       As such, the Court DISMISSES Plaintiffs' fraud claims against Wohlwend with leave to

23  amend.

24              E.    GHS Defendants' Motion to Dismiss

25       As a preliminary matter, GHS Defendants filed two motions to dismiss on the same day.

26  (*See* ECF Nos. 42, 45.)  The Court has reviewed both motions and concludes they are essentially

27  identical.  Indeed, Plaintiffs filed a single opposition in response to both motions (ECF No. 75),

28  and GHS Defendants filed a single reply (ECF No. 117).  It is unclear why GHS Defendants filed

1    duplicate motions.  In the interest of judicial economy, the Court will cite GHS Defendants'

2    arguments only as set forth in the later-filed motion.

3        GHS Defendants move to dismiss all claims against them.  (ECF No. 45-1 at 6.)  In

4    opposition, Plaintiffs clarify that they did not intend to include Debbie Marques and Luis

5    Marques as Plaintiffs and admit there are no claims alleged by them in the SAC.  (ECF No. 75 at

6    6.)  Plaintiffs agree to dismiss L.M.'s common law tort claims against Defendants.  (*Id.*)

7    However, Plaintiffs indicate they will "shortly be filing a motion for leave to amend their

8    complaint . . . to assert [L.M.'s] claims under Cal. Civ. Code § 51, Cal. Civ. Code § 51.7, and

9    Cal. Ed. Code §§ 200" against GHS Defendants.  (*Id.*)  Plaintiffs also agree to remove DOE

10   Defendants from the SAC without prejudice to future amendment.  (*Id.*)  The Court will address

11   GHS Defendants' remaining arguments in turn.

12                    i.    *§ 504 Claim*

13       GHS Defendants argue GHS is not subject to § 504 because it is not federally funded.

14   (ECF No. 45-1 at 12.)  In opposition, Plaintiffs point to an allegation in the SAC that states "all of

15   the above-named" Defendants — presumably including GHS — "received federal financial

16   assistance."  (ECF No. 75 at 17 (citing ECF No. 12 at ¶ 450).)  Plaintiffs also allege GHS

17   contracted with LEAs to provide educational services to students on behalf of those agencies, and

18   the LEAs received federal financial assistance.  (*Id.* at 17 (citing ECF No. 12 at ¶¶ 45, 46).)

19       Section 504 provides that "[n]o otherwise qualified individual with a disability . . . shall,

20   solely by reason of her or his disability, be excluded from the participation in, be denied the

21   benefits of, or be subjected to discrimination under any program or activity receiving Federal

22   financial assistance."  29 U.S.C. § 794(a).  "Federal financial assistance can be direct or indirect."

23   *Herman v. United Bhd. of Carpenters & Joiners of Am., Local Union No. 971*, 60 F.3d 1375,

24   1381 (9th Cir. 1995) (citing *Jacobson v. Delta Airlines, Inc.*, 742 F.2d 1202, 1211 (9th Cir.

25   1984)).  "[P]ayments that include a subsidy constitute 'Federal financial assistance' within the

26   meaning of the Rehabilitation Act," however purely compensatory payments do not.  *Jacobson*,

27   742 F.2d at 1209.

28   ///

1    Neither party provides binding authority directly on point.  At least one district court in

2    the Ninth Circuit has denied a motion to dismiss under similar circumstances.  *See Smith v.*

3    *Tobinworld*, No. 16-CV-01676-RS, 2016 WL 3519244, at *4–6 (N.D. Cal. June 28, 2016)

4    ("[W]hen a disabled child, like [the plaintiff], gets placed in private school on the public dime,

5    that private school . . . is the intended recipient of the federal financial assistance disbursed via

6    the IDEA.").  However, "the question of which programs are subject to the [Rehabilitation Act] is

7    a question of law, to be answered in most cases by reference to the statutory authority for the

8    particular disbursements at issue or, if the authority to provide assistance has been delegated, to

9    the relevant administrative documents."  *Jacobsen*, 742 F.2d at 1210.  At this early stage,

10   Plaintiffs' allegations must be taken as true and all reasonable inferences must be drawn in their

11   favor.  *Cruz*, 405 U.S. at 322; *Retail Clerks*, 373 U.S. at 753 n.6.  At the very least, Plaintiffs'

12   allegations lead to a reasonable inference that GHS was the intended recipient of federal funds for

13   providing educational services to students on behalf of school districts.  Accordingly, the Court

14   DENIES GHS Defendants' motion to dismiss Plaintiffs' § 504 claim.

15              *ii.*      *Negligent Supervision Claim*

16   GHS Defendants argue Plaintiffs' negligent supervision claim should be dismissed

17   because it is duplicative of their negligence claim.  (ECF No. 45-1 at 13–14.)

18   California law imposes a duty on school districts and their employees "to supervise at all

19   times the conduct of the children on the school grounds and to enforce those rules and regulations

20   necessary to their protection."  *Hoff v. Vacaville Unified Sch. Dist.*, 19 Cal. 4th 925, 934 (1998).

21   The standard of care imposed upon school employees in carrying out this duty is the degree of

22   care "which a person of ordinary prudence, charged with [comparable] duties, would exercise

23   under the same circumstances."  *Id.*

24   It is unclear why Plaintiffs brought this claim as a standalone negligent supervision claim

25   rather than as part of their negligence claim.  Plaintiffs' negligent supervision claim alleges

26   Defendants "had a legal duty to exercise reasonable care in supervising special needs students in

27   its respective charge pursuant to California Education Code [§] 44807 and may be held liable for

28   injuries proximately caused by the failure to exercise such care."  (ECF No. 12 at ¶ 634.)

19

1    Plaintiffs further allege Defendants "failed to exercise reasonable care" in supervising the

2    Plaintiff students.  (*Id.* at ¶ 635.)  Plaintiffs' negligent supervision claim is conclusory and devoid

3    of factual allegations.  Moreover, Plaintiffs cite Cal. Educ. Code § 44807, which states in relevant

4    part, "Every teacher in the public schools shall hold pupils to a strict account for their conduct on

5    the way to and from school, on the playgrounds, or during recess."  (*Id.* at 634.)  Yet Plaintiffs

6    fail to explain how § 44807 imparts liability in this case.  For these reasons, the Court

7    DISMISSES Plaintiffs' negligent supervision claim with leave to amend.

8                           iii.      *Tortious Breach of the Covenant of Good Faith and Fair Dealing*

9                                     *Claim*

10          Under California law, "it is well established that a covenant of good faith and fair dealing

11   is implicit in every contract."  *Cates Constr., Inc. v. Talbot Partners*, 21 Cal. 4th 28, 43 (1999).

12   "[This] covenant is implied as a supplement to the express contractual covenants, to prevent a

13   contracting party from engaging in conduct that frustrates the other party's rights to the benefits

14   of the agreement."  *Waller v. Truck Ins. Exch., Inc.*, 11 Cal. 4th 1, 36 (1995).

15          GHS Defendants move to dismiss this claim because there are no factual allegations to

16   indicate there were any contracts between Plaintiffs and GHS Defendants.  (ECF No. 45-1 at 14.)

17   The Court agrees.  Plaintiffs' claim is difficult to follow.  The SAC alleges Plaintiffs "entered into

18   a written contract" with GHS Defendants "for the education of their child."  (ECF No. 12 at ¶

19   642.)  However, there are no factual allegations about the terms of any such contracts.  Plaintiffs

20   allege "[a]s part of said contract," GHS Defendants provided the parents with a parent/teacher

21   handbook that made certain representations about behavior intervention techniques that would be

22   used at the school.  (*Id.* at ¶¶ 644–648.)  It is unclear whether Plaintiffs are alleging the handbook

23   itself was the contract.  It is also unclear what, if any, consideration Plaintiffs provided as part of

24   the contract — the SAC vaguely alleges Plaintiffs "did all of the significant things that the

25   contract required them to do."  (*Id.* at ¶ 649.)

26          Therefore, the Court DISMISSES Plaintiffs' tortious breach of the covenant of good faith

27   and fair dealing claim with leave to amend.

28   ///

                                                    20

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

> #### iv.     Fraud
>
> GHS Defendants move to dismiss Plaintiffs' fraud claim under Rule 9(b).  (ECF No. 45-1 at 15.)  The Court has already concluded Plaintiffs' fraud allegations as to Wohlwend fail to satisfy Rule 9(b).  The same reasoning applies to Plaintiffs' fraud claim against GHS Defendants.  In short, Plaintiffs fraud allegations are too general.  Plaintiffs fail to allege which false representations were made to which students and/or parents, where and when those allegations were made, or why the representations were false.  *See Moore*, 966 F.3d at 1019.  Therefore, the Court GRANTS GHS Defendants' motion to dismiss Plaintiffs' fraud claim with leave to amend.
>
> #### v.     Severance
>
> Lastly, GHS Defendants briefly argue the SAC is "a misjoinder of parties and claims." (ECF No. 45-1 at 21.)  Notably, GHS Defendants do not expound on which parties and claims should be severed.  GHS Defendants simply argue "[t]he only commonality of the Plaintiffs in this case is they attended GHS as students at some point . . .  each student was at GHS at a different time, provided different personal medical information to GHS, had different teachers and aids, has different disabilities/requirements, are of a different age and grade, and received different services from GHS."  (*Id.*)
>
> Rule 21 permits a court to "sever any claim against a party."  Fed. R. Civ. P. 21.  "There is no established test in the Ninth Circuit for when a district court should exercise its broad discretion to sever a claim under Rule 21."  *Arcure v. Cal. Dep't of Developmental Servs.*, No. 1:13-cv-00541-LJO-BAM, 2014 WL 346612, at *6 (E.D. Cal. Jan. 30, 2014).  "Claims may be severable under Rule 21 if they arise from different factual situations or pose different legal questions."  *Khanna v. State Bar of Cal.*, No. C-07-2587 EMC, 2007 WL 2288116, at *2 (N.D. Cal. Aug. 7, 2007).  Claims may also be severed "if it will serve the ends of justice and further the prompt and efficient disposition of litigation."  *Id.* (citation omitted).  "Fairness is a critical consideration in determining whether severance is appropriate," and therefore it must be determined whether any party would suffer prejudice.  *Pena v. McArthur*, 889 F. Supp. 403, 407 (E.D. Cal. 1994).
>
> ///

21

1    GHS Defendants fail to persuade the Court that any claims or parties should be severed at

2   this time.  Rule 20(a) permits joinder if: (1) the claims against each defendant arise "out of the

3   same transaction, occurrence or series of transactions or occurrences," and (2) "there are common

4   questions of law or fact." *Coughlin v. Rogers*, 130 F.3d 1348, 1350 (9th Cir. 1997).  It appears

5   Plaintiffs' claims against GHS Defendants involve similar questions of law and fact because the

6   students each allegedly suffered injuries due to GHS Defendants' use of the restraint system

7   marketed by HWC.  (ECF No. 12 at ¶ 3.)  Plaintiffs are challenging GHS Defendants' policies —

8   or lack thereof — related to executing the restraint system safely.  In that sense, Plaintiffs' claims

9   seem to arise from the same series of transactions or occurrences because "each discrete claim is

10   part of the larger systematic behavior." *Almont Ambulatory Surgery Ctr., LLC v. UnitedHealth

11   Grp., Inc.*, 99 F. Supp. 3d 1110, 1188 (C.D. Cal. 2015).  Further, it is unclear whether severance

12   would serve the interests of fairness and judicial economy Rule 20 is designed to promote.

13    As mentioned throughout this Order, the SAC lacks clarity in many respects.  The Court

14   encourages Plaintiffs to amend the SAC in such a way to give more clarity on the issue of joinder

15   moving forward.  However, the Court cannot say that joinder in this case is so defective as to

16   warrant severance at this time.  Therefore, the Court DENIES GHS Defendants' request to sever

17   without prejudice.

18    F.    HWC's Motion to Dismiss

19    HWC moves to dismiss Plaintiffs' claims for strict product liability and negligent product

20   liability, arguing the restraint techniques and training at issue were services, not products.  (ECF

21   No. 40 at 3.)  In addition, HWC moves to dismiss Plaintiffs' claim for punitive damages.  (*Id.* at

22   11.)  HWC also filed a separate motion to strike Plaintiffs' request for punitive damages, which

23   includes nearly identical arguments as set forth in HWC's motion to dismiss.  (ECF No. 41.)

24    "[P]ersons providing only services are not subject to strict products liability." *Jimenez v.

25   Superior Ct.*, 29 Cal. 4th 473, 479 (2002); *see also Murphy v. E.R. Squibb & Sons, Inc*. 40 Cal. 3d

26   672, 677 (1985) (stating that strict products liability law does not apply to services); Rest. 3d

27   Torts, Products Liability, § 19, subd. (b) ("Services, even when provided commercially, are not

28   products.").

1    The SAC alleges HWC trained GHS staff to "restrain special needs children in prone and

2    other types of restraints." (ECF No. 12 at ¶¶ 70, 674.) Plaintiffs argue the restraint system was a

3    "product" for the purposes of its product liability claims because in addition to training teachers

4    on restraint methods, HWC holds patents for products such as cuffs, collars with bite and spit

5    shields, and other mechanical restraints.[4] (ECF No. 77 at ¶¶ 6–7, 16.) However, as HWC

6    correctly points out, the SAC does not mention any of these products. The SAC alleges GHS

7    staff put disabled students in various restraint positions, but there are no allegations that GHS

8    used any tangible products while restraining Plaintiffs. (*See, e.g.*, ECF No. 12 at 239, 388.)

9    Plaintiffs fail to persuade the Court that HWC's service in training GHS staff on restraint

10   techniques is a "product" for the purposes of their product liability claims. Therefore, the Court

11   DISMISSES those claims with leave to amend. To the extent Plaintiffs intended to bring a

12   general negligence claim as opposed to a negligent product liability claim, Plaintiffs should

13   clarify as such in their amended complaint. Moreover, because the Court has dismissed

14   Plaintiffs' underlying claims against HWC, HWC's motion to strike Plaintiffs' request for

15   punitive damages is DENIED as moot.

16       **IV.   CONCLUSION**

17       For the foregoing reasons, the Court hereby ORDERS as follows:

18       1.  The Court GRANTS Pollock Pines Defendants (ECF No. 30), Davis Defendants

19           (ECF No. 35), Elk Grove Defendants (ECF No. 36), and Folsom Defendants'

20           (ECF No. 38) Motions to Dismiss with leave to amend;

21       2.  The Court GRANTS Placerville Defendants (ECF No. 34) and Amador SELPA's

22           (ECF No. 33) Motions to Dismiss without leave to amend. Amador County Office

23           of Education SELPA, Placerville Union School District, and Eric Bonniksen are

24           DISMISSED from the action without prejudice;

25       3.  The Court DENIES CDE's Motion to Dismiss as to Plaintiffs' federal claims and

---

[4]    Plaintiffs request the Court take judicial notice of the patents for these products. (ECF No. 77 at 7.) However, because the Court finds there are no allegations that GHS staff actually used any of the patented products, the Court DENIES Plaintiffs' request without prejudice.

23

GRANTS the motion as to Plaintiffs' state law claims with leave to amend (ECF No. 43);

4. The Court GRANTS Yolo Defendants' Motion to Dismiss (ECF No. 44) with leave to amend;

5. The Court GRANTS Wohlwend's Motion to Dismiss (ECF No. 37) with leave to amend;

6. The Court DENIES GHS Defendants' Motion to Dismiss as to Plaintiffs' § 504 claim and GRANTS the motion as to Plaintiffs' negligent supervision, tortious breach of the covenant of good faith and fair dealing, and fraud claims with leave to amend. The Court also DENIES GHS Defendants' request to sever without prejudice (ECF Nos. 42, 45); and

7. The Court GRANTS HWC's Motion to Dismiss (ECF No. 40) with leave to amend and DENIES HWC's Motion to Strike (ECF No. 41) without prejudice.

Plaintiffs may file an amended complaint not later than thirty (30) days from the date of electronic filing of this Order. Defendants' responsive pleading is due twenty-one (21) days after Plaintiffs file an amended complaint. The Court understands that this action involves many parties and claims. However, the Court urges to parties to ensure future filings are clear and concise so the Court can accurately assess the parties' arguments.

IT IS SO ORDERED.

DATED: March 30, 2021

Troy L. Nunley
United States District Judge

24