1
2
3
4
5
6
7

8                          UNITED STATES DISTRICT COURT

9                     FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   STACIA LANGLEY, et al.,                    No.  2:20-cv-00635-DJC-CSK

12                    Plaintiffs,

13          v.                                   ORDER

14   GUIDING HANDS SCHOOL, INC., et
     al.,
15
                     Defendants.
16

17          Plaintiff Stacia Langley and the Estate of Max Benson have filed a Motion to

18   Sever the claims of Stacia Langley, David Benson, and the Estate of Max Benson

19   ("Langley Plaintiffs") from the claims of the other Plaintiffs in this action pursuant to

20   Federal Rule of Civil Procedure 21.  (Mot. (ECF No. 320).)  With the sole exception of

21   Defendant Amador County Unified School District ("ACUSD"), all other parties have

22   joined, filed statements of non-opposition, or not opposed Langley Plaintiffs' Motion.

23   (*See* ECF Nos. 323–25, 329–31, 333–34.)  For the reasons stated below, the Court

24   grants Langley Plaintiffs' Motion over Defendant ACUSD's Opposition.

25          Under Rule 21, the court has the ability to "add or drop a party" as well as

26   "sever any claim against a party."  There is no established test used in the Ninth Circuit

27   for when severance should be granted but the courts have "broad discretion" in

28   determining whether claims should be severed.  *Cupp v. Harris*, No. 2:16-cv-00523-

                                            1

1    TLN-KJN, 2018 WL 4599588, at *3 (E.D. Cal. Sept. 21, 2018).  Courts often consider

2    "(1) whether the claims arise out of the same transaction or occurrence; (2) whether

3    the claims present some common questions of law or fact; (3) whether settlement of

4    the claims or judicial economy would be facilitated; (4) whether prejudice would be

5    avoided if severance were granted; and (5) whether different witnesses and

6    documentary proof are required for the separate claims."[1] *Morris v. Northrop*

7    *Grumman Corp.*, 37 F. Supp. 2d 556, 580 (E.D.N.Y. 1999); *see Cupp*, 2018 WL

8    4599588, at *3.

9        Here, these factors weigh clearly in favor of granting severance.  While the

10   claims of Langley Plaintiffs and the remaining Plaintiffs involve similar alleged conduct,

11   the incidents in question are separate.  None of the non-Langley Plaintiffs were

12   involved in the events that allegedly preceded or led to Max Benson's death.  (*See,*

13   *e.g.*, TAC (ECF No. 126) ¶¶ 179–238.)  Similarly, Benson was not involved in the uses

14   of force or uses of restraints against other student Plaintiffs.  Defendant ACUSD does

15   correctly note that the underlying factual allegations of all Plaintiffs have similarities

16   and involve some common Defendants.  (Opp'n (ECF No. 333) at 4.)  But just because

17   claims arise from similar conduct and, in some instances, involve common parties

18   does not mean they arise from the same transaction or occurrence or present

19   common questions of law or fact common to all plaintiffs. *Visendi v. Bank of America,*

20   *N.A.*, 733 F.3d 863, 870 (9th Cir. 2013).

21       There are also common factual and legal questions between Langley Plaintiffs'

22   and the other Plaintiffs' claims.  However, as already noted, though the conduct and

23   defendants in question may be similar, the allegations underlying each of the

24   Plaintiffs' claims involve facts unique to each Plaintiff.  Due to the unique nature of

25   Benson's death, the subsequent investigation that incident, and the ongoing state

26   _____

27   [1] Defendant ACUSD's Opposition addresses Plaintiff's Motion under Federal Rule of Civil Procedure 42, not Rule 21.  (Opp'n at 3.)  The distinction is insignificant as Defendant ACUSD's arguments apply regardless of whether Rule 21 or Rule 42 is applied and Defendant ACUSD cites *Cupp*, which properly

28   considers severance under Rule 21.  (*Id.*)

1    criminal proceedings, the claims of Langley Plaintiffs in particular raise substantially

2    distinct questions of law and fact.

3          Judicial economy also favors granting Langley Plaintiffs' Motion.  As the Court

4    has stated in its recent orders in this action, judicial economy is served by ensuring

5    that litigation in this action proceeds wherever possible.  (*See* ECF No. 319 at 5.)

6    Defendant ACUSD raises concerns about potential inefficiencies and complexities

7    resulting from the division of this case into two actions such as the risk of conflicting

8    rulings.  (Opp'n at 4–5.)  The Court finds that these potential issues are outweighed by

9    the benefits of separating Langley Plaintiffs' claims – which are tightly intertwined with

10    the state criminal action and present unique factual and legal issues – from the claims

11    of the other Plaintiffs.

12          Defendant ACUSD claims that severance would prejudice Defendants, but

13    Defendant ACUSD's concerns appear largely focused on prejudice towards the GHS

14    Defendants.  (Opp'n at 6 (noting that severance may lead to duplicative discovery

15    requests and duplication of testimony from GHS staff.)  The GHS Defendants have

16    stated their non-opposition to the Court severing Langley Plaintiffs' claims.  (ECF No.

17    329.)  These concerns do not appear to present any prejudice to Defendant ACUSD

18    given that they will remain a defendant only in the present action and not be included

19    as a party in the severed action.

20          Defendant ACUSD also argues that they will be prejudiced "because the

21    ongoing criminal proceedings against certain Defendants would likely lead to Fifth

22    Amendment invocations, impairing the ability of remaining Defendants to fully litigate

23    their claims" and that "[s]everance would force the remaining Defendants to proceed

24    without full access to the relevant parties and evidence and prevent comprehensive

25    examination of all relevant facts, impeding the fair resolution of the civil cases."

26    (Opp'n at 6.)  However, severing these actions has no bearing on how the state

27    criminal action will affect these proceedings.  The GHS Defendants will continue as

28    defendants in this action in addition to being defendants in the severed action and the

3

1  Fifth Amendment issues raised by the state criminal proceedings will remain the same

2  after severance as they were before.

3      To the extent Defendant ACUSD is concerned that the stay in this action will be

4  fully after Langley Plaintiffs' claims are severed, this is not presently the case.  The

5  Court only <u>partially</u> lifted the stay of this action for Plaintiffs to file a Motion to Sever

6  (and a Motion to Amend should severance be granted) so as "to permit litigation to

7  proceed insofar as it does not implicate the Fifth Amendment rights of Defendants."

8  (ECF No. 319 at 5.)  The Court is cognizant that the ongoing state criminal

9  proceedings make it challenging to fully litigate this action at this time.  However,

10  granting Langley Plaintiffs' Motion to Sever does not have any effect on these issues

11  and thus will not prejudice Defendant ACUSD.

12      Finally, different witnesses and proof are required for the different claims.  As

13  already discussed, there is some overlap between each of the Plaintiffs' claims leading

14  to common witnesses and proof.  However, it is also uncontested that there are

15  separate witnesses for Langley Plaintiffs' claims and the claims of other Plaintiffs.  (*See*

16  Opp'n.)  Accordingly, severance of Langley Plaintiffs' claims from this action is

17  appropriate.[2]

18      Accordingly, IT IS HEREBY ORDERED that:

19  1.  Langley Plaintiffs' Motion to Sever (ECF No. 320) is GRANTED.

20  2.  The hearing scheduled for February 20, 2025, at 1:30 P.M. in Courtroom 7 is

21      VACATED.

22  3.  Plaintiffs Stacia Langley, David Benson, and the Estate of Max Benson and

23      their claims shall be severed from this action.  The severed action shall be

24      related to the present action within the meaning of Local Rule 123(a) and

25      shall be assigned to the undersigned and Magistrate Judge Chi Soo Kim.

26

27  _____

28  [2] The Court notes that much of Langley Plaintiffs' Motion is dedicated to discussion of the actions of plaintiffs' prior counsel.  The Court does not address or make any finding on this basis.  Instead, this order is solely concerned with whether severance of the Langley Plaintiffs' claims is appropriate.

4.  The Parties meet and confer and, within seven (7) days of this order, jointly file a brief statement indicating which Defendants should be terminated from the present action and what Defendants should be included in the severed action. Once the Joint Statement is filed, the Court will severe the claims and the Clerk will initiate the new action.[3]

5.  Within twenty-one (21) days of this order, Plaintiffs in this or the newly severed action may file a Motion for Leave to Amend.

6.  The stay of this action and the severed action shall remain in effect for all other purposes.

Dated:  February 14, 2025

_____
THE HONORABLE DANIEL J. CALABRETTA
UNITED STATES DISTRICT JUDGE

---

[3] While the Court grants the Motion to Sever, it will not yet sever the claims. On receipt of the parties' joint statement, the Court will formally sever the Langley Plaintiffs' claims with the appropriate Defendants designated for this action and the severed action.

5