Seth L. Goldstein, S.B.N. 176882
2100 Garden Road, Suite H-8
Monterey, California, 93940
Telephone (831) 372 9511
Fax (831) 372 9611
Lead-Counsel for Plaintiffs

Merit Bennett, *Pro Hac Vice*
460 St. Michael's Drive, Suite 703
Santa Fe, New Mexico 87505
Telephone: (505) 983-9834
Fax: (505) 983-9836
Co-Counsel for Plaintiffs

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **MELANIE STARK, et al.,**<br><br>    Plaintiffs,<br><br>v.<br><br>**GUIDING HANDS SCHOOL, INC., et al.,**<br>    Defendants. | **Case No. 2:20-cv-00635- DJC-CSK**<br><br>**NOTICE, MOTION AND PROPOSED ORDER APPROVING SETTLEMENT FOR MINOR PLAINTIFF M.S.**<br><br>**JURY TRIAL REQUESTED**<br><br><br>**Judge: Hon. Daniel J. Calabretta**<br><br>**TAC Filed: 04.30.21**<br><br>**Trial Date: Not Set** |

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

As soon as the Court is available, before the Honorable Daniel J. Calabretta of the United States District Court for the Eastern District of California, located at the Robert T. Matsui United States Courthouse, 501 I Street, 15th Floor, Sacramento, CA 95814, Plaintiff M.S. ("M.S.") by and through his parents and guardian ad litem,  hereby do move this Court for an Order approving partial settlement between minor Plaintiff M.S. and Guiding Hands School, and, in support thereof, states as follows:

PETITIONER Plaintiff M.S., by and through his parents, Melanie Stark and Christopher Stark, and Court appointed *Guardian Ad Litem*, Christopher Stark, respectfully present:

Petitioner Plaintiff M.S. is a minor, born August 27, 2009, currently age 17.

Petitioner Plaintiff M.S. is the son of Melanie Stark and Christopher Stark.

M.S.'s father, Christopher Stark, was appointed *Guardian Ad Litem* for Plaintiff M.S. in this proceeding by this Court on December 7, 2022 [EFC Doc. 263].

- 1 -

Petitioner Plaintiff M.S. has causes of action against the previously-named Defendants, including Guiding Hands School, for which a suit has been brought in this Court.  The causes of action arise pursuant to the provisions of:

1. Title II of the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12101 et seq.;
2. Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794;
3. 42 U.S.C. § 1983, Fourth Amendment to the U.S. Constitution;
4. 42 U.S.C. § 1983, Fourteenth Amendment to the U.S. Constitution, Fourteenth Amendment Due Process;
5. Cal. Education Code §§ 220;
6. Unruh Civil Rights Act; Cal. Civ. Code § 51;
7. Ralph Act, Cal. Civ. Code § 51.7;
8. Thomas Bane Civil Rights Act, Cal. Civ. Code § 52.1;
9. Battery;
10. Assault;
11. False Imprisonment
12. Intentional Infliction of Emotional Distress
13. Negligence

**Nature of Claims/Injuries**

This dispute which is the subject of this lawsuit arises out of the actions and/or inactions undertaken by Defendants, including Guiding Hands School.  Plaintiff M.S. submits these claims for damages based on violations of federal and state anti-discrimination and civil rights statutes, as well as common law tort claims, including federal and state civil rights violations and torts arising from the use of unlawful physical restraints.

For more than a decade, the California Department of Education ("CDE"), school districts, county offices of education and Special Education Plan Areas ("SELPAs") have known that using restraints on students, particularly in response to predictable disability-related behavior, carries serious risks for their physical and emotional health.  There have been many reports of students with behavioral challenges dying or sustaining serious injuries due to abusive use of restraint systems, such as the Handle With Care ("HWC") system developed by Defendant Bruce Chapman. It is also well-known that restraints are disproportionately used against children with disabilities. Despite this knowledge, nonpublic schools like Defendant Guiding Hands School, Inc., ("GHS")

- 2 -

continued to use such restraints frequently, with excessive force, in response to predictable behaviors that did not constitute an immediate or serious threat to the student or others, for extended periods of time, on students whose disabilities elevated the risk of using restraints. As a result, the Plaintiff M.S. in this case was subjected to abusive restraints that caused them significant physical and emotional injuries

Guiding Hands School ("GHS") was a nonpublic school as that term is defined in Cal. Ed. Code § 56034.  As required under California law, nonpublic schools ("NPS") are part of the continuum of services available to students in the FCSELPA.  Cal. Ed. Code §§ 56360, 56361(e). Such schools contract with LEAs to provide special education services in exchange for state and federal educational funding.

M.S. is diagnosed with Autism Spectrum Disorder, Tourette Syndrome and ADHD.

Plaintiff M.S. was placed at Guiding Hands School ("GHS") by Elk Grove Unified School District ("EGUSD") and Elk Grove Unified SELPA ("EG SELPA").

M.S. attended GHS from September 10, 2018, through December 6, 2018.

M.S.' Individualized Education Program "IEP" plan was amended on August 23, 2018, just before he began attending GHS. The same IEP was amended again on December 5, 2018, after

Mrs. Stark determined that M.S. had been subjected to multiple unnecessary and excessive physical restraints.

Neither the May 30, 2018, IEP nor the corresponding August 23, 2018, Amendment, effective at the time M.S. began attending GHS, attached a Behavior Intervention Plan ("BIP").

The only known BIP on file during M.S.' enrollment at GHS is dated November 16, 2018. That BIP noted that M.S. needed "to be in an environment that provides high levels of staff support…" It also noted that the utilization of restraints should be used as a behavior modification tool only if M.S. became a danger to himself or others.

According to the December 5, 2018, GHS Behavior Data Report M.S. was documented to have been restrained on nineteen (19) separate occasions in less than a three-month period and at least eight (8) of these restraints were administered while M.S. was in the prone

- 3 -

position.

In each instance, one or more of the staff members present was/were fully aware that M.S.'s reactions at that time were predictable and therefore avoidable; and rather than attempt to instruct M.S. in a way to actually de-escalate the situation, on multiple occasions GHS staff intentionally opted to escalate the situation by asserting physical dominance over M.S., whom they knew didn't like to be touched, causing him to panic and resist, to which GHS staff then responded by further escalating the situation by placing M.S. in an extended and known-to-be-unsafe and harmful prone restraint.

GHS staff deliberately attempted to deceive Mrs. Stark by minimizing the extent of the abuse in the reports.

As a result of GHS staff's physical restraints, M.S. suffered physical injury and bruising.

Mrs. Stark became concerned regarding the excessive administration of restraints and "physical prompts" utilized at GHS to "control" her son.

Three days after the November 6, 2018, incidents, on November 9, 2018, Mrs. Stark submitted a complaint to the California Department of Education ("CDE") regarding her concerns. That same day, Mrs. Stark reiterated her concerns via email to Elk Grove Unified School District Program Specialist Marilyn Delgado and provided Defendant Delgado with a copy of her complaint to the CDE.

In her complaint, Mrs. Stark demanded an immediate freeze on the use of 'physical prompts [restraints] and a full investigation into possible child abuse happening at Guiding Hands.

On December 20, 2018, the CDE issued its investigation report regarding EGUSD, concluding that "The District failed to meet the requirements of EC Section 56521.1(h) ... and is out of compliance."

M.S. is currently attending a hybrid home-school. Mrs. Stark hangs out near the campus when he is in class in order to be an emotional support for him, and she goes shopping or goes out to get work done while he gets himself from class to class.

As a consequence of the abuse he experienced at GHS, M.S. now suffers from classic

MOTION TO APPROVE SETTLEMENT FOR PLAINTIFF M.S.

symptoms of PTSD and has since demonstrated disrupted sleep. He experiences night terrors and startles easily. His experience at GHS clearly haunts him to this day. M.S. has become more reclusive and constantly complains of pain in his wrists.

**Liability**

Defendant GHS denies liability as alleged by Plaintiff M.S..

**Treatment**

Plaintiff M.S. receives ongoing therapy with a licensed therapist.

**Extent of Injuries and Recovery**

Plaintiff M.S. has not recovered completely from the effects of the emotional injuries described above, and the effects of the injuries are permanent. The psychological damage caused by these abusive restraints has eroded his relationships that were once good prior to GHS and has left him with a distrust of adult figures in his life.  His life will be considerably altered in a negative way because of his time spent at GHS.

**Counsel on Behalf of Petitioners**

Plaintiff M.S., by and through his parents, has contracted with lead counsel Seth L. Goldstein, Attorney at Law, with an office located at 2100 Garden Road, Suite H-8, Monterey, California, and with co-counsel Merit Bennett, *pro hac vice*, Attorney at Law, to prosecute these causes of action for M.S.

Plaintiff M.S. has been represented or assisted by an attorney for preparing this motion with respect to the claims asserted.  Plaintiff M.S., by and through his mother, father, and counsel do have an agreement for services provided in connection with the claims giving rise to this motion.

Counsel has not received attorneys' fees or other compensation in addition to that requested in this motion for services provided in connection with the claims against subject Defendants, including GHS, giving rise to this matter.

Counsel is not representing or employed by any insurance carrier involved in the matter. Counsel represents seven other families in the underlying action, by agreement with those involved in this transaction with the district liability underwriter, settlement has been achieved with a total of three Plaintiffs, including Plaintiff M.S. as a result of mediation involving all co-plaintiffs.

Plaintiff retained representation by the law firms of Seth L. Goldstein and The Bennett Law Group, LLC for the purpose of investigation and prosecution of said claims for and on behalf of

MOTION TO APPROVE SETTLEMENT FOR PLAINTIFF M.S.

M.S., and did originally promise and agree to pay said attorneys a fee of 40% in addition to reimburse attorneys for any court and litigation costs advanced by them.

*See* executed Attorney-Client Fee Contract attached as **Exhibit A**.

**Terms of Settlement**

A settlement has been reached between Plaintiff M.S., by and through his parents Melanie Stark and Christopher Stark, and his guardian ad litem, Christopher Stark, and Guiding Hands School.

Counsel for M.S. have made careful and diligent inquiry and investigation to ascertain the facts relating to the incidents in which M.S. was injured; the responsibility for the incidents and the nature, extent and seriousness of M.S.'s injuries.  Parents of M.S. and the guardian ad litem for M.S. fully understand that the compromise proposed in the Settlement Agreement, if approved by the court and consummated, requires that M.S. will be forever barred from seeking any further recovery of compensation from the subject defendants named below even though M.S.'s injuries may in the future appear to be more serious than they are now thought to be.

Plaintiff M.S. by and through his representatives believe the settlement to be fair and reasonable under the circumstances, and that it is in M.S.'s best interest to settle the case for the amount set forth in this Motion.  M.S.'s parents and guardian ad litem for M.S. have been advised and understand that if this settlement is approved by the Court, the case against said Defendant GHS will be terminated with a release of all claims and a dismissal with prejudice of the entire action will be filed upon fulfillment of the settlement terms.

**Amount of Settlement**

By way of settlement, Defendant GHS has agreed to pay a total of $██████ to Plaintiff M.S.

This sum is to be paid directly to Plaintiff M.S. and their counsel and shall be made payable to "the Law Offices of Seth L. Goldstein on behalf of Christopher Stark as *guardian ad litem* for Plaintiff M.S." or as otherwise directed by the court upon approval of the settlement.   Said sum shall be accepted in full for Plaintiff M.S.'s claims against Defendant, and the parties will bear their own attorney's fees and costs of suit.

Payment shall be submitted within 30 days following receipt of Court Order authorizing the settlement of the Plaintiff M.S. (if required by the Court or existing law); the executed Release and

- 6 -

MOTION TO APPROVE SETTLEMENT FOR PLAINTIFF M.S.

Settlement Agreement; good faith settlement order applicable to all state law claims; and a valid Form W-9 to counsel for Defendants for the payment.

Within 5 days of receipt of payment, counsel for Defendants will prepare, circulate to Plaintiff M.S.'s counsel who shall sign and file, a Stipulation and Order of Dismissal of GHS with prejudice of this action as to Plaintiff M.S.

*See* complete terms as detailed in Settlement Agreement attached as **Exhibit B**.

**Disposition of Balance of Proceeds of Settlement**

Law Office of Seth L. Goldstein will have expended the sum of ▮▮▮ in costs and prosecution of the present case. This action involved multiple plaintiffs represented jointly by counsel and arose from a common nucleus of operative facts. In the course of prosecuting the action, counsel incurred certain litigation costs that were necessary to advance the claims of all plaintiffs collectively, including filing fees, service costs, expert-related expenses, discovery expenses, and mediation-related costs.

Rather than attempting to apportion each individual cost to a specific plaintiff, counsel Seth L. Goldstein allocated the total shared litigation costs evenly among the settling plaintiffs as a fair and reasonable method of cost allocation. Counsel Mr. Goldstein believes this equal allocation accurately reflects the collective benefit conferred on all plaintiffs and avoids arbitrary or speculative cost assignment. The portion of costs allocated to Plaintiff M.S. represents Plaintiff M.S.'s proportional share of the global litigation expenses incurred in this action.

The Bennett Law Group, LLC, will have expended the sum of ▮▮▮ in costs. The total of all costs that have been expended to date by Plaintiff M.S.'s attorneys and prosecution of this case is ▮▮▮. *See* attorneys' costs logs attached as **Exhibit C**.

Plaintiffs believe and agree that a reasonable attorneys' fee of 33% should be awarded to Plaintiffs' counsel. The reasonable attorneys' fee totals ▮▮▮ After deducting attorneys' fees and costs in the above amounts. Melanie Stark's net recovery is ▮▮▮ and Plaintiff M.S.'s net recovery is ▮▮▮.

Counsel for Plaintiffs requests that the balance of the proceeds of the settlement be disbursed as follows:

| | |
|---|---|
| Settlement Amount | ▮▮▮ |
| Less Attorney Fees (33%) | ▮▮▮ |
| Less Litigation Costs Reimbursement | $ ▮▮▮ |

MOTION TO APPROVE SETTLEMENT FOR PLAINTIFF M.S.

| | |
|---|---|
| Net to Plaintiffs after costs | $ ███████ |
| By agreement, net to Melanie Stark | $ ███████ |
| Net to Plaintiff M.S. | $ ███████ |

\* Plaintiff M.S. is an minor with a disability who is represented in this action by a duly appointed Guardian ad Litem, Christopher Stark. No conservatorship or guardianship of the estate has been established. Accordingly, settlement proceeds shall be paid to Plaintiff M.S., by and through his Guardian ad Litem, who is directed to use or hold the funds consistent with Plaintiff M.S.'s best interest, subject to further order of the Court.

Counsel for subject Plaintiff wishes to submit this motion for decision without oral argument.

Counsel for subject Plaintiff M.S. and subject Defendant GHS have met and conferred regarding the filing of said motion and subject Defendants do not oppose the same.

**WHEREFORE**, Petitioner Plaintiff M.S., by and through his mother, by and through counsel of record, hereby request this Court approve the compromise settlement and the proposed disposition of the proceeds of the judgment for the claimant to the Court as being fair, reasonable, and in the best interest of the Plaintiff M.S. and requests that the Court approve this settlement and make such Order and grant such further relief as may be just and reasonable.

DATED: May 15, 2026.

Respectfully submitted,

/s/ Seth Goldstein
Seth Goldstein, *Co-Counsel for Plaintiffs*

**VERIFICATION**

I, Melanie Stark, am the mother of the Petitioner Plaintiff M.S. in the above-entitled proceeding. I have read the foregoing petition and know the contents thereof. Said petition is true of my own knowledge, except as to those matters which are presented on information and belief, and, as to those matters, I believe them to be true. I therefore declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Melanie Stark
Melanie Stark, Mother of Petitioner Plaintiff M.S.

- 8 -

MOTION TO APPROVE SETTLEMENT FOR PLAINTIFF M.S.

## VERIFICATION

I, Christopher Stark, am the duly appointed *Guardian ad Litem* for Plaintiff M.S., a minor with a disability. I have reviewed the Motion for Approval of Settlement. I believe the proposed settlement is fair and reasonable and in Plaintiff's best interests. I declare under penalty of perjury under the laws of California that the foregoing is true and correct.

May 19, 2026

Christopher Stark, Guardian Ad Litem of Petitioner M.S.

MOTION TO APPROVE SETTLEMENT FOR PLAINTIFF M.S.

## SETH L. GOLDSTEIN

Attorney and Counselor At Law

DATE: January 4, 2019

2100 Garden Road, Suite H-8
Monterey, California 93940
Ph. (831) 372 9511
Fax (831) 372 9611

### ATTORNEY-CLIENT FEE CONTRACT

This ATTORNEY-CLIENT FEE CONTRACT ("Contract") is entered into between Melanie Stark on behalf of Magnus Stark ("Client") and Seth L. Goldstein, ("Attorney"). By initialing this paragraph, Client acknowledges that services provided by Attorney are **separate and independent from the Child Abuse Forensic Institute and that Client will hold the Institute harmless** for any acts committed or omitted by Attorney.

1. **CONDITIONS.** This Contract will not take effect, and Attorney will have no obligation to provide legal services, until Client returns a signed copy of this Agreement and deposits the amount listed below for costs.

2. A) **SCOPE AND DUTIES.** Client is hiring Attorney to represent Client in the matter of your claims against Guiding Hands School, Elk Grove Unified Schools; and any other possible defendant, arising out of Guiding Hands School conduct with Magnus. Attorney will provide those legal services reasonably required to represent Client, and will take reasonable steps to inform Client of progress and to respond to Client's inquiries. Attorney will represent Client in any court action until a settlement or judgment, by arbitration or trial, is reached, and in connection with any post-trial motions.

Any other services to be conducted by Attorney will require a modification to this contract in writing. Attorney does not take on other aspects or concerns of Client's case(s) at this time. Attorney shall provide those legal services reasonably required to represent Client, and shall take reasonable steps to keep Client informed of progress and to respond to Client's inquiries. Client shall be truthful with Attorney, cooperate with Attorney, keep Attorney informed of developments, abide by this Contract, pay Attorney's bills on time and keep Attorney advised of Client's address, telephone number and whereabouts.

B) **RELATED BUT UNKNOWN MATTERS.** Client represents that Client does not know of any related legal matters that would require legal services to be provided under this Agreement other than the Victim Witness compensation claim. Such related matters might include, among other things, claims for property damage, workers' compensation, disputes with a health care provider about the amount owed for their services, or claims for reimbursement (subrogation) by any insurance company for benefits paid under an insurance policy. If such matters arise later, Client agrees that this Agreement does not apply to any such related legal matters, and a separate Agreement for provision of services and payment for those services will be required if Client desires Attorney to perform that additional legal work.

3. **INSURANCE DISCLOSURE.**

   ✓ Attorney maintains errors and omissions (malpractice) insurance coverage applicable to the services to be rendered.

4. **DEPOSIT.** No deposit of funds is required at this time for costs. If such time as costs become an issue, Client will maintain a minimum balance in the trust account at all times to be agreed upon at that time. Client promises to promptly replenish the retainer account when it reaches the minimum balance and is so informed by Attorney.

If a cost retainer is necessary, Client hereby authorizes Attorney to withdraw sums from the trust account to pay the costs Attorney incurs on behalf of Client. Any unused deposit at the conclusion of Attorney's services will be refunded. If payment is made by credit card account, client's signature below authorizes continued billing on that account or another designated by client, upon notice to client. **

# EXHIBIT A

STARK CONTRACT
Date: January 4, 2019

PAGE TWO
Client's Initials

5.    LEGAL FEES.  Client is responsible for all costs, disbursements and expenses, as described below. In the event of discharge or withdrawal of Attorney as provided in Paragraph 9, Client agrees that Attorney shall be entitled to be paid by Client, upon payment of the settlement, arbitration award or judgment in favor of Client, a reasonable fee, at $375.00 per hour for the legal services provided by Attorney to Client; Paralegals and Legal Assistants - $175.00. Attorney charges in minimum units of six minutes.

On behalf of the minor, Magnus Stark, fees shall be 33% of gross recovery if settled before trial, 40% of gross recovery if trial is necessary. "Gross recovery" means the total amount prior to the deduction of costs.

6.    NEGOTIABILITY OF FEES.  The rates set forth above are not set by law, but are negotiable between Attorney and Client.

7.    COSTS AND EXPENSES.  All costs, disbursements and litigation expenses are the responsibility of Client. In addition to paying legal fees, Client will advance such costs and expenses as are agreed to between Client and Attorney. Client will reimburse attorney for any other advanced costs and expenses upon settlement, arbitration award or judgment. Client shall reimburse Attorney for all costs and expenses incurred by Attorney, including, but not limited to, process servers' fees, fees fixed by law or assessed by courts or other agencies, court reporters' fees, long distance telephone calls, messenger and other delivery fees, postage, in-office photocopying at $.10 per page, parking, mileage at $.49 per mile, investigation expenses, consultants' fees, expert witness fees and other similar items. Client agrees to pay any expert witnesses or consultants individually and independently from any retainer paid Attorney. Client authorizes Attorney to incur all reasonable costs and to hire any investigators, consultants or expert witnesses reasonably necessary in Attorney's judgment, unless one or both of the clauses below are initialed by Client and Attorney.

    √   Attorney shall obtain Client's consent before incurring any cost in excess of $1000.00.
    √   Attorney shall obtain Client's consent before retaining outside investigators, consultants, or expert witnesses.

8.    LIEN.  Client hereby grants Attorney a lien on any and all claims or causes of action that are the subject of Attorney's representation under this Contract. Attorney's lien will be for any sums due and owing to Attorney at the conclusion of Attorney's services. The lien will attach to any recovery Client may obtain, whether by arbitration award, judgment, settlement or otherwise. Client is advised to consult with another attorney concerning this provision.

9.    DISCHARGE AND WITHDRAWAL.  Client may discharge Attorney at any time. Attorney may withdraw with Client's consent or for good cause. Good cause includes Client's breach of this Contract, Client's refusal to cooperate with Attorney or to follow Attorney's advice on a material matter or any other fact or circumstance that would render Attorney's continuing representation unlawful or unethical. Client acknowledges that if Client is asked to cooperate and follow Attorney's advice or direction and does not do so, it will provide immediate cause for him to withdraw. Client further acknowledges and promises not to do anything, file or disseminate any complaints, papers, documents or other materials about the case without the express written approval of Attorney.

Any violation of the terms of this agreement will give Attorney immediate cause to withdraw. Client will not contact, write, call, or otherwise have any communication about the case without the express notification and approval of Attorney. Any violation of this condition will also provide immediate cause for Attorney to withdraw.

10.    CONCLUSION OF SERVICES.  When Attorney's services conclude, all unpaid charges shall become immediately due and payable. After Attorney's services conclude, Attorney will, upon Client's request, deliver Client's file to Client, along with any Client funds or property in Attorney's possession. Client agrees to pay for a complete copy of the client file before it is returned.

11.    DISCLAIMER OF GUARANTEE.  Nothing in this Contract and nothing in Attorney's statements to Client will be construed as a promise or guarantee about the outcome of Client's matter. Attorney makes no such promises or guarantees. Attorney's comments about the outcome of Client's matter are expressions of opinion only.

12.    DISPUTES. Any dispute arising under the terms of this contract will be handled in California and according to California law.

STARK CONTRACT
Date: January 4, 2019                                                      PAGE THREE

13.     **EFFECTIVE DATE.**  This Contract will take effect when Client has performed the conditions stated in paragraph 1, but its effective date will be retroactive to the date Attorney first provided services.  The date at the beginning of this Contract is for reference only.  Even if this Contract does not take effect, Client will be obligated to pay Attorney the reasonable value of any services Attorney may have performed for Client.

14.     **SEVERABILITY.**  If any article or part of this agreement is found to be invalid it shall not invalidate the remainder of the agreement and the remaining parts of the contract shall remain enforceable.

By: _____
Seth L. Goldstein, "Attorney"

Address: 10362 Stathos Drive, Elk Grove, Ca. 95757
Ph:

_____
Melanie Stark

** When payment by credit card, Client's signature authorizes continued payment and debits to that account as they become due. Attorney shall notify Client before any debits are made.

S:\CaseFiles\Client Open\Langley\Stark\contgngt litigation agreement.wpd

## SETTLEMENT AGREEMENT AND
## FULL RELEASE OF ALL CLAIMS AND RIGHTS

This Settlement Agreement and Full Release of all Claims and Rights ("Agreement") is made and entered into by and between on the one hand, Defendant GUIDING HANDS SCHOOL, INC., a nonprofit corporation ("GHS") on the other hand, Plaintiff MAGNUS STARK, a former student of GHS with exceptional needs ("PLAINTIFF STUDENT"), by and through his *Guardian Ad Litem* and his Next Friend CHRISTOPHER STARK AND MELANIE STARK and his Mother, MELANIE STARK in her individual and representative capacity (collectively herein "PLAINTIFFS").

The Agreement shall become effective upon the Court approving this settlement as provided herein.

### I.    DEFINITIONS

A. The term "ACTION" refers to the federal civil action, entitled, *LANGLEY, et al v. GUIDING HANDS SCHOOL, INC. et al.*, filed in United States District Court, Eastern District of California, originally Case # 2:20-cv-00635-TLN-KJNand revised to Case # 2:20-cv-00635-DJC-CSK.

B. The term "ALL DEFENDANTS" refers to all named Defendants sued by PLAINTIFFS in the ACTION at any time (past, present and future) excluding the STATE OF CALIFORNIA DEPARTMENT OF EDUCATION ("CDE").

C. The term "COMPLAINT" shall refer individually and collectively to all PLAINTIFFS' allegations, causes of action, claims for relief and requested remedies alleged or that could have been alleged in their pleadings in the ACTION against any of the GHS DEFENDANTS including but not limited to PLAINTIFFS' original complaint, first amended complaint, second amended complaint, errata second amended complaint, operative third amended complaint, original proposed fourth amended complaint, and revised proposed fourth amended complaint and/or alleged in any other prior, pending or future action or proceeding.

D. The term "CURRENT DEFENDANTS" refers to all defendants sued by PLAINTIFFS in this ACTION not yet dismissed, excluding CDE.

E. The term DISPUTED CLAIMS refers to and means all PLAINTIFFS' allegations in the COMPLAINT against GHS DEFENDANTS, including any alleged breach of duty or statute or law or negligent or unlawful act or omission, or alleged injury, damages, causes of action, legal theories, claims for relief, requested remedies, penalties, treble damages, costs, expenses, attorneys' fees, punitive damages, injunctive relief of any kind or nature.

F.  The term GHS DEFENDANTS refers individually and collectively to Defendant GHS and all its present and former administrators, employees, staff, agents, directors and officers who were sued or proposed to be sued as Defendants or who could have been sued as Defendants in the COMPLAINT in this ACTION, including but not limited to Defendants MEYERS, KELLER, WOHLWEND, Jennifer Christensen, Betty Morgan, Jill Watson, Le'Mon Thomas, David Chambers, Linda Stearn, Michael Smith, Melanie Allen, Zach Matlock, Kyle McKoy,

SETTLEMENT AGREEMENT AND FULL RELEASE OF ALL CLAIMS AND RIGHTS **EXHIBIT B**

*Langley, et. al. v. GHS, et. al.*

Danielle Oehring, Merilee Godbout, Nima Naran, Andre Gatewood, Kim Dillon, Kris Laymon, Amanda Hinds, Jennifer Jones, Sandra Romero, Robin Schumann, and other employees including, Phyllis, Ramsey, Shelley Trapani, Virginia Dorman, Julia Lyons, Jenny Lopez, Allen, James Broussard, Christina Costin, Robin Schrich, Wesley Murray, Melody Smith-Williams, Ryan, Michelle Gomez, Allison Robinson, Alex Waller, Cara Jones, Michelle Fear, Heidi Speiss, Rena Hander, Ashley Oxford and Matt Carr and DOES 1 to 100, including those defendants who were never named, or served and/or who never appeared in the ACTION.

G. The term "INDIVIDUAL GHS DEFENDANTS PREVIOUSLY DISMISSED" refers individually and collectively to Defendants Jennifer Christenson, Nima Naran, Linda Stearn, Michael Smith, Melanie Allen, David Chambers, Andre Gatewood, Kris Laymon, Amanda Hinds, Robin Schumann, Zack Matlock, Kyle McCoy, Sandra Romano, Jennifer Jones, Merilee Godbout, Danielle Oehring and Kim Dillon.

H. The "LOCAL EDUCATION AGENCIES" or "LEA" shall refer individually and collectively to the defendant public school district (herein "DISTRICT") who placed the STUDENT PLAINTIFF at GHS and the corresponding Special Education Local Plan Area (herein "SELPA") and county offices of education including those entities who had a Master Contract and Individual Services Agreement with GHS to provide special education services to STUDENT PLAINTIFF.

I. The term "PARTIES" shall refer to PLAINTIFFS and GHS.

J. The term "SETTLING PLAINTIFFS" shall refer to all Plaintiffs currently parties to this ACTION, including but not limited to, the E.D. Plaintiffs,[1] the D.Z. Plaintiffs,[2] the S.D. Plaintiffs,[3] the J.P. Plaintiffs,[4] H.K. Plaintiffs,[5] the A.P. Plaintiffs,[6] and the M.S. Plaintiffs.[7]

---

[1]    Plaintiffs ERIC DARROUGH a.k.a. E.D., a minor, by and through his *Guardian Ad Litem*, GARY DEMURES, by and through his Next Friends, ROBERT DARROUGH and KRISTEN COUGHLIN, and ROBERT DARROUGH and KRISTEN COUGHLIN, as individuals and all related plaintiffs (collectively "E.D. Plaintiffs").

[2]    Plaintiffs DOMINIC ZUCCOLOTTO f.k.a. D.Z., by and through his Next Friend, LAURA KINSER and LAURA KINSER, as an individual and all related plaintiffs (collectively "D.Z. Plaintiffs").

[3]    Plaintiffs SEBASTIAN DAVIS f.k.a. S.D., by and through his Next Friend, CHRISTOPHER DAVIS and CHRISTOPHER DAVIS, as an individual and all related plaintiffs (collectively "S.D. Plaintiffs").

[4]    Plaintiffs JAMES PERKINS f.k.a. J.P., by and through his Next Friend, CHERILYN CALER; and CHERILYN CALER, as an individual and all related plaintiffs (collectively "J.P. Plaintiffs").

[5]    Plaintiffs HAYDEN KING f.k.a. H.K., by and through his and Next Friend SUZANNE MULLTER, and SUZANNE MULLER, as an individual and all related plaintiffs (collectively "H.K. Plaintiffs");

[6]    Plaintiffs AUSTIN PETERSEN, by and through his Next Friend and *Guardian Ad Litem*, TIMOTHY PETERSEN, and all related plaintiffs (collectively "A.P. Plaintiffs").

[7]    Plaintiffs MAGNUS STARK, a.k.a., M.S., a minor, by and through his *Guardian Ad Litem*, CHRISTOPHER STARK, and by and through his Next Friend, MELANIE STARK, and MELANIE STARK, as an individual and all related plaintiffs (collectively "M.S. Plaintiffs").

-2-

SETTLEMENT AGREEMENT AND FULL RELEASE OF ALL CLAIMS AND RIGHTS

*Langley, et. al. v. GHS, et. al.*

## II.    RECITALS

This Agreement is entered into by the PARTIES with respect to the following facts and background of the case:

A. WHEREAS, a dispute has arisen between the PARTIES.

B. WHEREAS, at all times relevant GHS was a nonprofit nonpublic school certified by the CDE to provide special education services to autistic and other students with disabilities, exceptional needs and unsafe behaviors that impede a student's ability to learn in a general education environment.

C. WHEREAS, the GHS DEFENDANTS include special education professionals and paraprofessionals certified in the use of Handle with Care, a behavior management system that includes behavioral strategies and physical intervention techniques for managing unsafe behaviors to keep students, their peers and school staff safe.

D. WHEREAS, PLAINTIFFS' ACTION against the GHS DEFENDANTS arises out of or relates to school personnel using Handle with Care behavior management system including interventions (e.g., physical prompts, physical restraints, mechanical van restraints etc.) and alleged injury of the STUDENT PLAINTIFF, then a minor with disabilities, exceptional needs and unsafe behaviors.

E. WHEREAS, the GHS DEFENDANTS deny and dispute PLAINTIFFS' allegations, alleged injuries and DISPUTED CLAIMS and assert that GHS DEFENDANTS safeguarded the STUDENT PLAINTIFF and his peers and staff from injury or greater injury while the student was acting out.

F. WHEREAS, the U.S. Department of Education and California Legislature authorize the use of emergency behavioral interventions in schools, including seclusion and restraints, for the purpose of keeping pupils and staff safe when pupils are acting out unsafely, restraints are authorized by law in many settings (e.g., "general acute care hospitals, acute psychiatric hospitals, psychiatric health facilities, crisis stabilization units, community treatment facilities, group homes, skilled nursing facilities, intermediate care facilities, community care facilities, and mental health rehabilitation centers"), and the California "Legislature recognizes that if an emergency situation arises, the ability of education personnel to act in that emergency to safeguard a pupil or others from imminent physical harm should not be restricted."  (See Cal. Ed. Code § 49005 et. seq.)

G. WHEREAS, school personnel have limited immunity from personal liability pursuant to 20 U.S.C.A. § 7946, entitled "Limitation on liability for teachers," as provided in Section 7946 for acts or omissions within the scope of their responsibilities to maintain order and control in the classroom and school as well as a duty to intervene to safeguard pupils and staff from imminent physical harm pursuant to Cal. Ed. Code § 49005.

H. WHEREAS, each student at GHS had an Individualized Education Program (IEP) created by the student's IEP team of educators, parents, and DISTRICT personnel who approved their DISTRICT's placement of the student at GHS and the law requires LOCAL EDUCATION

-3-

AGENCIES to have a Master Contract with nonpublic schools and Individual Services Agreement for each student placed at nonpublic schools.

I. WHEREAS, PLAINTIFFS contend their DISTRICT denied the STUDENT PLAINTIFF a Free and Appropriate Public Education (FAPE) in the least restrictive environment, and have sued one or more of the LOCAL EDUCATION AGENCIES in this ACTION contending each LEA knew or should have known restraints were unsafe and used inappropriately the LEA allegedly breached its duty resulting in injury to STUDENT PLAINTIFF.

J. WHEREAS, the ACTION involves contested DISPUTED CLAIMS that have been pending for nearly 6 years; PLAINTIFFS have filed five versions of their COMPLAINT, with the operative complaint subject to CURRENT DEFENDANTS' pending motions to dismiss, and PLAINTIFFS have filed a motion to seek leave from the Court to amend their operative complaint, which motion if granted, will lead to additional motions to dismiss including by the GHS DEFENDANTS raising the bar of federal immunity pursuant to 20 U.S.C.A. § 7946 and the bar of Cal. Ed. Code § 49005 and other defenses.

K. WHEREAS, ALL DEFENDANTS as described in Articles "I.(F)" and "I.(H)" have been dismissed or severed from this ACTION except the CURRENT DEFENDANTS.

L. WHEREAS, the INDIVIDUAL GHS DEFENDANTS PREVIOUSLY DISMISSED were dismissed *without prejudice* with PLAINTIFFS reserving the right to add the dismissed defendants back into the ACTION.

M. WHEREAS, the PARTIES desire to avoid the substantial burden, time, expense, inconvenience, and further delays in resolution inherent in protracted litigation between a former student against his former school and its staff, and the PARTIES have made a practical decision to resolve all disputes and claims between Plaintiffs and the GHS DEFENDANTS including the DISPUTED CLAIMS on the terms and conditions in this Agreement.

### III.    AGREEMENT

NOW, THEREFORE, in consideration of the mutual covenants and promises hereinafter set forth, the PARTIES agree to fully settle and resolve the ACTION as follows:

1.    **Consideration**.

a.    **Confidential Consideration**: GHS by and through its insurer agrees to pay the total <u>confidential</u> amount of ▮▮▮▮▮ requested by PLAINTIFFS ("Payment" or "Settlement Funds") not to be disclosed to anyone or entity except as permitted herein, which Payment shall be in full and final settlement of all PLAINTIFFS' claims against GHS DEFENDANTS in the COMPLAINT and ACTION including those INDIVIDUAL GHS DEFENDANTS PREVIOUSLY DISMISSED without prejudice, payable as provided below.

i.    **Payment**: Upon signing this Agreement and executing the Request for Dismissal with prejudice, and in consideration for PLAINTIFFS' continuing observation and performance of the terms of this Agreement, DEFENDANTS agree to pay a total of ▮▮▮▮▮ to

-4-

SETTLEMENT AGREEMENT AND FULL RELEASE OF ALL CLAIMS AND RIGHTS

*Langley, et. al. v. GHS, et. al.*

PLAINTIFFS.  This sum is to be paid directly to their counsel and shall be made payable to "The Bennett Law Group, LLC Trust Account" or as directed by the Court presiding over the ACTION upon approval of the settlement.   Said sum shall be accepted in full for PLAINTIFFS' claims and the parties will bear their own attorney's fees and costs of suit.

Payment shall be submitted within 15 days following receipt of the executed Release and Settlement Agreement; good faith settlement order applicable to all state law claims and a valid Form W-9 to counsel for DEFENDANTS for the payment.

Within 5 days of receipt of payment referenced above, counsel for DEFENDANTS will prepare, circulate to PLAINTIFFS' counsel who shall sign and file, a Stipulation and Order of Dismissal with prejudice of this action as to PLAINTIFFS, with each side to bear their own attorney's fees and costs.

ii.    Indemnification: PLAINTIFFS agree to fully and completely defend, reimburse, hold harmless and indemnify any and all of the Releasees, counsel and insurer of any amounts which any insurance carriers of any kind, government entities, hospitals, treatment providers, mental health providers, prior and current attorney(s) and/or other persons or organizations of any type or kind may recover from any of them in reimbursement for amounts paid to PLAINTIFFS on PLAINTIFFS' behalf as a result of the PLAINTIFFS' DISPUTED CLAIMS, the alleged subject incident and subject ACTION by way of contribution, subrogation, indemnity or otherwise, and to fully and completely defend, reimburse, hold harmless and indemnify RELEASEES, Counsel and Insurer from any and all liens of any kind or type. As to any such attorney liens, these terms shall apply to the liens for both fees and costs claimed by and paid to such attorneys. This defense and indemnity provision as a whole shall include, but not be limited to, any claim for repayment, reimbursement and any fine or penalty. In addition to and without limiting any other language in the Agreement, PLAINTIFFS agree to indemnify and hold harmless RELEASEES and their attorneys and insurers from any and all claims by any medical provider arising out of or in connection with the ACTION or regarding the injuries or damages that are the subject of the ACTION or any claims by Medicare that have been or may in the future be related to, arise out of or are in connection with 42 U.S.C. § 1395y(b) and the related rules and regulations and are related to this settlement. PLAINTIFFS also agree to indemnify and hold harmless GHS and their attorneys and insurers from any and all claims for attorney's fees incurred by or on behalf of PLAINTIFFS, fines and penalties, multipliers, costs, interest, expenses and judgments.

-5-

SETTLEMENT AGREEMENT AND FULL RELEASE OF ALL CLAIMS AND RIGHTS

*Langley, et. al. v. GHS, et. al.*

iii. **Tax Issues**: The payment is intended by PLAINTIFFS to constitute damages on account of personal, physical injuries, or sickness within the meaning of Section 104(a)(2) of the Internal Revenue Code of 1986, as amended. GHS and its counsel do not express any opinion, representation or warranty as to any tax consequences associated with the payment. PLAINTIFFS acknowledge that the GHS and their counsel and carrier have made no representations regarding the tax treatment of the Payment. PLAINTIFFS have had the opportunity to consult their own attorneys and tax advisors and understand that PLAINTIFFS shall be solely responsible for payment of any tax consequences related to the Settlement Funds paid by the carrier.

iv. **Confidentiality of Amount**: PLAINTIFFS shall not disclose the amount of the Settlement Funds to anyone or entity, including but not limited to other SETTLING PLAINTIFFS or Plaintiffs and counsel in other related actions, except as permitted by this Agreement, and then only with prior written notice to GHS and the opportunity to seek a court order to object to the disclosure.

v. **Limited Permitted Disclosure**: Notwithstanding the foregoing, PLAINTIFFS may disclose the amount to the extent required by law to state or federal governmental tax authorities, or to the Court herein in requesting the amount be sealed and to defense counsel for CDE and RUSD to seek approvals of a minor's or dependent adult compromise and/or for GHS to seek a judicial determination of good faith settlement ("collectively Permitted Disclosures"). If an inquiry is made to PLAINTIFFS or their counsel about the amount of this settlement, they shall state words to the effect: "*The court has approved the settlement and dismissed the lawsuit.*"

vi. **Breach of Confidentiality:** The confidential amount of the Settlement Funds is a material term and condition of this Agreement relied on by GHS and its carrier in entering into this Agreement and other settlements, and any breach by PLAINTIFFS of the confidentiality clause is likely to cause actual damages particularly if the breach results in continuing litigation entitling GHS to seek equitable and legal remedies to the full extent permitted by law.

b. **Motions to Approve Settlement with Request to File Amount Under Seal**: The Payment will not come due until the court grants both PLAINTIFFS' application for a minor's or dependent adult with disabilities compromise and GHS' motion for good faith settlement determination, which motions shall be filed with a request for the court to seal the amount of the Payment as provided herein. The PARTIES and their counsel shall redact the amount of the Settlement Funds in any papers filed with the court viewable by the public and shall lodge with the court or such other process in the court's standing orders or instructions to provide an unredacted document to the court seeking for the court to seal the amount of the Settlement Funds. The PARTIES agree as follows:

-6-

SETTLEMENT AGREEMENT AND FULL RELEASE OF ALL CLAIMS AND RIGHTS

*Langley, et. al. v. GHS, et. al.*

i.      Eastern District Local Rule 241 governs sealing of documents filed with the court and further agree that the party and their counsel filing a document that includes the amount of Payment shall comply with Local Rule 241 and any applicable Standing Order related to redacting, lodging and/or sealing a document. Local Rule 141 provides that documents may only be sealed by a written order of the court after a specific request to seal has been made. Local Rule 141(a). Local Rule 141(b) requires that "[t]he 'Request to Seal Documents' shall set forth the statutory or other authority for sealing, the requested duration, the identity, by name or category, of persons to be permitted access to the document, and all relevant information." Local Rule 141(b). The law permits a request to seal material if "compelling reasons" support secrecy, however, where the material is, at most, "tangentially related" to the merits of a case, the request to seal may be granted on a showing of "good cause." *Ctr. for Auto Safety v. Chrysler Grp., LLC*, 809 F.3d 1092, 1096-1102 (9th Cir.), cert. denied, 137 S. Ct. 38 (2016); *Kamakana v. City and County of Honolulu*, 447 F.3d 1172, 1178-80 (9thCir. 2006).

ii.     A compelling reason and good cause exists to seal the amount of the Settlement Funds as confidentiality and sealing is a material condition of this Agreement and incentive for GHS to settle with PLAINTIFFS concurrent with a global, but separate settlements, with the other SETTLING PLAINTIFFS to avoid incurring the high cost of defense of multi-party litigation. Confidentiality will facilitate GHS' ability to negotiate concurrent separate settlements with E.D. Plaintiffs, the D.Z. Plaintiffs, the S.D. Plaintiffs, the J.P. Plaintiffs, the H.K. Plaintiffs, and the A.P. Plaintiffs, and the M.S. Plaintiffs, each of whom will benefit from receipt of the confidential amount that they have offered to accept from GHS and confidentiality will avoid rancor or ill will among SETTLING PLAINTIFFS that may stall settlement; disclosing the amount of settlement may also bring unwanted attention to STUDENT PLAINTIFF with disabilities, and others may seek to take advantage of him or use the information to delay a global settlement, depriving the STUDENT PLAINTIFF of receipt of funds and involving him unnecessarily in unwanted protracted litigation with his former school and school staff. Settlement between GHS in this ACTION with 7 plaintiffs' groups may facilitate separate settlements in the other two related federal cases;

iii.    Sealing the amount of the Settlement Funds is in the interest of justice as the Court will be apprised of the amount and can determine that the amount requested by PLAINITFFS that GHS has agreed to pay if the amount is confidential is fair under the unique facts of this ACTION and related federal actions. Sealing the amount will save judicial time, expense and resources by resolving seven (7) Plaintiffs groups' cases, some cases spanning many behavioral incidents down through the years involving different behavioral incidents, disabilities,

-7-

SETTLEMENT AGREEMENT AND FULL RELEASE OF ALL CLAIMS AND RIGHTS

*Langley, et. al. v. GHS, et. al.*

exceptional needs, triggers, different staff, interventions, de-escalation, and if any, alleged harm or injuries (e.g., accidental, self-inflicted, peer inflicted, struggling during a restraint, etc.), with more than 40-GHS witnesses to the various behavioral incidents, plus DISTRICT witnesses, IEP team witnesses and expert witnesses, etc.

2.    **Full Release of Claims and Rights.**

a.    **Release**: PLAINTIFFS, on behalf of the themselves personally as individuals as well as in their representative capacity on behalf of the STUDENT PLAINTIFF and all PLAINTIFFS' heirs, successors, and assigns (collectively "RELEASORS"), hereby unconditionally, irrevocably and absolutely release and discharge all claims and rights against the GHS DEFENDANTS, including but not limited to GHS, MEYERS, KELLER, WOHLWEND, Jennifer Christensen, Betty Morgan, Jill Watson, Le'Mon Thomas, David Chambers, Linda Stearn, Michael Smith, Melanie Allen, Zach Matlock, Kyle McKoy, Danielle Oehring, Merilee Godbout, Nima Naran, Andre Gatewood, Kim Dillon, Kris Laymon, Amanda Hinds, Jennifer Jones, Sandra Romero, Robin Schumann, Phyllis, Ramsey, Shelley Trapani, Virginia Dorman, Julia Lyons, Jenny Lopez, James Broussard, Christina Costin, Robin Schrich, Wesley Murray, Melody Smith-Williams, Ryan, Michelle Gomez, Allison Robinson, Alex Waller, Cara Jones, Michelle Fear, Heidi Speiss, Rena Hander, Ashley Oxford and Matt Carr, and all other present or former GHS employees, officers, directors, volunteers, agents, staff, teachers, behaviorists, occupational therapists, speech and language therapists, administrators, aids, teachers, predecessors, attorneys, successors, assigns, assignees, servants, managers, board members, trustees, schools, institutions, affiliates, heirs, insurers, without limitation, Philadelphia Insurance, and all its respective past, present and future parent corporations, subsidiaries, divisions and affiliates, and each of their respective directors, officers, shareholders, trustees, employees, agents, representatives, claims handling administrators, successors, predecessors and assigns, in their own capacity and with respect to any assumed business, and the LOCAL EDUCATION AGENCIES and their past and present employees, agents, officials, and representatives, including STUDENT PLAINTIFF's DISTRICT, SELPA, and county office of education (collectively "RELEASEES"), from any and all actions, causes of action, claims, demands, injuries, damages, treble damages, punitive damages, penalties, costs, attorneys' fees, loss of educational time or services, denial of FAPE, expenses and debts whatsoever, in law and in equity, which the RELEASORS have, has had, or which they or their children, parents, *guardian ad litem*, conservators, heirs, executors, trustees, administrators, successors, agents, servants, employees or assignees hereinafter can, shall or may have against said RELEASEES, whether known or unknown, suspected or unsuspected, in any way arising out of or in any way connected with, based upon, related to the DISPUTED CLAIMS in the COMPLAINT and/or ACTION or which could have been alleged or raised in the COMPLAINT and/or ACTION or in any other complaint, action or proceeding against any of the RELEASEES (herein "RELEASE").

b.    **CDE is only Defendant Not Released.** Notwithstanding the foregoing, this RELEASE is not intended to and does not release PLAINTIFFS' claims in the COMPLAINT against Defendant CDE and its employees, agents and/or officials. Upon the dismissal with prejudice of ALL DEFENDANTS (except CDE) as provided in

-8-

SETTLEMENT AGREEMENT AND FULL RELEASE OF ALL CLAIMS AND RIGHTS

*Langley, et. al. v. GHS, et. al.*

Paragraph 3 below, the CDE defendants shall be the only remaining Defendants sued by PLAINTIFFS in the ACTION.

c.    **General Release**: It is PLAINTIFFS' intent that this Agreement and RELEASE above shall be a general release and apply to all claims of every kind and nature that RELEASORS and each of them possess personally or in their representative capacity against RELEASEES, whether known, unknown or unanticipated, past, present or future. Furthermore, the RELEASE provided above shall remain in effect as a full and complete release of RELEASEES, notwithstanding the existence or subsequent discovery of any presently unknown, different or additional facts or claims PLAINTIFFS and/or other RELEASORS may have against any RELEASEES including GHS DEFENDANTS including those PREVIOUSLY DISMISSED GHS DEFENDANTS from the ACTION.

d.    **California Civil Code Section 1542 Waiver**.

PLAINTIFFS expressly waive any rights and benefits each may have under California Civil Code section 1542 (or any other statute or legal doctrine or precedent similar to California Civil Code section 1542), which provides:

> "**A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her, would have materially affected his or her settlement with the debtor or released party**."

PLAINTIFFS acknowledge that they have read all of this Agreement, including the above Civil Code section 1542, and that they fully understand both the Agreement and the Civil Code section.

3.    **Dismissal with Prejudice All Defendants Except CDE.**

The PARTIES agree that within five (5) court days of PLAINTIFFS' attorney's receipt of the Payment as provided in Paragraph 1 of this Agreement, pursuant to Rule 41 (a) of the Federal Rules of Civil Procedure, the PARTIES and their attorneys shall file a Stipulation of Dismissal with Prejudice of All Defendants and Order that dismisses ALL DEFENDANTS in the ACTION, except for the CDE and its employees and agents ("Stipulation and Order"). The Stipulation and Order shall state, each side to bear their own costs and attorneys' fees in the ACTION. The Stipulation and Order shall dismiss *with prejudice* all GHS DEFENDANTS including Defendants GHS, MEYERS, KELLER, WOHLWEND, and INDIVIDUAL GHS DEFENDANTS PREVIOUSLY DISMISSED (without prejudice) and all LOCAL EDUCATION AGENCY(s), their employees, officials and agents, including the STUDENT PLAINTIFF's DISTRICT, SELPA, and county office of education including RUSD.

4.    **Injury and Damages**. This Agreement includes settlement of all of PLAINTIFFS' alleged injuries or damages to persons, rights, and/or property (tangible or intangible) past, present or future whatsoever arising out of or related to the RELEASEES, including but not limited to the GHS DEFENDANTS, whether such injuries and damages and rights be known or unknown, discovered or undiscovered, foreseen or unforeseen, and whether they are latent or occur later.

-9-

SETTLEMENT AGREEMENT AND FULL RELEASE OF ALL CLAIMS AND RIGHTS

*Langley, et. al. v. GHS, et. al.*

5.    **Compromise of Contested Disputed Claims - No Admission of Liability**.  This Agreement affects the compromise  and settlement of claims that are disputed and contested brought by Plaintiffs; nothing contained herein shall ever be construed as an admission of the allegations of wrongdoing or admission of liability by the GHS DEFENDANTS which allegations and liability are expressly  denied and the subject of DISPUTED CLAIMS by PLAINTIFFS. This Agreement is entered into by GHS merely to avoid any further burden, time, expense, and inconvenience of defending an ACTION by PLAINTIFFS that GHS contends has no merit.

6.    **Independent Advice of Counsel**.  PLAINTIFFS respectively represent and certify that they secured independent legal advice and consultation in connection with this Agreement and any rights they each may be relinquishing hereby and that they have not relied upon any representations or statements made by any other party or by any other party's counsel or representatives in executing this Agreement.

7.    **Enforceability**.  PLAINTIFFS agree that this Agreement constitutes a binding written agreement that may be enforced by the Court.

8.    **Voluntary Agreement**.  PLAINTIFFS represent and certify that they have carefully read this Agreement and know the contents thereof and that each signs the same freely and voluntarily.

9.    **Authority to Execute**.  PLAINTIFFS represent and certify that they have they have the lawsuit right to sign this AGREEMENT on behalf of and bind the STUDENT PLAINTIFF.

10.    **Benefit and Burden**.  This Agreement shall be binding upon, and inure to the benefit of, the PARTIES and their respective heirs, executors, administrators, representatives, successors, and assigns.

11.    **Non-Assignment**.  Plaintiffs represent, warrant, and certify that there has been no transfer or assignment, or attempted transfer or assignment, of any right, title, or interest in or to any claim, action, or cause of action that is being released and discharged pursuant to the general release provided above.

12.    **Entire Agreement**. All agreements, covenants, representations and warranties, expressed and implied, oral and written, of the PARTIES concerning the subject matter hereof are contained herein. No other agreements, covenants, representations or warranties, express or implied, oral or written, have been made by any party thereto to any other party concerning the subject matter hereof. All prior and contemporaneous conversations, negotiations, possible and alleged agreements, representations, covenants and warranties concerning the subject matter hereof are merged herein.  This is an integrated Agreement.  The terms of this Agreement may not be modified except by written instrument duly signed by all PARTIES.

13.    **Waiver and Amendment**. No breach of any provision hereof can be waived unless in writing.  Waiver of any one breach shall not be deemed to be a waiver of any other breach of the same or any other provision hereof.

-10-

SETTLEMENT AGREEMENT AND FULL RELEASE OF ALL CLAIMS AND RIGHTS

*Langley, et. al. v. GHS, et. al.*

14.    **Construction**. Each party hereto and his, her, or its respective counsel or representatives have had an opportunity to negotiate the terms, review and revise this Agreement and agree that this Agreement is the result of mutual negotiation and drafting between counsel for the PARTIES, and that there shall be no presumption against the drafter in the event of any ambiguity in the interpretation of the provisions of this Agreement.

15.    **Severability**. If any part of this Agreement is determined by a court to be invalid, the remainder of the Agreement shall remain in full force and effect to the full extent allowed by law to carry out the PARTIES' intention to fully resolve all claims between them.

16.    **Counter-Parts**. This Agreement may be signed in counter-parts and electronic and facsimile copies shall have the same force and effect as a signed original.

17.    **No Other Relief Available to Plaintiffs**. PLAINTIFFS acknowledge their understanding that the Payment as provided in Paragraph 1 above is all the money or consideration they or their children, heirs and successors in interest will receive from the RELEASEES.

18.    **Indemnity from Liens**:

    a.    A material condition of this Agreement is that PLAINTIFFS and their counsel fully disclose all unpaid Medicaid and Medicare liens for PLAINTIFFS' injuries that are the subject of this ACTION. PLAINTIFFS and their counsel further warrant and represent to the best of their knowledge that there are no other liens by Medicare, Medi-Cal, Medicaid, who have a right to reimbursement related to services or treatment or expenses for PLAINTIFFS' injuries that are the subject of the ACTION:

    b.    As a further condition of the Agreement, PLAINTIFFS represent and warrant that as of the date of this signing, PLAINTIFFS have provided RELEASEES, GHS' counsel, Sims Lawrence & Broghammer ("Counsel"), all information PLAINTIFFS know about: any and all Medicare, Medi-Cal, Medicaid, arising out of or relating to the DISPUTED CLAIMS, the subject ACTION and related incident and damages and injuries to PLAINTIFFS. PLAINTIFFS understand and agree that this settlement and the payment of money under this Agreement is being made in reliance on PLAINTIFFS having truthfully and accurately provided the preceding lien information to the released parties and their counsel including as to STUDENT PLAINTIFF and promising to pay the liens from the Payment provided herein. PLAINTIFFS agree to fully and completely defend, reimburse, hold harmless and indemnify any and all of the Releasees, counsel and insurer of any amounts which any insurance carriers of any kind, government entities, hospitals, treatment providers, mental health providers, prior and current attorney(s) and/or other persons or organizations of any type or kind may recover from any of them in reimbursement for amounts paid to PLAINTIFFS on PLAINTIFFS' behalf as a result of the PLAINTIFFS' DISPUTED CLAIMS, the alleged subject incident and subject ACTION by way of contribution, subrogation, indemnity or otherwise, and to fully and completely defend, reimburse, hold harmless and indemnify RELEASEES, Counsel and Insurer from any and all liens of any kind or type. As to any such attorney liens, these terms shall apply to the liens for both fees and costs

-11-

SETTLEMENT AGREEMENT AND FULL RELEASE OF ALL CLAIMS AND RIGHTS

*Langley, et. al. v. GHS, et. al.*

claimed by and paid to such attorneys. This defense and indemnity provision as a whole shall include, but not be limited to, any claim for repayment, reimbursement and any fine or penalty.

c.  In addition to and without limiting any other language in the Agreement, PLAINTIFFS agree to indemnify and hold harmless RELEASEES and their attorneys and insurers from any and all claims by any medical provider arising out of or in connection with the ACTION or regarding the injuries or damages that are the subject of the ACTION or any claims by Medicaid or Medicare that have been or may in the future be related to, arise out of or are in connection with 42 U.S.C. § 1395y(b) and the related rules and regulations and are related to this settlement. PLAINTIFFS also agree to indemnify and hold harmless GHS and their attorneys and insurers from any and all claims for attorney's fees incurred by or on behalf of PLAINTIFFS, fines and penalties, multipliers, costs, interest, expenses and judgments.

19.  **Waiver and Amendment**. No breach of any provision hereof can be waived unless in writing.  Waiver of any one breach shall not be deemed to be a waiver of any other breach of the same or any other provision hereof.

20.  **Construction**. Each party hereto and his, her, or its respective counsel or representatives have had an opportunity to review and revise this Agreement and agree that the normal rules of construction to the effect that any ambiguities in this Agreement are to be resolved against the drafting party shall not be employed in the interpretation of this Agreement.

21.  **Severability**. If any part of this Agreement is determined by a court to be invalid, the remainder of the Agreement shall remain in full force and effect to the full extent allowed by law to carry out the PARTIES' intention to fully resolve all claims between them.

22.  **No Other Known Proceedings**. PLAINTIFFS and their counsel represent and warrant that there are no known claimants, plaintiffs, investigations, complaints, claims, proceedings, or pending or contemplated against any of the GHS DEFENDANTS other than the two related federal civil cases, (*Marques/Van Maran v. GHS et al*, and *Langley (MB) v. GHS et. al*., and the related parallel criminal proceeding.

23.  **Counter-Parts**. This Agreement may be signed in counter-parts and electronic and facsimile copies shall have the same force and effect as a signed original.

**\*\*This settlement is conditioned upon the undersigned PLAINTIFFS fully and completely disclosing and satisfying any and all liens of any kind or type from the proceeds of the money paid to them pursuant to this Agreement.**

**\*\*\*This Agreement is conditioned upon and shall become effective upon the entry of an Order by the Court approving PLAINTIFFS' Petition for Minor's Compromise and/or Petition for Adult with Disabilities' Compromise and Defendant's Motion for Good Faith Settlement Determination.**

-12-

SETTLEMENT AGREEMENT AND FULL RELEASE OF ALL CLAIMS AND RIGHTS

*Langley, et. al. v. GHS, et. al.*

****If the STUDENT PLAINTIFF is now an adult age 18 or over, he must read and sign the Agreement along with his parents and legal representatives.

PLAINTIFFS' SIGNATURE PAGE

I HAVE READ THIS AGREEMENT INCLUDING THE RELEASE HEREIN AND ALL OF MY QUESTIONS REGARDING IT HAVE BEEN EXPLAINED TO ME BY MY ATTORNEYS, AND I UNDERSTAND THIS AGREEMENT INCLUDING THE RELEASE.

Signed this 23 day of September 2025, at ELK Gove CA.

By: _____
CHRISTOPHER STARK as a parent and
*guardian ad litem* for Magnus Stark

Signed this 23 day of September 2025, at Elk Grove CA.

By: _____
MELANIE STARK, as an individual, parent,
and next friend for Magnus Stark

For your protection California Law (Insurance Code §1871.2) requires the following to appear on this form. Any person who knowingly presents false or fraudulent claim for the payment of a loss is guilty of a crime and may be subject to fines and confinement in state prison. Every person who violates any provisions of Insurance Code §1871.4 subdivision (a) is punishable up to five years in the state prison or by a fine not exceeding $50,000 or by both.

SETTLEMENT AGREEMENT AND FULL RELEASE OF ALL CLAIMS AND RIGHTS                    -13-

DEFENDANT'S SIGNATURE PAGE

**I HAVE READ THIS AGREEMENT INCLUDING THE RELEASE HEREIN AND ALL OF MY QUESTIONS REGARDING IT HAVE BEEN EXPLAINED TO ME BY MY ATTORNEYS, AND I UNDERSTAND THIS AGREEMENT INCLUDING THE RELEASE.**

Signed this ___2nd___ day of ___Oct.___ 2025, at _____ CA.

Defendant GUIDING HANDS SCHOO, INC., a nonprofit corporation,

By: _____,
Cindy Keller, President

APPROVED AS TO FORM AND CONTENT:

Dated: _____        SETH GOLDSTEIN LAW OFFICES

By: _____
SETH L. GOLDSTEIN
Lead Attorney for Plaintiffs

Dated: _____        BENNETT LAW GROUP

By: _____
MERIT BENNETT, *pro hac vice*
Co-Counsel for Plaintiffs

Dated: _____        SIMS, LAWRENCE & BROGHAMMER

By: _____
CYNTHIA G. LAWRENCE
SHARONROSE CANNISTRACI
Attorneys for Defendants GUIDING HANDS
SCHOOL, INC., a nonprofit corporation, and
CINDY KELLER, and STARANNE MEYERS

Dated: _____        LEVANGIE LONG LOORZ

By: _____
JEFFERY C. LONG
Attorney for Defendant KIMBERLY
WOHLWEND

SETTLEMENT AGREEMENT AND FULL RELEASE OF ALL CLAIMS AND RIGHTS                -14-

*Langley et al v. GHS et al*

DEFENDANT'S SIGNATURE PAGE

**I HAVE READ THIS AGREEMENT INCLUDING THE RELEASE HEREIN AND ALL OF MY QUESTIONS REGARDING IT HAVE BEEN EXPLAINED TO ME BY MY ATTORNEYS, AND I UNDERSTAND THIS AGREEMENT INCLUDING THE RELEASE.**

Signed this _____ day of _____ 2025, at _____ CA.

Defendant GUIDING HANDS SCHOO, INC., a nonprofit corporation.

By: _____,
Cindy Keller, President

APPROVED AS TO FORM AND CONTENT:

Dated: _____10-09-2025_____    SETH GOLDSTEIN LAW OFFICES

By: _____
SETH L. GOLDSTEIN
Lead Attorney for Plaintiffs

Dated: __10/6/2025__    BENNETT LAW GROUP

By: _____
MERIT BENNETT, *pro hac vice*
Co-Counsel for Plaintiffs

Dated: _____    SIMS, LAWRENCE & BROGHAMMER

By: _____
CYNTHIA G. LAWRENCE
SHARONROSE CANNISTRACI
Attorneys for Defendants GUIDING HANDS SCHOOL, INC., a nonprofit corporation, and CINDY KELLER, and STARANNE MEYERS

Dated: _____    LEVANGIE LONG LOORZ

By: _____
JEFFERY C. LONG
Attorney for Defendant KIMBERLY WOHLWEND

SETTLEMENT AGREEMENT AND FULL RELEASE OF ALL CLAIMS AND RIGHTS

-14-

DEFENDANT'S SIGNATURE PAGE

**I HAVE READ THIS AGREEMENT INCLUDING THE RELEASE HEREIN AND ALL OF MY QUESTIONS REGARDING IT HAVE BEEN EXPLAINED TO ME BY MY ATTORNEYS, AND I UNDERSTAND THIS AGREEMENT INCLUDING THE RELEASE.**

Signed this _____ day of _____ 2025, at _____CA.

                                    Defendant GUIDING HANDS SCHOO, INC., a nonprofit corporation.

                                    By: _____,
                                        Cindy Keller, President

APPROVED AS TO FORM AND CONTENT:

Dated: _____    SETH GOLDSTEIN LAW OFFICES

                                    By: _____
                                        SETH L. GOLDSTEIN
                                        Lead Attorney for Plaintiffs

Dated: _____    BENNETT LAW GROUP

                                    By: _____
                                        MERIT BENNETT, *pro hac vice*
                                        Co-Counsel for Plaintiffs

Dated: 01/14/2026    SIMS, LAWRENCE & BROGHAMMER

                                    By: _Cynthia G. Lawrence_____
                                        CYNTHIA G. LAWRENCE
                                        SHARONROSE CANNISTRACI
                                        Attorneys for Defendants GUIDING HANDS SCHOOL, INC., a nonprofit corporation, and CINDY KELLER, and STARANNE MEYERS

Dated: Dec. 15, 2025    LEVANGIE LONG LOORZ

                                    By: _Jeffery C. Long_____
                                        JEFFERY C. LONG
                                        Attorney for Defendant KIMBERLY WOHLWEND

-14-

SETTLEMENT AGREEMENT AND FULL RELEASE OF ALL CLAIMS AND RIGHTS

*Langley, et. al. v. GHS, et. al.*

# OFFICE COSTS LOG
## Seth L. Goldstein

| DATE | DESCRIPTION | AMOUNT |
|---|---|---|
| 1/21/2020 | David Belarge \| Process Service | $ ▮ |
| 1/14/2020 | Hollister Process Service \| Process Service | $ ▮ |
| 1/13/2020 | ABC legal \| Process Service | $ ▮ |
| 1/13/2020 | By the Book Attorney Service \| Process Service | $ ▮ |
| 1/16/2020 | Rapid Legal \| Process Service | $ ▮ |
| 1/30/2020 | One Legal \| Process Service | $ ▮ |
| 2020 | Robert Toth \| Process Service | $ ▮ |
| 3/27/2019 | CA Dept of Education copy of reco rds fee for 622 pages | $ ▮ |
| 4/11/2019 | Government Claims Fee | $ ▮ |
| 5/23/2019 | Merrill Winston \| Retainer for Langley/Benson expert witness services | $ ▮ |
| 11/13/2019 | El Dorado Court \| Filing Fee \| New Complaint | $ ▮ |
| 12/5/2019 | El Dorado Court \| Filing Fee \| Jury Fees | $ ▮ |
| 12/14/2022 | Travel Expense \| Global Mediation \| Scott's Seafood - Sacramento | $ ▮ |
| 12/15/2022 | Travel Expense \| Global Mediation \| Steve's Pizza - Sacramento | $ ▮ |
| 12/16/2022 | Travel Expense \| Global Mediation \| Gasoline | $ ▮ |
| 12/16/2022 | Travel Expense \| Global Mediation \| Hyatt Centric - Sacramento | $ ▮ |
| 12/17/2022 | Travel Expense \| Global Mediation \| McDonald's | $ ▮ |
| | TOTAL CASE COSTS REIMBURSEMENT DUE | $ ▮ |
| | **COSTS REIMBURSEMENT DUE PER FAMILY** (Total Case Costs Divided by 10 Families) | $ ▮ |

**EXHIBIT C**

**1 of 1**